JUDGE SCHEINDLIN    13 CIV 8012

Robert L. Weigel (RW 0163)
Howard S. Hogan (HH 7995)
Jennifer C. Halter (JH 7032)
Jana N. Checa Chong (JC 1804)
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue, 47th Floor
New York, New York 10166
(212) 351-4000

*Attorneys for Plaintiffs NIKE, Inc. and Converse Inc.*



RECEIVED
NOV 12 2013
U.S.D.C. S.D. N.Y.
CASHIERS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NIKE, INC. and CONVERSE INC.,

        Plaintiffs,

    v.

MARIA WU d/b/a WWW.SHOECAPSXYZ.COM; LINHAI
KE d/b/a WWW.SHOECAPSXYZ.COM;
STOREONLINESERVICE2012@GMAIL.COM d/b/a
WWW.FREERUNONLOCKER.CO.UK;
SERVICE2@AIREMAIL.NET d/b/a
WWW.FOOTWEARSUPER.CO.UK; LIN ZOE d/b/a
WWW.WHOLESALENFLJERSEYSSALE.COM;
COMMINUTETE MORE K.K. d/b/a
WWW.WHOLESALENFLJERSEYSSALE.COM;
BRAKEHEMALT K.K. d/b/a WWW.NFLOFCHINA.COM
and WWW.STOREONLINESELLLNOW.COM;
CUSTOMERSERVICENO1@HOTMAIL.COM d/b/a
WWW.DSMRECAP.COM;
SECUREONLINEPAY@HOTMAIL.COM d/b/a
WWW.SOCCERUMARKET.COM;
SERVICE3@LINKONLINEMAIL.COM d/b/a
WWW.D3CLASSICSHOES.CO.NZ;
SERVICE1@WEBSEEMIAL.COM d/b/a
WWW.AF1SHOX.COM; BODON TRADING d/b/a
WWW.CHEAPKD5SHOES.COM and
WWW.FREESRUNSSTORE.COM; ERIC LEE d/b/a
WWW.CHEAPKD5SHOES.COM; MEIJIN HUANG d/b/a
WWW.CHEAPKD5SHOES.COM; ZHIZHEN LI d/b/a
WWW.FREESRUNSSTORE.COM; CHEAP NIKE FREE
RUN TRADE CO. LTD. d/b/a WWW.NIKEFREE4S.COM;
SERVICE@NIKEFREERUNS30.COM d/b/a

2013 Civ. ____

**COMPLAINT**

WWW.NIKEFREERUNS30.COM;                                  :
NIKEFREEONLINE2012@HOTMAIL.COM d/b/a                     :
WWW.FREEBUYSHOES.COM and                                 :
WWW.NEWFREESHOES.COM; CHEN JINXING d/b/a                 :
WWW.BUYWIKIONLINE.COM;                                   :
LINDAJERSEYS@GMAIL.COM d/b/a                             :
WWW.LINDAJERSEYS.COM and WWW.LINDA-                      :
JERSEYS.COM; UNIVERSITY JHUG LIMITED d/b/a               :
WWW.YES-SHOE.COM and WWW.YES-SHOE.NET;                   :
ZHENG JIANGYANG d/b/a WWW.GREAT-                         :
WHOLESALEJERSYES.NET; EXTENTBARGAIN K.K.                 :
d/b/a  WWW.FOR-JERSEYS.BIZ and                           :
WWW.MYSPETO.COM; BBBPPPKKK@YAHOO.COM                     :
d/b/a WWW.NIKEFREERUNS-FACTORY.COM; BI NING              :
ZHUO d/b/a WWW.FREERUNLINEA.COM; JIANG LILI              :
D/B/A WWW.CHEAPNIKEAIRMAX-MART.COM;                      :
CUSTOMERSERVICE.LY@GMAIL.COM d/b/a                       :
WWW.AIRMAXOFFICIALSHOP.CO.UK and                         :
WWW.AIRMAX90UKSALES.CO.UK;SERVICE@KICKSLI               :
ON.COM, d/b/a WWW.KICKSLION.NET;                         :
KENDRICKVERY PT d/b/a WWW.OYKUNUNSESI.COM               :
and WWW.PAYFORORDER.COM;                                 :
WHOLESALEJERSEYSCENTER@GMAIL.COM d/b/a                   :
WWW.NFLJERSEYSWEBSITE.COM; MEION ONLINE                  :
STORE d/b/a WWW.BUYREALCHEAPJORDANS.COM                 :
AND WWW.FASHIONPAY.COM;                                  :
LESSSPAM42@GMAIL.COM d/b/a WWW.AUTHENTIC-               :
JORDANS.US; JINHUI ZHENG d/b/a                           :
WWW.SHOPUQ.COM; ZHENG JINZHAO d/b/a                      :
WWW.SHOPUQ.COM; SNEAKERS2013@GMAIL.COM                   :
d/b/a WWW.MAX-2013.COM; NIKEFAIR@MSN.COM                 :
d/b/a WWW.CHEAPESTLEBRON10.COM;                          :
HOTAIRJORDAN13@GMAIL.COM d/b/a                           :
WWW.HOTAIRJORDAN13.COM; SHAN PETER d/b/a                 :
WWW.CHEAPUK-NIKETRAINERS.CO.UK; ABC                      :
COMPANIES 1-100; and JOHN DOES 1-100.                    :
                                                         :
                Defendants.                              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -  x

Plaintiffs NIKE, Inc. ("**NIKE**") and Converse Inc. ("**Converse**," and together with

NIKE, "**Plaintiffs**") for their complaint against Defendants Maria Wu d/b/a

www.shoecapsxyz.com; Linhai Ke d/b/a www.shoecapsxyz.com;

storeonlineservice2012@gmail.com d/b/a www.freerunonlocker.co.uk; service2@airemail.net

d/b/a www.footwearsuper.co.uk; Lin Zoe d/b/a www.wholesalenfljerseyssale.com; Comminutete More K.K. d/b/a www.wholesalenfljerseyssale.com; Brakehemalt K.K. d/b/a www.nflofchina.com and www.storeonlineselllnow.com; customerserviceNo1@hotmail.com d/b/a www.dsmrecap.com; secureonlinepay@hotmail.com d/b/a www.soccerumarket.com; service3@linkonlinemail.com d/b/a www.d3classicshoes.co.nz; service1@webseemial.com d/b/a www.af1shox.com; Bodon Trading d/b/a www.cheapkd5shoes.com and www.freesrunsstore.com; Eric Lee d/b/a www.cheapkd5shoes.com; Meijin Huang d/b/a www.cheapkd5shoes.com; Zhizhen Li d/b/a www.freesrunsstore.com; Cheap Nike Free Run Trade Co. Ltd. d/b/a www.nikefree4s.com; service@nikefreeruns30.com d/b/a www.nikefreeruns30.com; nikefreeonline2012@hotmail.com d/b/a www.freebuyshoes.com and www.newfreeshoes.com; Chen Jinxing d/b/a www.buywikionline.com; lindajerseys@gmail.com d/b/a www.lindajerseys.com and www.linda-jerseys.com; University Jhug Limited d/b/a www.yes-shoe.com and www.yes-shoe.net; Zheng Jiangyang d/b/a www.great-wholesalejersyes.net; Extentbargain K.K. d/b/a www.for-jerseys.biz and www.myspeto.com; bbbpppkkk@yahoo.com d/b/a www.nikefreeruns-factory.com; Bi Ning Zhuo d/b/a www.freerunlinea.com; Jiang Lili d/b/a www.cheapnikeairmax-mart.com; customerservice.LY@gmail.com d/b/a www.airmaxofficialshop.co.uk and www.airmax90uksales.co.uk; service@kickslion.com d/b/a www.kickslion.net; Kendrickvery PT d/b/a www.oykununsesi.com and www.payfororder.com; wholesalejerseyscenter@gmail.com d/b/a www.nfljerseyswebsite.com; Meion Online Store d/b/a www.buyrealcheapjordans.com and www.fashionpay.com; lessspam42@gmail.com d/b/a www.authentic-jordans.us; Jinhui Zheng d/b/a www.shopuq.com; Zheng Jinzhao d/b/a www.shopuq.com; sneakers2013@gmail.com d/b/a www.max-2013.com; nikefair@msn.com d/b/a www.cheapestlebron10.com;

hotairjordan13@gmail.com d/b/a www.hotairjordan13.com; Shan Peter d/b/a www.cheapuk-niketrainers.co.uk; ABC Companies 1-100; and John Does 1-100 (collectively, "**Defendants**"), allege as follows:

## NATURE OF THE ACTION

1. This is an action for preliminary and permanent injunctive relief and damages associated with the Defendants' intentional, unauthorized and unlawful use of Plaintiffs' valuable trademarks in connection with Defendants' sale of counterfeit goods through hundreds of websites (the "**Infringing Websites**").

2. Consumers instantly recognize the various trademarks used to identify the goods merchandised or manufactured by NIKE and Converse (collectively, the "**Plaintiffs' Marks**"). Over the years, millions of consumers have been exposed to the famous, arbitrary and fanciful trademarks utilized by NIKE and Converse through various platforms, including Plaintiffs' extensive advertising campaigns, through magazines and other periodicals, as depicted on television and in motion pictures, on the Internet, through celebrity endorsements, and in other forms of unsolicited media coverage. As a result, Plaintiffs' respective trademarks have received enormous exposure in the marketplace. Plaintiffs' Marks are among the most widely-recognized trademarks in the United States and around the world, as well as among the most popular with consumers. The fame and popularity of Plaintiffs' Marks adds enormous value to the authentic products that bear Plaintiffs' Marks ("**Plaintiffs' Products**," and, separately, "**NIKE Products**" and "**Converse Products**").

3. The Defendants, who have no affiliation with NIKE or Converse, have attempted to capitalize on the popularity of the Plaintiffs' Marks by manufacturing and marketing counterfeit products falsely labeled as "NIKE" or "Converse" (the "**Counterfeit Products**").

The Defendants in this action operate hundreds of websites through multiple counterfeiting networks, or "Groups," of websites. As reflected in Exhibit 1, Plaintiffs have identified 437 domain names associated with Defendants' Infringing Websites, which are operated through twenty-six counterfeiting networks (identified below and in Exhibit 1 as Groups A-Z). Each of Defendants' Infringing Websites identified in Exhibit 1 is currently, or was within the past twelve months, advertising, offering to sell, and/or selling counterfeit NIKE or Converse products to United States consumers.

4.     To ensure that consumers make the association between Defendants' Counterfeit Products and the genuine NIKE or Converse Products from which they were copied, Defendants not only copy the designs, patterns and color schemes associated with Plaintiffs' Products, but also expressly identify the Counterfeit Products as "NIKE" or "Converse" products. Further, Defendants make unauthorized use of Plaintiffs' Marks, including the trademark-protected "NIKE" and "CONVERSE" names, throughout the Infringing Websites on which these goods are offered for sale to consumers in the United States and this District.

5.     In an effort to further confuse consumers, in some instances, Defendants have registered and located their Infringing Websites at domain names that are identical to or substantially to Plaintiffs' Marks (the "**Infringing Domain Names**"). Of the 437 Infringing Websites that Plaintiffs have identified thus far, 138 of these websites are located at Infringing Domain Names. The Infringing Domain Names detected to date are reflected in the attached Exhibit 2.

6.     Defendants have manufactured and sold their Counterfeit Products without Plaintiffs' permission, authorization, or approval. Defendants' conduct is likely to cause, and has caused, consumers mistakenly to believe that the Counterfeit Products sold and promoted by

Defendants either are authentic NIKE or Converse Products, are produced by Defendants under a license agreement, joint venture, or other form of authorization by Plaintiffs, or are otherwise endorsed by, authorized by, or affiliated with Plaintiffs, either at the point of sale, by the recipient of a gift, or when consumers and potential consumers see the Counterfeit Products in use.

7.     For these and other reasons, Defendants have caused and, unless enjoined, will continue to cause, irreparable harm to NIKE and Converse, and an incalculable loss of goodwill and damages.

## PARTIES

**Plaintiffs**

8.     Plaintiff NIKE, Inc. is an Oregon corporation with its principal place of business at One Bowerman Drive, Beaverton, Oregon 97005-6453.  NIKE is registered to do business in the State of New York, and is the owner of the NIKE trademarks at issue in this action.

9.     Plaintiff Converse Inc. is a Delaware corporation with its principal place of business at One High Street, North Andover, Massachusetts 01845-2601.  Converse is registered to do business in the State of New York, and is the owner of the Converse trademarks at issue in this action.  Converse is a wholly-owned subsidiary of NIKE, Inc.

**Group A Defendants**

10.     Upon information and belief, Defendant Maria Wu, doing business as www.shoecapsxyz.com, and through the email address shoecapsxyz.com@gmail.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown

(collectively, the "**Group A Defendants**").  The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group A."

11.     Upon information and belief, Defendant Linhai Ke, doing business as www.shoecapsxyz.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction with the Group A Defendants.

12.     Upon information and belief, Defendant storeonlineservice2012@gmail.com, doing business as www.freerunonlocker.co.uk, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction with the Group A Defendants.

13.     Upon information and belief, Defendant service2@airemail.net, doing business as www.footwearsuper.co.uk, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction with the Group A Defendants.

14.     Upon information and belief, the Group A Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the Uniform Resource Locators ("**URLs**") listed in in Exhibit 1 under the heading "Defendants – Group A."

15.     By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group A Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and

distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group A."

**Group B Defendants**

16.     Upon information and belief, Defendant Lin Zoe, doing business as www.wholesalenfljerseyssale.com, and through the email address honesty2sale@hotmail.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group B Defendants**").  The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group B."

17.     Upon information and belief, Defendant Comminutete More K.K., doing business as www.wholesalenfljerseyssale.com, and through the email address honesty2sale@hotmail.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction with the Group B Defendants.

18.     Upon information and belief, the Group B Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group B."

19.     By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group B Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and

distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group B."

**Group C Defendants**

20.     Upon information and belief, Defendant Brakehemalt K.K., doing business as www.nflofchina.com and www.storeonlinesellnow.com, through the email address sellmanageridr@hotmail.com, and through a PayPal account associated with the email address onlinebizdiscount@gmail.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group C Defendants**").  The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group C."

21.     Upon information and belief, the Group C Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group C."

22.     By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group C Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group C."

**Group D Defendants**

23.     Upon information and belief, Defendant customerserviceNo1@hotmail.com, doing business as www.dsmrecap.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group D Defendants**").  The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group D."

24.     Upon information and belief, Defendant secureonlinepay@hotmail.com, doing business as www.soccerumarket.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction with the Group D Defendants.

25.     Upon information and belief, the Group D Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group D."

26.     By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group D Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group D."

**Group E Defendants**

27.    Upon information and belief, Defendant service3@linkonlinemail.com, doing business as www.d3classicshoes.co.nz, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group E Defendants**").  The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group E."

28.    Upon information and belief, Defendant service1@webseemial.com, doing business as www.af1shox.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction with the Group E Defendants.

29.    Upon information and belief, the Group E Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group E."

30.    By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group E Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group E."

**Group F Defendants**

31.     Upon information and belief, Defendant Bodon Trading, doing business as www.cheapkd5shoes.com and www.freesrunsstore.com, and through the email address ninetytradestore@gmail.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group F Defendants**").  The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group F."

32.     Upon information and belief, Defendant Eric Lee, doing business as www.cheapkd5shoes.com, and through the email address ninetytradestore@gmail.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction with the Group F Defendants.

33.     Upon information and belief, Defendant Meijin Huang, doing business as www.cheapkd5shoes.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction with the Group F Defendants.

34.     Upon information and belief, Defendant Zhizhen Li, doing business as www.freesrunsstore.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction with the Group F Defendants.

35. Upon information and belief, the Group F Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group F."

36. By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group F Defendants willfully infringed various valuable, federally protected NIKE and Converse trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibits 3-4 under the heading "Defendants – Group F."

**Group G Defendants**

37. Upon information and belief, Defendant Cheap Nike Free Run Trade Co. Ltd., doing business as www.nikefree4s.com and through the email address cheapmaxshox@hotmail.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group G Defendants**").  The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group G."

38. Upon information and belief, the Group G Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group G."

39. By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group G Defendants willfully infringed various valuable,

federally protected NIKE trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group G."

**Group H Defendants**

40.     Upon information and belief, Defendant service@nikefreeruns30.com, doing business as www.nikefreeruns30.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group H Defendants**").  The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group H."

41.     Upon information and belief, the Group H Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group H."

42.     By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group H Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group H."

**Group I Defendants**

43.     Upon information and belief, Defendant nikefreeonline2012@hotmail.com, doing business as www.freebuyshoes.com and www.newfreeshoes.com, is an individual or entity

whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group I Defendants**").  The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group I."

44.     Upon information and belief, the Group I Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group I."

45.     By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group I Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group I."

**Group J Defendants**

46.     Upon information and belief, Defendant Chen Jinxing, doing business as www.buywikionline.com and through a PayPal account associated with the email address j3e42d@outlook.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group J Defendants**").  The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group J."

47.     Upon information and belief, Defendant lindajerseys@gmail.com, doing business as www.lindajerseys.com and www.linda-jerseys.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction with the Group J Defendants.

48.     Upon information and belief, the Group J Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group J."

49.     By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group J Defendants willfully infringed various valuable, federally protected NIKE and Converse trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibits 3-4 under the heading "Defendants – Group J."

**Group K Defendants**

50.     Upon information and belief, Defendant University Jhug Limited, doing business as www.yes-shoe.com and www.yes-shoe.net, and through the email address service@salerservice.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group K Defendants**").  The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group K."

51.     Upon information and belief, the Group K Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group K."

52.     By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group K Defendants willfully infringed various valuable, federally protected NIKE and Converse trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibits 3-4 under the heading "Defendants – Group K."

**Group L Defendants**

53.     Upon information and belief, Defendant Zheng Jiangyang, doing business as www.great-wholesalejersyes.net, through the email address lowjerseys@hotmail.com, and through a PayPal account associated with the email address lyleqet@hotmail.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group L Defendants**").  The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group L."

54.     Upon information and belief, Defendant Extentbargain K.K., doing business as www.for-jerseys.biz and www.myspeto.com, and through the email address jerseys@goxshop.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction with the Group L Defendants.

55. Upon information and belief, the Group L Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group L."

56. By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group L Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group L."

**Group M Defendants**

57. Upon information and belief, Defendant bbbpppkkk@yahoo.com, doing business as www.nikefreeruns-factory.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group M Defendants**"). The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group M."

58. Upon information and belief, the Group M Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group M."

59. By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group M Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and

distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group M."

**Group N Defendants**

60.     Upon information and belief, Defendant Bi Ning Zhuo, doing business as www.freerunlinea.com and through the email addresses answer.online7@gmail.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group N Defendants**").  The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group N."

61.     Upon information and belief, the Group N Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group N."

62.     By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group N Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group N."

**Group O Defendants**

63.     Upon information and belief, Defendant Jiang Lili, doing business as www.cheapnikeairmax-mart.com, through the email address airmax-shop@hotmail.com, and through a PayPal account associated with the email address janespanich@hotmail.com, is an

individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group O Defendants**"). The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group O."

64. Upon information and belief, the Group O Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group O."

65. By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group O Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group O."

**Group P Defendants**

66. Upon information and belief, Defendant customerservice.LY@gmail.com, doing business as www.airmaxofficialshop.co.uk and www.airmax90uksales.co.uk, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group P Defendants**"). The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group P."

67. Upon information and belief, the Group P Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group P."

68. By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group P Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group P."

**Group Q Defendants**

69. Upon information and belief, Defendant service@kickslion.com, doing business as www.kickslion.net, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group Q Defendants**").  The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group Q."

70. Upon information and belief, the Group Q Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in Exhibit 1 under the heading "Defendants – Group Q."

71. By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group Q Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and

distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group Q."

**Group R Defendants**

72.    Upon information and belief, Defendant Kendrickvery PT, doing business as www.oykununsesi.com and www.payfororder.com, and through the email address nikeairmaxcheapsale@gmail.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group R Defendants**").  The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group R."

73.    Upon information and belief, the Group R Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group R."

74.    By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group R Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group R."

**Group S Defendants**

75.    Upon information and belief, Defendant wholesalejerseyscenter@gmail.com, doing business as www.nfljerseyswebsite.com, is an individual or entity whose actual name and

address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group S Defendants**"). The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group S."

76.     Upon information and belief, the Group S Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group S."

77.     By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group S Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group S."

**Group T  Defendants**

78.     Upon information and belief, Defendant Meion Online Store, doing business as www.buyrealcheapjordans.com (also known as www.cheapjordansbuynow.com) and www.fashionpay.com, and through the email addresses servicemaxairjordan@gmail.com and system@fashionpay.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group T Defendants**").  The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be

associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group T."

79.     Upon information and belief, the Group T Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group T."

80.     By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group T Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group T."

**Group U Defendants**

81.     Upon information and belief, Defendant lessspam42@gmail.com, doing business as www.authentic-jordans.us, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group U Defendants**").  The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group U."

82.     Upon information and belief, the Group U Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group U."

83. By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group U Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group U."

**Group V Defendants**

84. Upon information and belief, Defendant Jinhui Zheng, doing business www.shopuq.com, and through the email address inttopshop@hotmail.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group V Defendants**").  The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group V."

85. Upon information and belief, Defendant Zheng Jinzhao, doing business as www.shopuq.com, and through the email address inttopshop@hotmail.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction with the Group V Defendants.

86. Upon information and belief, the Group V Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group V."

87. By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group V Defendants willfully infringed various valuable,

federally protected NIKE and Converse trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibits 3-4 under the heading "Defendants – Group V."

**Group W Defendants**

88.     Upon information and belief, Defendant sneakers2013@gmail.com, doing business as www.max-2013.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group W Defendants**").  The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group W."

89.     Upon information and belief, the Group W Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group W."

90.     By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group W Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group W."

**Group X Defendants**

91.     Upon information and belief, Defendant nikefair@msn.com, doing business as www.cheapestlebron10.com, is an individual or entity whose actual name and address is

currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group X Defendants**"). The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group X."

92.      Upon information and belief, the Group X Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group X."

93.      By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group X Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group X."

**Group Y Defendants**

94.      Upon information and belief, Defendant hotairjordan13@gmail.com, doing business as www.hotairjordan13.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group Y Defendants**"). The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group Y."

95. Upon information and belief, the Group Y Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group Y."

96. By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group Y Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group Y."

**Group Z Defendants**

97. Upon information and belief, Defendant Shan Peter, doing business as www.cheapuk-niketrainers.co.uk, and through the email address petershanfive@gmail.com, is an individual or entity whose actual name and address is currently unknown and who, at all relevant times herein, has acted in conjunction, as part of a closely-related group of counterfeiters, with various ABC Companies and John Does whose identities and addresses are currently unknown (collectively, the "**Group Z Defendants**"). The aliases and "d/b/a" names, including websites and email addresses, that currently are known to be associated with these Defendants are listed in Exhibit 1 under the heading "Defendants – Group Z."

98. Upon information and belief, the Group Z Defendants are the moving and conscious force behind the operation of the fully interactive, commercial websites available at the URLs listed in in Exhibit 1 under the heading "Defendants – Group Z."

99. By selling and offering to sell Counterfeit Products to the consuming public through the Infringing Websites, the Group Z Defendants willfully infringed various valuable, federally protected NIKE trademarks in connection with the sale, offering for sale, and

distribution of the specific types of goods set forth in Exhibit 3 under the heading "Defendants – Group Z."

**ABC Company and John Doe Defendants**

100.    Upon information and belief, ABC Companies 1-100 are companies engaged in the manufacture, distribution, sale and advertisement of Counterfeit Products, but whose identity and number are not presently known.

101.    Upon information and belief, John Does 1-100 are individuals who are consciously engaged in directing, controlling, ratifying, or otherwise participating in the manufacture, distribution, sale, and advertisement of Counterfeit Products, or who consciously and directly benefit financially from the manufacture, distribution, sale, and advertisement of Counterfeit Products, but whose identity and numbers are presently unknown.

102.    Upon information and belief, the Defendants operate, and will operate, additional Infringing Websites and register additional Infringing Domain Names that are not currently known to Plaintiffs but that may become known to Plaintiffs at a later date. Upon information and belief, Defendants use, and will use, additional aliases that are not currently known to Plaintiffs but that may become known to Plaintiffs at a later date. Plaintiffs' investigation of Defendants' unlawful conduct is ongoing, and Plaintiffs expect to identify other of Defendants' Infringing Websites, Infringing Domain Names, and aliases.

**JURISDICTION AND VENUE**

103.    This action arises under the Trademark Act of 1946, 15 U.S.C. § 1051, *et seq.*, as amended by the Trademark Counterfeiting Act of 1984, Pub. L. 98-473 (Oct. 12, 1984), the Anticybersquatting Consumer Protection Act of 1996, Pub. L. 104-153 (July 2, 1996), and the

Prioritizing Resources and Organization for Intellectual Property Act of 2007, H.R. 4279 (Oct. 13, 2008) (the "**Lanham Act**"), and the laws of the State of New York.

104. This Court has jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a) and 1338(b). This Court has supplemental jurisdiction over all other claims asserted herein under 28 U.S.C. § 1367(a).

105. Personal jurisdiction is proper over all Defendants pursuant to N.Y.C.P.L.R. § 302(a) because each of the Defendants regularly conducts, solicits, or transacts business in New York and in this District. Jurisdiction is also proper because Defendants have offered to sell and have sold Counterfeit Products to consumers within New York and this District; Defendants have solicited consumers within New York and this District; Defendants have entered into agreements with consumers and businesses within New York and this District; Defendants derive substantial revenue in interstate and/or international commerce; and because Defendants regularly and systematically direct electronic activity into the State of New York through their fully interactive websites with the manifest intent of engaging in business within New York and this District; and because the unlawful, tortious conduct complained of herein has caused, and continues to cause, injury to Plaintiffs within New York and this District.

106. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to these claims arose in this District.

## PLAINTIFFS' BUSINESS AND MARKS

107. As described further below, the NIKE and Converse brands are enormously popular with the general public, both in the United States and worldwide. Plaintiffs' advertising, promotional, and marketing efforts have resulted in widespread and favorable public acceptance and recognition of the NIKE and Converse trademarks.

108. Plaintiffs' Marks appear on genuine NIKE and Converse Products (either on their labels, packaging, or on the products themselves) and in their respective advertising and promotional materials. Based on the extensive sales of Plaintiffs' Products and their wide popularity, Plaintiffs' Marks have developed a secondary meaning and significance in the minds of the purchasing public, and the purchasing public immediately identifies the services and products utilizing and/or bearing such trademarks with Plaintiffs.

109. To ensure consumer satisfaction, genuine NIKE and Converse Products are subject to strict quality control guidelines prior to distribution and sale. The enforcement of these guidelines has caused consumers, potential consumers, and other members of the public to associate Plaintiffs' Products with high quality materials, style and workmanship. Consequently, Plaintiffs have created invaluable goodwill throughout the United States and elsewhere by selling products of dependable quality.

**NIKE's Business and Marks**

110. NIKE is the owner of the right, title and interest in and to, *inter alia*, the following well-established trademarks registered with the United States Patent and Trademark Office (the "**NIKE Marks**"):

| Trademark | Registration/ Serial No. | Date of Registration | Types of Goods |
|---|---|---|---|
| ACG NIKE & Triangle Design  | 2117273 | 12/02/1997 | Footwear. |
| ACG with Swoosh & Triangles Design  | 2164358 | 06/09/1998 | Backpacks and waist packs, footwear, clothing-namely, anoraks, caps, gloves, jackets, pants, parkas, shirts, shorts, socks, tops, t-shirts and vests. |

| | | | |
|---|---|---|---|
| AIR FORCE I | 3520484 | 10/21/2008 | Footwear. |
| AIR JORDAN | 1370283 | 11/12/1985 | Footwear and athletic clothing-namely, shirts, pants and shorts. |
| AIR JORDAN and Wings Design  | 3725535 | 12/15/2009 | Footwear; apparel-namely, shirts, pants, shorts, sweatbands, jackets, hats and sweatshirts. |
| AIR MAX | 1508348 | 10/11/1988 | Footwear. |
| Coil Design  | 2584382 | 06/25/2002 | Footwear. |
| CORTEZ | 1027021 | 12/09/1975 | Athletic shoes for track and field. |
| CP3 LOGO  | 3860743 | 10/12/2010 | Footwear, jackets, t-shirts, shirts, tops, shorts, sweatshirts, hooded sweatshirts and pants. |
| DUNK | 3780236 | 04/27/2010 | Athletic footwear, not to include shoe care products. |
| DRI-FIT | 2571314 | 05/21/2002 | Clothing-namely, caps, dresses, headbands, leotards, jackets, skirts, socks, sports bras, sweatshirts, t-shirts and underwear; sporting goods-namely, baseball gloves, soccer shinguards and golf gloves. |
| DYNAMIC SUPPORT | 3838804 | 08/24/2010 | Footwear. |
| ELITE | 1173359 | 10/13/1981 | Long distance running shoes. |
| FLYWIRE | 3640542 | 06/16/2009 | Footwear. |
| HYPERFUSE | 4147577 | 05/22/2012 | Footwear. |

| | | | |
|---|---|---|---|
| JUMPMAN | 3627820 | 05/26/2009 | Footwear; apparel-namely, pants, shorts, shirts, t-shirts, sweat shirts, sweat pants, jackets, socks, caps and hats. |
| Jumpman Design  | 1558100 | 09/26/1989 | Footwear, t-shirts, shorts, pullovers, pants, warm-up suits and tank tops. |
| JUST DO IT. | 1875307 | 01/24/1995 | Clothing-namely, t-shirts, sweatshirts and caps. |
| LEBRON | 3370246 | 01/15/2008 | Footwear; apparel-namely, shirts, pants, shorts, caps, hats, headbands, tank tops, t-shirts, pullovers, sweatshirts, sweaters, vests, warm-up suits, jackets, socks and wristbands. |
| LeBron Logo  | 4254513 | 12/04/2012 | Backpacks, duffle bags, drawstring pouches; footwear; apparel-namely, jerseys, pants, shorts, t-shirts, shirts, sweatshirts, hooded sweatshirts, sweatpants, vests, tank tops, jackets, coats, socks, wristbands, headbands, headwear, hats, caps, sweatbands and sweaters, sports balls and basketballs |
| LunarGlide | 3776019 | 04/13/2010 | Footwear. |
| LUNARLON | 3962725 | 05/17/2011 | Padding and cushioning materials of plastic used in footwear. |
| Melo Logo  | 3580156 | 02/24/2009 | Footwear; apparel-namely, shorts, shirts, t-shirts, tops, hooded shirts, sweatshirts, headwear, headbands, sweatbands and socks. |
| NIKE | 1214930 | 11/02/1982 | Footwear. |
| NIKE & Swoosh Design  | 1325938 | 03/19/1985 | Footwear. |
| NIKE AIR | 1307123 | 11/27/1984 | Footwear and cushioning elements for footwear soles. |

| | | | |
|---|---|---|---|
| NIKE AIR & Swoosh Design  | 1571066 | 12/12/1989 | Clothing-namely, t-shirts. |
| NIKE AIR in Slanted Letters & Swoosh Design  | 1284386 | 07/03/1984 | Footwear. |
| NIKE in Script with Swoosh Design (Outline Form)  | 2104329 | 10/07/1997 | Footwear. |
| NIKE BETTER WORLD | 4199300 | 08/28/2012 | Promoting public interest and awareness in the field of sports, sports competitions, physical fitness and training, and relating to humanitarian, community, health and environmental sustainability issues; providing a website promoting public interest and awareness in the field of sports, sports competitions, physical fitness and training, and relating to humanitarian, community, health and environmental sustainability issues featuring information on environmentally preferred materials, waste reduction, and other means of reducing environmental impact of consumer products, manufacturing and distribution. |
| NIKE FREE | 3192901 | 01/02/2007 | Footwear. |
| NIKE Shox | 2970902 | 07/19/2005 | Footwear. |
| NIKE5 | 4210493 | 09/18/2012 | Footwear. |
| PRESTO | 2716140 | 05/13/2003 | Footwear. |
| Swoosh | 1200529 | 07/06/1982 | Footwear. |

| | | | |
|---|---|---|---|
| Swoosh Design | 1323343 | 03/05/1985 | Footwear. |
| Swoosh Design (Outline Form) | 977190 | 01/22/1974 | Athletic shoes with spikes and athletic uniforms for use with such shoes in Class 22. Athletic shoes without spikes and athletic uniforms for use with such shoes in Class 39. |
| Swoosh Design (Phantom Shoe) | 1323342 | 03/05/1985 | Footwear. |
| T90 | 4210495 | 09/18/2012 | Bags-namely, all-purpose sports bags, tote bags, duffle bags, messenger bags and backpacks; footwear; apparel-namely, shirts, t-shirts, jerseys and jackets. |
| TAILWIND | 1153237 | 05/05/1981 | Athletic shoes. |
| Tiempo | 4210491 | 09/18/2012 | Footwear for soccer. |
| Total 90 | 4210494 | 09/18/2012 | Footwear. |
| TRIAX | 2810679 | 02/03/2004 | Footwear. |
| Trunner | 2663568 | 12/17/2002 | Footwear. |
| WAFFLE | 1276233 | 05/01/1984 | Athletic shoes designed for running and soles for use with such shoes. |
| WAFFLE TRAINER | 2893674 | 10/12/2004 | Athletic shoes designed for running and other sports requiring running. |

111.    Registrations for the trademarks set forth above are valid, subsisting, unrevoked, and uncancelled.  Additionally, many of NIKE's registrations have achieved incontestable

status pursuant to 15 U.S.C. § 1065. NIKE also owns common law rights in the above and other trademarks for use in connection with the NIKE Products.

112. The NIKE Marks are in full force and effect. NIKE has never abandoned the NIKE Marks, nor has NIKE ever abandoned the goodwill of its businesses in connection with the NIKE Marks. NIKE intends to continue to preserve and maintain its rights with respect to the NIKE Marks.

113. Since 1971, NIKE has advertised, offered for sale, and sold footwear and related products. Among other things, NIKE markets and sells athletic footwear, apparel and sporting goods for men, women, and children. NIKE athletic footwear is generally designed for specific athletic use, such as running, basketball, and soccer.

114. Today, NIKE is the largest seller of athletic footwear and athletic apparel in the world. In the past three years, NIKE's footwear and apparel sales have resulted in revenues exceeding $57 billion. During that same period, NIKE spent more than $7 billion to advertise and promote the NIKE Products. NIKE also conducts a successful marketing campaign across various social media platforms, including Facebook, Twitter, YouTube, and Instagram, in an effort to further promote the NIKE Marks and NIKE Products.

115. To maintain the quality and integrity associated with authentic NIKE Products, NIKE controls and limits the distribution of goods authorized to bear the NIKE Marks. Authentic NIKE Products are distributed through authorized online and brick-and-mortar retailers, distributors, and licensees, as well as NIKE-owned websites and retail stores, such as the famous "NIKEtown" store on Manhattan's Fifth Avenue.

116. As described above, NIKE is the owner of numerous trademarks, including the AIR JORDAN mark and the Jumpman Design trademark. These marks are the result of a long

and prosperous relationship between NIKE and Michael Jordan, one of the most famous basketball players of all time. For example, the Jumpman Design trademark (  ) is a silhouette of Michael Jordan in mid-air about to dunk a basketball.

117.    Over the years, NIKE has manufactured and distributed millions of dollars of various Michael Jordan-endorsed products bearing the NIKE Marks. NIKE's commitment to its "Jordan" brand of products is so strong that the company created a Jordan Brand Division in 1997, an internal business unit devoted exclusively to NIKE's Michael Jordan-endorsed products.

118.    NIKE also has a licensing agreement with the National Football League (the "**NFL**") that permits NIKE to manufacture and sell certain NFL-branded products, including jerseys, t-shirts, and other apparel bearing various NIKE Marks.

119.    Similarly, NIKE has agreements with certain European football (soccer) clubs, including but not limited to Futbol Club Barcelona and Manchester United, pursuant to which NIKE is permitted to manufacture and sell certain team-branded products, such as team jerseys, bearing various NIKE Marks.

120.    The widespread popularity of NIKE Products has resulted in the NIKE Marks having developed a secondary meaning and significance in the minds of the purchasing public, and the purchasing public immediately identifies the services and products utilizing and/or bearing such trademarks with NIKE.

**Converse's Business and Marks**

121.    Converse is the owner of the right, title and interest in and to, *inter alia*, the following well-established trademarks registered with the United States Patent and Trademark Office (the "**Converse Marks**"):

| Trademark | Registration/ Serial No. | Date of Registration | Types of Goods |
|---|---|---|---|
| **ALL STAR** (Typed Drawing) | 2807854 | 01/27/2004 | Footwear. |
| **ALL★STAR** | 1146876 | 02/10/1981 | Footwear. |
| CHUCK TAYLOR (Typed Drawing) | 3534741 | 11/18/2008 | Footwear, clothing-namely, t-shirts, shorts, pants, tank tops, sweat suits, vests, jackets, swimwear, sweaters, jeans, fleece tops and bottoms, wind-resistant suits and jackets, exercise suits, exercise pants and tops, woven shirts, sweatpants and sweatshirts, socks, short and long sleeved tops, short and long sleeved t-shirts, trousers, skirts, belts, scarves, blazers, headgear-namely, sports caps and knit caps. |
| Chuck Taylor (Signature) *Chuck Taylor* | 315273 | 07/24/1934 | Shoes made of rubber, leather, fabric and combinations thereof. |
| CONS | 1493265 | 06/21/1988 | Footwear. |
| CONVERSE | 868375 | 04/22/1969 | Games, toys and sporting goods-namely, track shoes and wrestling shoes; clothing-namely, industrial boots, rubber boots, tennis shoes, basketball shoes, boat shoes, general purpose athletic sneakers, casual shoes, jackets, trousers, parkas, shirts, overalls, raincoats and suspenders. |
| CONVERSE CHUCK TAYLOR ALL STAR Ankle Design  | 1490262 | 05/31/1988 | Athletic footwear. |

| | | | |
|---|---|---|---|
| CONVERSE ALL STAR CHUCK TAYLOR SEAL  | 1138469 | 08/05/1980 | Footwear. |
| CONVERSE ALL STAR License Plate Design  | 2098296 | 09/16/1997 | Athletic footwear and clothing-namely, t-shirts, shorts, hats, jackets, tank tops, sweatpants and sweatshirts. |
| CONVERSE Below Star in Box Design  | 1078480 | 11/29/1977 | Footwear. |
| CONVERSE to the Right of Star in Box Above ALL STAR  | 1138468 | 08/05/1980 | Footwear. |
| CONVERSE to the Right of Star in Box Design (Bordered)  | 924169 | 11/23/1971 | Basketball shoes and general purpose athletic sneakers. [Golf shoes, track shoes, wrestling shoes, baseball shoes, football shoes, skate scabbards, ankle supporters, teeth guards, hockey pucks, air floats, air mattresses, hunting boots, fishing boots, industrial boots, rubber boots, tennis shoes, boat shoes, casual shoes, wading sandals, jackets, trousers, parkas, shirts, overalls, hats, raincoats and suspenders]. |
| CONVERSE with Star Inside of O Design  | 1654951 | 08/27/1991 | Clothing-namely, footwear. |
| Five-Pointed Star Design  | 741662 | 12/04/1962 | Canvas-topped and rubber-soled athletic shoes. |

| | | | |
|---|---|---|---|
| JACK PURCELL (Signature 1) with Triangle  | 938918 | 07/25/1972 | Footwear-namely, rubber-soled or plastic-soled canvas shoes. |
|  | 1868414 | 12/20/1994 | Footwear. |
| Star and Chevron Design (Curved)  | 2973804 | 07/19/2005 | Footwear. |
| Star and Chevron Design  | 1215935 | 07/19/2005 | Footwear. |
| Star and Chevron Placement on Shoe Silhouette  | 1053338 | 11/23/1976 | Canvas and imitation leather topped soft soled athletic shoes and casual shoes. |
| Star in Box Design  | 1632413 | 01/22/1991 | Footwear. |
| Star in Circle (Dashed) Design  | 1789476 | 08/24/1993 | Footwear. |

122.     Registrations for the trademarks set forth above are valid, subsisting, unrevoked, and uncancelled.  Additionally, many of Converse's registrations have achieved incontestable status pursuant to 15 U.S.C. § 1065.  Converse also owns common law rights in the above and other trademarks for use in connection with the Converse Products.

123.     The Converse Marks are in full force and effect.  Converse has never abandoned the Converse Marks, nor has Converse ever abandoned the goodwill of its businesses in connection with the Converse Marks.  Converse intends to continue to preserve and maintain its rights with respect to the Converse Marks.

124.     Converse designs, markets and distributes casual footwear, apparel and accessories, which are offered for sale all over the world and throughout the United States.

125.     In 1917, Converse's predecessor-in-interest introduced a high-top basketball shoe that would eventually be known as the "Chuck Taylor All Star," and sometimes abbreviated as "CTAS."  In 1946, Converse's predecessor redesigned the "patch" located on the ankle of the Chuck Taylor All Star high-top shoe.  Later, in 1962, the same entity introduced a "low-cut" version of the Chuck Taylor All Star.  The same outsole pattern has remained substantially the same since its initial use in 1920.

126.     Over the past three years, Converse's sales have generated nearly $4 billion in revenue.  During that same time, Converse has spent millions of dollars advertising and promoting the Converse Products.

127.     Authentic Converse Products are sold through Converse-owned websites and retail stores, including the Converse Specialty Store in Manhattan's SoHo neighborhood. Converse Products are also sold through authorized online and brick-and-mortar retailers,

distributors, and licensees, including but not limited to Nordstrom, Saks Fifth Avenue, Foot Locker, and JC Penney.

128.    The Converse Marks are a famous and well-known indicator of the origin and quality of Converse Products.  Consumers are exposed to the Converse Marks not only in advertisements, but in newspapers, television programs, motion pictures and virtually all instrumentalities of pop culture.  Indeed, two books—CHUCKS!: THE PHENOMENON OF CONVERSE CHUCK TAYLOR ALL STARS and CHUCK TAYLOR, ALL STAR: THE TRUE STORY OF THE MAN BEHIND THE MOST FAMOUS ATHLETIC SHOE IN HISTORY"—have focused on the popularity of the Converse Products.  Additionally, a number of celebrities have collaborated with Converse to release special edition Converse Products, including John Lennon, Jimi Hendrix, Kurt Cobain, John Varvatos, The Ramones, Dr. Seuss, and Gorillaz, to name a few.

129.    The widespread popularity of Converse Products has resulted in the Converse Marks having developed a secondary meaning and significance in the minds of the purchasing public, and the purchasing public immediately identifies the services and products utilizing and/or bearing such trademarks with Converse.

## THE COUNTERFEIT PRODUCTS

130.    Defendants, without any authorization or license from Plaintiffs, have willfully and intentionally used, reproduced and/or copied the NIKE and Converse Marks in connection with manufacturing, distributing, exporting, importing, advertising, marketing, selling and/or offering to sell Counterfeit Products.  Defendants advertise, offer to sell, and sell Counterfeit Products to United States consumers via the Internet through hundreds of unauthorized Infringing Websites.  Defendants have shipped at least certain of the Counterfeit Products into the State of New York and this District.

131.    The vast majority of Defendants' Infringing Websites contain either vague or completely false statements as to the authenticity of the products being offered for sale.  Others claim to sell "guaranteed authentic" NIKE Products that are, in reality, Counterfeit Products.  In other cases, Defendants' Infringing Websites freely admit that the products being offered for sale are "replica" versions of NIKE or Converse Products, with "replica" being a common euphemism used to describe counterfeit goods.

132.    Defendants' manufacturing, advertisement, distribution, and sale of Counterfeit Products will result in consumers being deceived and misled into believing that Defendants' products or activities are authorized or sponsored by Plaintiffs, or to cause mistake or deception either at the point of sale or post-sale when consumers, or potential consumers, see the Counterfeit Products in use.

133.    For example, shown below on the left is an image of an authentic NIKE CR7 Mercurial Vapor IX FG men's firm-ground soccer cleat.  The image of the authentic NIKE Product displayed below bears the federally registered Swoosh Design trademark ✔ (U.S. Reg. No. 1323343).  Shown on the right is an image of a Counterfeit Product offered for sale by the Defendants in Group D through the website, www.dsmrecap.com, and described by Defendants as "NIKE Mercurial Vapor IX CR FG – Firm Ground Soccer Cleats."  The Counterfeit Product has ornamentation, design and labeling that are intended to appear like the ornamentation, design and labeling on the authentic NIKE Product.  The overall effect of the Counterfeit Product is not only confusingly similar to the design of the authentic product on the left, it also bears an exact copy of NIKE's federally registered Swoosh Design.

| AUTHENTIC | COUNTERFEIT |
|:---:|:---:|
|  | |

134.     Similarly, shown below on the left is an image of an authentic Converse Chuck Taylor All Star low-profile sneaker.  The authentic Converse Product displayed below bears various Converse Marks, including the ALL STAR with Star Design trademark **ALL★STAR** (U.S. Reg. No. 1146876) on the tongue of the sneaker and the Converse with Star Inside of O trademark **CONVERSE** (U.S. Reg. No. 1654951) on the insole of the sneaker.  On the right is an image of a Counterfeit Product offered by the Defendants in Group V through the website www.shopuq.com, and described by Defendants as a "Men Converse Low Shoe."  The Counterfeit Product has ornamentation, design and labeling that are intended to appear like the ornamentation, design and labeling on the authentic Converse Product and bears exact copies of the Converse Marks described above.

| AUTHENTIC | COUNTERFEIT |
|:---:|:---:|
| | |

135. In addition to offering for sale products designed to be replicate existing NIKE and Converse products, the Defendants also apply copies of Plaintiffs' Marks to products that Plaintiffs have never sold. Shown below is an image of a Counterfeit Product offered by Defendants in Group I through the website www.newfreeshoes.com, and bearing an exact copy of NIKE's federally registered Jumpman Design trademark (U.S. Reg. No. 1558100) on the shoe tongue. Although Defendants describe the Counterfeit Product pictured below as "NIKE Air Jordan 11 XI Women's Heels," NIKE did not produce the item pictured above and, in fact, has never produced, marketed, or offered for sale a high heeled women's sneaker.

**COUNTERFEIT**



136. All of the Defendants' Counterfeit Products follow the pattern described above— each copies the ornamentation, design and labeling of an authentic NIKE or Converse Product and most bear exact copies of one or more of the Plaintiffs' Marks. Through their Infringing Websites, Defendants offer for sale thousands of such Counterfeit Products falsely labeled as "NIKE" or "Converse." Defendants offer their Counterfeit Products directly to consumers through their Infringing Websites and also on a wholesale basis to other purveyors of Counterfeit Products.

137.    Plaintiffs confirmed the counterfeit nature of the products offered for sale by Defendants both through a visual inspection of the Infringing Websites, including cross-referencing the Infringing Websites against a list of authorized sellers of Plaintiffs' Products, and by inspecting the goods that Plaintiffs' investigators purchased from the Infringing Websites. Plaintiffs' investigators placed orders for Counterfeit Products through at least one Infringing Website in each Defendant Group.  To date, Plaintiffs have inspected 31 purchases received by their investigators as a result of orders placed through the Infringing Websites and, in each instance, determined that the product received was a Counterfeit Product.

138.    The products offered for sale by Defendants are not authentic NIKE or Converse Products.  Plaintiffs did not manufacture, inspect, or package the Counterfeit Products, and did not approve the Counterfeit Products for sale and/or distribution.  Even though the Defendants' Counterfeit Products are of inferior quality, they appear superficially similar, and in some cases superficially identical, to genuine NIKE or Converse Products.  The design of the Counterfeit Products and the display of the Plaintiffs' Marks on and in connection with the Counterfeit Products communicates to consumers—and may confuse consumers into believing—that the Counterfeit Products were manufactured, licensed, approved or sponsored by, or otherwise affiliated with Plaintiffs.

139.    Defendants have offered these Counterfeit Products for sale without permission, authority or license from Plaintiffs and, upon information and belief, such actions were taken in bad faith with full knowledge of Plaintiffs' ownership of and/or exclusive rights to use and license the NIKE and Converse Marks.  At all relevant times and in furtherance of their infringing activities, Defendants have willfully and intentionally used and continue to use the Plaintiffs' Marks on their Counterfeit Products.

140.    In particular, Defendants make liberal use of Plaintiffs' Marks on their website to make an explicit connection between their Counterfeit Products and genuine NIKE or Converse Products.

141.    For example, set forth below is a true and accurate screenshot from the homepage one of the Infringing Websites operated by the Group M Defendants, www.nikefreeruns-factory.com, in which Defendants describe their products as "NIKE" shoes and make liberal use of the NIKE Marks in marketing their Counterfeit Products, including in the website's domain name.



142.    In addition to their unlawful sale of Counterfeit Products, and in an effort to further confuse consumers, Defendants have registered and frequently locate their Infringing Websites at domain names that are identical to (or confusingly similar to) the NIKE Marks, including the federally registered NIKE, AIR FORCE I, AIR MAX and AIR JORDAN trademarks, as reflected in Exhibit 2.

143.    The Defendants' use of Infringing Domain Names in connection with websites selling Counterfeit Products—unauthorized products that are purposefully designed to replicate

genuine NIKE Products and/or bear exact copies of the NIKE Marks—further contributes to the likelihood that consumers and potential consumers will be misled into believing that Defendants' Infringing Websites and Counterfeit Products are somehow authorized or sponsored by NIKE.

144. Upon information and belief, in order to evade a disruption of their business as a result of anti-counterfeiting enforcement, Defendants have registered a large portfolio of domain names to use should one of their Infringing Websites be detected and shut down.

145. For example, an Infringing Website operated by the Defendants in Group J, www.lindajerseys.com, was recently seized by the NFL pursuant to an order entered in *National Football League, et al. v. Sunmei, et al.*, 13 Civ. 2572 (LGS) (S.D.N.Y.), and a judgment was entered finding that the defendants had violated the NFL's intellectual property rights. Undeterred, the Defendants simply re-opened www.lindajerseys.com as www.linda-jerseys.com. Set forth below is a true and correct screenshot from the home page for www.linda-jerseys.com, which contains a notice to customers stating, in relevant part, that: "www.lindajerseys.com was banned recently, so the domain of our site was changed to www.linda-jerseys.com."



146.     Defendants have gone to great lengths to avoid being held accountable for their unlawful acts and to ensure that their illicit counterfeiting operations will not be impeded by brand owners like Plaintiffs or law enforcement.  Defendants intentionally conceal their true identities by conducting business only electronically over the Internet and by utilizing fictitious and/or incomplete names and contact information in nearly all facets of their business.

147.     Despite the Defendants' attempts to remain anonymous, as a consequence of conducting their counterfeiting operations electronically, the Defendants must interact with legitimate financial institutions in order to accept customer payment for the Counterfeit Products, and to transfer the proceeds from these illicit sales into Defendants' own financial accounts.

148.     On information and belief, Defendants make use of the services of at least the following banks, savings and loan associations, credit card companies, credit card processing agencies, or other financial institutions or agencies that engage in the transfer of real property in order to carry out, facilitate, complete, or ratify the unlawful transactions complained of herein or used such entities to hold, transfer, transmit, relay, maintain, or invest profits from the unlawful activities described herein:  (1) PayPal; (2) MasterCard, Visa, American Express, and/or Discover; (3) Bank of China; (4) Western Union; (5) MoneyGram (6) Payitrust Co., Ltd.; (7) Realpay; (8) Moneybrace; (9) Vimapay Co., Ltd.; (10) Pmnorth; (11) Promptlypayments; (12) Wedopay; (13) ECPSS; and (14) GlbPay.

## FIRST CAUSE OF ACTION

(Trademark Infringement Under Section 32
of the Lanham Act, 15 U.S.C. § 1114(1)(a))

149.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

150. As set forth above, a number of Plaintiffs' Marks are subject to registration on the Principal Register of the United States Patent and Trademark Office. Plaintiffs' Marks and the goodwill of the businesses associated with them in the United States and throughout the world are of great and significant value, are highly distinctive and arbitrary, and have become universally associated in the public mind with products and services of the very highest quality and reputation.

151. Defendants' actions described above have caused and are likely to cause confusion and mistake and to deceive potential customers and the general purchasing public as to the source, origin, or sponsorship of their Counterfeit Products, and are likely to deceive the public into believing that the Counterfeit Products sold by Defendants originate from, are associated with, or are otherwise authorized by Plaintiffs, all to the damage and detriment of Plaintiffs' reputation, goodwill and sales.

152. Defendants' unauthorized use of the Plaintiffs' Marks constitutes trademark infringement of Plaintiffs' federally registered trademarks, the full extent of which is presently unknown but is substantial. This has caused damage to Plaintiffs and the substantial business and goodwill symbolized by the Plaintiffs' Marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

153. Defendants' actions described above, including the unauthorized use of the Plaintiffs' Marks in interstate commerce, have caused, and unless restrained will continue to cause, great and irreparable injury to Plaintiffs, to the Plaintiffs' Marks, and to the business and goodwill represented thereby, leaving Plaintiffs with no adequate remedy at law.

## SECOND CAUSE OF ACTION

(Trademark Counterfeiting Under Sections 32, 34 and 35,
of the Lanham Act, 15 U.S.C. §§ 1114(1)(b), 1116(d), & 1117(b)-(c))

154.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

155.     Without Plaintiffs' authorization or consent, and having knowledge of Plaintiffs' well-known and prior rights in the Plaintiffs' Marks, Defendants have distributed, advertised, offered for sale and/or sold their Counterfeit Products to the consuming public in direct competition with Plaintiffs, in or affecting interstate commerce.

156.     Defendants' Counterfeit Products reproduce, counterfeit, copy, and colorably imitate the Plaintiffs' Marks or display spurious designations that are identical with, or substantially indistinguishable from the Plaintiffs' Marks.  Defendants have applied their reproductions, counterfeits, copies, and colorable imitations to labels and advertisements intended to be used in commerce upon or in connection with the sale, distribution, or advertising of Defendants' Counterfeit Products, which is likely to cause confusion, or to cause mistake, or to deceive.

157.     Defendants' unauthorized use of the Plaintiffs' Marks on or in connection with the Counterfeit Products was done with notice and full knowledge that such use was not authorized or licensed by Plaintiffs.  Defendants' actions constitute willful counterfeiting of the Plaintiffs' Marks in violation of 15 U.S.C. §§ 1114, 1116(d), and 1117(b)-(c).

158.     As a direct and proximate result of Defendants' conduct, Plaintiffs have suffered damage to their valuable trademarks and other damages in an amount to be proved at trial.

159.    Plaintiffs do not have an adequate remedy at law, and will continue to be damaged by Defendants' sale of Counterfeit Products unless this Court enjoins Defendants from such fraudulent business practices.

### THIRD CAUSE OF ACTION

(False Designation of Origin Under Section 43(a)
of the Lanham Act, 15 U.S.C. § 1125(a))

160.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

161.    As a result of Plaintiffs' experience, care, and service in producing and providing genuine NIKE and Converse Products, these products have become widely known and have acquired a worldwide reputation for excellence.  Moreover, the Plaintiffs' Marks have become associated with the respective Plaintiffs' Products, and have come to symbolize the reputation for quality and excellence associated with Plaintiffs and authentic products produced by them.  As such, the Plaintiffs' Marks have attained secondary meaning.  The Plaintiffs' Marks are also inherently distinctive.

162.    Defendants' use of the Plaintiffs' Marks on or in connection with the Counterfeit Products, as alleged above, is likely to confuse, mislead, or deceive customers, purchasers, and members of the general public as to the origin, source, sponsorship, or affiliation of the Counterfeit Products, and is likely to cause such people to believe in error that the Counterfeit Products have been authorized, sponsored, approved, endorsed, or licensed by Plaintiffs, or that Defendants are in some way affiliated with Plaintiffs.

163.    Defendants' actions, including but not limited to their unauthorized use in commerce of the Plaintiffs' Marks, constitute a false designation of origin, false and misleading descriptions of fact, and false and misleading representations of fact, which have caused, and are

likely to cause, confusion, mistake and deception, in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

164. Defendants' actions as described above, including their unauthorized, false, and misleading use in commerce of the Plaintiffs' Marks on Counterfeit Products and other uses of Plaintiffs' Marks in interstate commerce, have caused, and unless restrained, will continue to cause, great and irreparable injury to Plaintiffs, and to the business and goodwill represented by the Plaintiffs' Marks in an amount that cannot presently be ascertained, leaving Plaintiffs with no adequate remedy at law.

### FOURTH CAUSE OF ACTION

(Trademark Dilution Under the Federal
Trademark Dilution Act, 15 U.S.C. § 1125(c))

165. Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

166. The Plaintiffs' Marks are famous within the meaning of the Trademark Dilution Revision Act of 2006. Among other things: (1) the Plaintiffs' Marks have a high degree of inherent distinctiveness; (2) the Plaintiffs' Marks have been used continuously for decades throughout the United States to promote many goods and services; (3) Plaintiffs and their authorized licensees have advertised and publicized the Plaintiffs' Marks continuously for decades throughout the United States; (4) Plaintiffs have used their trademarks in a trading area of broad geographical scope encompassing all of the states and territories of the United States; (5) the Plaintiffs' Marks are among the preeminent marks in the relevant market; (6) the Plaintiffs' Marks have an extremely high degree of recognition among consumers; (7) there are no trademarks similar to the Plaintiffs' Marks; and (8) many of the Plaintiffs' Marks are the subject of valid and subsisting registrations under the Lanham Act on the Principal Register.

167.     Because Plaintiffs' Products have gained a reputation for superior quality and excellence, the Plaintiffs' Marks have gained substantial renown and reputation.

168.     Defendants' use of the Plaintiffs' Marks is likely to blur the Plaintiffs' Marks and impair their distinctiveness.  Consumers are likely to associate Defendants' uses of the Plaintiffs' Marks with the Plaintiffs' Marks themselves because of the similarity between Defendants' use of the Plaintiffs' Marks and the Plaintiffs' Marks themselves.  In particular, the following factors make dilution by blurring likely:  (1) Defendants are making use of the Plaintiffs' Marks themselves; (2) the Plaintiffs' Marks have acquired tremendous distinctiveness through Plaintiffs' continuous promotion and use of their respective Marks; (3) the Plaintiffs' Marks have become famous and achieved a high level of recognition among the consuming public; (4) Plaintiffs' commercial use of their respective Marks is substantially exclusive to Plaintiffs and their agents and licensees; (5) on information and belief, Defendants intend to create an association between Defendants' uses of the Plaintiffs' Marks and the Plaintiffs' Marks themselves; and (6) on information and belief, many consumers actually associate Defendants' uses of the Plaintiffs' Marks or marks confusingly similar thereto with the Plaintiffs' Marks themselves.

169.     Defendants' conduct as alleged above is also likely to cause tarnishment and harm the reputation of the Plaintiffs' Marks because of the similarity between Defendants' uses of the Plaintiffs' Marks and the Plaintiffs' Marks themselves.  In particular, the Counterfeit Products sold, offered for sale, and/or distributed by Defendants display the Plaintiffs' Marks in a manner that is confusingly similar to Plaintiffs' Products and therefore mislead consumers into believing that the Plaintiffs' Products are of low quality.

170.    Defendants' conduct described above dilutes, blurs, tarnishes, and whittles away the distinctiveness of the Plaintiffs' Marks, and has caused actual dilution and has detracted from the distinctiveness of the famous Plaintiffs' Marks with consequent damage to Plaintiffs, and to the substantial business and goodwill symbolized by the Plaintiffs' Marks in violation of the Federal Trademark Dilution Act, 15 U.S.C. § 1125(c).

171.    Defendants' acts of trademark dilution have caused and, unless restrained, will continue to cause, great and irreparable injury to Plaintiffs, to the Plaintiffs' Marks, and to the substantial business and goodwill represented thereby, in an amount that cannot be presently ascertained, leaving Plaintiffs with no adequate remedy at law.

172.    Defendants' conduct has been undertaken with a willful intent to trade on the reputation of Plaintiffs and to cause dilution of the famous Plaintiffs' Marks, and this conduct entitles Plaintiffs to damages and other remedies available pursuant to 15 U.S.C. § 1125(c)(2).

**FIFTH CAUSE OF ACTION**

(Trademark Infringement Under New York Law)

173.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

174.    Defendants' acts as described above constitute trademark infringement under New York common and/or statutory law.  N.Y. Gen. Bus. Law §§ 360-k, 360-o.

**SIXTH CAUSE OF ACTION**

(Trademark Dilution Under New York Law)

175.    Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

176.    Defendants' acts as described above dilute and detract from the distinctiveness of the famous Plaintiffs' Marks, resulting in damage to Plaintiffs and the substantial business and

goodwill symbolized by the Plaintiffs' Marks in violation of New York's Anti-Dilution Statute, N.Y. Gen. Bus. Law § 360-l.

## SEVENTH CAUSE OF ACTION

(Unfair Competition Under New York Law)

177.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

178.     Defendants' acts as described above constitute unfair competition under New York State common law, as preserved by N.Y. Gen. Bus. Law § 360-o.

## EIGHTH CAUSE OF ACTION

(Deceptive Acts and Practices Under New York Statutory Law)

179.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

180.     Defendants' acts as described above constitute deceptive acts and practices and false advertising in violation of N.Y. Gen. Bus. Law §§ 349-350.

## NINTH CAUSE OF ACTION

(Trademark Cyberpiracy Under the Federal
Anticybersquatting Consumer Protection Act, 15 U.S.C. § 1125(d))

181.     Plaintiffs repeat and reallege each and every allegation in the foregoing paragraphs as if fully set forth herein.

182.     The Infringing Domain Names are identical or confusingly similar to one or more of the NIKE Marks.

183.     Defendants registered and have used the Infringing Domain Names with a bad faith intent to profit from the use of the NIKE Marks, which were both famous and distinctive at the time Defendants' domain names were registered.

184.     Defendants have no trademark or other intellectual property rights in the Infringing Domain Names.

185.     Defendants' registration and use of the Infringing Domain Names is likely to cause consumers mistakenly to believe that Defendants' Infringing Websites are approved by, sponsored by, or otherwise affiliated with NIKE.  Defendants' registration and use of the Infringing Domain Names is likely to detract from the distinctiveness of the famous NIKE Marks.  By engaging in the activities described above, Defendants are engaging in cyberpiracy in connection with services distributed in interstate commerce in violation of Section 43(d) of the Lanham Act, 15 U.S.C. § 1125(d).

186.     Defendants' acts of cyberpiracy have caused and are causing great and irreparable injury to NIKE and the NIKE Marks, and the business and goodwill represented thereby, in an amount that cannot be ascertained at this time and, unless restrained, will cause further irreparable injury, leaving NIKE no adequate remedy at law.

187.     Defendants are causing, and will continue to cause, substantial injury to NIKE and to the public if their unlawful activity is not enjoined by the Court.

188.     By reason of the foregoing, NIKE is entitled to injunctive relief against Defendants, restraining further acts of cyberpiracy, and the damages provided for in 15 U.S.C. § 1117(d).

WHEREFORE, Plaintiffs respectfully request that this Court:

1.     Immediately and permanently enjoin Defendants, their officers, directors, agents, representatives, successors or assigns, and all persons acting in concert or in participation with any of them from:

(a)     using Plaintiffs' Marks, or any reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' Marks, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, in connection with manufacturing, distributing, delivering, shipping, importing, exporting, advertising, marketing, promoting, selling or offering for sale Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display, or utilize any of the Plaintiffs' Marks;

(b)     making or employing any other commercial use of the Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks;

(c)     using any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendants' products or activities are in any way sponsored, licensed or authorized by or affiliated or connected with Plaintiffs;

(d)     using or transferring ownership of the Infringing Websites or Infringing Domain Names, or registering or using any other domain names incorporating, in whole or in part, any word or mark identical or similar to the name NIKE or Converse or otherwise making use of the Plaintiffs' Marks;

(e)     doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead purchasers or consumers or investors to believe that the products or services promoted, offered, or sponsored by Defendants come from Plaintiffs' or their licensees, or are somehow licensed, sponsored, endorsed, or authorized by, or otherwise affiliated or connected with Plaintiffs;

(f)     moving, returning, destroying, secreting, or otherwise disposing of any Counterfeit Products or any products that otherwise bear, contain, display, or utilize any of the Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks;

(g)     removing, destroying, altering, secreting, or otherwise disposing of any computer files, electronic files or data, business records, or documents containing any information relating to any of the Infringing Websites, Defendants' assets or operations, or to the importing, manufacturing, production, marketing, advertising, promoting, acquisition, purchase, distribution or sale of Counterfeit Products or any products that otherwise bear contain, display, or utilize any of the Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks;

(h)     further diluting and infringing the Plaintiffs' Marks and damaging Plaintiffs' goodwill;

(i)     otherwise competing unfairly with Plaintiffs or any of their authorized licensees in any manner; and

(j)     assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (i), or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (i).

2.     Direct Defendants to

(a)     account to Plaintiffs for their profits and order that Plaintiffs recover each Group of Defendants' illicit profits, and a sum equal to three times each Group of Defendants' profits, pursuant to 15 U.S.C. § 1117(b); or, in the alternative,

(b)     award Plaintiffs damages arising out of Defendants' acts of deception and infringement described above, and a sum equal to three times each Group of Defendants' damages, pursuant to 15 U.S.C. § 1117 (b); or, in the alternative,

(c)     award Plaintiffs statutory damages against each Group of Defendants, as calculated in the attached Exhibit 3 and Exhibit 4, representing the statutory maximum of $2 million for each and every NIKE Mark and Converse Mark that Defendants willfully counterfeited and infringed per type of good sold, offered for sale, or distributed by each Group of Defendants, pursuant to 15 U.S.C. § 1117(c);

3.      Award Plaintiffs statutory damages of $100,000 per Infringing Domain Name listed in Exhibit 2 for Defendants' willful cyberpiracy, pursuant to 15 U.S.C. § 1117(d);

4.      Award Plaintiffs punitive damages pursuant to New York State common law (as preserved by N.Y. Gen. Bus. Law § 360-o) on account of Defendants' gross, wanton, willful, and malicious conduct;

5.      Direct Defendants to recall and remove from all stores, shops, markets, outlets, catalogues, websites, or other channels of commerce any Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display, or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, that are in Defendants' possession or control and all means of making the same;

6.      Direct Defendants to deliver up for destruction all Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display or utilize any of the Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, that are in Defendants' possession or control and all means of making the same, in accordance with 15 U.S.C. § 1118;

7.      Direct Defendants to deliver up for destruction any and all guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, pouches, receptacles, advertising matter, promotional, and other materials in the possession or control of Defendants bearing any of the Plaintiffs' Marks, any derivation or colorable imitation

thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, in accordance with 15 U.S.C. § 1118;

8.     Direct Defendants to supply Plaintiffs with a complete list of entities from whom they purchased and to whom they distributed and/or sold Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display or utilize any of the Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, and to provide the manner through which the Counterfeit Products or other products were paid, including any bank accounts to, through, or from which funds were wired;

9.     Direct Defendants to file with the Court and serve on counsel for Plaintiffs within thirty (30) days after entry of any injunction issued by the Court in this action, a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendants have complied with any injunction which the Court may enter in this action;

10.     Award Plaintiffs reasonable attorneys' fees along with the costs and disbursements incurred herein as a result of Defendants' intentional and willful infringement, pursuant to 15 U.S.C. § 1117 and N.Y. Gen. Bus. Law § 349(h);

11.     Order that Defendants are prohibited from registering any other domain names incorporating, in whole or in part, any word or mark identical or similar to the trademarked NIKE or CONVERSE names, or otherwise making use of the Plaintiffs' Marks;

12. Order that the domain name registries, including but not limited to VeriSign, Inc., Neustar, Inc., Afilias Limited, Nominet UK, Public Interest Registry, and/or the individual registrars holding or listing one or more domain names used in conjunction with Defendants' Infringing Websites shall:

(a) disable the domain names of Defendants' Infringing Websites, through a registry hold or otherwise, and make them inactive and untransferable; and

(b) at Plaintiffs' direction, cooperate with a registrar to be appointed by Plaintiffs to re-register any Infringing Website in the Plaintiffs' names and under the Plaintiffs' ownership and control, and make these domain names active and transferable again;

13. Order that any of Defendants' assets that are held by or within the control of entities that are subject to the jurisdiction of this Court, be restrained and frozen pending the outcome of this action so that Plaintiffs' right to the equitable relief set forth in this Complaint is not later rendered meaningless; and

14. Award Plaintiffs such other and further relief as the Court deems just and proper.

Dated: New York, New York
November 12, 2013

GIBSON, DUNN & CRUTCHER, LLP

By: _____
Robert Weigel (RW 0163)
Howard S. Hogan (HH 7995)
Jennifer C. Halter (JH 7032)
Jana N. Checa Chong (JC 1804)

200 Park Avenue, 47th Floor
New York, New York 10166
(212) 351-4000

*Attorneys for Plaintiffs NIKE, Inc. and Converse Inc.*