UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| NIKE, INC. and CONVERSE, INC.,<br><br>               Plaintiffs,<br><br>– against –<br><br>MARIA WU d/b/a www.shoecapsxyz.com, *et al*.,<br><br>               Defendants. | No. 2013 Civ. 8012 (SAS)<br><br>ECF CASE |

**SUPPLEMENTAL SUBMISSION OF NON-PARTIES AGRICULTURAL BANK OF CHINA, BANK OF CHINA, BANK OF COMMUNICATIONS, CHINA CONSTRUCTION BANK, CHINA MERCHANTS BANK AND INDUSTRIAL AND COMMERCIAL BANK OF CHINA PURSUANT TO THE COURT'S ORDER DATED AUGUST 7, 2015**

| | |
|---|---|
| WHITE & CASE LLP<br>Paul B. Carberry<br>pcarberry@whitecase.com<br>Jacqueline L. Chung<br>jacqueline.chung@whitecase.com<br>1155 Avenue of the Americas<br>New York  NY  10036<br>Tel.: (212) 819-8200<br>Fax: (212) 354-8113<br><br>*Counsel for Non-Parties Agricultural Bank of China, Bank of Communications, China Construction Bank, China Merchants Bank, and Industrial and Commercial Bank of China* | ALLEN & OVERY LLP<br>Andrew Rhys Davies<br>andrew.rhys.davies@allenovery.com<br>Brian T. Fitzpatrick<br>brian.fitzpatrick@allenovery.com<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Tel.: (212) 610-6300<br>Fax:  (212) 610-6399<br><br>*Counsel for Non-Party Bank of China* |

Subject to and without waiver of their jurisdictional objections, Non-Parties Agricultural Bank of China, Bank of China, Bank of Communications, China Construction Bank, China Merchants Bank and Industrial and Commercial Bank of China (the "Banks") respectfully file this supplemental submission pursuant to the Court's Order dated August 7, 2015 (ECF No. 45), to explain why plaintiffs in this case (collectively "Nike") are not entitled to the post-judgment extraterritorial federal asset-freezing injunction that they seek in Paragraphs 9 and 10 of their Proposed Default Judgment (ECF No. 37-1). Specifically, the Banks address the Court's inquiry as to the impact of the New York Court of Appeals' ruling on the continued vitality of New York's separate entity rule in *Motorola Credit Corp. v. Standard Chartered Bank*, 24 N.Y.3d 149 (2014), on Nike's requested federal asset-freezing injunction.

## INTRODUCTION

In *Tiffany (NJ) LLC v. Qi Andrew*, No. 10 Civ. 9471(KPF)(HBP), 2015 WL 3701602 (S.D.N.Y. June 15, 2015), the court correctly denied precisely the kind of post-judgment extraterritorial federal asset-freezing injunction sought by Nike here without reaching the non-party banks' arguments based on *Motorola* and the separate entity rule. *See id.* at *13.

The *Qi Andrew* court correctly acknowledged that when a plaintiff seeks final equitable monetary relief, the district court may issue a *pre*-judgment federal asset-freezing injunction to restrain assets pending adjudication of the case. *See id.* at *12 (citing cases). But the Honorable Katherine Polk Failla also correctly rejected the argument – advanced by Nike here – that that limited authority to enter a *pre*-judgment restraint extends into the *post*-judgment stage as well. *See id.* ("The Court sees no reason why a prejudgment freeze should continue into the post-judgment context, where Tiffany's claims have been fully adjudicated.").

As Judge Failla correctly held, Federal Rule of Civil Procedure 69 requires that *post*-judgment remedies accord with state law. *See id.* Thus, the *Qi Andrew* court was

"unconvinced that a Rule 65 injunction is an appropriate vehicle for the postjudgment restraint" that was sought in that case and that Nike seeks here. *See id.* & at n.9 ("The Court declines to adopt a reading of a post-judgment asset freeze remedy under Rule 65 that would seemingly subsume the post-judgment remedies provided by Rule 69 and state law.").

Having correctly concluded that the requested post-judgment federal asset-freezing injunction was barred by Rule 69, Judge Failla found it unnecessary to reach the non-party banks' further argument based on the New York Court of Appeals' decision in *Motorola* and New York's separate entity rule. *See id.* at *13. This Court may likewise deny Nike's requested post-judgment federal asset-freezing injunction without reaching *Motorola*.

As demonstrated herein, however, *Motorola* and the separate entity rule further support the Banks' argument that Nike is not entitled to the extraterritorial post-judgment federal asset-freezing injunction that it seeks in this case. In *Motorola*, the New York Court of Appeals held that, under the separate entity rule, New York's post-judgment enforcement remedies – which under Rule 69 apply to lawsuits in New York federal court – do not require a non-party bank to restrain or turn over customers' assets held in branches overseas, and that this limitation exists to promote important forum interests. Nike should not be permitted to end-run this policy-based limitation on the relief available under New York's statutory regime and thereby to frustrate the forum interests it promotes by obtaining an extraterritorial federal injunction.

## ARGUMENT

**A.     In *Motorola*, The New York Court of Appeals Reaffirmed The Separate Entity Rule And The Vital Public Interests That It Promotes**

As the Court of Appeals recently noted, "CPLR article 52 governs the enforcement and collection of money judgments in New York." *Tire Engineering and Distribution L.L.C. v. Bank of China Ltd.*, 740 F.3d 108, 110 (2d Cir. 2014). As a general

2

matter, provided the court has personal jurisdiction over the judgment debtor or non-party garnishee that is the subject of an Article 52 proceeding, it may order that person to restrain or turn over assets located outside New York. *See Koehler v. Bank of Bermuda Ltd.*, 12 N.Y.3d 533, 541 (2009).

That general rule is, however, subject to an important exception – the separate entity rule, which imposes a "limiting principle in the context of international banking, particularly in situations involving attempts to restrain assets held in a garnishee bank's foreign branches." *Motorola*, 24 N.Y.3d at 161. In *Motorola*, answering a question certified by the Second Circuit, the New York Court of Appeals reaffirmed the continued vitality of the separate entity rule, holding that "even when a bank garnishee with a New York branch is subject to personal jurisdiction, its other branches are to be treated as separate entities for certain purposes, particularly with respect to CPLR article 62 prejudgment attachments and article 52 postjudgment restraining notices and turnover orders." *Id*. at 158. "In other words, a restraining notice or turnover order served on a New York branch will be effective for assets held in accounts at that branch but will have no impact on assets in other branches." *Id*. at 159.

Rejecting arguments that the separate entity rule should be jettisoned, the *Motorola* court explained the vital public policy underpinnings of the separate entity rule. It noted that the rule, a "firmly established principle of New York law," *id*. at 160, both protects international banks from being exposed to the risk of competing claims and double liability and promotes international comity by avoiding conflicts among competing legal systems. *Id*. at 158-59, 161. The Court of Appeals concluded that these "underlying reasons that led to the adoption of the separate entity rule still ring true today[,]" and that "abolition of the separate entity rule

would result in serious consequences in the realm of international banking to the detriment of New York's preeminence in global financial affairs." *Id*. at 162-63.

**B.**     **Nike Should Not Be Permitted To End-Run New York's Carefully Calibrated Post-Judgment Enforcement Regime By Obtaining A Federal Asset-Freezing Injunction**

When Nike elected to prosecute this case in New York, by operation of Rule 69, it also elected the post-judgment enforcement remedies set forth in Article 52 of New York's CPLR. There can be no question that Nike's requested asset-freezing injunction is a post-judgment enforcement remedy within the meaning of Rule 69, not least because that is how Nike itself characterizes it. *See* ECF No. 42 at 3 n.1 (arguing that the restraint is necessary "to prevent the counterfeiters from circumventing this Court's authority to impose and enforce the appropriate remedy"). Nike may obtain a post-judgment asset restraining order under CPLR § 5222. Indeed, it has sought such relief in the alternative. ECF No. 42 at 4. Nike may not, however, end-run New York's carefully calibrated post-judgment enforcement regime, including the policy-based geographical limitations that are inherent in that regime, *i.e.*, the separate entity rule, by seeking a post-judgment federal asset-freezing injunction of extraterritorial scope.

*Motorola* applies directly to the present case because there is no difference between the post-judgment asset freeze that plaintiffs sought to impose against the garnishee banks in *Motorola* and the post-judgment asset freeze that Nike seeks in the present action. In *Motorola*, the Honorable Jed. S. Rakoff initially issued a post-judgment restraining order of the kind that Nike seeks from this Court, *i.e.*, an injunction issued "pursuant to Rules 65 and 69 of the Federal Rules of Civil Procedure and N.Y. C.P.L.R. § 5222." *Motorola Credit Corp. v. Uzan*, 978 F. Supp. 2d 205, 207 (S.D.N.Y. 2013). The plaintiffs served that order on a non-party garnishee bank, which held judgment debtors' assets at two overseas branches. *See id*. at 207-08. Judge Rakoff granted the bank's motion for relief from the restraining order. Insofar as the

4

order was issued under Rule 69 and Section 5222, Judge Rakoff held that, pursuant to the separate entity rule, it was limited to accounts held in New York. *See id.* at 210-13.

Importantly for purposes of this motion, Judge Rakoff also rejected the plaintiffs' argument that the restraining order had extraterritorial effect insofar as it was issued pursuant to Rule 65, on the theory that if the bank failed to freeze the accounts overseas it would be liable for aiding and abetting the judgment debtors' violation of the injunction. *See id.* at 213-14. In light of Rule 69's requirement that post-judgment procedures accord with state law, Judge Rakoff was rightly "skeptical that [the] injunction allows Motorola to skirt limitations on such relief under New York law through the use of a broad federal procedural mechanism." *Id*. at 214.

In light of the then-unsettled question of whether the separate entity rule remained good law, Judge Rakoff stayed the release of the restraint pending appeal. *Id*. at 208, 214. The Second Circuit certified the separate entity rule question to the New York Court of Appeals. As soon as that court reaffirmed the continued vitality of the separate entity rule, the Second Circuit remanded the case to the district court "with instructions to vacate the restraining order on defendants' assets." *Motorola Credit Corp. v. Standard Chartered Bank*, 771 F.3d 160, 161 (2d Cir. 2014).

Just as in *Motorola*, it is apparent that Nike would like to abuse the "broad federal procedural mechanism" of a Rule 65 injunction to "skirt limitations on [post-judgment restraining orders] under New York law." *Motorola*, 978 F. Supp. 2d at 214. *First*, although Nike's counsel are now self-admittedly "artful, coy and careful," *Qi Andrew*, 2015 WL 3701602, at *8, such as when they claim that the proposed judgment "is not an order against the Banks," ECF No. 42 at 3, they previously were more forthright about their plans to utilize post-judgment federal asset-freezing injunctions to coerce non-party banks into restraining assets overseas.

5

In *Qi Andrew*, for example, they informed Judge Failla that "nonparties [*i.e.*, the non-party banks] placed on notice of the judgment will be required to refrain from assisting the defendants in violating its provisions in accordance with Fed. R. Civ. P. 65." *Qi Andrew*, ECF No. 90, at 3.  In other words, if the banks failed to prevent the accountholders from withdrawing their funds held abroad, plaintiffs would file contempt proceedings, on the theory that the bank had aided and abetted the defendants in violation of Rule 65(d).  Counsel confirmed this strategy in a subsequent letter to Judge Failla, in which they asserted: "Of course, anyone with knowledge of the judgment who acts in concert with the counterfeiters to violate the order risks contempt, but Judge Daniels [in *Tiffany (NJ) LLC v. Alice Dong*, No. 2011 Civ. 2183 (GBD)] refused to give an advisory opinion as to whether the banks were free to disregard his orders and Rule 65, cautioning that the banks 'proceed at [their] peril.'" *Qi Andrew*, ECF No. 95, at 2.

It is plain, therefore, that Nike seeks a federal asset-freezing injunction in the hope of coercing the non-party Banks into effecting an extraterritorial asset restraint that has no basis in the controlling New York post-judgment regime.  As Judge Rakoff held in *Motorola*, that is not a proper use of a federal injunction.

*Second*, as the New York Court of Appeals held, the limitations that the separate entity rule imposes on New York's post-judgment enforcement remedies serve crucial forum interests – "promot[ing] international comity by avoiding conflicts among competing legal systems," and protecting New York's status as a global banking center by "protect[ing] international banks from being exposed to the risk of competing claims and double liability." *Motorola*, 24 N.Y.3d at 162.  Those concerns plainly are no less weighty in the context of a federal asset-freezing injunction.  *See Gucci Am., Inc. v. Weixing Li*, 768 F.3d 122, 138-41 (2d Cir. 2014).  Indeed, Nike can identify no legitimate U.S. interest in freezing assets in China, in

6

violation of Chinese law, when the separate entity rule would prevent this Court from ordering them to be turned over under New York's turnover statute, N.Y. C.P.L.R. 5222(b). *See Tire Engineering*, 740 F.3d at 110-12.[1]

Nike urges the Court to ignore the comity and other public policy interests that underlie the separate entity rule, enter the requested injunction, and address the comity and personal jurisdiction arguments in the future, in the context of a contempt proceeding against the Banks. ECF No. 42 at 3. The Banks respectfully submit that instead of entering the requested asset-freezing injunction, thereby setting up future contempt proceedings and litigation over issues of comity and personal jurisdiction, it would be far better for the Court to decline to enter an injunction for which there is no basis in the first place.

## CONCLUSION

For all these reasons, non-parties Agricultural Bank of China, Bank of China, Bank of Communications, China Construction Bank, China Merchants Bank, and Industrial and Commercial Bank of China, subject to their jurisdictional objections, respectfully request that the Court not grant the post-judgment federal asset-restraining injunction set forth in Paragraphs 9 and 10 of Nike's Proposed Default Judgment.

---

[1] Nike may argue that this Court could order the defendants to transfer their property to New York so that it could be the subject of a turnover proceeding. Given the defendants' default, there does not appear to be any reason to think that would be a fruitful exercise.

Dated: August 14, 2015
New York, New York

| | |
|---|---|
| Respectfully submitted, | Respectfully submitted, |
| /s/ Andrew Rhys Davies<br>ALLEN & OVERY LLP<br>Andrew Rhys Davies<br>andrew.rhys.davies@allenovery.com<br>Brian T. Fitzpatrick<br>brian.fitzpatrick@allenovery.com<br>1221 Avenue of the Americas<br>New York, New York 10020<br>Tel: (212) 610-6300<br>Fax: (212) 610-6399 | /s/ Paul B. Carberry<br>WHITE & CASE LLP<br>Paul B. Carberry<br>pcarberry@whitecase.com<br>Jacqueline L. Chung<br>jaqueline.chung@whitecase.com<br>1155 Avenue of the Americas<br>New York  NY  10036<br>Tel.: (212) 819-8200<br>Fax: (212) 354-8113 |
| *Attorneys for Non-Party Bank of China* | *Attorneys for Non-Parties Agricultural Bank of China, Bank of Communications, China Construction Bank, China Merchants Bank, and Industrial and Commercial Bank of China* |