USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/31/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

NIKE, INC. and CONVERSE INC.,

Plaintiffs,

MARIA WU d/b/a WWW.SHOECAPSXYZ.COM, et al.,

Defendants.

---

Case No. 13 Civ. 8012 (SAS)

**ASSIGNMENT OF JUDGMENT**

Execution Version

## ASSIGNMENT AGREEMENT

This Assignment Agreement (the "**Agreement**"), effective as of January 18, 2017 (the "**Effective Date**"), is by and between Nike, Inc., an Oregon corporation with a principal place of business at One Bowerman Drive, Beaverton, Oregon 97005 ("**Nike**") and Converse Inc., a Delaware corporation with a principal place of business at 1 Lovejoy Wharf, Boston, MA 02114 ("**Converse**", and together with Nike, the "**Assignors**"), and Next Investments, LLC, a Delaware limited liability company with a principal place of business at 850 New Burton Road, Suite 201, Dover, DE 19904 (the "**Assignee**").

**WHEREAS** on August 20, 2015, the Assignors were awarded a final judgment against Maria Wu d/b/a WWW.SHOECAPSXYZ.COM, et al. docketed as document number 49 in case number: 2013 Civ. 8012 SAS) in the United States District Court for Southern District of New York (the "**Judgment**");

**WHEREAS** the Assignors and the Assignees are parties to that certain asset purchase agreement dated as of the date hereof (the "**Asset Purchase Agreement**");

**AND WHEREAS**, pursuant to the terms of the Asset Purchase Agreement, the Assignors have agreed to assign to Next Investments, LLC (the "**Assignee**") all of the Assignors' rights, obligations and interests in and to the Judgment, all present and future value or remuneration of any kind and in any form including, without limitation, property, assets, cash, bonds, or any other form or payment in each case paid, payable, recovered, owing to, due to, or otherwise received or to be received pursuant to or in respect of the Judgment, or any other present or future claim, action, arbitration, litigation, collection effort or other proceeding or action of any nature relating to the Judgment (collectively, the "**Judgment Proceeds**"), and all rights and entitlements of any and all of the Assignors to and in connection with the Judgment or other proceeding or action of any nature relating to the Judgment, the Judgment Proceeds, all rights in connection therewith and any interest therein, and any books and records used therein or related thereto in connection with the Judgment and/or any Judgment Proceeds (collectively, the "**Judgment Rights**", and together with the Judgment and the Judgment Proceeds, the "**Assigned Assets**");

**AND WHEREAS** in connection with the purchase and sale provided for by the Asset Purchase Agreement, on the Closing the Asset Purchase Agreement requires the Assignors to give effect to the transfer of the Assigned Assets by entering into and delivering all applicable documentation required to give effect to such transfer;

**AND WHEREAS** this Assignment Agreement is being entered into to evidence and give effect to the sale and transfer of the Assigned Assets by the Assignors to the Assignee in accordance with the terms of the Asset Purchase Agreement; and

**NOW THEREFORE THIS AGREEMENT WITNESSES** that for good and valuable consideration the receipt and sufficiency of which consideration are hereby acknowledged by the Assignors, and pursuant to the terms and conditions of the Asset Purchase Agreement, the Assignors and the Assignee hereby covenant and agree as follows:

1.　　　　As of the Effective Date, the Assignors hereby irrevocably sell, assign, transfer, convey and deliver to the Assignee all of the Assignors' right, title and interest in and to the Assigned Assets, free and clear of any mortgage, pledge, lien, charge, security interest, claim or other encumbrance of any nature.

2.

2.        The Assignors deliver to the Assignee, concurrently herewith, copies of all consents, approvals, waivers and authorizations required, in the opinion of the Assignee, to transfer the Assigned Assets.

3.        The Assignors hereby represent and warrant to the Assignee that the Assignors have not previously assigned any of the Assigned Assets.

4.        If any term or provision of this Agreement is invalid, illegal or unenforceable in any jurisdiction, such invalidity, illegality or unenforceability shall not affect any other term or provision of this Agreement or invalidate or render unenforceable such term or provision in any other jurisdiction.

5.        This Agreement shall be governed by and construed in accordance with the laws of New York.

6.        Any dispute, claim, difference or controversy arising out of, relating to or having any connection with this Agreement, including any dispute as to its existence, validity, interpretation, performance, breach or termination or the consequences of its nullity and any dispute relating to any non-contractual obligations arising out of or in connection with it (for the purpose of this Section 6, a "**Dispute**"), shall be referred to and finally settled by arbitration under the Rules of Arbitration of the International Chamber of Commerce (for the purpose of this Section, the "**Rules**"). The Rules are incorporated by reference into this Section 6 and capitalised terms used in this Section 6 that are not otherwise defined in this Agreement have the meaning given to them in the Rules. The arbitral tribunal shall consist of a sole arbitrator.  If the parties cannot mutually agree to nominate a candidate to serve as the sole arbitrator within 15 days from the date the Request for Arbitration is received by the respondent(s), the ICC Court of Arbitration will appoint the sole arbitrator.  The seat or legal place, of arbitration shall be The City of New York in New York State in the United States. The language used in the arbitral proceedings shall be English.  All documents submitted in connection with the proceedings shall be in the English language, or, if in another language, accompanied by an English translation. The parties agree that it is their objective that the arbitration should be expedited and treated by the ICC as much as possible as a "fast track" proceeding.  Accordingly, the parties agree that the ICC and the tribunal should use their authority to ensure that the proceeding advances as quickly as possible in a manner that is consistent with achieving a fair and accurate decision. The parties further agree that this agreement, and any disputes arising under or in connection with this agreement, are and will be commercial in nature.

7.        This Agreement may be executed in counterparts, each of which shall be deemed an original, but all of which together shall be deemed to be one and the same agreement. A signed copy of this Agreement delivered by facsimile, email or other means of electronic transmission shall be deemed to have the same legal effect as delivery of an original signed copy of this Agreement.

**[The remainder of this page has been intentionally left blank.]**

DATED and effective as of this 18th day of January, 2017.

**Assignors**

**NIKE, INC.**

By: _____

Name: Grant Hanson
Title: Vice President, CAO
Strategy/Operations

**CONVERSE INC.**

By: _____

Name: Grant Hanson
Title: Vice President, CAO
Strategy/Operations


STATE OF _Oregon_       )
                                        ) ss.:
COUNTY OF _Washington_ )


On the 18th day of January in the year 2017 before me, the undersigned, personally appeared Grant Hanson, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.


**OFFICIAL STAMP**
**JILL M KAKEHI**
NOTARY PUBLIC-OREGON
COMMISSION NO. 948586
MY COMMISSION EXPIRES MARCH 14, 2020

_____
Notary Public _for Oregon_
My commission expires: 3/14/2020

**Assignee**

**NEXT INVESTMENTS, LLC**

By: _____

Name: Daniel Kochav
Title: Authorized Signatory


STATE OF  N Y          )
                       )  ss.:
COUNTY OF  N Y         )

On the 19th day of January in the year 2017 before me, undersigned, personally appeared Daniel Kochav, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same in his capacity, and that by his signature on the instrument, the individual, or the person on behalf of which the individual acted, executed the instrument.

_____
Notary Public

JESSICA ROBIN FRANKEL
Notary Public, State of New York
Reg. No. 01FR6268916
Qualified in Nassau County
My Commission Expires Sept. 17, 2020

Robert L. Weigel
Howard S. Hogan
Anne M. Coyle
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue, 47th Floor
New York, New York 10166
(212) 351-4000

```
┌─────────────────────────────────┐
│ USDC SDNY                        │
│ DOCUMENT                         │
│ ELECTRONICALLY FILED             │
│ DOC #: _____            │
│ DATE FILED: 8|20|16              │
└─────────────────────────────────┘
```

*Attorneys for Plaintiffs NIKE, Inc. and Converse Inc.*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

NIKE, INC. and CONVERSE INC.,

          Plaintiffs,

     v.

MARIA WU d/b/a WWW.SHOECAPSXYZ.COM, et al.,

          Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

2013 Civ. 8012 (SAS)

**[PROPOSED] DEFAULT JUDGMENT**

      WHEREAS, this action having been commenced by Plaintiffs NIKE Inc. ("NIKE") and

Converse Inc. ("Converse") (collectively, "Plaintiffs") on November 12, 2013 by the filing of the

Summons and Complaint asserting that Defendants Maria Wu d/b/a www.shoecapsxyz.com;

Linhai Ke d/b/a www.shoecapsxyz.com; storeonlineservice2012@gmail.com d/b/a

www.freerunonlocker.co.uk; service2@airemail.net d/b/a www.footwearsuper.co.uk; Lin Zoe

d/b/a www.wholesalenfljerseyssale.com; Comminutete More K.K. d/b/a

www.wholesalenfljerseyssale.com; Brakehemalt K.K. d/b/a www.nflofchina.com and

www.storeonlineselllnow.com; customerserviceNo1@hotmail.com d/b/a www.dsmrecap.com;

secureonlinepay@hotmail.com d/b/a www.soccerumarket.com; service3@linkonlinemail.com

d/b/a www.d3classicshoes.co.nz; service1@webseemial.com d/b/a www.aflshox.com; Bodon

Trading d/b/a www.cheapkd5shoes.com and www.freesrunsstore.com; Eric Lee d/b/a
www.cheapkd5shoes.com; Meijin Huang d/b/a www.cheapkd5shoes.com; Zhizhen Li d/b/a
www.freesrunsstore.com; Cheap Nike Free Run Trade Co. Ltd. d/b/a www.nikefree4s.com;
service@nikefreeruns30.com d/b/a www.nikefreeruns30.com; nikefreeonline2012@hotmail.com
d/b/a www.freebuyshoes.com and www.newfreeshoes.com; Chen Jinxing d/b/a
www.buywikionline.com; lindajerseys@gmail.com d/b/a www.lindajerseys.com and www.linda-
jerseys.com; University Jhug Limited d/b/a www.yes-shoe.com and www.yes-shoe.net; Zheng
Jiangyang d/b/a www.greatwholesalejersyes.net; Extentbargain K.K. d/b/a www.for-jerseys.biz
and www.myspeto.com; bbbpppkkk@yahoo.com d/b/a www.nikefreeruns-factory.com; Bi Ning
Zhuo d/b/a www.freerunlinea.com; Jiang Lili d/b/a www.cheapnikeairmax-mart.com;
customerservice.LY@gmail.com d/b/a www.airmaxofficialshop.co.uk and
www.airmax90uksales.co.uk; service@kickslion.com d/b/a www.kickslion.net; Kendrickvery PT
d/b/a www.oykununsesi.com and www.payfororder.com; wholesalejerseyscenter@gmail.com
d/b/a www.nfljerseyswebsite.com; Meion Online Store d/b/a www.buyrealcheapjordans.com and
www.fashionpay.com; lessspam42@gmail.com d/b/a www.authentic-jordans.us; Jinhui Zheng
d/b/a www.shopuq.com; Zheng Jinzhao d/b/a www.shopuq.com; sneakers2013@gmail.com
d/b/a www.max-2013.com; nikefair@msn.com d/b/a www.cheapestlebron10.com;
hotairjordan13@gmail.com d/b/a www.hotairjordan13.com; Shan Peter d/b/a www.cheapuk-
niketrainers.co.uk have engaged in unlawful trademark infringement, trademark counterfeiting,
cybersquatting, false designation of origin, trademark dilution, unfair competition and deception
under federal and New York law through their unauthorized use of trademarks owned by
Plaintiffs ("Plaintiffs' Marks") in manufacturing, marketing, and selling counterfeit versions of
Plaintiffs' products (the "Counterfeit Products") and seeking an accounting of profits;

2

WHEREAS, the Court entered an order on November 14, 2013 (the "TRO"), restraining defendants from, *inter alia*, manufacturing, distributing, delivering, shipping, importing, exporting, advertising, marketing, promoting, selling or offering for sale Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or any other products that otherwise bear, contain, display, or utilize any of the Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, or using, transferring or registering any domain name making unauthorized use of Plaintiffs' Marks; and ordered that Defendants appear before the Court on November 27, 2013 to show cause as to why an order granting a preliminary injunction should not be granted; and further ordered Defendants to respond to Plaintiffs' discovery requests by December 4, 2013;

WHEREAS, the TRO ordered that any money or other assets of Defendants (collectively "Defendants' Assets") were enjoined from being transferred, withdrawn or disposed of;

WHEREAS, on November 15, 2013, the Court endorsed Plaintiffs' letter requesting an extension of time to November 18, 2013 to effect service on Defendants, and also extended the Defendants' time to respond to the order to show cause from November 20, 2013 to November 22, 2013 (the "Endorsed Letter");

WHEREAS, Defendants were served with the Summons and Complaint, TRO and the Endorsed Letter by email, pursuant to the alternative service provisions contained in the TRO, as set forth in the Plaintiffs' Certificate of Service, dated November 27, 2013;

WHEREAS, Defendants failed to submit any papers opposing entry of the preliminary injunction, and failed to appear before the Court on November 27, 2013;

3

WHEREAS, having concluded that Plaintiffs made the required showing for injunctive relief, the Court issued a preliminary injunction on December 3, 2013 (the "PI Order") enjoining Defendants from, *inter alia*, manufacturing, distributing, delivering, shipping, importing, exporting, advertising, marketing, promoting, selling or offering for sale Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or any other products that otherwise bear, contain, display, or utilize any of the Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks; enjoining Defendants from using, transferring or registering any domain name making unauthorized use of Plaintiffs' Marks; enjoining Defendants from accessing the websites used by Defendants to sell Counterfeit Products (collectively, the "Infringing Websites"); and enjoining Defendants, and others in possession of Defendants' assets, from transferring, withdrawing or disposing of any money or assets of Defendants;

WHEREAS, Defendants were served with the Preliminary Injunction by email, pursuant to the alternative service provisions contained in the PI Order;

WHEREAS, the Court entered a Supplemental Order on January 23, 2014, enjoining additional Defendants and Infringing Websites identified by Plaintiffs through Plaintiffs' investigation and documents produced by third parties;

WHEREAS, the Court entered a Second Supplemental Order on May 23, 2014, enjoining the continued operation of 768 additional Infringing Websites identified by Plaintiffs;

WHEREAS the Court entered a Third Supplemental Order on December 3, 2014 enjoining additional Defendants and Infringing Websites identified by Plaintiffs through Plaintiffs' investigation and documents produced by third parties;

4

WHEREAS Plaintiffs filed a First Amended Complaint on December 5, 2014 identifying John Doe defendants Qiao Qin Liu; Adam Vickers; Alfred La Mar; Aretha Johnson; Austin Gates; Ba Fang; Benjamin Wilson; Bill King; Bingchao Chen; Bonny Loposser; Bunhon Wong; Cai Cigui; Cai Fengwei; Cai Gui Lan; Cai Gui Yong; Cai Jincan; Cai Liming; Canganic Kong; Catina Johnson; Changqing Lin; Changyong Yang; Chaokevin Lebron; Chen Bi Juan; Chen Bingchao; Chen Guo Jing; Chen Jiasheng ; Chen Jin Feng; Chen Jinxing; Chen Jun Xian; Chen Kun; Chen Li Xian; Chen Longfei; Chen Min; Chen Minzhong; Chen Qing Guo; Chen Qing Wen; Chen Shui Lian; Chen Tai Shan; Chen Tong; Chen Wei Zhu; Chen Weizu ; Chen Xicheng; Chen Yu; Chen Yuanming; Chen Zao Jie Chen Zao Jie; Chen Zhi Jie; Chen Zusong; Chen, Mingjin; Chen, Suzhen; Chen, Weifang; Chengfei Bei; Chenye Yang; ChenYuanzhuo; Chris Hebert; Chunhai Song; Cortez Shore; Creshnaw, Andrew; Dai Jian Zhong; Danilo Yambao; David Stevens; Deng Dong Fang; Deng Xiao Jun; Diante Johnson; Ding, Yi Na; Dmmeli Duhaime; Drew Pietan; DSJF Lai; Fan Zhangmu; Fang Ming; Fang Ping; Fang Yong; Fanskel Lemuel; Fu Jian Shan; Gao Hai Zhu; Gao Hua Ying; Gao Mei Ying; Gao Wei; Green Brown; Guang Zhou; Guy Yong Cai; Guo ChunPeng; Guo Jiancong; Guofu Zhang; Guohong Zheng; Haifeng Xu; Haima Xuan; Haitian Ren; Han, Defang; Hang Chen; Hao Lin; Harvey Rhodes; Holly Gasser; Howard Linsa  Hu Guo Tian; Hu Li Ping; Hu Xian Di; Hu Xiu Bi; Hu Xiu Feng; Huang Guo; Huang Han Liang; Huang He Bin; Huang Huacai; Huang Huayou: Huang Hui; Huang Jian Ping; Huang Jintian; Huang Jintian; Huang Juying; Huang Libin; Huang Qiao; Huang Shu Zhen; Huang Wehsheng; Huang Xiao; Huang Xiaoqiu; Huang Xiu; Huang Xiuying; Huang Xiuzhu; Huang Yamei; Huang Yan Ying; Huang Yong Lin; Huang Zhan; Huang Zhi Zhen;  Huangjie Wei; Huik; Imogen Lockhart; Jack Tabor; Jack Wu; Jack Zhang; Jackson Smith; James Doughlas; Ean Sabud; Jesus Jimenez; Jian Ping Huang; Jian Yin; Jian Zhong Dai;

Jiang Hunying; Jiang Junying; Jiang Lin; Jiang Rong Rong; Jiang Xin; Jianhan Xie; Jianxian Zheng; Jianying Chen; Jianyu Tang; Jie Wang; Jie Wei; Jie Xia; Jim Fricker; Jinfeng Zhang; Jingmei Zhou; Jinhui Huang; Jinhui Zheng; Jinying Ke; Joe Austin; Joe Tran; John Peir; Join Lin; Jordan Battersl Julie Lochhead; Kateila Smith; Kathy Peyton; Kayla Moore; Ke Lin Hai (a/k/a Linhai Ke); Ke Tianrong; Kerry Bolton; Krystian; Kun Chen; Kylon Butler; Lai Li Ying; Lang Qing; Larry Rhodes; Latin Malin; Lauren Darke; Leo Paquette; Li Hai Dao; Li Haidao; Li Ning; Li Qi Min; Li Renfen; Li Yangyang; Li Yayun; Li Yu Hong; Li Yu Mei; Li Yuan Mao Yi You Xian Gong Si; Liming Cai; Lin Bao Zhu; Lin Changqing; Lin Fang; Lin Fengying; Lin Hua Cong; Lin Ji; Lin Jian; Lin Jun Da; Lin Li-Mei; Lin Mei Ying; Lin Meiqin; Lin Qingfeng; Lin Xiu Ying; Lin Zhang Qing; Lin, Fengyun; Lisu Motol; Liu Gui Lan; Liu Kai Yang; Liu Meihua; Liu Qiao Qin; Liu YiFei; Liu Zhen Hu, Liu Zheng Bin; Liu Zhi Jong; LiuYifei LiuYifei; Lizhu Ma; Louisa Kornbergin; Luo Qiuhua; LV Huiwu; LVZHongtian; Mabelle Weig; Malik Davis; Mao Guang Yuan; Marshall Matthew; Martin Lessmann; Meilian Huang; Meixia Zheng; Meiyan Liu; Melvin Saunders; Michael Marcovici; Michael Vick; Ming Fang; Ming Yuan Mao Yi You Xian Gong Si; Motao; Murray, John; Nan Chen; Natorious Douglas; Nian Hua; Nianhua Tang; Nicol Duchaine; Nikolaj Chernets; No Buh; Ou Jai Sen; Pan Bing Huang; Pang Nian; Peir Junck; Phillip Bell; Pin Pai51; Ping Fang; Ping Li; Qi Min Li; Qian Shuying; Qian Xiangong; Qiming Trade Co. Ltd; Qin Yao; Qing Lang; Qing Wen Chen; Qingshi Fang; Qiu Jing; Qunar Lee; Qunhong Ke; Rebeca Fosburgh; Ren Guo Ying; Ren Guoying; Ren Qing Huang; Ren Zhi Jie; Ren Zhi Min; Ren Zhi Tong; Ren Zhimin; Rene Paley; Renfen Li; Rick Li d/b/a/163.ca Inc.; Robbie Clark; Robert Smith; Ronny Seffner; Roy Stotts; Sacaj Boxangel; Sale Jordaner; Samanta Bangaree; San Zhang; SanChun Wu; SandyC; Sawyer Lin; Sebastian Schwarz; Shannon Bennett; Shanshan Gao; ShaoTong Qiang; Shen Qingshui; Shengze Yang; Shi Hua; Shi

6

Shao Lian; Shi Sheng Xu; Shijie Chen; Shinsaku Drock; Shiyu Xu; Shurong Lin; Smith Chen;

Song Yong Gan; Song Yong Jin; Stacy Peacock; Stefano Cecconi; Sun Jin; Suqin Yang; Surong

Zhu; Tamerra Barrett; Tang Guo; Tang Jian Ying; Tang Nianhua; Taniesha Symister; Tianrong

Ke; Tie Ning Zhuo; Tiffany Jarvis; Tim Rhudy; Timothy Saulmon; Tingting Xia; Todd Amira;

Tong Zhenggang; Toni Wu; Tracy Driver; Wagner Chris; Wang Bao Guo; Wang Bing Yuan;

Wang Fulong; Wang Hong; Wang Jie; Wang Ru Jun; Wang Xiang; Wang Xin Fen; Wanlu

Huang; Water Lin; Wei Huangjie; Wei Huangjie; Weijia Yin; Wen Ben Zhou; Weng Qing Yun;

Weng Qing Zhong; Weng Tian Rong; Weng Xue Jing; Weng Yanchun; Willa Wharton; William

Clark; Winchester Dean; Woodson, Keion; Wu Jie Mei; Wu Qingfeng; Wu Song Ye; Wu

XiuYan; Wu Yan; Wu Ziqiang; Xia Ling Qin; Xiang Yong Zheng; Xingchang003 Lin; Xaio Lin

Zheng; Xiao Xio Ping;  Xiaofei Wang; Xiaoqing Zhang; Xiaoqiong Wu; Xiaosi Fu; Xiaoyun

Wang; Xie Han Zhou; Xin Zhang; Xiong Lin; Xiongfei Trade Co. Ltd; Xu Jin Tian; Xu Li Li;

Xu LinYing; Xu Linying; Xu Min Fang; Xu Shi Yi; Xu Weihai; Xu Zhi Qiang; Yan Li Fang;

Yanfen Weng; Yang Haiqi; Yang Hui Xin; Yang Jun Jie; Yang Li; Yang Lin; Yang Rong'e;

Yang Su Qin; Yanqing Zhu; Ye Dong; Yegeng Tian; Yida Trade Co., Ltd; Yingchun Yuan;

Yong Lin Huang; Yong Lin Lin; Yong Zheng; Youncofski, Conor; Yu Bin Bin; Yu Hang; Yu

Jie; Yu Xian Wu; Yu Xiao; Yu Zhi Qiang; Yuan Xiaoyan; Yuan Ying Chun; Yuanqiu Cai; Yue

Manager; Yujian Ran; Yurong Huang; Yuyang LV; Zelda Spingarn; Zenyu Lin; Zeynab

Bstalvey; Zhan Cui Bin; Zhan Cuibin; Zhan Ruping; Zhang Feng Chun; Zhang Feng Lan; Zhang

Feng Yu; Zhang Fengchun; Zhang Guofu; Zhang Jia Fu; Zhang Jiu Chu; Zhang San; Zhang

Sansan; Zhang Shan; Zhang Wei; Zhang Wei Ping; Zhao Jun Pu; Zhao Min Gui; Zhao Zeying;

Zheng Jian Fen; Zheng Jin Hui; Zheng Jin Tao; Zheng Jin Zhao; Zheng Jinhui; Zheng Lan Ying;

Zheng Limei; Zheng Shi Jie; Zheng Wen Zong; Zheng Xiang Yong; Zheng Yang Mei; Zheng

Yuefen; Zheng Zhi Hong; Zheng, Lanying; Zhengyu Lin; Zheyu Lin; Zhi Jieren; Zhixiong

Huang; Zhiyuan Dai; Zhong Zhenning; Zhou Dadi; Zhou Kai; Zhu Fu; Zhuo Tie Ning; Zhuo

Zhen; Zita Binder; Zusong Chen (collectively, together with the original defendants, the

"Defendants"), associated with the original defendants in the twenty-six groups identified by

Plaintiffs;

WHEREAS, Defendants were served with the Summons and First Amended Complaint

on February 3, 2015 by email in accord with the orders authorizing alternative service signed by

the Court on December 3, 2014, May 23, 2014, January 31, 2014, December 3, 2013, and

November 27, 2013;

WHEREAS, Plaintiffs' complaint and papers submitted in support of Plaintiffs'

applications for a temporary restraining order, preliminary injunction, and supplemental orders

made clear that Plaintiffs would seek the relief provided herein, including an accounting or

monetary damages of $2 million per infringement of registered  trademark per category of goods

offered, in excess of $1.8 billion total;

WHEREAS, the terms of the asset restraint provisions of the TRO, PI Order, and

Supplemental Orders were made applicable to PayPal, Inc. and certain banks, savings and loan

associations, credit card companies, credit card processing agencies, or other financial

institutions or agencies that engage in the transfer of real or personal property, and all persons

acting in concert or in participation with any of the Defendants who are in possession of

Defendants' Assets (collectively, "Defendants' Assets Holders");

WHEREAS, Defendants have not answered the Complaint or the First Amended

Complaint and the deadline for answering has expired;

WHEREAS the Clerk's Certificate of Default was entered on March 18, 2015;

8

WHEREAS, Defendants have not opposed Plaintiffs' motion for a default judgment;

NOW, THEREFORE, IT IS HEREBY ORDERED, ADJUDGED and DECREED:

1.      Exhibits 1, 2, and 3 referenced herein indicate Exhibits 1, 2, and 3 to the Notice of Motion for a Default Judgment (Docket Nos. 37-2, 37-3, and 37-4) and shall be treated as incorporated exhibits to this Default Judgment.

2.      That Defendants and Defendants' officers, directors, agents, representatives, successors or assigns, and all persons acting in concert or in participation with any of them are permanently enjoined from:

(a)      using Plaintiffs' Marks, or any reproduction, counterfeit, copy, or colorable imitation of Plaintiffs' Marks, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, in connection with manufacturing, distributing, delivering, shipping, importing, exporting, advertising, marketing, promoting, selling or offering for sale Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display, or utilize any of the Plaintiffs' Marks;

(b)      making or employing any other commercial use of the Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks;

(c)      using any other false designation of origin or false description or representation or any other thing calculated or likely to cause confusion or mistake in the mind of the trade or public or to deceive the trade or public into believing that Defendants' products or activities are in any way sponsored, licensed or authorized by or affiliated or connected with Plaintiffs;

(d)      using or transferring ownership of the Infringing Websites or Infringing Domain Names, or registering or using any other domain names incorporating, in whole or in part, any

9

word or mark identical or similar to the name NIKE or Converse or otherwise making use of the Plaintiffs' Marks;

      (e)     doing any other acts or things calculated or likely to cause confusion or mistake in the mind of the public or to lead purchasers or consumers or investors to believe that the products or services promoted, offered, or sponsored by Defendants come from Plaintiffs or their licensees, or are somehow licensed, sponsored, endorsed, or authorized by, or otherwise affiliated or connected with Plaintiffs;

      (f)     moving, returning, destroying, secreting, or otherwise disposing of any Counterfeit Products or any products that otherwise bear, contain, display, or utilize any of the Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks;

      (g)     removing, destroying, altering, secreting, or otherwise disposing of any computer files, electronic files or data, business records, or documents containing any information relating to any of the Infringing Websites, Defendants' assets or operations, or to the importing, manufacturing, production, marketing, advertising, promoting, acquisition, purchase, distribution or sale of Counterfeit Products or any products that otherwise bear contain, display, or utilize any of the Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks;

      (h)     further diluting and infringing the Plaintiffs' Marks and damaging Plaintiffs' goodwill;

      (i)     otherwise competing unfairly with Plaintiffs or any of their authorized licensees in any manner;

10

(j)      assisting, aiding, or abetting any other person or business entity in engaging in or performing any of the activities referred to in the above subparagraphs (a) through (i), or effecting any assignments or transfers, forming new entities or associations, or utilizing any other device for the purpose of circumventing or otherwise avoiding the prohibitions set forth in subparagraphs (a) through (i); and

3.      That Defendants shall recall and remove from all stores, shops, markets, outlets, catalogues, websites or other channels of commerce any Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, that are in Defendants' possession or control and all means of making the same;

4.      That Defendants shall deliver up for destruction all Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, that are in Defendants' possession or control and all means of making the same, in accordance with 15 U.S.C. § 1118;

5.      That Defendants shall deliver up for destruction any and all guarantees, circulars, price lists, labels, signs, prints, packages, wrappers, pouches, receptacles, advertising matter, promotional, and other materials in the possession or control of Defendants bearing any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks, in accordance with 15 U.S.C. § 1118;

11

6.     That Defendants shall supply Plaintiffs with a complete list of entities from whom they purchased and to whom they distributed and/or sold Counterfeit Products or any other products confusingly similar to Plaintiffs' Products, or that otherwise bear, contain, display or utilize any of Plaintiffs' Marks, any derivation or colorable imitation thereof, or any mark confusingly similar thereto or likely to dilute or detract from the Plaintiffs' Marks.

7.     That after ten (10) business days following service of this Default Judgment, the registries and/or the individual registrars shall transfer the domain names set forth in Exhibit 1 to the ownership and control of Plaintiffs, through the registrar of Plaintiffs' choosing, or at Plaintiffs' direction release such domain names;

8.     That Plaintiffs' request for an accounting of profits is granted.  In light of the Defendants' complete failure to produce any documents in this action, making a precise calculation impossible on Plaintiffs' claim for an accounting, the Court awards equitable relief against Defendants as set forth in Exhibit 2 (representing $1 million per mark per type of good infringed pursuant to 15 U.S.C. § 1117(c)) as a proxy for Defendants' profits, plus $100,000 for each Infringing Domain Name registered by Defendants pursuant to 15 U.S.C. § 1117(d));

9.     That the individual Defendants comprising each Defendant Group shall be jointly and severally liable to Plaintiffs for the amounts specified for the respective groups with which each is associated as specified in Exhibit 2, and shall pay those amounts forthwith;

10.    That, in accordance with Rule 65 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), Article 52 of New York State's Civil Practice Law and Rules, and this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief, all Defendants' Assets that have been previously identified as frozen or that were otherwise required to be restrained in compliance with this Court's Orders, continue to be restrained regardless of

12

whether the Defendants' Assets are located in the United States or abroad, except that the Defendants may wire the funds on deposit to Gibson Dunn's client trust account. This includes, but is not limited to the accounts set forth in Exhibit 3;

11.     That in accordance with Rule 65 of the Federal Rules of Civil Procedure, 15 U.S.C. § 1116(a), Article 52 of New York State's Civil Practice Law and Rules and this Court's inherent equitable power to issue remedies ancillary to its authority to provide final relief, any other of Defendants' Assets that Plaintiffs identify in the future and/or that have not yet been frozen shall be subject to the asset restraint provisions set forth herein, regardless of whether the Defendants' Assets are located in the United States or abroad;

12.     That Defendants shall file with the Court and serve on counsel for Plaintiffs within thirty (30) days after entry of this Default Judgment a sworn written statement pursuant to 15 U.S.C. § 1116(a) setting forth in detail the manner and form in which Defendants have complied with the terms of this Default Judgment; and

13.     That the Clerk of the Court shall close this case and remove it from my docket, without prejudice to Plaintiffs' ability, if necessary, to file a motion to seek appropriate relief from this Court in order to: (a) enforce this Default Judgment or any outstanding obligations to comply with the discovery provisions of this Court's prior Orders; (b) find any of Defendants' Asset Holders in contempt of this Court's Orders or this Default Judgment; or (c) reopen this matter in the event it is necessary to pursue sanctions for any violations of this Default Judgment. SO ORDERED.

13

Dated:  Aug  2/  2015
New York, New York



SHIRA A. SCHEINDLIN
UNITED STATES DISTRICT JUDGE

14