**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| NIKE, INC and CONVERSE, INC., | |
| Plaintiffs, | Case No. 13 Civ. 8012 (CM) |
| v. | |
| Maria WU et al. | **ORAL ARGUMENT REQUESTED** |
| Defendants. | |

**MEMORANDUM OF LAW OF NONPARTIES AGRICULTURAL BANK OF CHINA, BANK OF COMMUNICATIONS, CHINA CONSTRUCTION BANK, CHINA MERCHANTS BANK AND INDUSTRIAL AND COMMERCIAL BANK OF CHINA LIMITED'S MOTION TO QUASH SUBPOENAS AND TO MODIFY THE FINAL ORDER**

Paul B. Carberry
Jacqueline L. Chung
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: pcarberry@whitecase.com
           jacqueline.chung@whitecase.com

*Attorneys for Agricultural Bank of China, Bank of Communications, China Construction Bank, China Merchants Bank, and Industrial and Commercial Bank of China Limited*

# Table of Contents

PRELIMINARY STATEMENT ................................................................................................. 1

BACKGROUND ..................................................................................................................... 4

ARGUMENT ......................................................................................................................... 6

I.   THE BANKS ARE NOT SUBJECT TO PERSONAL JURISDICTION HERE .............................. 6

    A.   The Court Cannot Exercise General Personal Jurisdiction Over The Banks ........................... 7

    B.   The Court Cannot Exercise Specific Jurisdiction Over The Banks ........................................ 8

        1.   The Banks' Minimal Contacts With the Forum Do Not Give Rise To Specific Jurisdiction Under The New York Long Arm Statute Or "Minimum Contacts" .............. 9

        2.   Gucci v. Weixing Li Is Not Applicable ..................................................................... 12

        3.   The Exercise Of Specific Jurisdiction Over The Banks Would Offend Traditional Notions Of Fair Play And Substantial Justice ................................................................ 13

    C.   The Assignee Is Not Entitled To Jurisdictional Discovery ..................................................... 16

II.  THE SEPARATE ENTITY RULE PRECLUDES THE ENFORCEMENT OF AN EXTRATERRITORIAL ASSET RESTRAINT AGAINST THE BANKS ................................... 17

III. AS A MATTER OF INTERNATIONAL COMITY, THE COURT SHOULD DECLINE TO EXERCISE JURISIDICTION OVER THE BANKS ................................................................. 18

    A.   There Is A True Conflict With China's Banking Laws ........................................................... 19

    B.   The Restatement 442 Factors Weigh In Favor of Requiring the Assignee To Seek Discovery Via The Hague Convention. ................................................................................... 19

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty., 480 U.S. 102
(1987) ........................................................................................................................13

Austl. & N.Z. Banking Grp. Ltd. v. APR Energy Holding Ltd. ("ANZ Bank"),
17-MC-00216 (VEC), 2017 WL 3841874 (S.D.N.Y. 2017) ......................................11, 12, 16

Brown v. Lockheed Martin Corp., 814 F. 3d 619 (2d Cir. 2016) ....................................................8

Burger King Corp. v. Rudzewicz, 471 U.S. 462 (1985) ....................................................10

CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship, 12-CV-08087
(CM)(SN), 2013 WL 2661037 (S.D.N.Y. June 12, 2013) ...........................................19, 22, 24

Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158 (2d Cir. 2010) ............................14, 20

Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44 (S.D.N.Y. 1996).................................21

Daimler AG v. Bauman, 134 S. Ct. 746 (2014).........................................................................2, 7

Galderma S.A. v. Peri, 15-CV-667, 206 U.S. Dist. LEXIS 61203 (S.D.N.Y. Mar.
30, 2016) ..................................................................................................................16

Gucci America v. Bank of China, 768 F.2d 122 (2d Cir. 2014)..........................................passim

Gucci v. Weixing Li, 135 F. Supp. 3d 87 (S.D.N.Y. 2015)............................................................12

In re Vitamin C Antitrust Litig., 837 F.3d 175 (2d. Cir. 2016) ....................................................23

Leibovitch v. Islamic Rep. of Iran, 188 F. Supp. 3d (N.D. Ill. 2016), aff'd 852
F.3d 687 ....................................................................................................................9, 13, 14

Leibovitch v. Islamic Republic of Iran, 852 F.3d 687 (7th Cir. 2017) .........................................12

Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50 (2d Cir. 2012) ......................................8, 10

Linde v. Arab Bank, PLC, 262 F.R.D. 143 (E.D.N.Y. 2009)..................................................22, 25

Matter of Marc Rich & Co., A.G., 707 F. 2d 663 (2d. Cir. 1983) ..................................................6

Minpeco, S.A. v. Conticommodity Services, Inc., 116 F.R.D. 517 (S.D.N.Y.
1987) ..........................................................................................................................23

Motorola Credit Corp. v. Standard Chartered Bank, 24 N.Y.3d 149 (2014)...........................17, 18

Motorola Credit Corp. v. Standard Chartered Bank, 771 F.3d 160 (2d Cir. 2014) ......................17

Novelaire Techs. LLC v. Munters AB, 2013 WL 6182938 (S.D.N.Y. 2013) ..............................16

Official Comm. of Unsecured Creditors of Arcapita, Bank. B.S.C. v. Bahr.
    Islamic Bank, 549 B.R. 56 (S.D.N.Y. 2016) ........................................................10

Peters v. Peters, 127 A.D.3d 656 (1st Dep't 2015)........................................................24

Savin v. Ranier, 898 F.2d 304 (2d Cir. 1990)...............................................................6

Schultz v. Safra Nat'l Bank, 377 F. App'x 101 (2d Cir. 2010) .......................................13

Sherwin-Williams Co. v. Avisep, S.A. de C.V., No. 14-CV-6227(RA), 2016 WL
    354898 (S.D.N.Y. Jan. 28, 2016)...................................................................13

Societe National Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. of
    Iowa, 482 U.S. 522 (1987)..........................................................................19

SPV OSUS, Ltd. v. UBS AG, No. 16-2173, 2018 U.S. App. LEXIS 3088 (2d Cir.
    Feb. 9, 2018) .....................................................................................9, 11

Tiffany (NJ) LLC v. Forbse, 11 Civ. 4976 (NRB), 2012 WL 1918866 (S.D.N.Y.
    May 23, 2012) ...................................................................................23, 24

Tiffany (NJ) LLC v. Qi Andrew, 10 Civ. 9471 (KPF) (HBP), 2015 WL 3701602
    (S.D.N.Y. Jun. 15, 2015) .........................................................................23

Tiffany (NJ) LLC v. Qi Andrew, 276 F.R.D. 143 (S.D.N.Y. 2011)....................................passim

Tire Eng'g and Dist. LLC v. Bank of China Ltd., 740 F. 3d 108 (2d Cir. 2014) ..........................6

Walden v. Fiore, 134 S. Ct. 1115 (2014).......................................................................8

Waldman v. PLO, 835 F.3d 317 (2d Cir. 2016) ..............................................................9

World-wide Volkswagen Corp. v. Woodsen, 444 U.S. 286 (1980) .............................14

## STATUTES AND RULES

Federal Rules of Civil Procedure .............................................................................17, 21

New York Civil Law and Practice Rule ...............................................................6, 8, 10

Restatement (Third) of Foreign Relations Law § 403 .....................................18, 19, 20

Agricultural Bank of China, Bank of Communications, China Construction Bank, China Merchants Bank, and Industrial and Commercial Bank of China Limited, nonparties to this action (collectively, the "Banks"), respectfully move this Court for an order (1) quashing certain subpoenas served on the New York branches of the Banks by plaintiff and assignee to the default judgment, Next Investments, LLC ("Next Investments" or "Assignee") in this action,[1] and (2) modifying the Final Order entered in this action insofar as it purports to apply extraterritorially.[2]

## PRELIMINARY STATEMENT

It is black-letter law that, before a court may compel a nonparty to comply with its order, the court must have personal jurisdiction over that nonparty. This axiom extends equally to a litigant's ability to compel a nonparty to take some action through service of a subpoena authorized by the court. Without a proper basis for the court's exercise of personal jurisdiction over that nonparty, any such demand is invalid.

Despite these bedrock legal principles, here, the Assignee has served judgment enforcement subpoenas on five of China's largest commercial banks, demanding that they produce account information and restrain customer accounts in support of its efforts to enforce a default judgment entered against 636 counterfeiter-defendants (the "Judgment Debtors") in this trademark infringement action, without showing that this Court has a valid basis upon which to exercise personal jurisdiction over those foreign banks. In addition, the Final Order entered in this action requires the global restraint of Judgment Debtor assets purportedly held by the Banks

---

[1] The trademark holders and original plaintiffs in this action, NIKE, Inc. ("Nike") and Converse, Inc. ("Converse"), transferred their rights to the default judgment to the Assignee on January 31, 2017. ECF No. 50. Assignee was formed as a Delaware limited liability corporation shortly before the assignment, on October 3, 2016. See Declaration of Jacqueline L. Chung (hereinafter "Chung Decl.") Ex. 15. Accordingly, the Assignee's efforts are solely directed toward collecting on the default judgment entered in this action and not toward vindicating any rights of the trademark holders, to which they are not entitled.

[2] The declarations filed herewith are cited by reference to the Declarant's surname and "Decl."

anywhere in the world, as well as the disclosure of customer information relating to any such assets.

In response to the Final Order and Subpoenas, the Banks voluntarily conducted searches of the records of their New York branches and confirmed that those branches do not maintain any of the identified Judgment Debtor accounts. Nor do they have access to the records of any accounts maintained outside of New York.[3]  Nonetheless, the Assignee persists in its efforts to compel the global restraint of and production of information relating to assets located, held or maintained outside of the United States through the threat of seeking an order of contempt against the Banks should they fail to comply with this Court's orders.  In addition to exceeding the scope of this Court's jurisdictional reach, compliance with the Assignee's efforts would also impose an improper, unreasonable and undue burden on foreign entities who are strangers to this action.  As such, the Assignee's Subpoenas should be quashed and the terms of the Final Order modified.

The Court does not have a basis to assert personal jurisdiction over the Banks.  The Supreme Court's decision in Daimler AG v. Bauman, 134 S. Ct. 746 (2014) and the Second Circuit's subsequent decision in Gucci America v. Bank of China ("Gucci I"), 768 F.2d 122 (2d Cir. 2014) foreclose the possibility that a court may exercise general jurisdiction over a foreign bank on the basis that it maintains a branch in New York.  Although the Assignee tries to circumvent Daimler and Gucci I by claiming that the Banks are subject to the specific jurisdiction of this Court, the Assignee offers no proof that any of the Banks' New York-based activities are sufficiently related to the underlying cause of action or the discovery requests to

---

[3] In agreeing to voluntarily conduct such searches, the Banks expressly made clear that they did not accept or acquiesce in the Court's exercise of jurisdiction over the Banks and explicitly reserved their rights to challenge the Subpoenas and/or seek to modify the Final Order on jurisdictional (and other) grounds.  See Chung Decl. Exs. 2, 6, 7, 9.

justify specific jurisdiction.  In addition, New York's longstanding separate entity rule, which precludes the global application of an asset restraint served on a financial institution in New York, provides an independent basis upon which to reject the Assignee's efforts to extend extraterritorially the reach of the asset restraint provisions of the Final Order.

Even if there were a basis for this Court's exercise of personal jurisdiction over the Banks—which there is not—the Court should decline to do so given the significant comity concerns arising from the extraterritorial enforcement of the Final Order and Subpoenas.  The Banks, as financial institutions incorporated and headquartered in China, are subject to Chinese banking laws that prohibit the disclosure of customer account information, or the restraint of customer accounts, absent authorization from a Chinese court or other expressly authorized governmental entities.  It is unreasonable to require the Banks to comply with the Final Order and Subpoenas when such conduct would cause them to violate the laws of their home country.

Putting the Banks to that impossible choice—wherein compliance with one legal regime means noncompliance with another—would be particularly egregious here, since an alternative exists by which the Assignee can satisfy its needs.  To the extent that the Assignee seeks account information located in China, it can (and should) pursue this discovery through the Hague Convention on the Taking of Evidence Abroad in Civil and Commercial Matters (the "Hague Convention"), as the Banks would not be precluded under Chinese law from responding to a request issued via Hague Convention channels.  Indeed, in prior cases in this jurisdiction, this Court has required plaintiffs to obtain bank account information located in China via the Hague Convention.

For these reasons, the Court should grant the Banks' motion to quash the Subpoenas and modify the Final Order to the extent that it purports to apply extraterritorially because (1) there is

no basis for the Court to exercise personal jurisdiction over the Banks (or entitle the Assignee to jurisdictional discovery); (2) the separate entity rule in New York precludes the global restraint of assets; and (3) principles of international comity weigh against the enforcement of the Final Order and Subpoenas and in favor of requiring the Assignee to submit a request through the Hague Convention.[4]

## BACKGROUND

Nike and Converse filed a complaint in this action on November 2013 against defendants who had allegedly sold, through online websites, counterfeit goods that infringed certain trademarks owned by Nike and Converse.  ECF No. 1.  On August 20, 2015, Nike and Converse obtained a default judgment against the Defendants for $1.8 billion in statutory trademark damages.  (ECF No. 49 at 8).  On January 31, 2017, Nike and Converse assigned their rights to the default judgment to the Assignee.  ECF No. 50. On October 20, 2017, this Court entered a Final Order holding Judgment Debtors in contempt of the default judgment.  ECF No. 62.  The Final Order restrained the Judgment Debtors' assets, including all money or assets held in bank accounts maintained at the Banks, "regardless of whether such money or assets are located in the U.S. or abroad."  ECF No. 62 at 7.

In late 2017, the Assignee subpoenaed the Banks, demanding additional discovery of bank accounts purportedly held by the Judgment Debtors. See, e.g. Chung Decl. Ex. 11.  In addition to identifying specific accounts at each bank that are allegedly related to the Judgment

---

[4] In her order granting plaintiffs a default judgment herein, Judge Scheindlin declined to rule on the Banks' objections to the entry of the restraint provisions in the proposed order on personal jurisdiction, separate entity rule, and comity grounds because the Banks' objections were not "ripe."  ECF No.  48.  The Banks respectfully submit that it would be proper for the Court to resolve these issues now because: (1) through the Final Order, the Assignee is seeking enforcement of the global asset restraint and discovery provisions against the Banks, and the Final Order authorizes third parties affected by the order to move for modification or clarification of the order (see ECF. No. 62 at ¶ 5); and (2) the Subpoenas also implicate the same personal jurisdiction and comity concerns. See, e.g., Chung Decl. Ex. 11.

Debtors, the Subpoenas also require the Banks to search for information relating to 636 identified Judgment Debtors in addition to 778 email addresses and 2361 websites purportedly associated with the Judgment Debtors.  See, e.g., Chung Decl. Ex. 11, Attachments E, F, G.

The Banks are incorporated and maintain their principal places of business in Beijing, Shanghai, and Shenzhen, China.  The Banks each have thousands of branches, sub-branches or outlets around the world, though the majority are concentrated in China.  The Banks each maintain one branch in New York, which is their only Branch in the United States.[5]  The New York branches of the Banks do not have retail operations in New York.[6]  Moreover, the Banks' New York branches each hold less than 1% of the Banks' total assets and constitute only a minute percentage of the Banks' after-tax revenue and profit. Du Decl. ¶¶ 2, 8; Fu Decl. ¶¶ 2, 8; Dong Decl. ¶¶ 2, 8; Shi Decl. ¶¶ 2, 8; Zhou Decl. ¶¶ 2, 8.

The New York branches of the Banks maintain only records of bank accounts located at the New York branches.  The computer systems in the Banks' New York branches are not connected to computer systems located at the head offices or other branches of the Banks. Branch personnel in New York therefore do not have the practical ability to access information relating to accounts located in other branches of the Banks. Du Decl. ¶¶ 9-13; Fu Decl. ¶¶ 9-13; Dong Decl. ¶¶ 9 -13; Shi Decl. ¶¶ 9 -13; Zhou Decl. ¶¶ 9 - 12.

The Banks voluntarily agreed to search their New York branches for information relating to the bank accounts identified in the Subpoenas.  The Banks notified Assignee that their New

---

[5] The only exception is Bank of Communications, which has two branches in the United States. Shi Decl. ¶ 2.

[6] The entity upon which Assignee has served notice of the Final Order and the Subpoena is ICBC, New York Branch, which does not maintain retail operations in New York.  However, a separate but related entity, Industrial and Commercial Bank of China (USA) NA ("ICBC USA"), does maintain retail operations in New York. The Assignee has not served ICBC USA with notice of the Final Order or the Subpoena and, therefore, ICBC USA is not a party to this motion.

York branches had: (1) no documents or information relating to the specified bank accounts; and (2) no records of wire transfers routed through the New York branches to the specified bank accounts.  The Banks directed the Assignee to seek information located in branches outside of the United States via a Hague Convention request.  Chung Decl. Ex. 9.  In response to the Assignee's continued insistence that the Banks produce information located outside of the New York branches, the Banks filed formal objections and responses to the Subpoenas and informed the Assignee that they would move to quash the Subpoenas and modify the Final Order.  Chung Decl. Exs. 19-23.

## ARGUMENT

### I.  THE BANKS ARE NOT SUBJECT TO PERSONAL JURISDICTION HERE

The Court must have personal jurisdiction over a nonparty in order to compel it to comply with a discovery request issued under Rule 45.  See Gucci I, 768 F.3d. at 141; Matter of Marc Rich & Co., A.G., 707 F. 2d 663, 669 (2d. Cir. 1983) ("A federal district court's jurisdiction is not determined by its power to issue a subpoena; its power to issue a subpoena is determined by its jurisdiction.").  Likewise, the Court must also establish personal jurisdiction over any nonparty bank against whom it seeks to enforce an asset restraint.  See Gucci I, 768 F.3d at 134.[7]  While the Assignee bears the ultimate burden of proof on this issue, see Savin v. Ranier, 898 F.2d 304, 306 (2d Cir. 1990), it is abundantly clear that the Assignee cannot meet its burden of showing a valid basis for the exercise of personal jurisdiction over the Banks here.

---

[7] The restraint imposed by the Final Order was also issued pursuant to New York Civil Law and Practice Rule ("CPLR") § 5222.  ECF No. 62 at ¶ 4.  Restraints issued under Article 52 of the CPLR are *in personam*—that is, they rest on personal jurisdiction over the person to whom they are directed.  Tire Eng'g and Dist. LLC v. Bank of China Ltd., 740 F. 3d 108, 110 (2d Cir. 2014) ("[A]rticle 52 postjudgment enforcement involves a proceeding against a person . . . . Accordingly, personal jurisdiction is the linchpin of authority under 5222(b).") (internal citation and quotation marks omitted).

### A.  The Court Cannot Exercise General Personal Jurisdiction Over The Banks

The Court cannot exercise general jurisdiction over the Banks because their New York branch operations do not establish a basis for such jurisdiction.  In Daimler, the Supreme Court held that the exercise of general jurisdiction over a foreign corporation is appropriate only where the corporation's in-forum contacts are "so continuous and systematic as to render it essentially at home in the forum State."  Daimler, 134 S.Ct. at 761.  Barring an "exceptional case," a foreign corporation is "at home" and subject to general jurisdiction only if it is: (1) incorporated in that jurisdiction; or (2) has established a principal place of business therein.  Id. at 761 & n.19. Daimler therefore significantly narrowed the scope of general jurisdiction with regard to foreign corporations.

The holding of Daimler has specifically been applied to the issue of personal jurisdiction over nonparty banks.  In Gucci I, the Second Circuit Court of Appeals held that, in light of Daimler, there was no basis for general jurisdiction over a nonparty Chinese bank that had branch offices in New York but was "incorporated and headquartered elsewhere" and conducted only a small percentage of its global business in New York.  Gucci I, 768 F.3d at 135.  The court noted that Daimler "expressly cast doubt on previous Supreme Court and New York Court of Appeals cases that permitted general jurisdiction on the basis that a foreign corporation was doing business through a local branch office in the forum."  Id.  Accordingly, the court vacated an order compelling the bank to produce account information located in its non-U.S. branches and a pre-judgment asset restraint directing the bank to freeze accounts located in the U.S. and abroad, because these orders were premised on the assumption that the bank was subject to general jurisdiction.  Gucci I, 768 F. 3d at 141.

There are no grounds to exercise general jurisdiction over the Banks here, as none of them are incorporated in New York or have their principal place of business in New York.  Du

Decl. ¶ 2; Fu Decl. ¶ 2; Dong Decl. ¶ 2; Shi Decl. ¶ 2; Zhou Decl. ¶ 2; see also Gucci I, 768 F.3d at 135 (finding that the Bank only had four U.S. branch offices and a small portion of its business was conducted in New York, and therefore was not "at home" in New York).[8]  Nor is there any basis to conclude that the Banks' New York contacts rise to the level of an "exceptional case" that would warrant a departure from the Daimler rule.

**B.  The Court Cannot Exercise Specific Jurisdiction Over The Banks**

Nor is there a basis for the Court to assert specific jurisdiction over the Banks.  To lawfully exercise specific jurisdiction over an entity, the proponent of jurisdiction must establish: (1) proper service; (2) a statutory basis for personal jurisdiction under New York law; and (3) that the exercise of jurisdiction would comply with due process, that is, that the entity has the requisite "minimum contacts" with the forum and that the exercise of jurisdiction would comport with "traditional notions of fairplay and substantial justice."  Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 59-60 (2d Cir. 2012); Gucci I, 768 F.3d. at 136 (quoting Burger King Corp. v. Rudzewicz, 471 U.S. 462, 472 (1985)).

Proper service is not contested here.  To satisfy the statutory basis requirement for jurisdiction pursuant to the New York long arm statute and the "minimum contacts" requirements, the Banks' in-forum contacts must be related to the underlying cause of action. See Walden v. Fiore, 134 S. Ct. 1115, 1121 (2014) (to comply with due process requirements for specific jurisdiction, "the defendant's suit-related conduct must create a substantial connection with the forum state"); New York Civil Law and Practice Rules ("CPLR") § 302(1) (providing a basis for specific jurisdiction where a cause of action "arises" from a party's transactions of

---

[8] Moreover, the Banks' registration to do business in New York through their New York branch operations does not constitute consent to the general jurisdiction of the Court.  Brown v. Lockheed Martin Corp., 814 F. 3d 619, 626 (2d Cir. 2016).

business in New York).  Moreover, "the relationship between the defendant and the forum 'must arise out of contacts that the defendant *himself* creates with the forum.'"  <u>Waldman</u> v. <u>PLO</u>, 835 F.3d 317, 335 (2d Cir. 2016) (quoting <u>Walden</u>, 134 S. Ct. at 112) (internal citation omitted).  Where the defendant has limited contacts with the state "he will be subject to suit in that state only if the plaintiff's injury was proximately caused by those contacts."  <u>SPV OSUS, Ltd.</u> v. <u>UBS AG</u>, No. 16-2173, 2018 U.S. App. LEXIS 3088, *22 (2d Cir. Feb. 9, 2018).

Although the Supreme Court has not ruled on specific jurisdiction with regard to nonparties, <u>see</u> <u>Gucci I</u>, 768 F.3d. at 136, courts have concluded that the jurisdictional analysis in such cases should be even more restrictive, "because unlike defendants[, nonparties] are not accused of violating the plaintiff's rights and essentially have 'no dog in the fight.'" <u>Leibovitch</u> v. <u>Islamic Rep. of Iran</u>, 188 F. Supp. 3d, 734, 748 (N.D. Ill. 2016), aff'd 852 F.3d 687.  In the context of nonparty discovery, the Second Circuit has endorsed an analysis which narrows the focus to the connection between the nonparty's contacts with the forum and the discovery order at issue.  <u>See</u> <u>Gucci I</u>, 768 F.3d at 137.  Under this approach, the court must evaluate whether the discovery sought by plaintiff bears a sufficient relationship to the nonparty's contacts with the forum.  <u>Id.</u>

There is no basis for specific jurisdiction here because the Assignee cannot establish the requisite contacts between the nonparty Banks, the forum, and the litigation (or the subject matter of the discovery requests arising from the litigation).  Moreover, even if these requirements were satisfied, the exercise of jurisdiction over these foreign nonparties would not comport with due process.

>    **1.  The Banks' Minimal Contacts With the Forum Do Not Give Rise To Specific Jurisdiction Under The New York Long Arm Statute Or "Minimum Contacts"**

The requirements for jurisdiction under the relevant provisions of the New York long-

arm statute resemble the "minimum contacts" requirements under due process.  See Licci v. Lebanese Canadian Bank, SAL, 673 F. 3d 50, 61 fn. 11 (2d Cir. 2012); Official Comm. of Unsecured Creditors of Arcapita, Bank. B.S.C. v. Bahr. Islamic Bank, 549 B.R. 56, 69-70 (S.D.N.Y. 2016) (noting that the jurisdictional analysis is "strikingly similar").   Under New York's long arm statute, a court, in relevant part, may only exercise personal jurisdiction over a "non-domiciliary … who in person, or through an agent … transacts business within the state" as long as the plaintiff's "cause of action aris[es] from [that] transaction." N.Y. C.P.L.R. § 302(a)(1) (emphasis added).  Likewise, the minimum contacts inquiry turns on whether the entity over whom jurisdiction is sought "'purposefully directed' [its] activities at . . . the forum and [whether] the litigation results from alleged injuries that 'arise out of or relate to' those activities."  Burger King Corp. v. Rudzewicz, 471 U.S. at 472 (citations omitted).   These requirements are not satisfied here.

The Banks, through their own voluntary investigation of their New York branches, have confirmed that none of the accounts identified by the Assignee in the Final Order and Subpoenas are maintained in New York.  Moreover, the Banks' New York branches have confirmed that they have no records relating to these accounts, including any records of wire transfers being directed to these accounts.  Chung Decl. Ex. 9; Du Decl. ¶ 14; Fu Decl. ¶ 14; Dong Decl. ¶ 14; Shi Decl. ¶ 14; Zhou Decl. ¶ 13.  In short, there is no evidence that the Bank's New York operations have any relationship to the underlying action or the subject matter of the discovery requests issued by the Assignee.

Nothing in the Assignee's submissions to the Court—including the hundreds of pages of attachments and exhibits enclosed with the default judgment, Final Order, and Subpoenas— demonstrates the existence of any connection between the underlying action and the Banks' New

York operations.  The Assignee relies instead on speculative assertions about the Banks' New York contacts that are incorrect or unsubstantiated.  For example, the Assignee incorrectly asserts that the Banks maintain retail operations in New York, even though none of the New York branches offer retail services.  Chung Decl. Exs. 5, 8; Du Decl. ¶ 7; Fu Decl. ¶ 7; Dong Decl. ¶ 7; Shi Decl. ¶ 7; Zhou Decl. ¶ 7.   The Assignee further asserts that the Banks "make use of New York financial institutions such as Citibank and Chase as correspondent accounts to effectuate the transfer of U.S. dollar denominated deposits into accounts they describe as Chinese . . . which has facilitated the movement of counterfeiting proceeds," but critically fails to identify *any* transactions that were routed in this manner.  Chung Decl. Ex. 5; Austl. & N.Z. Banking Grp. Ltd. v. APR Energy Holding Ltd. ("ANZ Bank"), 17-MC-00216 (VEC), 2017 WL 3841874 (S.D.N.Y. 2017) (rejecting jurisdiction where plaintiff was "not aware of any facts connecting ANZ Bank's New York branch office with the underlying facts of the case beyond the possibility that funds … *might have passed through New York*") (emphasis added).

Moreover, even if these contacts were substantiated, they would not rise to the level of in-forum activity that warrants specific jurisdiction because the Banks' services would not be the "proximate cause" of the trademark holder's injuries.  See SPV OSUS, Ltd. v. UBS AG, 2018 U.S. App. LEXIS 3088 at *23 (finding no basis to exercise specific jurisdiction over a foreign bank defendant where the contacts alleged between the defendants, the forum and the litigation "amount to a handful of communications and transfers of funds").

Nor are there any connections between the subject matter of the discovery requests included in the Final Order and Subpoenas and the Banks' New York operations.   The discovery requests seek information relating to accounts that the Banks have already confirmed are *not* maintained in New York, and are therefore not tailored to the Banks' operations in the forum.

See ANZ Bank, 2017 WL 3841874 at *15 (quashing subpoena due to lack of specific jurisdiction over the nonparty bank because "there [was] no nexus between [the nonparty bank's] New York contacts and the subject matter of the discovery sought by [plaintiff] pursuant to . . . the subpoena."); Leibovitch v. Islamic Republic of Iran, 852 F.3d 687 (7th Cir. 2017) (Posner, J.) (quashing subpoena due to lack of specific jurisdiction over nonparty banks that were not holding judgment debtor assets in the United States because the "the subpoenas issued in this case are not tailored to the banks' presence or activities in the United States").

### 2. **Gucci v. Weixing Li Is Not Applicable**

The Assignee asserts that the decision in Gucci v. Weixing Li ("Gucci II"), 135 F. Supp. 3d 87 (S.D.N.Y. 2015) (Sullivan, J) is controlling on the issue of specific jurisdiction, and justifies the exercise of jurisdiction here.  Chung Decl. Ex. 5; Gucci II, 135 F. Supp. 3d at 101. In Gucci II, in response to remand instructions from the Second Circuit in Gucci I, the district court re-examined its personal jurisdiction analysis and concluded that there were grounds to exercise specific jurisdiction over Bank of China.  Gucci II, 135 F. Supp. 3d at 101.  The Court relied on evidence that defendants, on seven separate occasions, had routed funds from JP Morgan Chase bank accounts in Louisiana to Bank of China accounts in Beijing, through a Bank of China correspondent account maintained at JP Morgan Chase in New York.[9]  Chung Decl. Ex. 13 at p. 3-4; Ex. 14 (Weigel Decl. Exs. 2 -8).  The court found that these correspondent account transfers were "crucial components of [defendants] counterfeiting operation," thus establishing a basis for specific jurisdiction.  Gucci II, 135 F. Supp. 3d at 94.

---

[9] Plaintiffs in Gucci II identified four other transactions where funds had been routed from defendants' Chase account in Louisiana to defendants' Bank of China account in Beijing via a Chase intermediary account in Seattle, Washington.  Chung Decl. Ex. 13 at p. 3-4; Ex. 14 (Weigel Decl.  Exs. 9-12). The Gucci II court concluded—incorrectly—that these transfers were further evidence of New York contacts that could be imputed to Bank of China.

Here, the factual situation is distinguishable because the Assignee has failed to provide the Banks (or the Court) with *any* records indicating that the Judgment Debtors routed their ill-gotten funds to China, or elsewhere, via correspondent accounts held by the Banks in New York. This critical factual distinction, alone, compels a different result from Gucci II.  Although the Assignee speculates— without any basis in fact—that similar evidence of correspondent account transfers relating to the Banks in this action must exist, the Assignee has offered no actual proof of any such transfers.  Chung Decl. Ex. 8.  The Assignee's wishful thinking cannot form the basis of the Court's exercise of personal jurisdiction over the Banks.  Schultz v. Safra Nat'l Bank, 377 F. App'x 101, 103 (2d Cir. 2010) (plaintiff's speculative assertion that the bank engaged in solicitation in New York through various other companies was insufficient to vest the trial court with personal jurisdiction).

### 3.  The Exercise Of Specific Jurisdiction Over The Banks Would Offend Traditional Notions Of Fair Play And Substantial Justice

Even where "minimum contacts" are satisfied, the Court must decline to exercise jurisdiction if it would not comport with due process.  Importantly, "the unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching long arm jurisdiction over national borders."  Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cty., 480 U.S. 102, 115 (1987); see also Sherwin-Williams Co. v. Avisep, S.A. de C.V., No. 14-CV-6227(RA), 2016 WL 354898, *7 (S.D.N.Y. Jan. 28, 2016) (declining to exercise jurisdiction over foreign defendants even where "minimum contacts" were established because such jurisdiction would be unreasonable).  Moreover, the Court should be particularly sensitive to the burdens placed on nonparties in litigation.  See Leibovitch, 188 F. Supp. 3d at 748 (N.D. Ill. 2016).

To make this determination, the Court must consider: "(1) the burden that the exercise of

jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies."  Chloe v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 164-65 (2d Cir. 2010).  Of these factors, the burden on the foreign party is the primary concern.  World-wide Volkswagen Corp. v. Woodsen, 444 U.S. 286, 292 (1980).

There is no question that the imposition of a global discovery order and asset restraint on the Banks would be overwhelmingly burdensome.  Each of the Banks maintains thousands of branches or outlets around the world (primarily in China), and only one branch in New York.[10] Du Decl. ¶ 2; Fu Decl. ¶ 2; Dong Decl. ¶ 2; Shi Decl. ¶ 2; Zhou Decl. ¶ 2.  The Banks' New York branches have already confirmed that no accounts purportedly associated with the Judgment Debtors are maintained in New York.  Chung Decl. Ex. 9; Du Decl. ¶ 14; Fu Decl. ¶ 14; Dong Decl. ¶ 14; Shi Decl. ¶ 14; Zhou Decl. ¶ 13.  Compliance with the global discovery and restraint provisions will require significant effort by the Banks outside of New York, particularly in China.   Given that the banks are not even parties to the litigation, it is particularly unreasonable that they should be subject to the significant discovery and restraint demands imposed on them here.   See Leibovitch, 188 F. Supp. at 755 ("It seems unlikely that these foreign banks would have envisioned operating a handful of branches in the United States … would subject them to discovery in a …lawsuit to which they are not a party.").

The Banks are also burdened by potential violations of foreign law if they comply with the Final Order and Subpoenas.  The Banks, as entities incorporated and headquartered in China,

---

[10] See supra note 5.

are subject to China's banking laws.  The Law of the People's Republic of China on Commercial Banks (the "Commercial Bank Law") and subsequent regulations codified and enforced by the Chinese banking authorities—principally, the People's Bank of China and the China Banking Regulatory Commission—prohibit banks from disclosing information relating to, or restraining, customer account assets without customer consent unless they are authorized to do so under applicable Chinese laws.  See Declaration of Guo Li ("Guo Decl.") ¶ 15-19.    Under the applicable regulations, the Banks may only disclose or restrain accounts at the request of a "competent organ," including the Chinese judicial authorities and other expressly authorized Chinese governmental entities.  Id. at ¶ 20-21.  Should the Banks disclose or restrain accounts at the behest of a foreign court—and without authorization from the Chinese governmental authorities—they will violate Chinese bank secrecy laws and be subject to civil fines, civil liability, administrative penalties, and criminal penalties for violating these laws.  Id. at ¶¶ 27-37. The Final Order and the Subpoenas therefore place the Banks in an impossible position arising from mutually inconsistent legal obligations: compliance with the U.S. court orders will result in violations of Chinese law and resulting penalties, whereas compliance with Chinese law raises the prospect that the Banks will be held in contempt of this Court for non-compliance with its orders and likewise subject to sanctions and fines.  This is an unreasonable burden for the Banks to bear.  See infra Section III.

On the other hand, there are few compelling reasons for this Court to exercise jurisdiction here.  Although the Court may have a general interest in enforcing trademark rights, the trademark holders have already relinquished their right to relief by assigning the default judgment to the Assignee.  And although the Assignee undoubtedly has an interest in enforcing the judgment, it cannot demonstrate that it has a particular interest in enforcing the judgment *in*

*this forum*.  The Assignee has not established that any of the Judgment Debtors resides in New York.  There is no proof that the Assignee resides in New York.  The Assignee has not identified any assets in New York against which the judgment may be enforced.  In short, the balancing test does not support the exercise of jurisdiction here.

### C.  The Assignee Is Not Entitled To Jurisdictional Discovery

The Court should also reject any request by the Assignee for jurisdictional discovery.  A party must make a *prima facie* showing that jurisdiction likely exists before it is entitled to jurisdictional discovery.  Galderma S.A. v. Peri, 15-CV-667 (VSB), 206 U.S. Dist. LEXIS 61203 (S.D.N.Y. Mar. 30, 2016) (Chung Decl. Ex. 16); ANZ Bank, 2017 WL 3841874 at 16 (plaintiff must make a "sufficient start" toward establishing personal jurisdiction before being permitted to take jurisdictional discovery).  Moreover, a plaintiff "must rely on more than 'conclusory allegations' or 'mere speculations or hopes that jurisdiction exists' so that jurisdictional discovery does not 'lead to an unwarranted fishing expedition.'"  Id. at 16 (internal citations omitted); see also Novelaire Techs. LLC v. Munters AB, 2013 WL 6182938, *13 (S.D.N.Y. 2013) ("Plaintiffs may not make 'conclusory non-fact-specific jurisdictional allegations' against a foreign defendant to justify jurisdictional discovery) (internal citations omitted)).

Here, the Assignee's allegations as to the Banks' contacts with the forum—that is, contacts that arise from or relate to the underlying dispute—do not rise above speculation.  The Assignee provides not a scintilla of support for its assertion that the Banks "facilitated the movement of counterfeiting proceeds" through the use of correspondent accounts in New York.  Chung Decl. Ex. 5.  Indeed, these same speculative allegations could be leveled against any non-U.S. financial institution with correspondent accounts in New York.  Although the Assignee states that it is "confident" that the Banks' records will show that Judgment Debtors used [the Banks'] correspondent accounts to 'effectuate wire transfers between the United States and

China,'" mere confidence alone—without more—cannot be a basis for jurisdictional discovery. Chung Decl. Ex. 8. Because these speculative statements do not amount to a *prima facie* showing of personal jurisdiction, the Assignee is not entitled to jurisdictional discovery.

## II. THE SEPARATE ENTITY RULE PRECLUDES THE ENFORCEMENT OF AN EXTRATERRITORIAL ASSET RESTRAINT AGAINST THE BANKS

The global asset restraint provisions[11] in the Final Order are also prohibited by the separate entity rule. The separate entity rule is a longstanding principle of New York[12] banking law that precludes the service of an asset restraint on one branch of a bank from having an effect on other foreign branches. In 2014, the New York Court of Appeals reaffirmed the validity of this rule, holding that it "prevents a judgment creditor from ordering a garnishee bank operating branches in New York to restrain a judgment debtor's assets held in foreign branches of the bank." Motorola Credit Corp. v. Standard Chartered Bank, 24 N.Y.3d 149, 158 (2014); Motorola Credit Corp. v. Standard Chartered Bank, 771 F.3d 160, 161 (2d Cir. 2014) (affirming holding, on the basis of New York Court of Appeals ruling upholding the separate entity rule, that funds on deposit with the branch office of a nonparty bank outside of New York were beyond the equitable jurisdiction of the court). This "firmly established principle of New York law," Motorola, 24 N.Y.3d at 160, is supported by several rationales: it (1) recognizes the importance of "international comity and the fact that any banking operation in a foreign country is necessarily subject to the foreign sovereign's own laws and regulations;" (ii) protect[s] banks

---

[11] ECF No. 62 at ¶ 4 ( "IT IS FURTHER ORDERED that … third party financial service providers … are restrained and enjoined from transferring, withdrawing or disposing of any money or other assets into or out of any accounts held by, associated with, or utilized by Judgment Debtors … regardless of whether such money or assets are held in the U.S. or abroad.").

[12] Under Rule 69 of the Federal Rules of Civil Procedure, "proceedings supplementary to and in aid of judgment execution . . . must accord with the procedure of the state where the court is located[.]" Fed. R. Civ. P. 69. The restraint is therefore subject to the requirements of New York law, including the separate entity rule.

from being subject to competing claims and the possibility of double liability; and (iii) avoids "the intolerable burden that would otherwise be placed on banks to monitor and ascertain the status of bank accounts in numerous other branches." Motorola, 24 N.Y. 3d at 159. The rule thus renders ineffective any extraterritorial application of the post-judgment restraint contemplated by the Final Order.[13]

## III.   AS A MATTER OF INTERNATIONAL COMITY, THE COURT SHOULD DECLINE TO EXERCISE JURISIDICTION OVER THE BANKS

"The doctrine of international comity 'refers to the spirit of cooperation in which a domestic tribunal approaches the resolution of cases touching the laws and interests of other sovereign states.'" Gucci I, 768 F. 3d at 139 (quoting Societe National Industrielle Aerospatiale v. U.S. Dist. Ct. for the S. Dist. of Iowa, 482 U.S. 522, 543 n. 27 (1987)). The Court must conduct a comity analysis where the exercise of personal jurisdiction over a foreign entity raises conflicts with the laws of a foreign state. See Gucci I, 768 F.3d at 138-40. Principles of international comity militate against enforcement of the Subpoenas against the Banks and in

---

[13] Enforcement of the separate entity rule would also comport with the comity requirements that must be considered in the context of extraterritorial asset restraints. The Second Circuit has endorsed a comity analysis based on Restatement (Third) of Foreign Relations Law (the "Restatement") § 403. The non-exhaustive of factors relevant to this comity analysis are: (a) the link between the activity and the territory of the regulating state; (b) the connections between the regulating state and the entity; (c) the importance of the regulation to the regulating state; (d) the existence of justified expectations that might be protected or harmed by the regulation; (e) the importance of the regulation to the international, political, legal or economic system; (f) the extent to which the regulation is consistent with the traditions of the international system; (g) the extent to which another state may have an interest in regulating the activity; and (h) the likelihood of conflict. See Restatement § 403(b).

These factors weigh against the enforcement of the restraint abroad. Factors (a), (b), (c), and (d), which collectively require the Court to weigh the interests of the "regulating state"— here, the United States—do not support the enforcement of the restraint because the U.S. has very little interest in regulating the entities or conduct at issue here. See supra Section I.B.3. Likewise, factors (g) and (h) weigh heavily against the enforcement of the restraint, given China's strong interest in upholding the customer privacy protections built into its banking laws and the conflicts faced by the Banks if they violate these laws in order to comply with the restraint.

favor of modification of the Final Order to limit its application to assets held within the United States.

### A.  There Is A True Conflict With China's Banking Laws

"[T]he threshold question in a comity analysis is whether there is in fact a true conflict between domestic and foreign law."  Societe Nationale Industrielle Aerospatiale, 482 U.S. at 555.  As discussed above, a true conflict exists here because compliance with the Final Order and the Subpoenas would require the Banks to violate Chinese banking laws that prohibit the disclosure of customer account information and the restraint of customer accounts absent authorization from the appropriate Chinese authorities.  See supra Section I.B.3.  It is unreasonable to require entities incorporated and headquartered in China to violate the laws of their home country in order to comply with their obligations as nonparties in a foreign litigation. See CE Int'l Res. Holdings, LLC v. S.A. Minerals Ltd. P'ship, 12-CV-08087 (CM)(SN), 2013 WL 2661037 (S.D.N.Y. June 12, 2013) ("[U]nder the principles of international comity, a New York court should not encroach upon another nation's sovereignty by requiring citizens to take actions within their home country that would contravene that country's laws.").

### B.  The Restatement 442 Factors Weigh In Favor of Requiring the Assignee To Seek Discovery Via The Hague Convention.

Courts in this circuit have adopted a balancing test based on the factors set forth in Restatement § 442(1)(c) to determine whether discovery abroad should be sought via the Hague Convention.  See CE Int'l Res. Holdings, 2013 WL 2661037 at *10; Tiffany (NJ) LLC v. Qi Andrew ("Andrew"), 276 F.R.D. 143, 151 (S.D.N.Y. 2011).  These factors include: (1) the importance of the information requested; (2) the degree of specificity of the request; (3) the origin of the information; (4) the availability of alternative means of securing the information; and (5) the extent to which compliance or noncompliance would undermine U.S. or foreign

interests.  <u>Chloe</u> v. <u>Queen Bee of Beverly Hills</u>, LLC, 616 F.3d 158 (2d Cir. 2010).   Two additional factors considered by the courts in this circuit include the hardship of compliance on the party from whom discovery is sought and the good faith of the party resisting discovery.  <u>See</u> <u>Andrew</u>, 276 F.R.D. at 151 (internal citation omitted).

Moreover, "[b]efore issuing an order for production of documents … or information located abroad, the court … should scrutinize a discovery request more closely than it would scrutinize comparable requests for information located in the United States."  Restatement § 442, comment a.  The Restatement § 442 analysis weighs against ordering discovery here.

**Importance of the information requested.**  The Assignee seeks information regarding Judgment Debtors and their assets, regardless of where this information or any such assets may be located.  The Assignee's purpose in obtaining this information is clear—it seeks to enforce the default judgment against any such assets it can locate—however, there is little reason to believe any information the Banks could provide would have any importance *in this jurisdiction*, given the scant (if any) connections between Judgment Debtors and this forum and the absence of evidence indicating that any assets are located in this forum.  This factor, therefore, weighs in favor of the Banks.

**Degree of specificity of the request.**  Given that the Subpoenas and the Final Order both call for the global discovery of all customer account information, it can hardly be said that the Assignee's discovery requests are "specific" or "narrowly tailored" as required under federal law. <u>See</u>, <u>e.g.</u>, Chung Decl. Ex. 11; Ex. 4. In addition to their unlimited geographic scope, the Subpoenas also require the Banks to search for information relating to the Judgment Debtors that is not limited substantively either.  The Subpoenas identify 636 Judgment Debtors for whom *each* Bank must search their records, even though Assignee has no proof that all but a handful of

the 636 Judgment Debtors utilized banking service at these Banks.[14]  See, e.g., Chung Decl. Ex.

11.   Moreover, the Judgment Debtor names identified by the Assignee are either often partial

names or common Chinese names, making it nearly impossible to identify the correct account

holder, and thus creating the risk that the Banks will disclose customer information relating to a

non-judgment debtor customer.   The Subpoenas further require the Banks to search for customer

account information relating to 778 email addresses and 2361 websites purportedly connected to

the Judgment Debtors, but frequently do not identify the Judgment Debtor corresponding to each

email address or website.   See, e.g., Chung Decl. Ex. 11, Attachments G, E. The overbreadth and

lack of specificity inherent in the Assignee's requests dictate that this factor, therefore, weighs in

favor of the Banks.[15]

   **Origin of the information.**   The Banks have confirmed that none of the accounts

identified by Assignee as those relating to the Judgment Debtors are located in their New York

branches.   Recognizing the absence of responsive information here, the Assignee has demanded

the production of documents located overseas.   Chung Decl. Ex. 8.   Because any account

information relating to Judgment Debtors is not located in this jurisdiction, this factor weighs

---

[14] No court would find it reasonable for a judgment creditor in a purely domestic judgment enforcement action to subpoena every major U.S. bank in the New York area to find out whether a judgment creditor holds assets there.  Yet that is the approach that Assignee attempts to take here by issuing extremely broad subpoenas to five of China's largest commercial banks.

[15] Even if this Court concluded that it had a basis to assert jurisdiction over the Banks and the exercise of jurisdiction would not violate principles of comity, it should nonetheless quash the Subpoenas on the grounds that they are overbroad and unduly burdensome and direct the Assignee to issue new subpoenas that are narrowly tailored to request discovery of specific customer accounts identified as being related to the Judgment Debtors.  See Rule 45 (d)(1) ("A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena.").  Additionally, the Assignee should be required to compensate the Banks for the costs of complying with any subpoena directed to them.   Concord Boat Corp. v. Brunswick Corp., 169 F.R.D. 44, 48 (S.D.N.Y. 1996) (citing Fed. R. Civ. P. 45(c)(2)(B)("an order to compel production shall protect any person who is not a party from significant expense. . . .").

heavily against the enforcement of the Subpoenas.   See, e.g., Linde v. Arab Bank, PLC, 262 F.R.D. 143, 150 (E.D.N.Y. 2009) (refusing to compel production of documents that "originated in or are located in Israel, not the United States"); Andrew, 276 F.R.D. at 152 (holding that "the actual information that plaintiffs seek is located abroad and cannot be accessed by personnel [in the New York Branches]" thus "the overseas location of this information weighs in favor of the Banks").  This factor, therefore, weighs in favor of the Banks.

**Availability of alternative means of securing the information.** The Hague Convention provides a practical and effective alternative to U.S. discovery mechanisms here, and avoids the conflicts with Chinese law that would arise if the Banks were forced to comply with the Subpoenas and the Final Order.  See CE Int'l Res. Holdings, 2013 WL 2661037, at *10-13 ("If the information sought can be easily obtained elsewhere, there is little or no reason to require a party to violate foreign law"); Linde, 262 F.R.D. at 150 (refusing to compel production from the nonparty bank when the requesting party had "alternative means of obtaining some of the account and transactional evidence" from the nonparty bank).

The Assignee has no justifiable excuse for circumventing the channels available for the procurement of discovery offered by the Hague Convention.  China and the United States are both signatories to the Hague Convention.  Guo Decl. ¶ 46.   In its 2013 response to a Hague Convention questionnaire, China indicated that it had received a steadily increasing number of Hague Convention requests and that the United States is the country from whom it has received the largest number of requests.   Guo Decl.  ¶ 48. Moreover, the rates of execution of Hague Convention requests by China are very similar to those of the United States.  Id.

Indeed, on two prior occasions involving similar requests for discovery from Chinese banks, this Court has directed that discovery should be pursued through the Hague Convention

*and the Ministry of Justice in China has responded to plaintiff's requests*.  In <u>Andrew</u>, the court directed plaintiffs to seek customer account information from Chinese nonparty banks via the Hague Convention.  <u>Andrew</u>, 276 F.R.D. at 152-56.  Plaintiffs submitted their Hague Convention request and received documents from the banks that identified new defendants, whom plaintiffs subsequently incorporated into their amended complaint.  <u>See</u> <u>Tiffany (NJ) LLC</u> v. <u>Qi Andrew</u>, 10 Civ. 9471 (KPF) (HBP), 2015 WL 3701602, *1, fn. 1 (S.D.N.Y. Jun. 15, 2015).  Likewise, in <u>Tiffany (NJ) LLC</u> v. <u>Forbse</u>, 11 Civ. 4976 (NRB), 2012 WL 1918866 (S.D.N.Y. May 23, 2012), the court ordered discovery via the Hague Convention and plaintiff received documents responsive to its subsequent Hague Convention request.  Guo Decl. ¶ 50.  There is no reason to believe that a Hague Convention request submitted in this action would not be afforded equally effective treatment.  This factor, therefore, weighs in favor of the Banks.

**National vs. foreign interest.**  China has a vital interest in upholding its bank secrecy laws, which are designed to protect customer privacy, maintain customer confidence in commercial banks, and ensure the stability of the country's financial system.  Guo Decl. ¶ 14, 25, 33, 35.   This interest is underscored by the fact that the PBOC and the CBRC have previously issued letters to this Court and to the Second Circuit expressing its opposition to the enforcement of global asset restraints and discovery orders against Chinese banks in China.  Guo Decl. ¶ 45. Deference to the Chinese government's views on the significance of its own laws is vital to the comity analysis.  <u>See</u> <u>In re Vitamin C Antitrust Litig.</u>, 837 F.3d 175, 189 (2d. Cir. 2016) (finding official statements of the Ministry of the Commerce in China regarding a commerce regulation should be accorded deference and dismissing complaint on grounds of international comity); <u>Forbse</u> 2012 WL 1918866 at *5 (acknowledging the interests asserted by the Chinese government in the letter submitted by the PBOC and CRBC); <u>Minpeco, S.A.</u> v. <u>Conticommodity</u>

Services, Inc., 116 F.R.D. 517, 525 (S.D.N.Y. 1987) (denying motion to compel where the Swiss government submitted official statements to the court showing "strong Swiss interest in bank secrecy and a familiarity with [the] litigation.").

The United States' interests are limited here.  Although the United States may have a general interest in enforcing judgments rendered by its courts, that interest is less compelling here, given the Assignee's failure to demonstrate that Judgment Debtors hold any assets in this jurisdiction.  Further, the United States has no interest in restraining or attaching assets located in foreign jurisdictions where such restraint would violate the longstanding principle of the separate entity rule.  See supra Section II.  Thus, the United States would have minimal interest in compelling foreign discovery relating to assets located abroad that are not subject to attachment or execution by this Court.

The Banks' status as nonparties further "attenuate[s] the United States' interest in enforcing discovery obligations" on them.  Forbse, 2012 WL 1918866 at *6 (citing Andrew, 276 F.R.D. at 157); Peters v. Peters, 127 A.D.3d 656, 658 (1st Dep't 2015) (finding that the interests of international comity, coupled with UBS's status as a nonparty to the litigation, weighed in favor of the application of the Hague Convention).

Finally, the United States' interests are less compelling in the context of a private civil litigation.  See Forbse 2012 WL 1918866, at *9 (noting that while the U.S. has a strong national interest in safeguarding intellectual property rights, the interest of the U.S. is "not as great in this context—in which the discovery request is initiated by a private, civil litigant—as it would be if the request were initiated by the U.S. government in an enforcement proceeding"); CE Int'l Res. Holdings, 2013 WL 2661037, at *13-14.  This factor, therefore, weighs in favor of the Banks.

**Hardship of compliance.**  As set forth supra, forcing the Banks to comply with the

Subpoenas would violate Chinese law and subject the Banks and their employees to civil and criminal liability.  Guo Decl. ¶ 27-37.  In these circumstances, particularly where the bank is a nonparty, an order requiring disclosure should not be granted.  See, e.g., Andrew 276 F.R.D at 160; Linde, 262 F.R.D. at 151 (an order compelling production of documents in violation of non-U.S. law "should be imposed on a nonparty … only in extreme circumstances.") (internal citation omitted).  This factor, therefore, weighs in favor of the Banks.

**Good faith of the party resisting discovery.** Although the Banks do not concede to the jurisdiction of this Court or the enforceability of the Final Order or Subpoenas, they have voluntarily searched records held at their New York branches for responsive information and informed Assignee of the results of their search.  Chung Decl. Ex. 9.  Furthermore, the Banks have objected at every opportunity to the global asset restraint and disclosure demands imposed on them.  Chung Decl. Exs. 2, 6, 7, 9.  Moreover, the relief sought by the Banks is narrowly focused to address the legal deficiencies of the Subpoenas and the Final Order—namely, their impermissible extraterritorial reach—while leaving in place those provisions appropriately directed towards aiding Assignee in its judgment enforcement efforts.  The Banks have not opposed the Final Order or Subpoenas simply because compliance would be inconvenient; rather, there is a genuine conflict with Chinese laws and regulations that the Banks are not able to resolve without the intervention of this Court.  This factor, therefore, weighs in favor of the Banks.

## CONCLUSION

For the foregoing reasons, the Court should quash the Subpoenas and modify the Final Order insofar as it purports to apply outside of New York.

Dated: February 14, 2018

/s/ Paul B. Carberry

Paul B. Carberry
Jacqueline L. Chung
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020
Telephone: (212) 819-8200
Facsimile: (212) 354-8113
Email: pcarberry@whitecase.com
      jacqueline.chung@whitecase.com

*Attorneys for Agricultural Bank of China,
Bank of Communications, China
Construction Bank, China Merchants Bank,
and Industrial and Commercial Bank of
China Limited*