# Exhibit 13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------x

GUCCI AMERICA, INC., BALENCIAGA : 
AMERICA INC., BALENCIAGA S.A., BOTTEGA :
VENETA INTERNATIONAL S.A.R.L., :
BOTTEGA VENETA INC., LUXURY GOODS :
INTERNATIONAL (L.G.I.) S.A. and YVES SAINT :
LAURENT AMERICA, INC. :                                    2010 Civ. 4974 (RJS)

             Plaintiffs, :

       -against- :

WEIXING LI a/k/a XIN LI, LIJUN XU a/k/a JACK :
LONDON and TING XU a/k/a JACK LONDON :
a/k/a XU TING a/k/a REBECCA XU, WENYING :
GUO, XIAOCHAO SHANG, LEI XU, FENGYUAN :
ZHAO, LIQUN ZHAO, MING ZHAO, and :
PEIYUAN ZHAO, all doing business as :
REDTAGPARTY, MYLUXURYBAGS.COM, :
KUELALA.COM, XPRESSDESIGNERS.COM, :
XPRESSDESIGNER.NET, and DESIGNER :
HANDBAGS; ABC COMPANIES; :
and JOHN DOES, :

           Defendants. :

------------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION
FOR AN ORDER COMPELLING BANK OF CHINA'S PRODUCTION OF
DOCUMENTS REQUESTED IN PLAINTIFFS' 2010 AND 2011 SUBPOENAS**

Robert L. Weigel
Howard S. Hogan
Anne M. Coyle
GIBSON, DUNN & CRUTCHER, LLP
200 Park Avenue
New York, New York 10166
(212) 351-4000

*Counsel for Plaintiffs*

New York, New York
December 1, 2014

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................ ii

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF FACTS ................................................................................. 7

    A.   BOC Conducts Extensive Activities in the United States .......................... 7

    B.   Bank of China's New York Contacts Relate Directly to this Litigation ....... 8

    C.   BOC Consented to Personal Jurisdiction in New York Courts .................. 9

    D.   Chinese Litigation Confirms BOC's Right to Freeze Accounts ................. 10

ARGUMENT .................................................................................................... 12

I.   BOC'S CONTACTS WITH NEW YORK GIVE RISE TO SPECIFIC
    JURISDICTION TO ENFORCE THE SUBPOENAS ....................................... 12

    A.   BOC Has Sufficient Minimum Contacts with the Forum .......................... 12

    B.   BOC Cannot Meet Its Burden of Showing that this Court's Exercise of Specific
        Jurisdiction Is Unreasonable ............................................................. 16

II.   MINIMUM CONTACTS, WHILE PRESENT, ARE UNNECESSARY TO
     EXERCISE SPECIFIC JURISDICTION OVER BOC .................................... 19

    A.   BOC Is Subject to Personal Jurisdiction under Fed. R. Civ. P. 45 ............ 20

    B.   BOC Consented to Personal Jurisdiction in New York ............................ 22

III.   THE BEIJING JUDGMENT SUPPORTS THIS COURT'S COMITY ANALYSIS .......... 22

CONCLUSION ................................................................................................. 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*,
480 U.S. 102 (1987) .................................................................................. 17, 18, 19

*Ballard v. Savage*,
65 F.3d 1495 (9th Cir. 1995) ...................................................................... 16, 17, 18

*Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*,
305 F.3d 120 (2d Cir. 2002) ................................................................................. 16

*Bank of China N.Y. Branch v. 42-31 Colden St. Corp.*,
No. 1929784/2014 (N.Y. Sup. Ct.) ........................................................................ 10

*Bank of China N.Y. Branch v. NBM LLC*,
No. 01 Civ. 4024 (S.D.N.Y.) ................................................................................ 10

*Bank of China N.Y. Branch v. Wu Towers LLC*,
No. 1764123/2013 (N.Y. Sup. Ct.) ........................................................................ 10

*Bank of China v. Chase Manhattan Bank*,
No. 98 Civ. 4787 (S.D.N.Y.) ................................................................................ 10

*Bank of China v. Good Fortune*,
No. 97 Civ. 7664 (S.D.N.Y.) ................................................................................ 10

*Bank of China v. L.J. Global, Inc.*,
No. 95 Civ. 300 (S.D.N.Y.) ................................................................................ 10

*Bank of China v. St. Paul Mercury Ins. Co.*,
No. 03 Civ. 9797 (S.D.N.Y.) ................................................................................ 10

*Bank of China v. Sub-Zero, Inc.*,
No. 02 Civ. 4457 (S.D.N.Y.) ................................................................................ 10

*Bank of China v. Wang*,
No. 97 Civ. 5208 (S.D.N.Y.) ................................................................................ 10

*Bank of China v. Wu Towers LLC*,
No. 0024298/2012 (N.Y. Sup. Ct.) ........................................................................ 10

Burger King Corp. v. Rudzewicz,
471 U.S. 462 (1985) .................................................................................... 12, 16

*Burlington N. R.R. Co. v. Woods*,
480 U.S. 1 (1987) ............................................................................................ 20

*Burnham v. Super. Ct. of Cal.*,
495 U.S. 604 (1990) ........................................................................................ 21

*Chanel Inc. v. Ting Xu*,
No. 07 CV 1783 (S.D. Cal. Oct. 22, 2008) ............................................................ 11

## TABLE OF AUTHORITIES
(continued)

Page(s)

*Chloe v. Queen Bee of Beverly Hills, LLC*,
  616 F.3d 158 (2d Cir. 2010) ........................................................ 12, 17

*Conference of State Bank Supervisors v. Conover*,
  715 F.2d 604 (D.C. Cir. 1983) ............................................................ 19

*Cusumano v. Microsoft Corp.*,
  162 F.3d 708 (1st Cir. 1998) ............................................................... 19

*Daimler AG v. Bauman*,
  134 S. Ct. 746 (2014) ......................................................................... 3

*Dietrich v. Bauer*,
  No. 95 Civ. 7051, 2000 WL 1171132 (S.D.N.Y. Aug. 16, 2000) ........................................... 20

*Eikenberry v. Celsteel Ltd.*,
  No. 13 Civ. 4661, 2013 WL 5308028 (S.D.N.Y. Sept. 19, 2013) ........................................... 22

*Elmaliach v. Bank of China Ltd.*,
  No. 09 Civ. 2130, 2010 WL 1172829 (S.D.N.Y. Mar. 26, 2010) ..................................... 19, 22

*First Am. Corp. v. Price Waterhouse LLP*,
  154 F.3d 16 (2d Cir. 1998) ............................................................. 20, 21

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
  131 S. Ct. 2846 (2011) ..................................................................... 13

*Gucci Am., Inc. v. Bank of China*,
  768 F.3d 122 (2d Cir. 2014) ...................................................... passim

*Hay Grp., Inc. v. E.B.S. Acquisition Corp.*,
  360 F.3d 404 (3d Cir. 2004) ............................................................... 20

*Hickman v. Taylor*,
  329 U.S. 495 (1947) ......................................................................... 19

*In re Application to Enforce Admin. Subpoenas Duces Tecum of SEC v. Knowles*,
  87 F.3d 413 (10th Cir. 1996) ............................................................. 13

*In re Edelman*,
  295 F.3d 171 (2d Cir. 2002) ............................................................... 21

*In re First Am. Corp.*,
  184 F.R.D. 234 (S.D.N.Y. 1998) ....................................................... 19

*In re Jee*,
  104 B.R. 289  (Bankr. C.D. Cal. 1989) ............................................. 15

*In re Maranthe*,
  459 B.R. 850 (Bankr. M.D. Fla. 2011) ............................................. 13

*Knowlton v. Allied Van Lines, Inc.*,
  900 F.2d 1196 (8th Cir. 1990) ........................................................... 22

**TABLE OF AUTHORITIES**
(continued)

Page(s)

*Licci ex rel. Licci v. Lebanese Canadian Bank,*
   *SAL*, 732 F.3d 161 (2d Cir. 2013) ................................................................. 8, 13, 14

*Linde v. Arab Bank, PLC,*
   706 F.3d 92 (2d Cir. 2013) ................................................................................ 23

*Louis Vuitton Malletier, S.A. v. Ting Xu,*
   No. 09-60034-CIV (S.D. Fla. June 23, 2009) ................................................... 11

*Metro. Life Ins. Co. v. Robertson-Ceco Corp.,*
   84 F.3d 560 (2d Cir. 1996) .......................................................................... 12, 16

*N. Light Tech., Inc. v. N. Lights Club,*
   236 F.3d 57 (1st Cir. 2001) ............................................................................... 21

*Nowak v. Tak How Invs., Ltd.,*
   94 F.3d 708 (1st Cir. 1996) ................................................................... 16, 17, 18

*O'Connor v. Sandy Lane Hotel Co., Ltd.,*
   496 F.3d 312 (3d Cir. 2007) ........................................................................ 16, 17

*Ocepek v. Corp. Transp., Inc.,*
   950 F.2d 556 (8th Cir. 1991) ............................................................................. 22

*Pa. Fire Ins. Co. v. Gold Issue Mining & Milling Co.,*
   243 U.S. 93 (1917) ............................................................................................ 22

*Phillips Petroleum Co. v. Shutts,*
   472 U.S. 797 (1985) ..................................................................................... 20, 21

*R. Siskind & Co., Inc. v. Ashworth, Inc.,*
   No. 95 Civ. 7707, 1996 WL 167722 (S.D.N.Y. Apr. 10, 1996) ........................ 22

*R.R. Donnelley & Sons Co. v. Jet Messenger Serv., Inc.,*
   No. 03 C 7823, 2004 WL 1375402 (N.D. Ill. May 25, 2004) ........................... 22

*SEC v. Lines Overseas Mgmt., Ltd.,*
   No. 04-302, 2007 WL 581909 (D.D.C. Feb. 21, 2007) ..................................... 21

*Tiffany (NJ) LLC v. Forbse,*
   No. 11 Civ. 4976 (NRB), 2012 WL 3686289 (S.D.N.Y. Aug. 23, 2012) .......... 6, 24

*Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.,*
   682 F.3d 292 (4th Cir. 2012) ............................................................................. 13

*Wiwa v. Royal Dutch Petroleum Co.,*
   226 F.3d 88 (2d Cir. 2000) ................................................................................ 17

*Wultz v. Bank of China Ltd.,*
   11 Civ. 1266 (SAS) (S.D.N.Y) .......................................................................... 24

*Wultz v. Bank of China Ltd.,*
   942 F. Supp. 2d 452 (S.D.N.Y. 2013) ................................................................. 6

**TABLE OF AUTHORITIES**
(continued)

**Statutes**

12 C.F.R. § 204.3(g) ................................................................................................ 9

12 C.F.R. § 28.21 ......................................................................................... 5, 10, 22

12 U.S.C. § 3102(b) .............................................................................................. 22

28 U.S.C. § 2027 ................................................................................................... 20

**Other Authorities**

Barkley Clark & Barbara Clark, *The Law of Bank Deposits, Collections and
Credit Cards* (2013) .......................................................................................... 8

Charles Alan Wright et al., *Federal Practice and Procedure* (3d ed. 1998) ......................... 19, 20

Ryan W. Scott, Note, *Minimum Contacts, No Dog: Evaluating Personal Jurisdiction for
Nonparty Discovery*, 88 Minn. L. Rev. 968 (2004) ................................ 13

**Rules**

Fed. R. Civ. P. 45 ................................................................................................ 20

Upon remand, Plaintiffs Gucci America, Inc., Balenciaga America Inc., Balenciaga S.A., Bottega Veneta International S.a.r.l., Bottega Veneta Inc., Luxury Goods International (L.G.I.) S.A., and Yves Saint Laurent America, Inc. (collectively, "Plaintiffs") respectfully submit this memorandum of law in support of their motion for an order compelling nonparty Bank of China ("BOC" or the "Bank") to produce account documents relating to *all* Defendants as called for in the July 16, 2010 and February 23, 2011 subpoenas ("Subpoenas"). *See* Weigel Decl. Exs. 37-38. To resolve BOC's claim that there was ambiguity in this Court's August 23, 2011 order, Plaintiffs respectfully request that this Court make it even clearer that it is ordering production of documents related to all Defendants, including: Wenying Guo, Xiaochao Shang, Lei Xu, Fengyuan Zhao, Liqun Zhao, Ming Zhao, and Peiyuan Zhao. *See* ECF 116. As set forth in greater detail below, under both the well-settled case law of this Circuit and the clear guidance set forth in the Second Circuit's opinion in this case, this Court has full jurisdiction to order the relief requested.

## PRELIMINARY STATEMENT

Defendants are serial counterfeiters who—in defiance of multiple court orders—sold millions of dollars of counterfeits of Plaintiffs' merchandise in the United States. Defendants ran their illegal operation in the United States from California, where at least three Defendants resided. Defendants transacted over $2 million in fraudulent sales through just one U.S. payment processor. Defendants needed to transfer their ill-gotten U.S. dollars to China to pay for their counterfeit products and to secret their assets offshore. Accordingly, U.S. dollars were transferred to BOC through BOC's correspondent account at Chase Bank—headquartered in New York—and through BOC's participation in other wire services located in New York.

Plaintiffs sought discovery from BOC to uncover the volume of Defendants' sales and to determine what they did with their illegal proceeds—funds that in equity belong to Plaintiffs. This

Court ordered BOC to comply with Plaintiffs' Subpoena, recognizing that "the documents requested in the Subpoena are important to the instant litigation." ECF 75 at 7. Rejecting BOC's argument that Chinese bank secrecy law shields the Bank from complying with the same discovery obligations owed by any bank in New York, this Court found, among other things, that the United States' "powerful interest" in protecting intellectual property outweighed China's demonstrably limited interest in bank secrecy and that the Bank's purported exposure to liability for producing the requested information was "unduly speculative." *Id.* at 11-12.

On appeal, the Second Circuit affirmed this Court's approach, holding that its comity analysis under Section 442 of the Restatement (Third) of Foreign Relations Law was proper. *See Gucci Am., Inc. v. Bank of China*, 768 F.3d 122, 141 (2d Cir. 2014). The U.S. Government, as invited *amicus curiae*, agreed that "there was no reversible error in the *Gucci* court's order compelling BOC to comply with Gucci's document subpoena." 2d Cir. Dkt. 319 at 22.

The Second Circuit also affirmed this Court's authority to impose a prejudgment asset freeze on Defendants, holding that the Court only needed (and had) personal jurisdiction over Defendants to do so. *Gucci Am.*, 768 F.3d at 125-26, 129, 141-42. The Circuit found that this Court had the "inherent equitable authority" to issue the freeze to preserve Plaintiffs' right to an accounting under the Lanham Act, observing that "a trademark infringer is required in equity to account for and yield up his gains to the true owner." *Id.* at 130-31.

The Second Circuit reversed this Court's finding of civil contempt and its imposition of civil monetary sanctions on BOC, finding that the scope of the required production as set forth in this Court's August 23, 2011 order was not sufficiently clear. *Id.* at 144. Given the absence of any record concerning the issue of personal jurisdiction over BOC, the Second Circuit also remanded the case for this Court to consider whether it has personal jurisdiction over BOC to enforce its orders in

light of the newly decided *Daimler AG v. Bauman*, 134 S. Ct. 746 (2014), which held that a foreign defendant is not subject to general personal jurisdiction in a forum in which it is not "at home." *See Gucci Am.*, 768 F.3d at 134-35.

The Circuit described the test for asserting specific jurisdiction over a nonparty as assessing "the connection between the nonparty's contacts with the forum and the order at issue" and then determining "whether exercising jurisdiction for the purposes of the order would comport with fair play and substantial justice." *Id.* at 137. Recognizing the lesser burden imposed by a subpoena, the court noted that "a person who is subjected to liability ... far from home may have better cause to complain of an outrage to fair play than a nonparty." *Id.* at 137 n.16. Regarding the Subpoenas, "[i]n evaluating BOC's contacts with the forum, the district court may wish to consider whether the relevant contacts for this inquiry are with the United States, rather than with New York." *Id.* at 142.

Applying the Circuit's guidance, it is clear that this Court can exercise specific jurisdiction to order BOC to comply with the Subpoenas. There is a strong nexus between BOC's contacts in New York and the United States and the discovery sought by Plaintiffs concerning the BOC accounts in which Defendants deposited their counterfeiting proceeds.

BOC was the conduit for the transactions by which Defendants shipped their illegal profits to China and each of these transactions occurred through BOC's banking mechanisms *in New York* (or elsewhere in the United States). BOC asserts that its New York branches are "***the principal U.S. dollar clearing channel of Bank of China*** Group worldwide." Weigel Decl. Ex. 1. Defendants wired at least $330,000 in funds from their accounts at Chase to accounts at BOC by transferring money from the counterfeiters' Chase accounts to BOC's Head Office's account at Chase. By opening a correspondent account at Chase in New York, BOC's Head Office facilitated transfers directly from Chase's customers, including Defendants, to BOC's customers. That is the pathway

that BOC used to move the counterfeiters' proceeds into BOC accounts:

- On December 24, 2009, a transfer of $50,000 from Defendant Ting Xu's Chase Account was made to BOC's Head Office's account at Chase ("BOC's Chase Account") (Defendant Lei Xu beneficiary).  Weigel Decl. Ex. 2.

- On January 11, 2010, a transfer of $50,000 from Defendant Ting Xu's Chase Account was made to BOC's Chase Account (Defendant Peiyuan Zhao beneficiary).  *Id.* Ex. 3.

- On January 14, 2010, a transfer of $50,000 from Defendant Ting Xu's Chase Account was made to BOC's Chase Account (Defendant Xu Ting beneficiary).  *Id.* Ex. 4.

- On March 16, 2010, a transfer of $50,000 from Defendant Ting Xu's Chase Account was made to BOC's Chase Account (Defendant Liqun Zhao beneficiary).  *Id.* Ex. 5.

- On March 19, 2010, a transfer of $50,000 from Defendant Ting Xu's Chase Account was made to BOC's Chase Account (Defendant Wenying Guo beneficiary).  *Id.* Ex. 6.

- On June 10, 2010, a transfer of $50,000 from Defendant Ting Xu's Chase Account was made to BOC's Chase Account (Defendant Fengyuan Zhao beneficiary).  *Id.* Ex. 7.

- On June 25, 2010, a transfer of $30,000 from Defendant Ting Xu's Chase Account  was made to BOC's Chase Account (Defendant Xin Li beneficiary).  *Id.* Ex. 8.

In addition, BOC used Chase's head office in New York as the intermediary bank to effect at

least $200,000 in wire transfers from their Chase accounts to BOC accounts:

- On June 30, 2009, Defendant Ting Xu initiated a wire transfer of $50,000 from Chase to BOC (Defendant Wenying Guo beneficiary), using Chase's head office in New York as the intermediary bank.  *Id.* Ex. 9.

- On July 10, 2009, Defendant Ting Xu initiated a wire transfer of $50,000 from Chase to BOC (Defendant Ming Zhao beneficiary), using Chase's head office in New York as the intermediary bank.  *Id.* Ex. 10.

- On July 27, 2009, Defendant Lijun Xu initiated a wire transfer of $50,000 from Chase to BOC (Defendant Liqun Zhao beneficiary), using Chase's head office in New York as the intermediary bank.  *Id.* Ex. 11.

- On October 19, 2009, Defendant Ting Xu initiated a wire transfer of $50,000 from Chase to BOC (Defendant Xiaochao Shang beneficiary), using Chase's head office in New York as the intermediary bank.  *Id.* Ex. 12.

BOC's deliberate and recurring use of New York banking facilities are sufficient to establish

minimum contacts over BOC to enforce Subpoenas seeking discovery concerning the counterfeiters'

attempts to hide their ill-gotten gains. Once minimum contacts are established, specific jurisdiction is presumed reasonable, and BOC bears the heavy burden of overcoming that presumption. The five-factor analysis applied in this Circuit makes clear that BOC cannot meet its burden: (1) As a corporate entity that has multiple offices in New York and *initiated* numerous lawsuits in this Court and elsewhere in New York, BOC's burden in litigating in New York is minimal; (2) both New York and the United States have a manifest interest in providing Plaintiffs with effective relief; (3) Plaintiffs have an indisputable interest in obtaining relief in this Court; (4) this dispute will be most efficiently resolved in this Court, since it is familiar with the facts and procedural history of this litigation; and (5) the critical role of Rule 45 subpoenas in federal civil litigation, as well as Congress's strong concern for ensuring uniform treatment of foreign and domestic banks, confirm the reasonableness of exercising specific jurisdiction.

In addition to its numerous in-forum contacts, which are directly relevant to the discovery Plaintiffs seek, BOC is subject to this Court's specific jurisdiction for two independent reasons:

*First*, BOC was properly served under Rule 45, which is presumptively constitutional, and can therefore be required to produce documents within 100 miles of where it regularly conducts business. *Second*, under federal law, BOC was required to agree to subject itself to service of process in New York to obtain a banking license. Accordingly, BOC has consented to personal jurisdiction in New York. *See* 12 C.F.R. § 28.21 ("A foreign bank operating at any Federal branch or agency is subject to service of process at the location of the Federal branch ….").

Finally, the Second Circuit *affirmed* this Court's application of the comity factors set forth in Section 442 of the Restatement (Third) of Foreign Relations Law, *see Gucci Am.*, 768 F.3d at 141. The judgments of the Beijing Intermediate Court ("Beijing Judgment") and Beijing High Court that BOC subsequently invoked on appeal further *support* this Court's conclusion that the strong U.S.

interest in enforcing the Lanham Act trumps the Bank's "speculative" claims of hardship in complying with China's bank secrecy law. ECF 75 at 13. BOC has insisted throughout this litigation that Chinese law forbade it both from freezing Defendants' accounts and from disclosing information about them. However, when BOC decided it was strategically advantageous to do so, BOC publicly filed the Beijing Judgment in the Second Circuit. Not only does the Beijing Judgment reveal the existence of *30 separate bank accounts* and transactions (most of which had *never been revealed* during the prior proceedings before this Court), but it also reveals the value of the contents of those accounts.

Critically, the Beijing Judgment revealed for the first time the existence of accountholder agreements that *permit BOC to unilaterally freeze Defendants' accounts*. BOC's failure to produce account opening documents (even for the two accounts it admitted were specifically identified in Plaintiff's 2010 Subpoena), combined with its failure to inform the Court of contractual provisions that allow BOC to freeze customer accounts, is evidence of BOC's bad faith. The Bank's bad faith further weighs in favor of ordering production under the comity analysis applied in this District. Indeed, Judges Buchwald and Scheindlin have both recently found that "BOC has shown bad faith toward its discovery obligations" by making "'a conscious decision to selectively disclose information ... only as it suits BOC's litigation interests.'" *Wultz v. Bank of China Ltd.*, 942 F. Supp. 2d 452, 468 (S.D.N.Y. 2013) (quoting *Tiffany (NJ) LLC v. Forbse*, 11 Civ. 4976 (NRB), 2012 WL 3686289, at *6 (S.D.N.Y. Aug. 23, 2012)). Not only did BOC have the ability to freeze the counterfeiters' accounts (contrary to its representations to this Court), BOC has actually done so. BOC informed the Second Circuit that it had obtained a court order freezing Defendants' accounts.

In sum, BOC has deliberately availed itself of the benefits of conducting business in New York—including facilitating the very transactions by which Defendants shipped the proceeds of their

crimes to China—and is obliged to comply with its discovery obligations.

## STATEMENT OF FACTS

This Court is well versed in the facts surrounding BOC's failure to comply with this Court's orders compelling BOC to produce documents indisputably critical to Plaintiffs' claims. *See* ECF 75, 98, 116. The following recitation provides facts bearing on the remaining issues.

### A.    BOC Conducts Extensive Activities in the United States

BOC "conducts its banking operations in the United States through five federally licensed branches" located in New York, Chicago, Los Angeles, and San Francisco. Weigel Decl. Ex. 13 at 4. BOC owns real property in New York. *Id.* Ex. 14. BOC both owns and holds numerous mortgages on real property in New York. *Id.* Ex. 15.

BOC is a "member bank of the Federal Reserve System" and performs clearance and settlement services with its accounts at the Federal Reserve System. *Id.* Ex. 16. BOC identified its New York branches as a "Material Entity," defined as a "foreign office ... that is significant to the activities of a Critical Operation or Core Business Line" of the Bank. *Id.* Ex. 13 at 6.

According to BOC, its New York branches are "***the principal U.S. dollar clearing channel of Bank of China*** Group worldwide" and "***the No. 1 choice of U.S. dollar wire transfers to and from China*** by many financial institutions, corporations and individuals." Weigel Decl. Ex. 1 (emphasis added). Those branches are "designated as the U.S. dollar funding pool within the Bank's global operations" and "arrange[] U.S. dollar funding for other overseas branches and [BOC's] Head Office." *Id.* Ex. 13 at 8. They further "provide[] funding operations to U.S. branches[,] provide[] U.S. dollar funding … to other Bank of China foreign branches and affiliates," and "manage[] the liquidity for other U.S. branches." *Id.* at 7.

In addition, BOC "has also established direct correspondent relationships with hundreds of

banks in the U.S." *Id.* Ex. 17.[1]  These correspondent accounts allow BOC to effectuate wire transfers directly through book transfers into BOC's New York bank accounts.

### B.    Bank of China's New York Contacts Relate Directly to this Litigation

The Subpoenas seek information about BOC accounts connected with Defendants' counterfeiting operation.  Weigel Decl. Exs. 37-38.  As discussed above, Defendants used BOC to effect at least 11 transfers totaling more than $500,000, and each transfer involved BOC's activities in New York.  These transactions are likely just the tip of the iceberg, as Defendants generated over $2 million in sales in the U.S.  *See* ECF 9-11.  Any additional transfers of U.S. dollars to any of Defendants' many accounts at BOC necessarily involved either BOC's correspondent accounts in New York or wire transfer networks located in New York in which BOC is a member.[2]

BOC "is a real time on-line member bank of" CHIPS and Fedwire, which the Bank calls "the two major payment systems in the U.S."  Weigel Decl. Ex. 17.  By its own estimate, BOC "ranks around 10th by volume among 52 member banks of the CHIPS."  *Id.*  BOC offers its U.S.-China wire transfer services through its New York branches by implementing a payment system that "is fully automated and connected to the SWIFT, CHIPS and FEDWIRE systems."  *Id.*

---

[1]  "A correspondent bank account is a domestic bank account held by a foreign bank, similar to a personal checking account used for deposits, payments and transfers of funds," and "facilitate[s] the flow of money worldwide."  *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 165 n.3 (2d Cir. 2013).

[2]  "A wire transfer is not really a direct transfer of funds from [originator] to [beneficiary].  Instead, it is a series of transactions.  With the completion of each payment order, a bank becomes obligated to pay funds to the next link in the chain, culminating with the duty of the beneficiary's bank to pay the beneficiary."  3-17 Barkley Clark & Barbara Clark, *The Law of Bank Deposits, Collections and Credit Cards* ¶ 17.01 (2013).  "In other words, a wire transfer is a series of contractual obligations to pay rather than a direct exchange of funds from buyer to seller."  *Id.*  "The common denominator is that the originator directly transmits an instruction to a bank either to make payment to the beneficiary or to instruct some other bank to make the payment; the payment from originator to beneficiary occurs when the beneficiary's bank becomes obligated to make the payment."  *Id.*

**CHIPS**. "[T]he company that owns and operates CHIPS is located in New York, and CHIPS payment messages typically are routed through communications and computer equipment located in New York." *Id.* Ex. 18 at 13. BOC is a member of and stakeholder in CHIPS. *See id.* at 46, 51-52. BOC and other CHIPS "members jointly maintain a pre-funded balance account (CHIPS account) on the books of the Federal Reserve Bank of New York." *Id.* Ex. 19.[3]

**Fedwire**. Financial institutions such as BOC that "hold an account with a Federal Reserve Bank are eligible to participate in … Fedwire." *Id.* Ex. 20. For Fedwire fund transfers, "a sender, receiving bank or beneficiary is located in the Federal Reserve District as determined under the procedure described in … 12 C.F.R. [§ 204.3(g)(1)]." *Id.* Ex. 21 ¶ 4.1. BOC is deemed located in New York anytime it sends or receives wire transfer messages via Fedwire.[4]

BOC's self-proclaimed dominance in U.S-China fund transfers is wholly dependent on its extensive use of New York-based correspondent accounts and wire services, which were also the specific means by which Defendants transferred dollars to BOC.

### C.     BOC Consented to Personal Jurisdiction in New York Courts

By opening its New York branches under federal regulations, BOC consented to service of process in New York. *See* 12 C.F.R. § 28.21. In addition, on numerous occasions, BOC obtained

---

[3]   Further, as a CHIPS member, BOC was "required to execute the CHIPS Participant Agreement," under which "[t]he rights and obligations of Participants and all other parties to a funds transfer of which a CHIPS payment message is a part, arising from the funds transfer or from [CHIPS] Rules, shall be governed by the laws of the State of New York." Weigel Decl. Ex. 18 at 12.

[4]   12 C.F.R. § 204.3(g) provides that a U.S. branch of a foreign bank "is located in the Federal Reserve District that contains the location specified in the institution's charter, organizing certificate, license, or articles of incorporation"—here, New York. *See id.* Ex. 22. In addition, to participate in Fedwire, BOC had to execute a "Foreign Banking Institution Account Agreement." *Id.* Ex. 23 § 2.6. That agreement provides (among other things) that it "shall be construed in accordance with … the laws of the state of New York to the extent such laws are not inconsistent with Federal Law." *Id.* Ex. 24 ¶ 1.

the benefits of New York law by bringing suits in New York State and federal courts.[5]

BOC also conditions use of its online banking services on execution of an internet banking services agreement, which provides that "[a]ny disputes arising from or related to this Agreement … or the Online Services provided to you by Bank of China shall be governed by the laws of the State of New York" and that "[a]ll actions, suits, or other proceedings in connection with the transactions contemplated by this Agreement shall be brought … in the City, County, and State of New York." Weigel Decl. Ex. 25 ¶ 12.I ("[T]he Bank hereby irrevocably submit[s] to the jurisdiction of" New York courts).[6]

### D. Chinese Litigation Confirms BOC's Right to Freeze Accounts

BOC claimed throughout this litigation that Chinese law categorically prohibits it from freezing Defendants' accounts or disclosing information regarding those accounts. *See, e.g.*, ECF 35, 37, 67, 90. BOC was equally emphatic that requiring it to do so would subject it to significant fines and other civil liabilities. *See, e.g.*, ECF 35 at 10; ECF 37 ¶¶ 19-26. BOC also represented to this Court that "[n]one of the Defendants alleged to be a customer of BOC has consented to ... the

---

[5] *See, e.g.*, *Bank of China v. Sub-Zero, Inc.*, 02 Civ. 4457 (S.D.N.Y.); *Bank of China v. St. Paul Mercury Ins. Co.*, 03 Civ. 9797 (S.D.N.Y.); *Bank of China N.Y. Branch v. NBM LLC*, No. 01 Civ. 4024 (S.D.N.Y.); *Bank of China v. Chase Manhattan Bank*, 98 Civ. 4787 (S.D.N.Y.); *Bank of China v. Good Fortune*, 97 Civ. 7664 (S.D.N.Y.); *Bank of China v. Wang*, 97 Civ. 5208 (S.D.N.Y.); *Bank of China v. L.J. Global, Inc.*, 95 Civ. 300 (S.D.N.Y.); *Bank of China N.Y. Branch v. 42-31 Colden St. Corp.*, No. 1929784/2014 (N.Y. Sup. Ct.); *Bank of China N.Y. Branch v. Wu Towers LLC*, No. 1764123/2013 (N.Y. Sup. Ct.); *Bank of China v. Wu Towers LLC*, No. 0024298/2012 (N.Y. Sup. Ct.).

[6] BOC's use of wire networks evinces similar consent to personal jurisdiction. For example, the Fedwire "Foreign Banking Institution Account Agreement" provides that BOC "irrevocably agrees that any legal action or proceeding arising out of or relating to th[e] agreement may be brought in Federal or State courts in the [U.S.] where the head office of the Reserve Bank is located." Weigel Decl. Ex. 24 ¶ 4. In addition, BOC's authorization to participate in Fedwire requires that BOC "submits to jurisdiction in Federal or State courts in the United States of America where the head office(s) of any Reserve Bank at which [the bank] maintains a Master Account is located." Weigel Decl. Ex. 26 ¶ 4.

restraint of its assets." ECF 35 at 7. However, the Beijing Judgment filed by BOC with the Second

Circuit disproves these assertions. *See* 2d Cir. Dkt. 291-2.[7]

The Beijing Judgment reveals that BOC conditioned its banking services on a previously

undisclosed account services agreement with Defendants that gives BOC the contractual right to

freeze Defendants' accounts ***unilaterally*** if BOC suspects Defendants are "engaging in … illegal or

criminal activities." *Id.* at 21; *see also id.* at 18-19. Amazingly, as if BOC did not wish to prevail,

the Beijing Judgment indicates BOC "failed to produce evidence to prove that [Defendants]"

violated the agreement or "that [BOC] had justifiable reason … to cease to provide services to

[Defendants]." *Id.* at 21-22. All BOC had to do was provide evidence that it had a justifiable reason

to suspect its customers of counterfeiting. In light of the uncontroverted evidence in the record of

the Defendants' counterfeiting—including two prior final judgments entered against Defendants for

counterfeiting luxury brand goods[8]—BOC could easily have made this showing. For some reason it

did not, and the Chinese court ordered BOC to unfreeze Defendants' accounts and to pay a court fee

of *less than twelve dollars*. *Id.* at 22; *see also* Second Declaration of Donald Clarke ("Second Clarke

Decl."), filed herewith (providing expert analysis of these points).

However, after receiving this convenient ruling against it, BOC did not actually let the

counterfeiters empty their accounts. Instead, BOC filed a separate suit in China against certain

Defendants, seeking compensation for costs that it incurred in this litigation. 2d Cir. Dkt. 334. BOC

---

[7] Notably, BOC never filed a properly authenticated judgment. Although BOC dubs the December 2013 judgment "fully-authenticated," 2d Cir. Dkt. 291-1, the notarial certificate attached to the copy of the judgment BOC filed merely certifies that the copy is an exact duplicate of a document provided by BOC to the notary, 2d Cir. Dkt. 291-2 at 23 ("Issue under notarization: True and Exact Photocopy"). Accordingly, Plaintiffs do not concede the admissibility of the Beijing Judgment under Fed. R. Evid. 901.

[8] *See* ECF 53-1 (Final Default J., *Chanel Inc. v. Ting Xu*, No. 07 CV 1783 (S.D. Cal. Oct. 22, 2008)); ECF 53-2 (Final Default J., *Louis Vuitton Malletier, S.A. v. Ting Xu*, No. 09-60034-CIV (S.D. Fla. June 23, 2009)).

sought and obtained a freeze of the funds in those Defendants' accounts to preserve a potential award of damages to BOC. *Id.* Clearly BOC was able to produce sufficient evidence to persuade the Chinese court to freeze the Defendants' accounts when it suited BOC's interests.

The Beijing Judgment further belies BOC's claims of absolute bank secrecy law. The Chinese court heard the case "in public" and rendered a decision that BOC filed publicly with the Second Circuit. 2d Cir. Dkt. 291-2 at 17. That decision identified Defendants' 30 accounts and transactions with BOC with an approximate value of over $450,000.[9] *Id.* at 17-18. In fact, "a list of the bank accounts and funds deposited therein [was] *attached*" *to the Chinese Civil Complaint for that case*. 2d Cir. Dkt. 185-5. BOC has never produced this information.[10]

## ARGUMENT

## I.    BOC'S CONTACTS WITH NEW YORK GIVE RISE TO SPECIFIC JURISDICTION TO ENFORCE THE SUBPOENAS

"The due process test for personal jurisdiction has two related components: the 'minimum contacts' inquiry and the 'reasonableness' inquiry." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567 (2d Cir. 1996); *see also Chloe v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 164 (2d Cir. 2010). Both prongs are met here.

### A.    BOC Has Sufficient Minimum Contacts with the Forum

Due process "is satisfied if [BOC] has 'purposefully directed' [its] activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985). "Where activity in the

---

[9] The transactions identified by the Chinese court totaled RMB 2,956,732.56, which is approximately $ 468,408.12 in U.S. dollars. Weigel Decl. Ex. 27 (World Bank 2012 rate).

[10] BOC asked the Second Circuit take judicial notice of documents pertaining to the Defendants' Chinese suit *without their attachments*. *See* 2d Cir. Dkt. 185-2.

forum state is the genesis of the dispute, this [nexus] is easily satisfied." *Tire Eng'g & Distrib., LLC v. Shandong Linglong Rubber Co., Ltd.*, 682 F.3d 292, 303 (4th Cir. 2012).

In the context of a Rule 45 subpoena, the Court may consider the relevance of "contacts with the United States as a whole." *Gucci Am.*, 768 F.3d at 142 n.23 (citing cases). The proper nexus is the nonparty's contacts and whether they "involve activities that are the very source of the … interest in the [nonparty]," or are related to or give rise to the subpoena enforcement proceedings. *In re Application to Enforce Admin. Subpoenas Duces Tecum of SEC v. Knowles*, 87 F.3d 413, 418 (10th Cir. 1996) (subpoena on foreign citizen).[11] A nonparty's contacts are sufficient to support the exercise of specific jurisdiction where they relate to matters sought to be investigated. *Id.* at 418-19; *In re Maranthe*, 459 B.R. 850, 859 (Bankr. M.D. Fla. 2011). ("[T]he appropriate inquiry is whether the witness has a nexus to the activities being investigated in the underlying legal proceeding.").

This makes good sense: broadly speaking, specific jurisdiction (and the minimum contacts inquiry) focuses on "an affiliation between the forum and the underlying *controversy*" and "issues deriving from, or connected with, the very *controversy* that establishes jurisdiction." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) (emphasis added); *see also Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 169-70 (2d Cir. 2013). In the context of a Rule 45 subpoena, the "controversy" between a plaintiff and the subpoenaed nonparty is the discovery request, and whether the nonparty should have to comply.

BOC's in-forum contacts clearly evince purposeful availment of the benefits of New York and the United States, and are unquestionably related to the information sought in the Subpoenas.

---

[11]  *See also Gucci Am.*, 768 F.3d at 141-42; Ryan W. Scott, Note, *Minimum Contacts, No Dog: Evaluating Pers. Juris. for Nonparty Discovery*, 88 Minn. L. Rev. 968, 1005-06 (2004).

The Second Circuit held that a district court may exercise specific jurisdiction over a foreign bank that maintains a correspondent bank account with a New York bank to process U.S.-dollar-denominated wire transfers, where those transfers "have been used as an instrument to achieve the very wrong alleged." *Licci*, 732 F.3d at 171. "It should hardly be unforeseeable to a bank that selects and makes use of a particular forum's banking system that it might be subject to the burden of [proceedings] in that forum for [information] related to, and arising from, that use." *Id.* at 171-72. Indeed, repeatedly processing "U.S.-dollar-denominated wire transfers" in New York constitutes "purposeful availment of New York's dependable and transparent banking system, the dollar as a stable and fungible currency, and the predictable jurisdictional and commercial law of New York and the United States." *Id.* at 171.

Here, the Subpoenas seek information related to Defendants' transfers of counterfeiting proceeds—in U.S. dollars—to Defendants' BOC accounts in China. BOC's contacts with these transfers are significant and deliberate. Defendants' book transfers moved funds to BOC's *Head Office's* correspondent account at Chase. And Defendants' wire transfers to BOC, made via SWIFT, used Chase as the intermediary bank and required use of either BOC's correspondent account at Chase, or settlement through Fedwire or CHIPS in New York. Here, the burden imposed on BOC—response to a subpoena—is less than in *Licci*, and BOC's contacts are greater. BOC not only processes wire transfers through a correspondent account in the forum, but also has long-established branch offices in New York, which identify themselves as "the No. 1 choice of U.S. dollar wire transfers to and from China" by individuals. Weigel Decl. Ex. 1. To effectuate such transfers, BOC purposely and deliberately uses wire networks located in New York. BOC is a member and financial stakeholder in CHIPS, an American LLC located in *New York*, and uses communications and equipment located in *New York* to effectuate wire transfers. In addition, BOC maintains a pre-

funded balance account on the Federal Reserve Bank of *New York*'s books to participate in CHIPS. BOC ranks around 10th by volume among CHIPS's 52 member banks, indicating frequent use of New York facilities.[12]

Moreover, the few documents BOC did produce reveal several instances where Defendants withdrew funds from their Chinese BOC accounts in U.S. Dollars. *Id.* Exs. 28-36. BOC's New York branches are "the principal U.S. dollar clearing channel" of BOC "worldwide" (*id.* Ex. 1) and are "designated as the U.S. dollar funding pool within the Bank's global operations," *id.* Ex. 13 at 8. Those branches thereby provide "U.S. dollar funding … to other Bank of China foreign branches and affiliates," as well as to "BOC's head office." *Id.* at 7-8. For Defendants to be able to withdraw funds in U.S. Dollars from China, the BOC branch or office from which Defendants made those withdrawals had to have U.S. Dollars on hand. The responsibility for providing such funding laid squarely with BOC's branches in New York.

Finally, other courts have held that the relevant jurisdictional test for a nonparty witness is whether the subpoenaed documents requested relate to the litigation. *See, e.g.*, *In re Jee*, 104 B.R. 289, 294 (Bankr. C.D. Cal. 1989). Plaintiffs' Subpoenas readily meet this nexus. As this Court recognized, "the documents requested in the Subpoena[s] are important to the instant litigation."

---

[12]  Similarly, by voluntarily participating in Fedwire, BOC agreed that for purposes of that service, both the Bank and its branches are located in *New York*. Under Fedwire regulations, even when the Bank is solely a recipient of a wire transfer message for Defendants' Chinese BOC accounts, BOC is deemed to have received those payment messages in *New York*. And when BOC receives such messages through Fedwire, it has received that wire from the Federal Reserve Bank of *New York*. Furthermore, BOC has repeatedly acknowledged that its use of CHIPS and Fedwire is governed by federal and/or New York law. BOC has on numerous occasions consented to jurisdiction in federal or state courts in New York, including in its online banking relationships with accountholders, its participation in Fedwire, and its filing of at least 10 lawsuits asking a New York court to award it affirmative relief. Having purposefully and repeatedly availed itself of the benefits of both New York and the United States, in ways that directly pertain to the information sought in the Subpoenas, BOC cannot seriously contend that it lies beyond the specific personal jurisdiction of this Court.

ECF 75 at 7.

### B. BOC Cannot Meet Its Burden of Showing that this Court's Exercise of Specific Jurisdiction Is Unreasonable

"The existence of minimum contacts makes jurisdiction presumptively constitutional." *O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 324 (3d Cir. 2007); *accord Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995). BOC therefore bears a "heavy burden of rebutting th[is] strong presumption in favor of jurisdiction," *Ballard*, 65 F.3d at 1500, and must present "a compelling case that the presence of some other considerations would render jurisdiction unreasonable," *Metro. Life Ins. Co.*, 84 F.3d at 568 (2d Cir.). It cannot do so.

Both the Supreme Court and the Second Circuit have instructed courts "to consider five factors in evaluating reasonableness: (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 129 (2d Cir. 2002) (Sotomayor, J.); *see also Burger King*, 471 U.S. at 477. These factors clearly weigh in favor of Plaintiffs here.

**Burden on BOC**. "[T]aken alone," BOC's burden of litigating or producing documents in New York "falls short of overcoming the plaintiff's threshold showing of minimum contacts" due to "the conveniences of modern communication and transportation." *Metro. Life Ins. Co.*, 84 F.3d at 574. Since "[i]t is almost always inconvenient and costly for a party to litigate in a foreign jurisdiction," BOC "must demonstrate that exercise of jurisdiction in the present circumstances is onerous in a special, unusual, or other constitutionally significant way." *Nowak v. Tak How Invs., Ltd.*, 94 F.3d 708, 718 (1st Cir. 1996). This BOC cannot do. Personal jurisdiction over a foreign

corporation such as BOC does not unfairly burden it since, among other things, BOC "control[s] a vast, wealthy, and far-flung business empire which operates in most parts of the globe," has "a physical presence in the forum state, ha[s] access to enormous resources, face[s] little or no language barrier, [and] ha[s] litigated in this country on previous occasions." *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 99 (2d Cir. 2000). "When minimum contacts have been established, often the interests of the plaintiff and the forum in the exercise of jurisdiction will justify even the serious burdens placed on the alien [nonparty]." *Asahi Metal Indus. Co., Ltd. v. Superior Court of Cal.*, 480 U.S. 102, 114 (1987) (plurality opinion). Here, because BOC regularly litigates in New York by choice (*see supra* at n.5), it has no cause to complain.

**Interest of Forum State**. The court's "task is not to compare the interest of the two sovereigns—the place of the injury and forum state—but to determine whether the forum … *has* an interest." *Nowak*, 94 F.3d at 718. New York and the United States each have "a manifest interest in providing effective means of redress for its residents." *Chloe*, 616 F.3d at 173; *accord O'Connor*, 496 F.3d at 325. Indeed, the U.S. has a strong "interest in enforcing the Lanham Act and providing robust remedies for its violation." *Gucci Am.*, 768 F.3d at 140. Here, several Plaintiffs reside in New York and/or the United States, and both fora have a clear interest in providing them with effective relief. And even if "an exercise of jurisdiction would conflict with [a foreign nation's] sovereignty," that is "by no means controlling." *Ballard*, 65 F.3d at 1501. Here, this Court already considered and rejected such concerns—and the Second Circuit agreed. ECF 75 at 11-12, *aff'd in relevant part, Gucci Am.*, 768 F.3d at 141.

**Plaintiff's Interest in Relief**. This factor "necessarily favors" Plaintiffs, since several of them reside in New York and/or the United States. *See Chloe*, 616 F.3d at 173. As this Court previously found, "the documents sought by the Subpoena are likely to provide the most fruitful

avenue for discovering the identity of additional infringers." ECF 75 at 6. In addition, "information related to Defendants' bank accounts is likely to provide the most effective measure of the revenues generated by Defendants in contravention of United States trademark laws." *Id.* This factor further weighs in favor of Plaintiffs since "there exists substantial doubt that [plaintiffs] could adequately resolve the dispute in a foreign forum." *Nowak*, 94 F.3d at 718; ECF 75 at 10 (the Hague Convention is "not a viable alternative method of securing the information Plaintiffs seek.").

**Efficient Administration of Justice**. "This factor focuses on the judicial system's interest in obtaining the most effective resolution of the controversy." *Nowak*, 94 F.3d at 718. And it weighs in favor of plaintiff's choice of forum where, as here, "the court there already is familiar with the facts and procedural history of the litigation." *Ballard*, 65 F.3d at 1502. This factor "weigh[s] against a foreign jurisdiction where it is far from clear that there will be any judicial resolution, let alone the most effective judicial resolution." *Nowak*, 94 F.3d at 719.

**Policy Considerations**. This factor "calls for a court to consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction." *Asahi Metal*, 480 U.S. at 115. In this case, BOC can do nothing more than state policy concerns that duplicate the arguments this Court has already found to be insufficient. ECF 75 at 13. Furthermore, BOC cannot rely on international comity considerations to argue that exercising personal jurisdiction would be unreasonable. *See, e.g.*, *Ballard*, 65 F.3d at 1501. By contrast, several policies weigh in favor of exercising personal jurisdiction here, including the U.S.'s strong "interest in enforcing the Lanham Act." *Gucci Am.*, 768 F.3d at 140.

*First*, "Federal Rule 45 has a close relation to the proper functioning of the discovery rules," 9A Charles Alan Wright et al., *Federal Practice and Procedure* § 2452 (3d ed. 1998), which ensure that "civil [litigation] in the federal courts" is not "carried on in the dark." *Hickman v. Taylor*, 329

U.S. 495, 501 (1947). Permitting nonparty foreign banks like BOC, with numerous in-forum contacts, to evade Rule 45 would unquestionably debilitate civil litigation.

*Second*, Congress enacted the International Banking Act, 12 U.S.C. § 3101 et seq., "which permits a foreign bank to establish a federal branch—such as BOC's New York branches," because it sought to "achiev[e] uniformity of treatment" and "competitive parity between domestic and foreign banks." *Elmaliach v. Bank of China Ltd.*, 09 Civ. 2130, 2010 WL 1172829, at *10 (S.D.N.Y. Mar. 26, 2010); *see also Conference of State Bank Supervisors v. Conover*, 715 F.2d 604, 606 (D.C. Cir. 1983). Any domestic bank with BOC's in-forum contacts would be subject to this Court's specific jurisdiction; Congress's purposes in allowing BOC to open its branches here demand the same result.

*Third*, a key consideration in the Rule 45 context is "whether the nonparty actually has an interest in the outcome of the case." *In re First Am. Corp.*, 184 F.R.D. 234, 241 (S.D.N.Y. 1998). Even if nonparties subject to Rule 45 subpoenas generally have "no dog in th[e] fight," *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998), BOC undeniably does because it seeks to take for itself what Plaintiffs are entitled to receive under the Lanham Act: Defendants' counterfeiting proceeds. *See* ECF 334. Remarkably, BOC claims that it is entitled to those funds to recoup expenses it would have avoided if it complied with this Court's orders. BOC's chicanery is no basis to evade this Court's personal jurisdiction.

## II. MINIMUM CONTACTS, WHILE PRESENT, ARE UNNECESSARY TO EXERCISE SPECIFIC JURISDICTION OVER BOC

"An examination of minimum contacts is not always necessary to determine whether a … court's assertion of personal jurisdiction is constitutional," *Asahi Metal*, 480 U.S. at 121 (Stevens, J., concurring), since "[t]here are several contexts in which … the criteria set forth in International Shoe and its progeny does not apply." Wright et al., *supra*, § 1067.3.

## A.    BOC Is Subject to Personal Jurisdiction under Fed. R. Civ. P. 45

Rule 45 empowers this Court to order BOC's compliance with the Subpoenas, and specifies the burden that must be met for the Court to do so: (1) the subpoena must be properly served, and (2) the materials requested must be "within 100 miles of where a person ... regularly transacts business."    Fed. R. Civ. P. 45(b), (c)(2)(A).    Rule 45 has "presumptive validity under ... constitutional ... constraints." *Burlington N. R.R. Co. v. Woods*, 480 U.S. 1, 6 (1987). *Daimler* has not undone that presumption, nor did *Daimler* address jurisdiction over a nonparty in connection with a subpoena.[13]  BOC falls squarely under the Rule's requirements:  "Rule 45 draws no distinction between parties and non-parties concerning the scope of discovery," *First Am. Corp.*, 154 F.3d at 21, and BOC's regular transaction of business in the forum is beyond debate. Consequently, under Rule 45, BOC "may be required to produce materials in its possession, custody, or control." *Dietrich v. Bauer*, 95 Civ. 7051, 2000 WL 1171132, at *2 (S.D.N.Y. Aug. 16, 2000). BOC can be compelled to produce documents located in China because it is "immaterial that the documents sought may be located abroad, as the test for production of documents is control, not location." *Id.*; *accord Hay Grp., Inc. v. E.B.S. Acquisition Corp.*, 360 F.3d 404, 411-12 (3d Cir. 2004) (Alito, J.).

Subjecting BOC to Rule 45's requirements raises no due process concerns.  "[T]he extent of ... due process protection ... depend[s] upon the quality and nature of the activity in relation to the fair and orderly administration of the laws." *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 806 (1985).  Where a nonparty is subject to "fewer burdens" than an absent defendant in a litigation, "[t]he Due Process Clause need not and does not afford [them] as much protection

---

[13]  In fact, both the Supreme Court and Congress reaffirmed the continuing force of Rule 45 in the December 31, 2013 amendments to that rule,  *see* 28 U.S.C. § 2027, which not only left in place the 100 mile provision but also expanded the district courts' authority to hold a person in contempt for failure to comply, *see* Fed. R. Civ. P. 45(g).

20

from … jurisdiction … as it does … [defendants]." *Id.* at 811. As a result, this Court "may exercise jurisdiction … even though [the nonparty] may not possess the minimum contacts with the forum which would support personal jurisdiction over a defendant." *Id.* Such nonparties are entitled only to "minimal due process protections." *Id.* at 811-12.

The Second Circuit has repeatedly recognized that a nonparty subject to a Rule 45 subpoena faces substantially lesser burdens than a civil defendant. *See In re Edelman*, 295 F.3d 171, 179 (2d Cir. 2002); *First Am. Corp. v. Price Waterhouse LLP*, 154 F.3d 16, 20 (2d Cir. 1998). In fact, the Supreme Court "has never held that personal jurisdiction over a nonparty witness requires a showing of minimum contacts like that required for a defendant." *SEC v. Lines Overseas Mgmt., Ltd.*, No. 04-302, 2007 WL 581909, at *2 n.8 (D.D.C. Feb. 21, 2007). Rule 45 also provides nonparties with safeguards exceeding the "minimal" protections required by due process. *See, e.g.*, *In re Edelman*, 295 F.3d at 178. Accordingly, because BOC, as a nonparty, is not subject to burdens that give rise to the minimum contacts analysis, it should not be allowed to escape the implications of its extensive contacts with New York.

Further, BOC is subject to "transient" or "tag" jurisdiction in this Court as a result of its physical presence in the jurisdiction, which has always been sufficient to obtain jurisdiction for purposes of Rule 45. *See, e.g.*, *First Am. Corp.*, 154 F.3d at 20-21. The Supreme Court held that "[a]mong the most firmly established principles of personal jurisdiction in American tradition is that the courts of a State have jurisdiction over nonresidents who are physically present in the State." *Burnham v. Super. Ct. of Cal.*, 495 U.S. 604, 610 (1990). Although the Supreme Court did not address the question of whether tag jurisdiction applies to corporations, other courts have so held.[14]

---

[14] *See, e.g.*, *N. Light Tech., Inc. v. N. Lights Club*, 236 F.3d 57, 63 & n.10 (1st Cir. 2001) (corporation); *First Am. Corp.*, 154 F.3d at 20-21 (partnership); *Eikenberry v. Celsteel Ltd.*, 13

21

### B. BOC Consented to Personal Jurisdiction in New York

BOC established its New York branches under the International Banking Act, 12 U.S.C. § 3101 et seq., which subjects BOC to certain "rules, regulations, and orders … includ[ing] provisions for service of process." *Elmaliach*, 2010 WL 1172829, at *9 (quoting 12 U.S.C. § 3102(b)). Those regulations include 12 C.F.R. § 28.21, which provides that "[a] foreign bank operating at any Federal branch or agency is subject to service of process at the location of the Federal branch or agency," *id.*, here New York. By submitting to service of process per the requirements of a federal statute, BOC has consented to personal jurisdiction here.[15]

## III. THE BEIJING JUDGMENT SUPPORTS THIS COURT'S COMITY ANALYSIS

The Second Circuit expressly affirmed this Court's comity analysis under Section 442 of the Restatement, and rejected BOC's contentions to the contrary. *Gucci Am.*, 768 F.3d at 141. This Court held that a balancing of the comity factors "strongly weigh[ed] in favor" of ordering BOC to comply with the Subpoena because: (a) the requested documents are important to this litigation; (b) Plaintiff's document requests were sufficiently specific; (c) requests under the Hague Convention "are not a viable alternative method of securing the information Plaintiffs seek"; (d) the counterfeiters' deliberate use of BOC "to thwart Congress and the reach of the Lanham Act," outweighed "China's limited national interest in this case"; and BOC's purported exposure to liability in China was "unduly speculative." ECF 75 at 7, 10-12, 13. The new Chinese court decisions tip the comity factors even further towards ordering compliance.

---

Civ. 4661, 2013 WL 5308028, at *2 (S.D.N.Y. Sept. 19, 2013) (corporation); *R. Siskind & Co., Inc. v. Ashworth, Inc.*, 95 Civ. 7707, 1996 WL 167722, at *3 (S.D.N.Y. Apr. 10, 1996) (same).

[15] *See Ocepek v. Corp. Transp., Inc.*, 950 F.2d 556, 557 (8th Cir. 1991); *Knowlton v. Allied Van Lines, Inc.*, 900 F.2d 1196, 1199 (8th Cir. 1990); *R.R. Donnelley & Sons Co. v. Jet Messenger Serv., Inc.*, No. 03 C 7823, 2004 WL 1375402, at *4 (N.D. Ill. May 25, 2004); *cf. Pa. Fire Ins. Co. v. Gold Issue Mining & Milling Co.*, 243 U.S. 93, 94-95 (1917).

*First*, the Beijing Judgment reinforces this Court's finding that "the documents requested in the Subpoena[s] are important to the instant litigation." *Id.* at 7. That judgment revealed the existence of accountholder agreements that permitted BOC to unilaterally freeze Defendants' accounts. But BOC never produced these agreements despite their unmistakable importance to this case. The Chinese judgment also revealed that Defendants had ***30 accounts and transactions*** with BOC, most of which were previously unknown to Plaintiffs. Given the Second Circuit's confirmation that Plaintiffs are entitled to Defendants' profits, and this Court's finding that the account documents are "the most effective measure of the revenues generated by Defendants," *id.* at 6, the requested documents remain critically important.

*Second*, the Beijing Judgment lays bare BOC's bad faith in resisting discovery and concealing deliberate actions that it told this Court it could not take. BOC deliberately withheld the critical accountholder agreements. BOC has also failed to provide attachments from *court filings* underlying the Beijing Judgment that contained information identifying Defendants' accounts and transactions (*see supra* n.10)—documents that were part of the public record (*See* Second Clarke Decl. ¶ 20) and responsive to the Subpoenas. BOC's bad faith weighs in favor of ordering production. *See, e.g., Linde v. Arab Bank, PLC*, 706 F.3d 92, 110 (2d Cir. 2013). Moreover, BOC's new Chinese suit against Defendants (*see* 2d Cir. Dkt. 334) reveals that BOC was able to obtain a court-ordered asset freeze when BOC chose to pursue Defendants' assets for itself, in contrast to its feeble defense in the suit leading to the Beijing Judgment.

*Third*, the Beijing Judgment, far from subjecting BOC to "severe" sanctions, ordered it to pay costs of only $12 dollars, undermining BOC's claims of hardship. This is in keeping with the lack of any punishment in connection with BOC's production of documents in this case and in subsequent cases. Indeed, BOC produced documents in *Tiffany (NJ) LLC v. Forbse*, 11 Civ. 4976 (NRB)

(S.D.N.Y.) and in *Wultz v. Bank of China Ltd.*, 11 Civ. 1266 (SAS) (S.D.N.Y) pursuant to court orders *after* submission of the Chinese Regulator's Letter that it claimed proved the Bank was subject to sanctions. *See* ECF 90 at 4-6.

Although the Beijing Judgment provides a rote quotation concerning Chinese banking privacy laws that this Court already considered and found unpersuasive, *see* 2d Cir. Dkt. 291-2 at 17, BOC's willingness to reveal the information contained in the Beijing Judgment for its own strategic purposes confirms this Court's finding that any potential harm to BOC is speculative. Professor Donald Clarke, previously found to be persuasive and credible (ECF 75 at 9), confirms that BOC's new submissions prove that BOC faces no real jeopardy from compliance with the Subpoenas and, in fact, that BOC has a private contractual remedy of which, for some reason, it refuses to avail itself. As set forth in the Second Clarke Declaration, the Beijing Judgment does not provide "grounds for believing there is a strong state policy in favor of bank secrecy. It is a simple contract case. The court found nothing unlawful about the contract, which gave BOC very broad rights over its customers' information in certain circumstances." Second Clarke Decl. ¶¶ 14-18.

In sum, this Court correctly concluded that "a balancing of the Restatement factors strongly weighs in favor of ordering the Bank to comply with the Subpoena." ECF 75 at 13. The Beijing Judgment and the Chinese court's asset freeze confirm this Court's decision.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter an order: (a) compelling production of *all* documents requested in the 2010 and the 2011 Subpoenas; (b) clarifying that "Defendants" covers Wenying Guo, Xiaochao Shang, Lei Xu, Fengyuan Zhao, Liqun Zhao, Ming Zhao, and Peiyuan Zhao; and that all relevant accounts include all accounts in the name of any Defendants; and (c) awarding such relief as this Court may deem just and proper.

Dated:  New York, New York
      December 1, 2014

                    Respectfully submitted,

                    GIBSON, DUNN & CRUTCHER, LLP

                    By:      */s/ Robert L. Weigel*
                            Robert L. Weigel
                            Howard S. Hogan
                            Anne M. Coyle
                            GIBSON, DUNN & CRUTCHER, LLP
                            200 Park Avenue
                            New York, New York 10166
                            (212) 351-4000

                            *Counsel for Plaintiffs Gucci America, Inc.,*
                            *Balenciaga America Inc., Balenciaga S.A.,*
                            *Bottega Veneta International S.a.r.l.,*
                            *Bottega Veneta Inc., Luxury Goods*
                            *International (L.G.I.) S.A. and Yves Saint*
                            *Laurent America, Inc.*