# Exhibit B-14

Case 1:13-cv-08942-KMK-HBP Document 23-15 Filed 05/24/18 Page 2 of 14

隐藏关联资料 下载 打印 页内检索 字体 关闭

法院案例 法律法规 法学论著 合同文本 法律文书 法律咨询 法学辞典 统计数据 金融法库 法

法意周刊 政报文告 审判参考 立法资料 行政执法 法务流程 司法考试 法 律 人 WTO法律 光

【案例名称】 王永胜与中国银行股份有限公司南京河西支行
【审理法院】 南京市鼓楼区人民法院
【判决日期】 2008-11-26

【正文】

【 审理法院 】 南京市鼓楼区人民法院
【 判决时间 】 2008年11月26日

原告：王永胜，男，36岁，汉族，江苏天日建设集团有限公司经理，住南京市鼓楼区雅瑰园。

被告：中国银行股份有限公司南京河西支行，住所地：南京市鼓楼区草场门大街。

负责人：逄南宁，该支行行长。

原告王永胜因与被告中国银行股份有限公司南京河西支行(以下简称中行河西支行)发生储蓄存款合同纠纷，向江苏省南京市鼓楼区人民法院提起诉讼。

原告王永胜诉称：2007年10月9日，原告在被告中行河西支行处申领中行借记卡一张，卡号为6013821200011990595。2007年12月2日晚，原告到中国银行(以下简称中行)下关热河南路分理处自助银行柜员机(ATM)上取款5000元，并查询存款余额为463 942．2元。2007年12月5日下午，原告在中行江宁分理处准备取款10 000元时，被柜台营业员告知卡内余额为2800余元。当晚原告再次查询，发现卡内又少了2000元。原告当即向南京市公安局鼓楼分局(以下简称鼓楼公安分局)报案。经公安机关侦查，查明有3名男子在中行下关热河南路分理处自助银行的自动门上安装了存储式读卡装置，并在取款机上安装了探头，籍此获取了原告借记卡的密码及信息资料，然后复制两张伪卡在北京、江西等地取款或消费463 942．2元。后犯罪分子之一、案外人汤海仁被公安机关抓获，并被南京市鼓楼区人民法院以(2008)鼓刑初字第241号刑事判决书认定犯信用卡诈骗罪，判处有期徒刑十年六个月，并处罚金人民币100 000元，该刑事判决已发生法律效力。上述事件发生后，原告多次与中行南京下关支行(以下简称中行下关支行)交涉。2008年1月24日原告与中行下关支行达成协议，由中行下关支行先行借给原告232 000元用于发放部分民工工资，待问题查明后再进一步解决。原告与被告之间存在储蓄存款合同关系，被告有义务保护原告的资金安全。由于被告对自助柜员机的安全管理存在漏洞，给犯罪分子留下可乘之机，导致原告卡内存款63 942．2元被犯罪分子用伪造的借记卡取走或消费，对此原告并无过失。请求判令被告按照双方签订的储蓄存款合同支付原告存款463 942．2元，以及上述款项自2007年12月4日至实际支付之日止的利息。

原告王永胜提供以下证据：

1．南京市鼓楼区人民法院(2008)鼓刑初字第241号刑事判决书一份，用以证明犯罪分子汤

海仁因犯信用卡诈骗罪，被依法判处有期徒刑十年六个月，并处罚金人民币 100 000 元的事实；

2．6013821200011990595 号借记卡交易清单一份，用以证明涉案借记卡账户交易情况；

3．2008 年 1 月 24 日原告与中行下关支行达成的协议一份，用以证明中行下关支行先行借给原告 232 000 元用于支付民工工资的事实。

被告中行河西支行辩称：首先，南京市鼓楼区人民法院(2008)鼓刑初字第 241 号刑事判决书确认犯罪金额为 428 709．50 元，对在北京从涉案借记卡账户中分 14 笔支取的 35 140 元未予认定，该 14 笔款项不排除原告王永胜自行支取的可能，被告只认可刑事判决所认定的犯罪金额。其次，原告借记卡内的资金短少是由于犯罪行为所致，对于犯罪行为给原告造成的资金损失，被告不应承担民事责任。被告在为原告提供服务的过程中严格遵守监管部门的相关规定，所设自助银行网点均有符合规范的安全防范设施，被告亦通过多种形式提醒储户妥善保管借记卡密码。原告借记卡账户内的存款被盗，是因原告没有妥善保管密码，原告自身具有过错。综上，请求法院在查明事实的基础上依法判决。

被告中行河西支行提交以下证据：

1．南京市公安局 2007 年 12 月 24 日颁发的安全防范设施合格证一份，中行向储户公示的取款机操作指南、柜员机界面提示的内容，用以证明被告履行了保护储户存款安全的义务；

2．借记卡业务登记表(附管理协议书及章程)，用以证明原告王永胜办理借记卡的具体情况，以及被告已经合理提示“持卡人应妥善保管密码，因密码泄露而造成的风险及损失由持卡人本人承担”的事实；

3．银行对账单、交易明细表各一份，用以证明涉案借记卡账户的交易情况；

4．中行下关支行向人民法院出具的申请书一份，用以证明中行下关支行同意其出借给王永胜的 232 000 元作为中行河西支行的出借款在本案中予以抵扣。

南京市鼓楼区人民法院依法调取了以下证据：

1．鼓楼公安分局对案外人汤海仁、原告王永胜的询问笔录，用以证明汤海仁等人通过安装读卡器、具备摄像功能的 MP4 等方式，窃得原告涉案借记卡信息及密码后复制两张假卡提取或消费的事实；

2．中行北京天缘公寓支行的交易明细表，用以证明卡号为 6013821200011990595 的借记卡于 2007 年 12 月 3 日 22 时 22 分 9 秒至 2007 年 12 月 4 日 0 时 33 分 53 秒期间在北京天缘公寓支行所管理的自助银行柜员机上 14 次取款 35 000 元，发生异地取款手续费 140 元的事实。

南京市鼓楼区人民法院依法组织了质证。被告中行河西支行对原告王永胜提供的证据 1、2、3 的真实性均无异议，但认为上述证据均与被告应否承担民事责任没有关联性。原告对被告提供的证据 1、2、3、4 的真实性均无异议，但认为证据 1、2 不能证明中行提供的自助银行交易场所能够保障储户的资金安全。南京市鼓楼区人民法院经质证，对原、被告提供证据的真实性均予以认定。

南京市鼓楼区人民法院经审理查明：

2007 年 10 月 9 日，原告王永胜在被告中行河西支行办理长城电子借记卡(以下简称借记卡)一张，卡号为 6013821200011990595。该借记卡为无存折卡，王永胜在业务登记表中进行了签名，业务登记表背面附有管理协议书及借记卡章程，载有“持卡人应妥善保管密码，因密码泄露而造成的风险及损失由持卡人本人承担”的内容。

2007 年 12 月 2 日晚，案外人汤海仁等五人到中行热河南路支行的自助银行网点，在门口刷卡处安装读卡器，在柜员机上部安装了具备摄像功能的 MP4。当日 19 时 5 分，原告王永胜持借记卡在该自助银行柜员机取款 5000 元。汤海仁等遂窃取到了原告借记卡的卡号、信息及密码，并据此复制两张假银行卡。2007 年 12 月 3 日，汤海仁等三人持其中一张卡到南昌，其余两人持另一张卡到北京，分别实施信用卡诈骗犯罪行为。

2007 年 12 月 6 日，王永胜发现其借记卡内存款短少后，即到中行下关支行打印交易明细并向鼓楼公安分局报案。鼓楼公安分局立案后，于 2008 年 1 月 11 日将案外人汤海仁抓获并于当天对其实施刑事拘留。2008 年 5 月 22 日，南京市鼓楼区检察院以汤海仁犯信用卡诈骗罪向南京

市鼓楼区人民法院提起公诉。法院经审理认定，2007年12月4日、5日，汤海仁等人以复制的银行卡在南昌、余干等地刷卡消费及取款合计428 709．50元。据此，南京市鼓楼区人民法院于2008年6月5日作出(2008)鼓刑初字第241号刑事判决书，判决汤海仁犯信用卡诈骗罪，判处有期徒刑十年六个月，并处罚金人民币100 000元。该刑事判决已发生法律效力。

此外，中行河西支行提供的查询明细显示：卡号为6013821200011990595的借记卡于2007年12月3日在中行江宁大市口支行柜面被取款50 000元，于当日19时58分在中行光华路自助银行柜员机被取款5000元。原告王永胜认可该两次取款均系其本人支取。南京市鼓楼区人民法院依法调取的2007年12月22日中行北京天缘公寓支行提供的交易明细显示：卡号为6013821200011990595的借记卡于2007年12月3日22时22分9秒至2007年12月4日0日寸33分53秒期间在该支行所管理的自助银行柜员机上14次取款35 000元，发生异地取款手续费140元。上述14笔交易所涉35 140元在(2008)鼓刑初字第241号刑事判决书中未被确认为案外人汤海仁的犯罪金额。

2008年1月24日，原告王永胜与中行下关支行签订一份协议，约定：中行下关支行先借给原告232 000元帮助原告解决发放民工工资的问题，如原告对中行下关支行提起民事诉讼且法院判决中行下关支行对原告赔偿，则中行下关支行有权以协议项下对原告的债权进行抵偿。协议签订当日，中行下关支行即支付原告232 000元。本案审理中，中行下关支行出具申请一份，同意其出借给原告的232 000元作为被告中行河西支行的出借款在本案中予以抵扣。2008年3月12日，原告以中行下关支行为被告向南京市下关区人民法院提起诉讼，同年4月30日，南京市下关区人民法院裁定该案中止审理，同年6月5日，南京市鼓楼区人民法院就信用卡诈骗案作出刑事判决。后原告考虑到诉讼主体资格的问题，向南京市下关区人民法院撤回起诉，并以中行河西支行为被告向南京市鼓楼区人民法院提起本案诉讼。

南京市鼓楼区人民法院依法主持了调解，因意见分歧较大，双方当事人未能达成调解合意。

本案的争议焦点是：犯罪分子通过在自助银行网点门口刷卡处安装读卡器、在柜员机上部安装摄像装置的方式，窃取原告王永胜借记卡的卡号、信息及密码，复制假的银行卡，将借记卡账户内的钱款支取、消费的事实发生后，与原告建立储蓄存款合同的被告中行河西支行应否对前述被犯罪分子支取及消费的款项承担支付责任。

南京市鼓楼区人民法院认为：

原告王永胜在被告中行河西支行办理了无存折借记卡，即与中行河西支行建立了储蓄合同关系。根据储蓄合同的性质，中行河西支行负有按照原告的指示，将存款支付给原告或者原告指定的代理人，并保证原告借记卡内存款安全的义务。《中华人民共和国商业银行法》(以下简称商业银行法)第二十九条第一款规定："商业银行办理个人储蓄存款业务，应当遵循存款自愿、取款自由、存款有息、为存款人保密的原则。"为存款人保密，保障存款人的合法权益不受任何单位和个人的侵犯，是商业银行的法定义务。商业银行的保密义务不仅是指银行对储户已经提供的个人信息保密，也包括为到银行办理交易的储户提供必要的安全、保密的环境。商业银行设置自助银行柜员机，是一项既能方便储户取款，又能提高自身工作效率并增加市场竞争力的重要举措，银行亦能从中获取经营收益。对自助银行柜员机进行日常维护、管理，为在自助银行柜员机办理交易的储户提供必要的安全、保密环境，也是银行安全、保密义务的一项重要内容，这项义务应当由设置自助银行柜员机的银行承担。根据本案查明的事实，案外人汤海仁等五人通过在中行热河南路支行自助银行网点门口刷卡处安装读卡器、在柜员机上部安装具有摄像功能的MP4的方式，窃取了王永胜借记卡的卡号、信息及密码，复制了假的银行卡，并从原告借记卡账户内支取、消费428 709．50元。上述事实说明，涉案中行热河南路支行自助银行柜员机存在重大安全漏洞。由于具备专业知识的银行工作人员对自助银行柜员机疏于管理、维护，未能及时检查、清理，没有及时发现、拆除犯罪分子安装的读卡器及摄像装置，致使自助银行柜员机反而成了隐藏犯罪分子作案工具的处所，给储户造成安全隐患，为犯罪留下可乘之机。综上，原告借记卡密码被犯罪分子所窃取，是银行未能履行其为储户提供必要的安全、保密环境的义务所致。

被告中行河西支行认为，被告与原告王永胜在借记卡管理协议书及章程中已经约定“持卡人应妥善保管密码，因密码泄露而造成的风险及损失由持卡人本人承担”。本案中，原告借记卡的存款被盗是因原告没有妥善保管密码所致，原告自身具有过错。因此，涉案借记卡的资金损失应由持卡人即原告本人承担。对此法院认为，原、被告双方在借记卡管理协议书及章程中的约定，应当是指在银行为持卡人提供了必要的安全、保密条件的情况下，完全由于持卡人自己的过失使借记卡遗失或密码失密造成的风险及损失，由持卡人本人自行承担。而本案中原告借记卡失密，是银行违反安全保密义务所致。储户大多缺乏专业知识，在使用自助柜员机进行交易时，难以辨别门禁识别装置是否正常，是否安装了其他不明识别器，也难以发现柜员机上方是否安装了非法摄像装置。银行无权单方面增加储户的义务。银行未对自助柜员机进行必要的维护、未能给储户提供安全、保密的环境，导致持卡人借记卡密码泄漏，并且在借记卡还在储户本人手中的情况下，未能准确识别被犯罪分子复制的假卡，最终导致储户借记卡账户内的资金被犯罪分子骗走，又错误解释借记卡管理协议书及章程约定的含义，主张风险一律由持卡人本人承担，没有法律依据，不予支持。

被告中行河西支行认为，原告王永胜借记卡内的资金短少是由于犯罪行为所致，对犯罪行为给原告造成的资金损失，被告不应承担民事责任。对此法院认为，首先，信用卡诈骗罪是指以非法占有为目的，违反信用卡管理法规，利用信用卡进行诈骗活动，骗取数额较大的财物的行为。根据本案查明的事实，案外人汤海仁等人利用被告未尽保密义务、对自助柜员机疏于管理的安全漏网，窃得原告借记卡的密码，而后使用复制的假卡进行支取和消费。银行未能准确地识别该复制的假卡，从而将原告借记卡账户中的存款错误地交付给假卡持有人。因此，在真借记卡尚由原告持有的情况下，汤海仁等人的行为并非直接侵害了原告的财产所有权，而是侵犯了银行的财产所有权。原告与被告建立的储蓄合同关系合法有效，双方的债权债务关系仍然存在。被告认为原告借记卡内的资金短少属于犯罪行为给原告造成的资金损失，被告不应承担民事责任的主张，没有事实根据和法律依据，不予支持。其次，商业银行法第三十三条规定：“商业银行应当保证存款本金和利息的支付，不得拖延、拒绝支付存款本金和利息。”该条规定了商业银行的保证支付义务，被告错误的将原告借记卡账户内的存款交付给假卡持有人，未适当完成自己的支付义务，故原告要求中行河西支行支付相应存款及相应利息的主张合法，应予以支持。

被告中行河西支行认为，南京市鼓楼区人民法院(2008)鼓刑初字第241号刑事判决书中确认犯罪金额为428 709．50元，对涉案借记卡账户在北京被支取的35 140元未予认定，该款项不排除原告王永胜自行支取的可能，被告只认可刑事判决中所认定的犯罪金额。对此法院认为，首先，前述35 140元款项在(2008)鼓刑初字第241号刑事判决书中未被确认为案外人汤海仁的犯罪金额，但并不能证明被告所称的系原告自行支取的主张。其次，根据鼓楼公安分局对案外人汤海仁的询问笔录，汤海仁等人2007年12月2日晚复制原告的借记卡后即离开南京到江西南昌、余干和北京等地，这说明2007年12月3日晚19时58分在中行南京光华路自助柜员机从涉案借记卡账户中支取的5000元并非汤海仁等人利用复制的假银行卡所支取，原告亦认可其于2007年12月3日晚19时58分在光华路自助柜员机取款5000元的事实。这一事实同时证明2007年12月3日晚8时左右原告尚在南京市区。中行北京天缘公寓支行提供的交易明细所显示的前述35 140元被支取的时间为2007年12月3日晚22时22分9秒至2007年12月4日凌晨0时33分53秒，这个时间段离原告在光华路自助柜员机取款的时间不足两个半小时。根据常理推断，在如此短的时间内，原告不可能从南京到北京取款。因此，中行河西支行不能证明该35 140元系按原告的指示予以支取，仍应就35 140元向王永胜承担给付责任。

中行下关支行基于原告王永胜借记卡内存款被犯罪分子所支取及消费的事实，于2008年1月24日出借给原告232 000元，现其同意在本案中作为被告中行河西支行的出借款予以抵扣，符合双方签订协议的真实意思，中行河西支行与原告在庭审中亦予以认可，对此予以准许。

综上，原告王永胜借记卡账户内资金短少系因被告中行河西支行未履行其应尽的安全、保密义务所致，原告要求中行河西支行支付存款及相应利息的诉讼请求予以支持，但应扣除中行

下关支行已出借的 232 000 元。据此，南京市鼓楼区人民法院于 2008 年 11 月 26 日判决：

被告中行河西支行于本判决生效之日起十日内一次性支付原告王永胜存款人民币 231 849．2 元及相应利息。

一审宣判后，双方当事人在法定期限内均未提出上诉，一审判决已经发生法律效力。

北大法意重要数据库记录数统计（截至 2009-11-5）

| | | | | | |
|---|---|---|---|---|---|
| 大陆法规(中文) | 524,366 | 中国大陆案例库 | 259,169 | 中文合同范本库 | 4,503 |
| 大陆法规英译本 | 3,704 | 台湾法院案例库 | 87,423 | 英文合同范本库 | 2,401 |
| 国际条约库 | 5,033 | 香港案例库(中英文) | 41,496 | 金融法库 | 23,598 |
| 香港法规库(中英文) | 54,666 | 澳门案例库(中葡文) | 1,026 | WTO 法律库 | 37,594 |
| 澳门法规库(中葡文) | 3,894 | 行政执法库 | 1,373 | 丛刊论文索引库 | 183,158 |
| 台湾法规库(中文) | 8,610 | 法律文书库 | 652 | 法学论著索引库 | 73,759 |
| 外国法规库(中外文) | 912 | 法院审判参考库 | 3,046 | 学位论文索引库 | 24,474 |
| 政府公报公告文告库 | 13,585 | 司法统计库 | 594 | 法学词典库 | 4,528 |
| 立法资料库 | 7,205 | 法务流程库 | 5,923 | | |

更新列表 | 会员章程 | 法律声明 | 友情链接 | 法意介绍 | 京 ICP 证 030560 版权所有©北京大学实证法务研究所

运营维护：北京法意科技有限公司 推荐使用 IE5.0 以上版本 分辨率 800×600

邮箱： 客服热线：010-62758866 010-82872106/07-8088（传真）

华南公司电话：020-37588614 传真：020-37588614-616 邮箱:

厦门公司电话：0592-3228398 传真：0592-3228389 邮箱：

QQ 在线咨询：691817899 MSN 在线交流：lawyee_vip@hotmail.com

Name of Case: WANG, Yongsheng vs. Hexi, Nanjing Branch of the Bank of China
Court: The People's Court of Gulou District, Nanjing City
Date of Decision: November 26, 2008

Text

Court: The People's Court of Gulou District, Nanjing City
Date of Decision: November 26, 2008

Claimant: WANG, Yongsheng, male, 36 years old, Han ethnicity, Manager of Jiangsu Tianri Construction Group Co., Ltd., resides in Yagui Garden, Gulou District, Nanjing.

Defendant: Bank of China Hexi, Nanjing Branch

Representative: FENG, Nanning, Branch President

Because of a dispute over a savings account between the claimant, WANG, Yongsheng and the defendant, Bank of China Hexi, Nanjing Branch, legal proceedings have been filed in the People's Court of Gulou District, Nanjing City.

Statement of the Claimant, WANG, Yongsheng: On October 9, 2007, the claimant applied for a China Bank debit card to the Hexi Branch of Bank of China, card number 6013821200011990595. On the evening of December 2, 2007, the defendant went to a Bank of China Xiaguan Branch (hereinafter referred to as BOC) on Rehenan Rd., withdrew 5000 Yuan from an ATM and noted that the account balance was 463,942.2 Yuan. On December 5, 2007, the claimant was ready to withdraw 10,000 Yuan from a COB branch in Jiangning but was told by the teller that the account balance was 2,800 Yuan. That same evening, the claimant checked again to find that the account was missing another 2,000 Yuan. The claimant immediately reported this to the Gulou Branch of the Nanjing Public Security Bureau (hereinafter referred to as the Gulou Public Security Branch). Upon police investigation it was discovered that 3 men had installed a savings card-reading device and a probe in the ATM at the BOC Xiaguan Branch on Rehenan Road, used this to obtain the claimant's card password and information, then created two counterfeit copies of the card and withdrew or spent 463,942.2 Yuan in various locations in Beijing and Jiangxi. Afterward one of the criminals, TANG, Hairen, was captured by the Public Security Bureau and found guilty of credit fraud by the People's Court of Gulou District, Nanjing in criminal case (2008)*GuXingChuZiDi*241*Hao*. He has been sentenced to a fixed term of 10 years and 6 months in prison and fined 100,000 Yuan; this criminal sentence has already taken effect. The above circumstances were conveyed to BOC Xiaguan, Nanjing Branch (hereinafter referred to as the BOC Xiaguan Branch) by the claimant several times. On January 24, 2008, the claimant came to an agreement with BOC Xiaguan Branch, the BOC Xiaguan Branch would first loan the claimant 232,000 Yuan to be used for payment of some workers' wages, then wait until the issue had been verified to take the next step. The claimant and the defendant have a savings contract; the defendant is obligated to protect the security of the claimant's assets. Since the security of the defendant's ATM was vulnerable, the criminals were given an opportunity they could exploit leading to the theft of the 63,942.2 [sic] Yuan in the account of the claimant's card through the use of counterfeit debit cards, and this

CERTIFICATE OF ACCURACY

STATE OF NEW YORK )
)SS
COUNTY OF NEW YORK )

William Bertinelli, being duly sworn, deposes and says:
I am fluent in both the English and Chinese languages. I am competent to translate from Chinese to English. I have made the above translation from a copy of the original document in the Chinese language, and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

William Bertinelli
Transperfect Language Services

Sworn before me this
19th day of October, 2010

Notary Public

MOHAMMED MUJUMDER MSS LLB
Notary Public, State of New York
No. 03-4962808
Qualified in Bronx County
Commission Expires Feb. 26, 2014

occurred through no fault of the claimant. The claimant requests that the defendant pays the claimant 463,942.2 Yuan as well as the interest that would have accrued on the savings from December 4, 2007 to the day it is repaid based on the savings contract signed by both parties.

The claimant provides the following evidence:

1. One copy of the decision of the People's Court of Gulou District, Nanjing City (2008) *GuXingChuZiDi*241*Hao* as evidence of the fact that the criminal TANG, Hairen was issued a fixed term sentence of 10 years and 6 months, and fined 100,000 RMB because he committed the crime of credit card fraud;
2. One copy of the transaction statement for the debit card number 6013821200011990595 as evidence of the transaction history of the card involved in this case;
3. One copy of the agreement arrived at by the claimant and BOC Xiaguan Branch on January 24, 2008, as evidence of the fact that BOC Xiaguan branch issued a 232,000 Yuan loan to be used to pay worker's salaries.

Statement of the Defendant, BOC Hexi Branch: First, the decision of the People's Court of Gulou District, Nanjing City (2008) *GuXingChuZiDi*241*Hao* verified stolen funds in the amount of 428,709.50 Yuan, verifying the 14 different instances of withdrawals of 35,140 Yuan in Beijing related to this case, these 14 withdrawals do not cancel out the withdrawals taken out by WANG, Yongsheng himself, the defendant will only recognize the amount that has been verified by the criminal court proceedings. Second, the funds of the defendant's debit account are missing due to theft, the defendant is not liable in a civil case in the case that the claimant sustains financial loss due to theft. The defendant strictly adhered to the regulations of the supervisory board during the course of its service to the claimant, all of its ATM outlets are equipped with standard security facilities, the defendant also reminds its depositors in various ways to protect their debt card password. The funds in the deposit account of the claimant were stolen because the claimant did not appropriately protect his password; the claimant himself is at fault. In sum, we request that the court base their decision of the analysis of facts and the law in this case.

The evidence provided by the defendant is as follows:

1. One copy of the Certificate of Quality Safety Facilities issued by the Public Security Bureau of Nanjing City on December 24, 2007, the withdrawal operations manual provided to depositors by BOC, notices displayed on the ATM, provided as evidence of the safety measures implemented by BOC;
2. One copy of the Deposit Card Business Registration Form (attached Management Agreement and Regulations), provided as evidence of the specific details of the deposit card arrange by WANG, Yongsheng and that the defendant had already reasonably displayed that "the holder of this card must take appropriate measures to maintain the security of their password; risks and losses caused by disclosure of this password are the liability of the card holder."

**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK )
)SS.
COUNTY OF NEW YORK )

William Bettinelli, being duly sworn, deposes and says:
I am fluent in both the English and Chinese languages. I am competent to translate from Chinese to English. I have made the above translation from a copy of the original document in the Chinese language, and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

William Bettinelli
Trustforte Language Services

Sworn before me this 19th day of October, 2010

Notary Public

MOHAMMED MUJUMDER MSS LLB
Notary Public, State of New York
No. 03-4962808
Qualified in Bronx County
Commission Expires Feb. 26, 2014

3. A copy of the bank statement and of the detailed transaction statement, provided as evidence of the transaction history of the account involved in this case.
4. The application issued by BOC Xiaguan Branch to the People's Court, provided as evidence that Xiaguan Branch agrees to allow the 232,000 Yuan loan it provided to WANG, Yongsheng to act as a loan from BOC Hexi Branch and as a deductible in this case.

The People's Court of Gulou District, Nanjing has determined the following evidence:

1. The records of the inquiries of external party TANG, Hairen and the claimant WANG, Yongsheng as evidence of the fact that TANG, Hairen et al. installed a card reading machine which was equipped with an MP4 camera, stole the card information and password of the claimant, then created two counterfeit cards for withdrawal or consumption;
2. The detailed transaction statements of BOC Tianyuan Gongyu, Beijing Branch, provided as evidence of the fact that from 10:22:09 PM on December 3, 2007 to 12:33:53 AM on December 4, 2007, debit card number 6013821200011990595 was used 14 times to withdraw 35,000 Yuan from the ATM managed by BOC Tianyuan Gongyu Branch and a remote withdrawal fee of 140 dollars occurred.

The People's Court of Gulou, Nanjing has compiled the evidence in accordance with the law. The defendant, BOC Hexi Branch, does not dispute the veracity of evidence items 1, 2, and 3 provided by the claimant WANG, Yongsheng, but believes that the above stated evidence has no bearing on whether or not the defendant is civilly liable. The claimant WANG, Yongsheng, does not dispute the veracity of evidence items 1, 2, 3, and 4 provided by defendant, but believes that evidence items 1 and 2 cannot prove that the ATM transaction centers provided by BOC guaranteed financial security. The People's Court of Gulou District, Nanjing City has verified the authenticity of the evidence provided by the claimant and the defendant.

The People's Court of Gulou District, Nanjing has proven through its investigation:

On October 9, 2007, the claimant WANG, Yongsheng set up a Great Wall Electronic Debit Card (hereinafter referred to as debit card) with the defendant, BOC Hexi Branch, card number 6013821200011990595. This debit card is a card without a banking book, WANG, Yongsheng signed the Business Registration Form, on the back of which the Management Agreement Certificate and Regulations were attached, with the statement "the holder of this card must take appropriate measures to maintain the security of their password; risks and losses caused by disclosure of this password are the liability of the card holder" recorded.

On December 2, 2007, outside party TANG, Hairen and five other individuals went to the ATM center of the BOC Rehenan Road Branch, installed a card reading machine in the card reader on the door, and an MP4 with camera capabilities on the machine. At 7:05 PM, the claimant WANG, Yongsheng withdrew 5000 Yuan with his card at this ATM. TANG, Hairen et al. were able to obtain the claimant's card number, card information, and password, and using this created two counterfeit bankcards. On December 3, 2007, TANG,

CERTIFICATE OF ACCURACY

STATE OF NEW YORK )
)SS:
COUNTY OF NEW YORK )

William Bertinelli, being duly sworn, deposes and says:

I am fluent in both the English and Chinese languages. I am competent to translate from Chinese to English. I have made the above translation from a copy of the original document in the Chinese language, and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

[signature]
William Bertinelli
Transforte Language Services

Sworn before me this
15th day of October, 2010

[signature]
Notary Public

MOHAMMED MUJUMDER MSS LLB
Notary Public, State of New York
No. 03-4962808
Qualified in Bronx County
Commission Expires Feb. 26, 2014

Case 1:10-cv-09471-KPF-HBP Document 25-10 Filed 03/24/11 Page 10 of 14

Hairen and 3 other individuals took one card to Nanchang, the other two took the other card to Beijing, and separately committed credit card fraud.

On December 6, 2007, after WANG, Yongsheng discovered money was missing from his debit card account, went to BOC Xiaguan Branch to print a detailed transaction summary and went to the Gulou Public Security Bureau to file a report. On January 11, 2008, after the Gulou Public Security Bureau put the case on record, outside party TANG, Hairen was caught and detained for criminal actions on the day in question. On May 22, 2008, the Prosecution Office of Gulou District, Nanjing brought credit card fraud charges against TANG, Hairen in the People's Court of Gulou District, Nanjing. The court proved that on December 4 and 5, 2007, TANG, Hairen et al. spent and withdrew 428,709.50 Yuan with a counterfeit bankcard in Nanchang, Yugan, and other places. Based on this, The People's Court of Gulou District, Nanjing put forward the criminal sentence (2008) *GuXingChuZiDi*241*Hao*, on June 5, 2008, in which it judged that TANG, Hairen had committed credit card fraud, sentenced him to a fixed term sentence of ten years and six months, and fined him 100,000 Yuan. This criminal sentence has already taken effect.

Furthermore, the inquiry details provided by BOC Hexi Branch prove that: the debit card number 60138212000119900595 was used to withdraw 50,000 YUAN at the counter of BOC Jiangning Dashikou Branch on December 3, 2007 at 7:58 p.m. and 5000 Yuan from the ATM at BOC Guanghua Road ATM. The claimant confirms that he conducted both withdrawals. The People's Court of Gulou District, Nanjing discovered that on December 22, 2007 that the transaction details of BOC Beijing Tianyuan Gongyu Branch show: debit card number 60138212000119900595 was used 14 times between 10:22:09 PM on December 3, 2007 and 12:33:53 AM on December 4, 2007 to withdraw 35,000 Yuan from the ATM managed by BOC Tianyuan Gongyu Branch and a remote withdrawal fee of 140 dollars occurred. The above mentioned 14 withdrawals of 35,140 Yuan were not confirmed to be amount of the crime conducted by outside party TANG, Hairen in criminal sentence (2008) *GuXingChuZiDi*241*Hao*.

On January 24, 2008, the claimant, WANG, Yongsheng signed an agreement with BOC Xiaguan Branch, agreeing that: BOC Xiaguan Branch would first loan the claimant 232,000 Yuan to help the claimant solve the issue of payment of workers' salaries; if the claimant brought civil proceedings against BOC and the court decided BOC Xiaguan Branch must compensate the claimant, then BOC Xiaguan Branch is entitled to deduct this amount from the debt to the claimant. On the same day the agreement was signed, BOC Xiaguan Branch paid the claimant 232,000 Yuan. During the course of the hearing of this case, BOC Xiaguan Branch issued a petition agreeing that the 232,000 Yuan it loaned the claimant could act as money loaned by the BOC Hexi Branch in this case and act as a deductible. On March 12, 2008, the claimant filed a case with the People's Court of Xiaguan, Nanjing against BOC Xiaguan Branch. On April 30 of the same year the People's Court of Xiaguan decided to suspend the hearing of this case. On June 5 of the same year, the People's Court of Gulou District, Nanjing issued its decision on the criminal case regarding credit card fraud. Afterward, upon consideration of the specific merits of the case, the claimant withdrew the case from the People's Court of Xiaguan, Nanjing and brought legal proceedings against BOC Hexi Branch to the People's Court of Gulou, Nanjing.

---

**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK )<br>
)SS<br>
COUNTY OF NEW YORK )

William Bettinelli, being duly sworn, deposes and says:

I am fluent in both the English and Chinese languages. I am competent to translate from Chinese to English. I have made the above translation from a copy of the original document in the Chinese language, and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

[signature]
William Bettinelli
Trustforte Language Services

Sworn before me this
19th day of October, 2010
[signature]
Notary Public

MOHAMMED MUJUMDER MSS LLB
Notary Public, State of New York
No. 03-4962808
Qualified in Bronx County
Commission Expires Feb. 26, 2014

The People's Court of Gulou District, Nanjing handled mediation. Because of differences in opinion, both parties were unable to arrive at a mediation agreement.

The disputed matters of this case are: after a criminal was able to steal the claimant's debit card number, information, and password, counterfeit a bank card, withdraw and spend the funds from the associated bank account by means of installing a card reading machine on the card swipe of the door of the ATM area and a camera on the ATM, is BOC Hexi Branch, the defendant who established a savings contract with the claimant, liable for the amount withdrawn and spent by the criminal stated above.

The People's Court of Gulou District, Nanjing finds that:

The claimant, WANG, Yongsheng set up a no-passbook debit card with the defendant BOC Hexi Branch, meaning that it established a savings contract with the defendant BOC Hexi Branch. According to the nature of a savings contract, BOC Hexi Branch is obligated to distribute the savings to the claimant or an individual entrusted by the claimant according to the claimant's specifications, and to protect the funds in the claimant's account. Clause 29, Section 1 of the Law of the People's Republic of China on Commercial Banks (hereinafter referred to as the Commercial Bank Law) states: "When handling individual savings, Commercial Banks shall abide by the principles of "willingness to deposit, freedom to withdraw, payment of interest to bank saving deposits, and depositor confidentiality." It is the legal obligation of a commercial bank to guarantee that no institution or individual infringes upon the legal rights of the depositor in order to protect depositor confidentiality. The obligation of a commercial bank to maintain secrecy is not limited to keeping the information already provided by a depositor secret, but also includes providing the necessary security and confidential environment for depositors coming to the bank to conduct transactions. Equipping a commercial bank with an ATM is not only a way of providing convenience to the depositor, it is also a way to improve work efficiency and increase market competitiveness, the bank can also obtain benefits from doing so. Conducting daily maintenance and management for the ATM and providing the necessary security and confidential environment for the depositor conducting transactions is an important part of the task of maintaining bank security and confidentiality, this task shall be the responsibility of the bank that establishes the self-service ATM. According to the facts of this case, outside party TANG, Hairen and 5 other individuals stole WANG, Yongsheng's deposit card card number, information, and password, made counterfeit copies of the bank card, and withdrew and spent 428,709.50 Yuan from the claimant's account by means of installing a card reader in the card swipe of the door and an MP4 player with camera function on the ATM of the ATM outlet of BOC Rehenan Road Branch. Since the employees with professional knowledge of ATM's ignored management and maintenance, and did not inspect the machine in time, they did not discover and eliminate the card reader and camera installed by the criminals, leaving them an opportunity. In sum, the criminals stole the claimant's password because the defendant did not conduct the tasks of providing the necessary safety and confidential environment for their depositors.

The defendant BOC Hexi Branch is of the opinion that: the defendant and the claimant WANG, Yongsheng already agreed that "the holder of this card must take appropriate measures to maintain the security of their password; risks and losses caused by

**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK )
)SS:
COUNTY OF NEW YORK )

William Bettinelli, being duly sworn, deposes and says:

I am fluent in both the English and Chinese languages. I am competent to translate from Chinese to English. I have made the above translation from a copy of the original document in the Chinese language, and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

William Bettinelli
Trustforte Language Services

Sworn before me this
19th day of October, 2010

Notary Public

MOHAMMED MUJUMDER MSS LLB
Notary Public, State of New York
No. 03 4962808
Qualified in Bronx County
Commission Expires Feb. 26, 2014

Case 1:10-cv-09471-KPF-HBP Document 25-10 Filed 03/24/11 Page 12 of 14

disclosure of this password are the liability of the card holder" in the Debit Card Management Agreement and Regulations. In this case, the claimant's debit card was stolen because the claimant did not undertake appropriate measures to protect his password, and the claimant himself is at fault. Because of this, the financial losses associated with the debit card of this case should be the responsibility of the cardholder, i.e. the claimant. Regarding this opinion, the court finds that: The agreement between the claimant and the defendant in the Debit Card Management Agreement and Regulations applies to situations in which the bank has provided the necessary safety and confidentiality for the card holder, and, owing entirely to the fault of the cardholder, the debit card is lost or the password is revealed leading to financial risk and losses, in which case, the cardholder is to bear full liability. However, in this case the claimant's debit card password was revealed because the bank violated its duty to provide security and confidentiality. Most depositors lack the professional knowledge to determine whether door access control devices are normal or if some other devices have been installed, or whether an illegal camera has been installed on the ATM. The bank is not entitled to one-sidedly add obligations to the depositor. The bank did not conduct the necessary maintenance for the ATM, was not able to provide the depositor a secure, confidential environment, causing the cardholder to reveal the debit card password, and in a situation in which the card was still in the card holder's hands, was not able to correctly determine that the card had been copied by counterfeiters. This lead to the theft of the funds within the debit card account, and further, incorrectly explained the contents of the Debit Card Management Agreement and Regulations, claiming the risk was entirely the liability of the plaintiff has no legal basis and is an unsubstantiated claim.

The defendant BOC Hexi Branch is of the opinion that the funds of the debit account of the claimant WANG, Yongsheng are missing because of criminal behavior, that the defendant is not civilly liable for financial losses sustained by the claimant due to criminal behavior. Regarding this opinion, the court finds that, first, credit card fraud refers to behavior that violates credit card management laws, uses a credit card to conduct fraudulent behavior, and defrauds relatively large sums of money with the goal of ownership. According to the facts of this case, outside party TANG, Hairen et al. used the defendant's failure to fulfill confidentiality obligations and manage its ATM machines to steal the claimant's debit card password and use counterfeited bank cards to conduct withdrawals and spending. The bank was unable to correctly recognize the counterfeit cards, thereby mistakenly issuing the funds of the claimant's debit account to the holders of the counterfeit cards. As such, in a situation in which the real debit card was still in the hands of the claimant, the behavior of TANG, Hairen et al. was not directly infringing on the financial property the claimant, but on the financial property of the bank. The savings contract established between the claimant and the defendant is legally in effect; the indebted relationship between both parties still exists. The defendant's opinion that the funds of the debit account of the claimant are missing because of criminal behavior and the position that the defendant should not be civilly liable have no basis in fact or law and are not supported. Second, Clause 32 of the Commercial Bank Law states: "Commercial Banks shall guarantee the dispersal of savings and interest, shall not delay or refuse dispersal of savings and interest." This regulation states that commercial banks must guarantee their

---

**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK )
)SS:
COUNTY OF NEW YORK )

William Bettinelli, being duly sworn, deposes and says:

I am fluent in both the English and Chinese languages. I am competent to translate from Chinese to English. I have made the above translation from a copy of the original document in the Chinese language, and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief

William Bettinelli
Trustforte Language Services

Sworn before me this
19th day of October, 2010

Notary Public

MOHAMMED MUJUMDER MSS LLB
Notary Public, State of New York
No. 03-4962808
Qualified in Bronx County
Commission Expires Feb. 26, 2014

payment obligation. The defendant incorrectly dispersed the funds of the account of the claimant to the holder of a counterfeit card and did not appropriately fulfill its payment obligation; therefore, the position of the original request of the claimant that the defendant BOC Hexi Branch reimburse the corresponding savings and interest is in accordance with the law and is supported by the court.

The defendant BOC Hexi Branch is of the opinion that the criminal sentence (2008) *GuXingChuZiDi*241*Hao* of the People's Court of Gulou District, Nanjing confirmed the amount stolen was 428,709.50 Yuan, and did not confirm 35,140 Yuan withdrawn from the account in Beijing associated with this case. The possibility that this withdrawal was not conducted by the claimant WANG, Yongsheng himself has not been eliminated. The defendant only recognizes the amount confirmed by the criminal proceedings. Regarding this, the court finds: First, in the criminal sentence (2008) *GuXingChuZiDi*241*Hao*, the above stated 35,140 Yuan was not found to be part of the amount stolen by outside party TANG, Hairen; however, this cannot prove the statement of the defendant that the funds were withdrawn by the claimant himself. Second, based on the record of the inquiry of outside party TANG, Hairen conducted by the Gulou District Public Security Bureau, on December 2, 2007, after TANG, Hairen et al. copied the debit card, they left Nanjing for Jiangxi, Nanchang, Yugan, and Beijing, this explains why on December 3, 2007 at 7:58 PM, the 5,000 Yuan withdrawn at BOC Nanjing Guanghua Road ATM from the debit account related to this case was not withdrawn with the counterfeit cards used by TANG, Hairen et al., the claimant has also confirmed the fact that he withdrew 5,000 Yuan from BOC Nanjing Guanghua Road ATM on December 3, 2007 at 7:58 PM. At the same time, this fact proves that on December 3, 2007 around 8 o'clock PM the claimant was still in Nanjing City. The detailed transaction statement provided by BOC Beijing Tianyuan Gongyu Branch shows that the above stated 35,140 Yuan was withdrawn between 10:22:09 PM on December 3, 2007 and 12:33:53 AM on December 4, 2007, this is not even two and a half hours from the time the claimant made a withdrawal from the BOC Nanjing Guanghua Road ATM. Based on common sense, in such a short time, the claimant could not have gotten from Nanjing to Beijing to make a withdrawal. As such, if the BOC Hexi Branch cannot prove that the 35,140 Yuan was paid according to the specifications of the claimant, it is still obligated to pay WANG, Yongsheng the 35,140 Yuan.

Based on the fact that the money in the debit account of the claimant WANG, Yongsheng was stolen, BOC Xiaguan Branch loaned the claimant 232,000 Yuan on January 24, 2008. At present, the branch agrees to allow this loan to act as a deductible for BOC Hexi Branch in this case, which is in accordance with the agreement signed between both parties. The defendant and the claimant have both authorized this in these legal proceedings.

In summary, the missing funds in the debit account of the claimant WANG, Yongsheng, are a result of the failure of the BOC Hexi Branch to fulfill its security and confidentiality obligations, the request of the claimant that BOC Hexi Branch pay the amount of the savings and its corresponding interest is supported, however, the loan of 232,000 Yuan from BOC Xiaguan Branch shall be deducted from that amount. Accordingly, the People's Court of Gulou District, Nanjing issues the following judgment on November 26, 2008:

---

**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK )
)SS.
COUNTY OF NEW YORK )

William Bettinelli, being duly sworn, deposes and says:
I am fluent in both the English and Chinese languages. I am competent to translate from Chinese to English. I have made the above translation from a copy of the original document in the Chinese language, and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief.

William Bettinelli
Trustforte Language Services

Sworn before me this
19th day of October, 2010

Notary Public

MOHAMMED MUJUMDER MSS LLB
Notary Public, State of New York
No. 03-4962808
Qualified in Bronx County
Commission Expires Feb. 26, 2014

Case 1:10-cv-03471-KPF-HBP Document 25-10 Filed 03/24/11 Page 14 of 14

The defendant BOC Hexi Branch must issue a one-time payment to the claimant WANG, Yongsheng in the amount of 231,849.2 Yuan and its corresponding interest within ten days of this judgment taking legal effect.

After the verdict was announced, neither party brought forward claims within the regulated period; the decision has already taken legal effect.

**CERTIFICATE OF ACCURACY**

STATE OF NEW YORK )
)SS:
COUNTY OF NEW YORK )

William Bettinelli, being duly sworn, deposes and says:
I am fluent in both the English and Chinese languages. I am competent to translate from Chinese to English. I have made the above translation from a copy of the original document in the Chinese language, and hereby certify that the same is a true and complete translation to the best of my knowledge, ability, and belief

William Bettinelli
Trustforte Language Services

Sworn before me this
19th day of October, 2010

Notary Public

MOHAMMED MUJUMDER MSS LLB
Notary Public, State of New York
No. 03-4962808
Qualified in Bronx County
Commission Expires Feb. 26, 2014