# Exhibit B-15

EXHIBIT 10

14012116-001 1/2 ①
美国  h   E D C   003

# 公　证　书

中华人民共和国北京市长安公证处

# 北京市第二中级人民法院

## 民事判决书

（2013）二中民初字第 01275 号

原告赵培媛，女，1943 年 9 月 25 日出生，满族，北京钢琴厂退休职工，住北京市朝阳区芳园里甲 13 楼 1 单元 16 号，身份证号码 110105194309256129。

委托代理人陈鹏，北京市中盾律师事务所律师。

原告徐婷，女，1970 年 6 月 10 日出生，满族，无业，住北京市朝阳区芳园里甲 13 楼 1 单元 16 号，身份证号码 11010519700610616X。

委托代理人陈鹏，北京市中盾律师事务所律师。

原告徐雷，男，1972 年 3 月 25 日出生，满族，无业，住北京市朝阳区芳园里甲 13 楼 1 单元 16 号，身份证号码 110105197203256132。

委托代理人陈鹏，北京市中盾律师事务所律师。

被告中国银行股份有限公司北京丽都饭店支行，营业场所北京市朝阳区丽都饭店内。

负责人李柠，行长。

委托代理人傅长煜，北京市君合律师事务所律师。

委托代理人郑跃杰，北京市君合律师事务所律师。

原告赵培媛、徐婷、徐雷诉被告中国银行股份有限公司北京丽都饭店支行（以下简称中行丽都饭店支行）合同纠纷一案，本院于 2013 年 1 月 6 日受理后，依法组成由法官申小琦、金页

Case 1:13-cv-08012-CM-DCF   Document 73-16   Filed 02/14/18   Page 5 of 26
Case 1:10-cv-04974-RJS   Document 142-12   Filed 01/23/15   Page 4 of 25
Case 11-3934, Document 291-2, 02/19/2014, 1160212, Page5 of 24

普、人民陪审员周毓茜组成的合议庭，并于 2013 年 3 月 27 日、8 月 1 日、8 月 28 日、9 月 6 日公开开庭进行了审理。原告赵培媛及其与徐婷、徐雷共同的委托代理人陈鹏，被告中行丽都饭店支行的委托代理人傅长烬、郑跃杰到庭参加了诉讼。本案现已审理完毕。

赵培媛、徐婷、徐雷起诉称：徐婷是中国公民，是中行丽都饭店支行的客户。徐婷在美国与 GUCCI 公司（以下简称古驰公司）因知识产权纠纷涉诉。因案件涉及中国银行在纽约的分行，中行丽都饭店支行遂非法冻结了徐婷在中国境内的所有存款，并且非法冻结了其母赵培媛、其弟徐雷在中行丽都饭店支行的所有存款。依据《中华人民共和国商业银行法》第二十九条的规定：商业银行办理个人储蓄存款业务，应遵循存款自愿、取款自由、存款有息、为存款人保密的原则，对个人储蓄存款，商业银行有权拒绝任何单位或者个人查询、冻结、扣划，但法律另有规定的除外。中行丽都饭店支行擅自冻结赵培媛、徐婷、徐雷的存款，已属违法。经多次交涉无果，现诉至法院，请求判令：一、中行丽都饭店支行立即解除对赵培媛、徐婷、徐雷在中行丽都饭店支行的所有存款的冻结状态；二、中行丽都饭店支行承担本案诉讼费用。

中行丽都饭店支行答辩称：一、根据赵培媛、徐婷、徐雷三人提交的定期存单、国债收款凭证、个人理财产品业务交易信息确认表等证据，赵培媛、徐婷、徐雷均各自在中行丽都饭店支行存款、购买国债及理财产品，分别与中行丽都饭店支行形成了储蓄合同关系、国债买卖合同关系及理财产品合同关系等 30 个独立的合同。每个定期存单、国债收款凭证、个人理财产品项下分别涉及不同的款项，每个账户并非由三人共有，故

2

Case 1:13-cv-08012-CM-DCF   Document 73-16   Filed 02/14/18   Page 6 of 26
Case 1:10-cv-04974-RJS   Document 142-12   Filed 01/23/15   Page 5 of 25
Case 11-5934, Document 291-2, 02/19/2014, 1160211, Page49 of 59

上述合同关系涉及的主体、客体、内容等均有不同，系不同的法律关系，不符合共同诉讼的条件，不应一并审理。

二、2010年6月，古驰公司等七家公司在美国纽约南区地方法院（以下简称美国法院）起诉赵培媛、徐婷、徐雷等人，指控其制造、销售假冒古驰公司等商标的产品，并将相关收益汇回中国国内。但赵培媛、徐婷、徐雷等人从未应诉答辩，也未按照美国法院命令向古驰公司等或法院提交任何资料。之后，古驰公司向美国法院提交申请，要求法院强制中国银行向其提供赵培媛、徐婷、徐雷位于中国境内的账户信息。为此，中国银行不得不聘请美国律师向美国法院提交了大量的申请、动议，聘请国际法专家向美国法院提交专家意见，从而支付了大量的律师费用、专家费用与其他办案费用，日后势必还有更大的损失。由于被卷入了赵培媛、徐婷、徐雷在美国的诉讼纠纷，中行丽都饭店支行有权采取避免损失扩大的必要措施，根据《个人账户及综合服务协议书》的约定中止赵培媛、徐婷、徐雷的银行服务，暂停相关账户的交易；赵培媛、徐婷、徐雷应对因此造成的损失承担赔偿责任。

本案中，中行丽都饭店支行并未按照任何单位或个人的要求，对赵培媛、徐婷、徐雷的账户采取冻结等强制措施，赵培媛、徐婷、徐雷的账户也并不处于冻结状态，同时，赵培媛、徐婷、徐雷也未提交任何证据，证明其账户处于冻结状态。因此，中行丽都饭店支行并未冻结赵培媛、徐婷、徐雷的存款，不存在任何违法行为。

综上，本案系由于中美两国司法管辖冲突而引发的案件，影响重大。赵培媛、徐婷，徐雷因其自身的违法侵权行为在美国被古驰公司等起诉后，一方面在美国不应诉、不向美国法院

说明自身的相关财产信息、逃避美国法院的管辖、逃避自身的
侵权责任。另一方面又对被其无辜卷入美国诉讼的中国银行提
起境内诉讼，意图将自身责任转嫁中国银行、使中国银行日后
在美国承担更严重的责任。故请求法院依法驳回赵培媛、徐婷、
徐雷的起诉。

经审理查明：

赵培媛自 2009 年 8 月 1 日至 2011 年 4 月 26 日在中行丽都
饭店支行办理了 3 笔礼仪存单，金额 257 269.7 元；8 笔定期存
单，金额 510 000 元；两个活期存折，金额 120 683.11 元；1
笔国债买卖，金额 440 000 元；4 笔理财产品，金额 373 000 元；
共计 1 700 961.64 元。徐婷自 2009 年 6 月 11 日至 2011 年 4
月 8 日在中行丽都饭店支行办理了 5 笔礼仪存单，金额
416 845.58 元；1 张贵宾卡 2013 元；两个活期存折，金额 3 358.81
元，2 笔理财产品，金额 679 000 元；共计 1 101 217.39 元。
徐雷自 2010 年 8 月 17 日至 2011 年 4 月 8 日在中行丽都饭店支
行办理了 2 笔礼仪存单，共计金额 154 553.53 元。

上述款项的定期存款、国债及理财产品按照首期的存期及
交易期限均已到期。双方当事人对赵培媛、徐婷、徐雷在中行
丽都饭店支行涉案的包括账号数、客户名称、交易账号、开立
日期、相关业务、交易日期、主要开立文件、本金、首期到期
日、转存状态、转存到期日等账户信息均无异议。

赵培媛、徐婷、徐雷称自 2011 年 6 月 10 日之后在中行丽
都饭店支行开立的账户中的所有款项均不能支取，银行的工作
人员只以口头及电话方式告知因徐婷在美国与古驰公司有知识
产权纠纷，故所有款项予以冻结不能支取，但不给出具任何书
面证明材料。中行丽都饭店支行认可停止赵培媛、徐婷、徐雷

Case 1:13-cv-08012-CM-DCF   Document 73-16   Filed 02/14/18   Page 8 of 26
Case 1:10-cv-04974-RJS   Document 142-12   Filed 01/23/15   Page 7 of 25
Case 11-3934, Document 291-2, 02/19/2014, 1160211, Page8 of 24

账户交易的时间，但主张根据赵培媛、徐婷、徐雷在银行办理各种业务时所签字确认的《个人账户及综合服务协议书》中销户或业务终止条款的约定，在赵培媛、徐婷、徐雷与其他第三方发生纠纷而致中国银行被卷入诉讼或致中国银行遭受损失，赵培媛、徐婷、徐雷涉嫌从事洗钱、欺诈、恐怖融资等非法行为，赵培媛、徐婷、徐雷账户涉嫌被洗钱、欺诈等非法行为利用的情形下，银行有权中止与三原告的业务往来、暂停相关账户交易。中行丽都饭店支行可以根据目前在美国法院涉及诉讼纠纷的事实，判断赵培媛、徐婷、徐雷存在上述情形，并有权中止与赵培媛、徐婷、徐雷的银行业务往来、暂停相关账户的交易服务，并非是冻结的行为。

庭审中查明，赵培媛、徐婷、徐雷在中行丽都饭店支行开立账户办理活期存款、定期存款、国债买卖、理财产品、银行卡、电子银行等业务，均发生在 2009 年 6 月至 2011 年 5 月期间，在 2009 年 10 月之前办理定期存款时，按照银行工作人员的要求填写了《开户申请书》，之后办理的定期、活期存款、中银理财贵宾卡均填写了《个人账户开户及综合服务申请表》，其背面系《个人账户及综合服务协议书》。购买国债产品时填写的《个人开户/综合服务申请书》，背面附有客户须知、中国银行个人结算账户管理协议书、中国银行长城电子借记卡章程。购买理财产品时填写了《个人理财产品业务交易信息确认单》。

在《个人账户开户及综合服务申请表》客户资料一栏的下方载明有如下文字：本人已阅读并了解本申请表中"中国银行股份有限公司个人账户开户及综合服务申请协议书"的有关条款，并保证遵照该协议的有关约定、客户须知、服务协议和银行最新业务章程、业务规则、业务规定办理相关业务。并由赵

5

Case 1:13-cv-08012-CM-DCF Document 73-16 Filed 02/14/18 Page 9 of 26
Case 1:10-cv-04974-RJS Document 142-12 Filed 01/23/15 Page 8 of 25
Case 14-3994, Document 251-2, 02/19/2015, 1100211, Page7 of 24

培媛、徐婷、徐雷在"申请人签字"处签名确认。

2009 年 6 月至 2011 年 5 月期间，由中国银行股份有限公司制定并实施的《个人账户开户及综合服务协议书》销户或业务终止条款第（三）项约定："申请人违反本协议或其他银行相关规章制度或存在恶意操作、诋毁、损害银行声誉、恶意攻击银行电子银行系统等行为，或者申请人涉嫌从事洗钱、恐怖融资或其他违法犯罪行为，银行有权依据其认定的正当理由或风险控制等相关因素，中止或终止本协议及提供相关服务，并保留追究申请人责任的权利。协议终止并不意味着终止前所发生的未完成交易指令的撤销，也不能消除因终止前所发生的交易所带来的任何法律后果。"

2011 年 7 月 1 日，中国银行股份有限公司启用新版本《个人账户开户及综合服务协议书》。将销户或业务终止条款第（三）项补充修改为"申请人涉嫌从事洗钱、欺诈、恐怖融资等非法行为，或违反法律法规、监管规定及相关国家政策，违反本协议或其他银行相关章程、业务规则、业务规定，或存在恶意操作、诋毁和损害银行声誉、恶意攻击银行电子银行系统等行为，或因申请人与其他第三方发生纠纷而致银行被卷入诉讼或遭受损失的，或申请人账户涉嫌被洗钱、欺诈等非法行为利用的，银行有权中止或终止本协议及提供相关服务并保留追究申请人责任的权利，申请人应承担因此给银行造成的损失，对于相关法院、其他司法机关或政府机关因扣划申请人资金而致银行资金被扣划的，银行有权扣划申请人资金予以补偿银行因此所受的资金损失。协议终止并不意味着终止前所发生的未完成交易指令的撤销，也不能消除因终止前的交易所带来的任何法律后果。"赵培媛、徐婷、徐雷认为上述条款均是格式条款、在与中

行丽都饭店支行办理开户、存款手续时，均是按照银行柜台工作人员的指点和要求，在各种表格上签字，银行从来没有对协议的任何条款进行过解说，个人更无从知道《个人账户开户及综合服务协议书》何时启用了新版本及哪些条款进行了修改。因此对上述条款的合法性、有效性均存在异议，不予认可。中行丽都饭店支行则主张中国银行股份有限公司发布并不时更新的相关业务章程、业务规则、业务规定均为《个人账户开户及综合服务协议书》的有效组成部分，因此各个时期启用的《个人账户开户及综合服务协议书》中的条款规定，均自动适用到本案涉及的法律关系中，银行在公开的营业网点公告启用新协议版本。但在本案中，中行丽都饭店支行没有提交证据证明如何向赵培媛、徐婷、徐雷告知 2011 年 7 月 1 日启用新版本的《个人账户开户及综合服务协议书》。

另查明，2010 年 6 月，古驰公司等七家公司五个品牌在美国法院起诉徐婷及其丈夫徐立军等人，后于 2011 年 3 月 10 日追加起诉赵培媛、徐雷，称以上人员制造、销售假冒古驰公司等商标的产品，并将相关收益汇回中国国内。除徐立军的律师到场，其他人均未应诉答辩，也未按照美国法院命令向古驰公司等或法院提交任何资料。2010 年 7 月 12 日，美国法院作出预先禁令及证据发现令，禁止赵培媛、徐婷、徐雷等继续侵权行为，并命令上述三人的代理人、代表、继承人、银行等受禁令送达者，不得转移包括赵培媛、徐婷、徐雷等在境内中国银行开立的账户中的资金等财产。2010 年 7 月 13 日及 16 日，古驰公司等向中国银行纽约分行送达上述禁令、证据发现令及在民事诉讼中提供文件、信息或物品或允许对营业场所进行检查的传票。要求中国银行采取必要措施遵守预先禁令的条款、提供

赵培媛、徐婷、徐雷的账户信息。自 2010 年 7 月 21 日起，中国银行聘请美国律师，以案外当事人的身份向美国法院提交请求驳回古驰公司等申请强制执行发现令的动议及申请复议的动议。2011 年 8 月 23 日，美国法院作出命令，指令中国银行遵守古驰公司等的传票及预先禁令的要求，并驳回中国银行申请复议的动议，要求中国银行应于该命令作出之日起 14 天提供传票要求提供的信息。2011 年 9 月 22 日，中国银行就该命令向美国第二巡回上诉法院提起上诉。2011 年 11 月 30 日，中国银行还向美国法院提出动议，请求该院批准中国银行申请重审和豁免适用 2011 年 8 月 23 日命令的动议，判令古驰公司等必须通过《海牙公约》程序从中国银行寻求进一步的文件，并判令预先禁令的范围不涉及位于中国境内的账户。2012 年 5 月 18 日美国法院驳回中国银行申请重审的动议。2012 年 11 月 15 日，美国法院认定由于中国银行长达十四个月恶意地和故意地藐视 2011 年 8 月 23 日命令和根据禁令承担的证据披露义务，故构成藐视法庭，对中国银行处以 75 000 美元的强制罚款，若 7 日内仍未能遵守 2011 年 8 月 23 日命令，将于随后每日处以 10 000 美元的强制性罚款，直到遵守命令。同时批准古驰公司等申请由中国银行支付因提起该藐视法庭动议而产生的合理律师费和诉讼费的请求。随后，中国银行针对藐视法庭的裁定向美国第二巡回上诉法院提出上诉，并申请延缓处罚，等待上诉，并得到准许。中国银行未支付任何款项。本案中，中行丽都饭店支行亦未就其所称的损失向赵培媛、徐婷、徐雷主张权利。

上述事实，有 2009 年 6 月至 2011 年 5 月赵培媛、徐婷、徐雷在中行丽都饭店支行开立账户申请表、《个人账户开户及综合服务协议书》、个人业务交易单、定期存单、活期存折、凭证

8

式国债、银行卡、个人理财产品业务交易信息确认表、古驰公
司与赵培嫒、徐婷、徐雷纠纷案件的诉讼材料、美国法院的备
忘录、命令及双方当事人庭审陈述在案佐证。

本院认为：

一、关于本案是否应合并审理的问题。

根据《中华人民共和国商业银行法》的规定，商业银行可
以经营的业务有吸收公众存款，买卖政府债券、金融债券，从
事银行卡业务，经国务院银行业监督管理机构批准的其他业务
等。庭审查明，赵培嫒、徐婷、徐雷与中行丽都饭店支行之间
除存在储蓄存款合同关系，同时还存在国债买卖、委托理财等
合同关系。赵培嫒、徐婷、徐雷是针对中行丽都饭店支行同时
将三个人开立的所有账户中的款项不予支取的事实提出一致的
诉讼请求，即判令解除该种状态，赵培嫒、徐婷、徐雷起诉的
诉讼标的相同。为提高诉讼效率、简化诉讼程序、减少当事人
诉累，本案应当合并审理。

二、关于中行丽都饭店支行对赵培嫒、徐婷、徐雷采取中
止服务、暂停交易的措施是否符合合同或法律规定的问题。

赵培嫒、徐婷、徐雷在中行丽都饭店支行开立账户办理活
期存款、定期存款、国债买卖、理财产品、银行卡、电子银行
等业务、签署承诺及协议书的时间，均发生在 2009 年 6 月至 2011
年 5 月期间，中行丽都饭店支行通知赵培嫒、徐婷、徐雷中止
提供服务的时间是 2011 年 6 月，因此应该以 2011 年 7 月 1 日
之前由中国银行制定的《个人开户及综合服务协议书》的条款
内容，作为本案确定双方当事人权利义务关系的合同依据。

该时期适用的《个人开户及综合服务协议书》销户或业务
终止条款的规定为：申请人违反本协议或其他银行相关规章制

9

度或存在恶意操作、诋毁、损害银行声誉、恶意攻击银行电子银行系统等行为。或者申请人涉嫌从事洗钱、恐怖融资或其他违法犯罪行为，银行有权依据其认定的正当理由或风险控制等相关因素，中止或终止本协议及提供相关服务，并保留追究申请人责任的权利。

根据庭审查明的事实，赵培媛、徐婷、徐雷在中行丽都饭店支行办理各项业务时，按照银行的各项要求填写了申请表并在相关位置上签字，办理各项银行业务。中行丽都饭店支行未能举证证明赵培媛、徐婷、徐雷已实际实施了恶意操作、诋毁、损害银行声誉、恶意攻击银行电子银行系统等行为；赵培媛、徐婷、徐雷在美国涉及诉讼、案件正在审理之中，尚无结论，目前在中国境内尚未有生效的裁判文书认定赵培媛、徐婷、徐雷涉嫌从事洗钱、恐怖融资或其他违法犯罪行为；中行丽都饭店支行也未向法庭提交足以认定其认为的正当理由或风险控制的证据。且目前中国银行也没有按照美国法院的命令支付罚款及向古驰公司支付费用。

《中华人民共和国商业银行法》规定：商业银行依法开展业务，不受任何单位和个人的干涉；商业银行应当保障存款人的合法权益不受任何单位和个人的侵犯；商业银行办理储蓄存款业务，应当遵循存款自愿、取款自由、存款有息、为存款人保密的原则，故中行丽都饭店支行应当按照约定全面履行自己的义务，现对赵培媛、徐婷、徐雷的银行账户自行采取中止服务、暂停交易的措施没有合同依据和法律依据。

综上所述，依照《中华人民共和国合同法》第六十条，《中华人民共和国商业银行法》第四条、第六条，第二十九条第一款之规定，判决如下：

10

中国银行股份有限公司北京丽都饭店支行于本判决生效之日起七日内解除对赵培媛、徐婷、徐雷所有银行账户中止服务、暂停交易的状态。

案件受理费 70 元, 由中国银行股份有限公司北京丽都饭店支行负担 (于本判决生效后七日内交纳)。

如不服本判决, 可在判决书送达之日起十五日内, 向本院递交上诉状, 并按对方当事人的人数提出副本, 同时交纳上诉案件受理费 (开户行: 工商行东铁匠营分理处; 账号: 0200004090144420281; 收款人: 北京市第二中级人民法院), 上诉于北京市高级人民法院。在上诉期满后七日内, 仍未交纳上诉案件受理费的, 按自动撤回上诉处理。

审 判 长　　申小琦

审 判 员　　金页善

人民陪审员　　姜朝茜



二〇一四年　　月　　日

书 记 员　　曾颖异

本件与原件核对无误

Case 1:13-cv-08012-CM-DCF   Document 73-16   Filed 02/14/18   Page 15 of 26
Case 1:10-cv-04974-RJS   Document 142-12   Filed 01/23/15   Page 14 of 25
Case 11-3934, Document 29-12, 02/19/2014, 1160212, Page19 of 24

# 公　证　书

（2014）京长安外经证字第129号

申请人：中国银行股份有限公司北京丽都饭店支行

营业执照（副本）注册号：110105002499238（1-1）

营业场所：北京市朝阳区丽都饭店内

负责人：李柠，男，公民身份号码：110101198005291016

代理人：齐刘磊，男，公民身份号码：41270219830410811
3

公证事项：文本相符

兹证明前面的影印本与中国银行股份有限公司北京丽都饭店支行的代理人齐刘磊出示给本公证员的（2013）二中民初字第01275号《北京市第二中级人民法院民事判决书》的原本相符。

中华人民共和国北京市长安公证处

公　证　员　

二〇一四年一月七日

Case 1:13-cv-08012-CM-DCF   Document 73-16   Filed 02/14/18   Page 16 of 26

Case 1:10-cv-04974-RJS   Document 142-12   Filed 01/23/15   Page 15 of 25
Case 11-3934, Document 291-2, 02/19/2014, 1160211, Page14 of 24

# CIVIL JUDGMENT

## THE SECOND INTERMEDIATE PEOPLE'S COURT OF BEIJING MUNICIPALITY

(2013) Er Zhong Min Chu Zi No. 01275

Plaintiff:

Zhao Peiyuan, female, born on 25 September 1943, ethnic Manchu and retired employee of Beijing Piano Plant, domiciled at No. 16 Unit 1, Building 13, Section A Fangyuanli, Chaoyang District, Beijing, identification card No. 110105194309256129.

Authorised agent:

Chen Peng, attorney of Zhongdun Law Office of Beijing.

Plaintiff:

Xu Ting, female, born on 10 June 1970, ethic Manchu, unemployed, domiciled at No. 16 Unit 1, Building 13, Section A Fangyuanli, Chaoyang District, Beijing, identification card No. 11010519700610616X.

Authorised agent:

Chen Peng, attorney of Zhongdun Law Office of Beijing.

Plaintiff:

Xu Lei, male, born on 25 March 1972, ethnic Manchu, unemployed, domiciled at No. 16 Unit 1, Building 13, Section A Fangyuanli, Chaoyang District, Beijing, identification card No. 110105197203256132.

Authorised agent:

Chen Peng, attorney of Zhongdun Law Office of Beijing.

Defendant:

Beijing Lido Hotel Sub-branch of Bank of China Limited, with its business address at Lido Hotel, Chaoyang District, Beijing.

Person-in-charge:

Li Ning, president.

Authorised agent:

Fu Changyu, attorney of Junhe Law Offices of Beijing.

Authorised agent:

Zheng Yuejie, attorney of Junhe Law Offices of Beijing.

On 6 January 2013, this court accepted the contract dispute case filed by Zhao Peiyuan, Xu Ting and Xu Lei, the plaintiffs, against Beijing Lido Hotel Sub-branch of Bank of China Limited (hereinafter "BOC Lido Sub-branch"), the defendant. This court has since formed a collegiate panel consisting of judges Shen Xiaoqi and Jin Yeshan and people's juror Zhou Yuxi. The case was heard in public on 27 March, 1 August, 28 August and 6 September, 2013. Zhao Peiyuan (the plaintiff), and Chen Peng (the authorised agent jointly appointed by her, Xu Ting and Xu Lei), and Fu Changyu and Zheng Yuejie (both as authorised agent for BOC Lido Sub-branch, the defendant), appeared before the court. The hearing of the case has now been completed.

Zhao Peiyuan, Xu Ting and Xu Lei stated the following by way of complaint:

Xu Ting is a PRC citizen and a client of BOC Lido Sub-branch. Xu Ting was involved in a lawsuit in the United States with GUCCI (hereinafter Gucci) in respect of an intellectual property right dispute. Because the lawsuit has involved the New York Branch of Bank of China, BOC Lido Sub-branch then has unlawfully frozen all of Xu Ting's savings deposits in the PRC, and has further frozen all of the saving deposits of Zhao Peiyuan (her mother) and Xu Lei (her younger brother) in BOC Lido Sub-branch. Pursuant to Article 29 of the *Commercial Bank Law of the People's Republic of China*: personal savings deposit business with commercial banks shall be based on the principles of voluntary deposit, free withdrawal, deposit bearing interest, and the confidentiality for the depositor. A commercial bank has the right to reject any inquiry, freezing or deduction by any entity or individual with respect to others' individual deposits, except as otherwise provided by law. BOC Lido Sub-branch has violated the law by freezing the savings deposits of Zhao Peiyuan, Xu Ting and Xu Lei without authorisation. After a number of negotiations in vain, a lawsuit has now been filed to the court, requesting a ruling to the following effect: 1) BOC Lido Sub-branch immediately lifts the freeze on all savings deposits of Zhao Peiyuan, Xu Ting and Xu Lei with BOC Lido Sub-branch; and 2) BOC Lido Sub-branch bears all litigation costs associated with the case.

BOC Lido Sub-branch has stated the following in defence:

1) According to the fixed term deposit certificates, Treasury-bond certificate , information confirmation forms for personal wealth management product transactions and other evidences, Zhao Peiyuan, Xu Ting and Xu Lei have each deposited money with and purchased treasury bonds and wealth management products from BOC Lido Sub-branch, forming 30 independent contracts with BOC Lido Sub-branch respectively, including savings deposit contracts, treasury bond sales and purchase contracts and wealth management product contracts. Each of the fixed term deposit certificates, T-bond certificates and personal wealth management products corresponds with a certain amount and each account is not jointly held by all three individuals. Therefore, these contractual relationships involve different parties, subject matters and particulars and constitute different legal relationships, and do not satisfy the conditions for a joint action and should not be heard in a joinder of actions.

2) In June 2010, Gucci and six other companies filed a lawsuit with United States District Court Southern District of New York (hereinafter "the US Court") against Zhao Peiyuan, Xu Ting and Xu Lei, alleging them of producing and selling products bearing the fake Gucci trademark and other trademarks and remitting proceeds therefrom into China. Zhao Peiyuan, Xu Ting, Xu Lei, *et al*, however, have never responded to the accusation. Nor have they made any submissions to Gucci and other parties or to the US Court as required by the court. Gucci subsequently filed an application with the US Court asking the court to compel Bank of China to provide the China account information of Zhao Peiyuan, Xu Ting and Xu Lei. For this purpose, Bank of China has had to engage US lawyers for the submission of a large number of applications and motions and international law specialists for the submission of expert opinions, in both cases to the US Court, thereby incurring large sums of legal fees, expert fees and other case handling expenses, with more losses very likely to be incurred in the future. As it became involved in the lawsuit that Zhao Peiyuan, Xu Ting and Xu Lei have been involved in the United States, BOC Lido Sub-branch is entitled to take necessary steps to prevent further losses, and has, in accordance with the provisions of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts*, suspended the banking services for Zhao Peiyuan, Xu Ting

Case 1:13-cv-08012-CM-DCF   Document 73-16   Filed 02/14/18   Page 18 of 26

Case 1:10-cv-04974-RJS   Document 142-12   Filed 01/23/15   Page 17 of 25
Case 11-3934, Document 291-2, 02/19/2014, 1160211, Page16 of 24

and Xu Lei and the transactions via the relevant accounts. Zhao Peiyuan, Xu Ting and Xu Lei should be held liable for any losses resulting therefrom.

In this case, BOC Lido Sub-branch has not acted upon the instruction of any entity or individual to freeze the accounts of Zhao Peiyuan, Xu Ting and Xu Lei or taken any other compulsory measures and the accounts of Zhao Peiyuan, Xu Ting and Xu Lei are not in any state of being frozen. Furthermore, Zhao Peiyuan, Xu Ting and Xu Lei have not provided any evidence to prove that their accounts are in a state of freeze. Therefore, BOC Lido Sub-branch has not frozen the savings deposits of Zhao Peiyuan, Xu Ting and Xu Lei and has not committed any breach of law.

To sum up, this is a case caused by the jurisdictional conflict between the PRC and the United States and its impact will be significant. After they were sued in the United States by Gucci and other parties for violation of law and infringement, Zhao Peiyuan, Xu Ting and Xu Lei failed to respond to the suit in the United States and to provide the US Court with information about their assets, and tried to evade the jurisdiction of the US Court and to evade their infringement liabilities. On the other hand, they have brought a case in the PRC against Bank of China which has been innocently involved by them in a US lawsuit, in order to shift their liability to Bank of China thereby subjecting Bank of China to greater liabilities in the United States. Therefore the court is hereby requested to dismiss the action brought by Zhao Peiyuan, Xu Ting and Xu Lei according to the applicable laws.

Upon hearing of the case it has been found that:

From 1 August 2009 to 26 April 2011, Zhao Peiyuan concluded transactions with BOC Lido Sub-branch evidenced by the following documents: 3 gift deposit certificates (representing a total amount of RMB 257,269.70), 8 fixed term deposits (representing a total amount of RMB 510,000), two demand deposit passbooks (representing a total amount of RMB 120,683.11), 1 treasury transaction (in an amount of RMB 440,000), and 4 wealth management products (in a total amount of RMB 373,000). The total amount for the above is RMB 1,700,961.64. From 11 June 2009 to 8 April 2011, Xu Ting concluded transactions with BOC Lido Sub-branch evidenced by the following documents: 5 gift deposit certificates (representing a total amount of RMB 416,845.58), 1 VIP card (representing a total amount of RMB 2,013), two demand deposit certificates (representing a total amount of RMB3,358.81), 2 wealth management products (in a total amount of RMB 679,000). The total amount for the above is RMB 1,101,217.39. From 17 August 2010 to 8 April 2011, Xu Lei concluded transactions with BOC Lido Sub-branch evidenced by the following documents: 2 gift deposit certificates representing a total amount of RMB 154,553.53.

The above-mentioned fixed term deposits, treasury bonds and wealth management products have all matured in accordance with their initial terms or durations of transaction. The parties have no dispute over the information relating to the accounts of Zhao Peiyuan, Xu Ting and Xu Lei with BOC Lido-Sub-branch, including the account numbers, account names, transaction numbers, opening dates, relevant business, transaction dates, primary opening documents, principal amounts, initial maturity dates, carry forward status, carry forward maturity dates and other account information.

Zhao Peiyuan, Xu Ting and Xu Lei claimed that they have been unable to withdraw money from any of their accounts maintained with BOC Lido Sub-branch since 10 June 2011. The bank staff merely informed them verbally or via telephone that Xu Ting has been involved in an intellectual property right dispute in the United States with Gucci and therefore all amounts have been frozen and incapable of being withdrawn, but refused providing any evidence in writing. BOC Lido Sub-branch, while acknowledging the time of suspending transactions relating to the accounts of Zhao Peiyuan, Xu Ting and Xu Lei, asserted that, pursuant to the provisions on account cancellation or business termination of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts* signed and accepted by Zhao Peiyuan, Xu Ting and Xu Lei at the time of entering into various business transactions with the bank, if Bank of China is involved in any litigation or suffers any loss as a result of any dispute between Zhao Peiyuan, Xu Ting or Xu Lei (as the case may be) and any third party, or if Zhao Peiyuan, Xu Ting or Xu Lei is suspected of engaging in money laundering, fraud, financing of terrorism or other illegal activities, or if any account of Zhao

Peiyuan, Xu Ting or Xu Lei is suspected of being used for money laundering, fraud or other illegal activities, the bank shall have the right to suspend business dealings with the relevant plaintiffs and suspend transactions of the relevant accounts. In light of the fact that it is currently involved in a lawsuit and dispute in the US Court, BOC Lido Sub-branch may conclude that Zhao Peiyuan, Xu Ting and Xu Lei are involved in the scenarios above and that it is entitled to suspend its banking dealings with them and suspend transaction services relating to the relevant accounts, and such suspension do not constitute an account freeze.

Upon court hearing, it has been found that all business transactions that Zhao Peiyuan, Xu Ting and Xu Lei have had with BOC Lido Sub-branch, namely opening accounts, making demand deposits and fixed term deposits, treasury bonds sales and purchases, purchasing wealth management products, bank card related transactions, and electronic-banking transactions, etc., occurred between June 2009 and May 2011. When making fixed term deposits before October 2009, the relevant plaintiffs each completed an _Account Opening Application_ at the request of BOC's staff. With respect of all subsequent fixed term or demand deposits and application for wealth management VIP card, the relevant plaintiffs each completed an _Application Form for Account Opening and Comprehensive Services for Individual Accounts_, on the back of which is the _Agreement of Account Opening and Comprehensive Services for Individual Accounts_. For their purchase of treasury bond products, the relevant plaintiff each completed an _Application for Account Opening / Comprehensive Services for Individual Accounts_, on the back of which are notes to clients, Bank of China personal settlement account management agreement, and articles of association for Bank of China Great Wall debit card. For their purchase of wealth management products, the relevant plaintiffs each completed an _Information Confirmation Sheet for Personal Wealth Management Product Transactions_.

Below the client information blocks of the _Application Form for Account Opening and Comprehensive Services for Individual Accounts_, it contains the following language: I have read and understood the relevant provisions of the "Agreement for Applying for Account Opening and Comprehensive Services for Individual Accounts of Bank of China Limited", and undertake to carry on business transactions in compliance with the relevant provisions of the agreement, notes to the clients, the service agreement and the bank's current business articles of association, and business transaction rules and requirements. Zhao Peiyuan, Xu Ting and Xu Lei have signed their names in places marked with "applicant's signature".

According to paragraph (3) of the clause in relation to account closing or business termination in the _Agreement of Account Opening and Comprehensive Services for Individual Accounts_, which was formulated by Bank of China Limited and effective from June 2009 to May 2011, "_[i]f the Applicant violates any provision of this Agreement or any other rules and regulations of the Bank, or makes any operation with malicious intent, or defames or damages the reputation of the Bank, or maliciously attacks the electronic banking system of the Bank, or is suspected of engaging in money laundering, financing of terrorism or other illegal or criminal activities, based on any reason or factor (including risk control) as deemed justifiable by the Bank, the Bank has the right to suspend or terminate this Agreement and provision of the services hereunder, and reserves the right to hold the Applicant liable for such activities. Termination of this Agreement shall not be deemed as cancellation of any outstanding transaction instructions given prior to such termination, or discharge or release of any legal consequence of any transaction incurred prior to such termination._"

From 1 July 2011, Bank of China Limited started to use a new version of the _Agreement of Account Opening and Comprehensive Services for Individual Accounts_, in which paragraph (3) of the clause in relation to account closing or business termination reads as follows: "_[i]f the Applicant is suspected of engaging in money laundering, fraud, financing of terrorism or other illegal activities, or violates any provision of applicable laws, regulations, regulatory rules, government policies, this Agreement, or other by-laws, business rules or regulations of the Bank, or makes any operation with malicious intent, or defames or damages the reputation of the Bank, or maliciously attacks the electronic banking system of the Bank, or the Bank is involved in any litigation or incurs any loss due to any dispute between the Applicant and any third party, or the Applicant's account is suspected of being used for money laundering, fraud or other illegal purposes, the Bank has the right to suspend or terminate this Agreement and provision of the services hereunder, and reserves the right to hold the Applicant liable for such activities, and the Applicant shall be_

Case 1:13-cv-08012-CM-DCF   Document 73-16   Filed 02/14/18   Page 20 of 26

Case 1:10-cv-04974-RJS   Document 142-12   Filed 01/23/15   Page 19 of 25
Case 11-3934, Document 291-2, 02/19/2014, 1160211, Page19 of 24

*liable for any and all losses incurred by the Bank due to such activities. If any fund of the Bank is deducted by any court or other judicial or governmental authority that intends to deduct the Applicant's fund, the Bank has the right to deduct the Applicant's fund to cover the loss incurred by the Bank due to the abovementioned deduction. Termination of this Agreement shall not be deemed as cancellation of any outstanding transaction instructions given prior to such termination, or discharge or release of any legal consequence of any transaction incurred prior to such termination."* Zhao Peiyuan, Xu Ting and Xu Lei claim that the clause above is a standard term. When they went through relevant formalities in relation to account opening and making deposits with BOC Lido Sub-branch, they signed all the forms as instructed and required by the counter staff of the bank, and the bank failed to give any explanation on any clause of the agreements. The plaintiffs had no way to find out when a new version was adopted or what amendments were made to the *Agreement of Account Opening and Comprehensive Services for Individual Accounts*. Therefore, the plaintiffs claim that the clause above is illegal and invalid. BOC Lido Sub-branch asserts that all applicable business by-laws, rules and regulations issued and updated from time to time by Bank of China Limited shall be part of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts*. Therefore, the provisions of clauses adopted and incorporated into the *Agreement of Account Opening and Comprehensive Services for Individual Accounts* from time to time shall be automatically applicable to the legal relationship concerned in this proceeding. The bank has published announcements in relation to the adoption of the new version of the agreement at its business locations. However, BOC Lido Sub-branch fails to present evidence to prove how it notified Zhao Peiyuan, Xu Ting and Xu Lei of the adoption of the new version of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts* from 1 July 2011.

It is also found that in June 2010, seven companies representing five brands (including Gucci) filed a complaint against Xu Ting and her husband Xu Lijun *et al* with a court in the US, and included Zhao Peiyuan and Xu Lei as additional defendants in the US proceeding on 10 March 2011, alleging that those people had been involved in the manufacture and sale of counterfeits bearing the trademarks of Gucci and other plaintiffs in the US proceeding, and remitted the proceeds from the manufacture and sale of such counterfeits into China. Except Xu Lijun's attorney, who was present at the trial of the US proceeding, no defendant in the US proceeding filed any response or defence, or made any submission to Gucci *et al* or the US Court as ordered by the US Court. On 12 July 2010, the US Court issued a preliminary injunction and a writ of discovery, which prohibited Zhao Peiyuan, Xu Ting and Xu Lei *et al* from continuing the alleged infringements, and ordered the persons on whom the injunction was served (including the agents, representatives, successors and bankers of the three individuals mentioned above) to refrain from transferring any assets including the funds held in the accounts opened by Zhao Peiyuan, Xu Ting and Xu Lei *et al* with Bank of China in the PRC. On 13 and 16 July 2010, Gucci *et al* served upon Bank of China New York Branch the said injunction, the writ of discovery and the subpoena to produce documents, information, or objects or to permit inspection of premises in a civil action, under which Bank of China was commanded to take necessary steps to comply with the provisions of the preliminary injunction, and release information in relation to the accounts of Zhao Peiyuan, Xu Ting and Xu Lei. From 21 July 2010, Bank of China engaged its US counsel, and as an interested third party, filed with the US Court a motion to quash the motion of Gucci for enforcing the writ of discovery, and a motion for reconsideration. On 23 August 2011, the US Court issued an order to compel Bank of China to comply with the subpoena and the preliminary injunction served by Gucci *et al*, and denied the motion of Bank of China for reconsideration, requesting Bank of China to release the information required under the subpoena within 14 days after the order was issued. On 22 September 2011, Bank of China appealed this order to the United States Court of Appeals for the Second Circuit. On 30 November 2011, Bank of China also filed a motion with the US Court, requesting that the US Court grant the motion of Bank of China for reconsideration and for exemption from the order dated on 23 August 2011, and order Gucci *et al* to seek further information from Bank of China via the Hague Convention procedures, and rule that the accounts inside China are not subject to the preliminary injunction. On 18 May 2012, the US Court denied the motion of Bank of China for reconsideration. On 15 November 2012, the US Court held Bank of China in malicious and intentional contempt of the court order dated on 23 August 2011 and the discovery obligation under the injunction for 14 months, and imposed a fine of USD 75,000 on Bank of China; if Bank of China failed to comply with the order dated on 23 August 2011 within 7 days, a fine of USD 10,000 per day would be imposed on it from the expiry of such 7-day period, until

Bank of China complied with the order. The US Court also granted the motion of Gucci *et al* to require Bank of China to pay the reasonable attorney's fees and court fees incurred by Gucci *et al* for filing the motion for contempt. Bank of China then appealed the contempt citation to the United States Court of Appeals for the Second Circuit, and filed a motion for stay of the penalty until the appeal proceeding is concluded. The motion was granted and Bank of China did not make any payment. In this Case, BOC Lido Sub-branch has not made any claim against Zhao Peiyuan, Xu Ting or Xu Lei for such loss allegedly incurred by it.

The facts above are supported by the application forms for opening accounts with BOC Lido Sub-branches, the *Agreement of Account Opening and Comprehensive Services for Individual Accounts*, personal banking transaction bills, term deposit certificates, current deposit books, certificate treasury bonds, bank cards and confirmation of personal wealth management transactions, signed by or issued to Zhao Peiyuan, Xu Ting or Xu Lei between June 2009 and May 2011, the relevant documents used in the US proceeding between Gucci and Zhao Peiyuan, Xu Ting and Xu Lei, the memoranda and orders issued by the US Court, and the transcript of the statements made by the parties during the hearing of this case.

In respect of the following issues, this Court holds the opinion as follows:

1.      Whether the proceedings shall be consolidated.

According to the *Commercial Bank Law of the People's Republic of China*, a commercial bank is permitted to engage in accepting deposits from the public, trading government bonds and financial bonds, conducting bank card business, and other business approved by the banking regulatory authority under the State Council. This Court finds that, in addition to the saving deposit contracts between Zhao Peiyuan, Xu Ting or Xu Lei and BOC Lido Sub-branch, the Plaintiffs and the Defendant also entered into other contracts including treasury bond trading contracts and wealth management contracts. The claims of Zhao Peiyuan, Xu Ting and Xu Lei are consistent and related to the same subject matter, i.e. requesting the Court to order BOC Lido Sub-branch to remove the block on all the accounts opened by the Plaintiffs with the Defendant. In order to improve litigation efficiency, simplify the legal proceedings and reduce the burden of the parties, the proceedings shall be consolidated.

2.      Whether BOC Lido Sub-branch violated any contractual or statutory provision by stopping financial service and suspending usage of the accounts of Zhao Peiyuan, Xu Ting and Xu Lei.

The undertakings and agreements in relation to the business conducted by Zhao Peiyuan, Xu Ting and Xu Lei through their accounts opened with BOC Lido Branch (including current deposits, term deposits, treasury bond trading, wealth management products, bank cards, electronic banking business) were signed between June 2009 and May 2011. BOC Lido Branches notified Zhao Peiyuan, Xu Ting and Xu Lei of its decision to cease to provide services to them in June 2011. Therefore, the rights and obligations of the parties to this action shall be governed by the terms of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts* which was formulated by Bank of China and effective prior to 1 July 2011.

The clause in relation to account closing or business termination in such applicable version of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts* reads as follows: *[i]f the Applicant violates any provision of this Agreement or any other rules and regulations of the Bank, or makes any operation with malicious intent, or defames or damages the reputation of the Bank, or maliciously attacks the electronic banking system of the Bank, or is suspected of engaging in money laundering, financing of terrorism or other illegal or criminal activities, based on reason or factor (including risk control) as deemed justifiable by the Bank, the Bank has the right to suspend or terminate this Agreement and provision of the services hereunder, and reserves the right to hold the Applicant liable for such activities*

According to the facts found during the trial, Zhao Peiyuan, Xu Ting and Xu Lei completed and signed the application forms as requested by the bank when conducting banking business with BOC Lido Sub-branch. BOC Lido Sub-branch failed to produce evidence to prove that Zhao Peiyuan, Xu Ting and Xu Lei had

actually made any operation with malicious intent, or defamed or damaged the reputation of the bank, or maliciously attacked the electronic banking system of the bank.  The US proceeding in which Zhao Peiyuan, Xu Ting and Xu Lei are involved is still on-going and pending.  There is no judgment that has taken effect in China and finds Zhao Peiyuan, Xu Ting and Xu Lei guilty of being involved in money laundering, financing of terrorism or other illegal or criminal activities.  BOC Lido Sub-branch also failed to produce evidence sufficient to prove that it has justifiable reason or risk control factor to cease to provide services to the Plaintiffs. Bank of China has not paid any fine imposed by the US Court or any amount to Gucci.

According to the *Commercial Bank Law of the People's Republic of China*, the lawful business operation of a commercial bank is free from interference of any entity or individual; a commercial bank shall protect the lawful interest of depositors from being injured by any entity or individual; personal savings deposit business with commercial banks shall be based on the principles of voluntary deposit, free withdrawal, deposit bearing interest, and the confidentiality for the depositor.  Therefore, BOC Lido Sub-branch shall perform its obligations in accordance with the terms as agreed with the Plaintiffs.  There is no contractual or legal basis for BOC Lido Sub-branch to unilaterally stop financial service and suspend usage of the accounts of Zhao Peiyuan, Xu Ting and Xu Lei.

Based on the above, in accordance with Article 60 of the *Contract Law of the People's Republic of China*, Articles 4, 6 and 29(1) of the *Commercial Bank Law of the People's Republic of China*, this Court rules as follows:

Beijing Lido Hotel Sub-branch of Bank of China Limited is ordered to resume the provision of services for and dealing with all the bank accounts opened by Zhao Peiyuan, Xu Ting and Xu Lei, within seven days after this judgment takes effect.

The court fee (RMB 70) shall be borne and paid by Beijing Lido Hotel Sub-branch of Bank of China Limited within seven days after this judgment takes effect.

If any party does not accept this judgment, it may appeal this judgment to the Beijing Higher People's Court, by submitting to this Court its appeal, with copies in the same number as the number of the other parties in this proceeding, and paying the court fee for the appeal proceeding (account bank: ICBC Dongtiejiangying Office; account number: 0200000409014420281; payee: The Beijing No. 2 Intermediate People's Court), within fifteen days after the delivery of this judgment.  If the court fee for the appeal proceeding fails to be paid by the expiry of seven days after the expiry of the said 15-day period, the appeal shall automatically be deemed as withdrawn.

Chief Judge: Shen Xiaoqi

Judge:     Jin Yeshan

Juror:     Zhou Yuxi

Date: 4 December 2013

Clerk: Cao Yingyi

Certified as consistent with the original.

File no: 13124-16437-334-200-260558

Case 1:13-cv-08012-CM-DCF   Document 73-16   Filed 02/14/18   Page 23 of 26

Case 1:10-cv-04974-RJS   Document 142-12   Filed 01/23/15   Page 22 of 25
Case 11-3934, Document 291-2, 02/19/2014, 1160211, Page21 of 24

## NOTARIAL CERTIFICATE

(2014)J.CA.W.J.Z.Zi,No.129

Applicant: Beijing Lido Hotel Sub-branch of Bank of China Limited

Business License (duplicate) Register Number: 110105002499238 (1-1)

Location: Lido Hotel, Chaoyang District, Beijing

Person in charge: Li Ning, male, Identification of Citizen: 110101198005291016

Attorney: Qi Liulei, male, Identification of Citizen: 412702198304108113

Issue under notarization: True and Exact Photocopy

This is to certify that the photocopy attached hereto is in conformity with the original Civil Judgment of The Second Intermediate People's Court of Beijing Municipality, (2013)Er Zhong Min Chu Zi No.01275, showed me by Qi Liulei, the attorney of Beijing Lido Hotel Sub-branch of Bank of China Limited.

Notary:Liang Wei

Beijing Changan Notary Public Office

The People's Republic of China

January 7, 2014

Case 1:13-cv-08012-CM-DCF   Document 73-16   Filed 02/14/18   Page 24 of 26
Case 1:10-cv-04974-RJS   Document 142-12   Filed 01/23/15   Page 23 of 25
Case 11-3934, Document 291-2, 02/19/2014, 1160211, Page22 of 24

# 公　证　书

（2014)京长安外经证字第130号

申请人：中国银行股份有限公司北京丽都饭店支行

营业执照（副本）注册号：110105002499238（1-1）

营业场所：北京市朝阳区丽都饭店内

负责人：李柠，男，公民身份号码：110101198005291016

代理人：齐刘磊，男，公民身份号码：41270219830410811

3

公证事项：文本相符

兹证明前面的(2014)京长安外经证字第129号《公证书》的英文译本与该公证书中文原本内容相符。

中华人民共和国北京市长安公证处

公　证　员

二〇一四年一月七日

# NOTARIAL CERTIFICATE

(2014)J.CA.W.J.Z.Zi,No.130

Applicant: Beijing Lido Hotel Sub-branch of Bank of China Limited

Business License (duplicate) Register Number: 110105002499238 (1-1)

Location: Lido Hotel, Chaoyang District, Beijing

Person in charge: Li Ning, male, Identification of Citizen: 110101198005291016

Attorney: Qi Liulei, male, Identification of Citizen: 412702198304108113

Issue under notarization: exact translation

This is to certify that the English translation of the Notarial Certificate (2014)J.CA.W.J.Z.Zi,No.129 attached hereto is in conformity with the Chinese original.

Notary:Liang Wei

Beijing Changan Notary Public Office

The People's Republic of China

January 7, 2014



People's Republic of China)

Municipality of Beijing    )

Embassy of the United     )   ss:

States of America          )

I, _____Silvia Spring Vice Consul_____ , Consul/Vice Consul of the United States of America in Beijing, the People's Republic of China, duly commissioned and qualified, do hereby certify that _Qu LIRONG_ , whose true signature and official seal are, respectively, subscribed and affixed to the foregoing document, was on the ____13____ day of __Jan.__ , 201_4_ , an officer of the Ministry of Foreign Affairs of the People's Republic of China, duly commissioned and qualified, to whose official acts faith and credit are due.

IN WITNESS WHEREOF I have hereunto set my hand and affixed the seal of the Embassy of the United States of America in Beijing, the People's Republic of China this ___16___ day of __Jan.__ 201_4_

Silvia Spring
Vice Consul