# Exhibit B-17

# EXHIBIT A

# 北京市第三中级人民法院

# 民事判决书

（2015）三中民终字第 04894 号

上诉人（原审原告）中国银行股份有限公司北京朝阳支行，地址北京市朝阳区东三环北路霞光里 18 号。

负责人黄晓娟，行长。

委托代理人郑跃杰，北京市君合律师事务所律师。

被上诉人（原审被告）赵培媛，女，1943 年 9 月 25 日出生，满族，北京钢琴厂退休职工，住北京市朝阳区芳园里甲 13 号楼 1 单元 16 号。

委托代理人陈鹏，北京市中盾律师事务所律师。

被上诉人（原审被告）徐婷，女，1970 年 6 月 10 日出生，满族，无业，住北京市朝阳区芳园里甲 13 号楼 1 单元 16 号。

委托代理人陈鹏，北京市中盾律师事务所律师。

被上诉人（原审被告）徐雷，男，1972 年 3 月 25 日出生，满族，无业，住北京市朝阳区芳园里甲 13 号楼 1 单元 16 号。

委托代理人陈鹏，北京市中盾律师事务所律师。

上诉人中国银行股份有限公司北京朝阳支行（以下简称中国银行朝阳支行）因与被上诉人赵培媛、徐婷、徐雷侵权责任纠纷一案，不服北京市朝阳区人民法院（2014）朝民初字第 25377 号民事判决，向本院提起上诉。本院依法组成合议庭审理了本案，现已审理终结。

中国银行朝阳支行于 2014 年 6 月诉至原审法院称：赵培媛

是徐婷及徐雷的母亲,徐婷是徐雷的姐姐,2009年至2011年间,徐婷在我行开立了大量账户。

2010年6月,因赵培媛、徐婷、徐雷及其整个家族涉嫌在美国制造、销售假冒古驰美国公司等商标的产品,并将相关收益汇回中国国内,古驰美国公司等七家公司(以下称"古驰公司等")向美国纽约南区地方法院(以下称"纽约南区法院")提起了诉讼,要求赵培媛、徐婷、徐雷停止侵权,赔偿损失。

但被古驰公司等起诉后,赵培媛、徐婷、徐雷却拒绝出庭应诉,未向纽约南区法院提交任何文件,也未按纽约南区法院的裁决对古驰公司等的取证请求作出回应,导致美国纽约南区地方法院作出预先禁令及命令,要求中国银行冻结赵培媛、徐婷、徐雷在中国境内开立的账户中的资金,并要求中国银行按照古驰公司传票的要求,提供赵培媛、徐婷、徐雷的所有账户信息及其他文件。

为避免被美国法院强制要求披露赵培媛、徐婷、徐雷账户信息、冻结赵培媛、徐婷、徐雷账户资金,中国银行不得不聘请了美国律师及专家证人,对纽约南区法院的预先禁令及命令提出反对意见,并向其提出了动议。但最终,2012年11月15日,纽约南区法院认为中国银行未遵守其预先禁令及命令,判令中国银行在民事上藐视法庭,并裁定对中国银行处以强制性罚款。在这一过程中,中国银行支付了大量的律师费用、专家费用与其他办案费用。截止目前,上述费用折合人民币已达5 534 595元。虽然中国银行曾多次要求赵培媛、徐婷、徐雷通过出庭或授权中国银行提供其账户信息等方式解决相关纠纷,

- 2 -

但赵培媛、徐婷、徐雷却一直予以拒绝。最终，因赵培媛、徐婷、徐雷系在我行处开立账户，上述费用均由我行承担。

我行认为，赵培媛、徐婷、徐雷涉嫌在美国从事制造、销售冒假商标的商品的违法行为，并在我行处开立账户，将相关收益汇回国内，导致中国银行被卷入美国诉讼，同时，赵培媛、徐婷、徐雷在被起诉后，拒绝应诉，最终导致美国法院对中国银行作出了强制禁令及命令，使中国银行不得不进行应对，导致我行为此支付了大量费用，并很可能承受进一步的损失。赵培媛、徐婷、徐雷的行为致使我行遭受了巨额损失，应承担相应的赔偿责任，同时，赵培媛、徐婷、徐雷的行为实质上是利用中美司法管辖的冲突，逃避法律责任，不应受到法律的保护。为此，特根据《侵权责任法》第 6 条等相关规定，请求判令：1、赵培媛、徐婷、徐雷向我行赔偿损失共计人民币 5 534 595 元，并对我行的损失承担连带赔偿责任。

赵培媛、徐婷、徐雷辩称：一、对中国银行朝阳支行无侵权行为。我们在中国银行朝阳支行处开立账户，是依据《中华人民共和国商业银行法》实施的民事法律行为，在开立账户的过程中完全按照银行的要求进行了提交资料，无任何隐瞒或遗漏。因此开立账户的行为合法有效，不可能构成对中国银行朝阳支行的侵权。至于中国银行朝阳支行提到的在美国法院不出庭，不向法院提交文件等行为，我们有在美国法下对自己的民事诉讼权利处分的自由。自行承担对该权利处分所带来的诉讼后果。我们自己的行为与中国银行纽约分行无关，与中国银行朝阳支行无关，中国银行无权要求我们改变自身对诉讼权利的

- 3 -

合法行使。实际上，中国银行在美国法院受到制裁，是美国法院司法霸权主义的结果，这样的一个结果根本不应由我们来承担。这是中国银行的海外投资所遭遇的政治风险，应该通过美国国内法，甚至通过外交途径解决。而不是不负责任地将这些责任转嫁到消费者身上，尤其是国内消费者身上。二、中国银行朝阳支行无任何实际损失。中国银行朝阳支行是中国银行北京朝阳支行，中国银行朝阳支行的诉求却是为中国银行纽约分行寻求弥补损失。这是不符合法理的。中国银行北京朝阳支行与中国银行纽约分行是两个不同的主体，一个是国内主体，一个是外国主体。外国主体的损失，却由国内主体直接追索，既不符合国内法，也不符合国际法。况且，中国银行纽约分行到目前为止，亦没有实际向美国法院缴纳罚款，中行纽约分行的案件仍在审理中。所以说中国银行朝阳支行无任何实际损失。三、中国银行朝阳支行与我们之间的纠纷已经由北京市高级法院（2014）高民终字第 585 号民事判决书作出了终审裁决，已经判决中国银行朝阳支行无条件解除对我们账户的冻结。而中国银行朝阳支行无视生效判决，故意捏造侵权责任纠纷的案由，滥用诉权，提起诉讼。这一行为已经违反了我国民事诉讼法一事不再理的民事诉讼基本原则，是对我国日益紧张的司法资源的浪费。对于这一行为，建议法院对中国银行朝阳支行予以制裁。综上所述，我们并没有任何侵权行为，中国银行朝阳支行也没有实际损失，我们的合法行为与中国银行朝阳支行境外联行支行的支出之间更没有直接的因果关系，我们对中国银行朝阳支行构成侵权，没有任何的法律依据。相反地，中国银行朝

- 4 -

Case 1:10-cv-04974-RJS   Document 152-1   Filed 07/08/15   Page 6 of 28

阳支行无视司法权威，滥用诉权，浪费司法资源，应当予以制裁。因此，请求驳回中国银行朝阳支行的起诉。

原审法院经审理查明：徐婷、徐雷姐弟系赵培媛之子女。

2009年至2011年期间，赵培媛、徐婷、徐雷在中国银行股份有限公司北京丽都饭店支行（以下简称中行丽都饭店支行）开立多个账户。

赵培媛、徐婷、徐雷因在美国涉嫌侵权，被古驰公司等起诉，在诉讼过程中，美国法院作出预先禁令及证据发现令，中国银行纽约分行亦参与到在美国法院进行的诉讼中。

期间，中行丽都饭店支行冻结了赵培媛、徐婷、徐雷的银行帐户。赵培媛、徐婷、徐雷诉至法院，要求中行丽都饭店支行立即解除对赵培媛、徐婷、徐雷在中行丽都饭店支行的所有存款的冻结状态。

北京市第二中级人民法院作出（2013）二中民初字第01275号民事判决书，在该案，查明以下事实：赵培媛自2009年8月1日至2011年4月26日在中行丽都饭店支行办理了3笔礼仪存单，金额257 269.7元；8笔定期存单，金额510 000元；两个活期存折，金额120 683.11元；1笔国债买卖，金额440 000元；4笔理财产品，金额373 000元；共计1 700 961.64元。徐婷自2009年6月11日至2011年4月8日在中行丽都饭店支行办理了5笔礼仪存单，金额416 845.58元；1张贵宾卡2013元；两个活期存折，金额3358.81元，2笔理财产品，金额679 000元；共计1 101 217.39元。徐雷自2010年8月17日至2011年4月8日在中行丽都饭店支行办理了2笔礼仪存单，

- 5 -

共计金额 154 553.53 元。

　　上述款项的定期存款、国债及理财产品按照首期的存期及交易期限均已到期。各方当事人对赵培媛、徐婷、徐雷在中行丽都饭店支行涉案的包括账号数、客户名称、交易账号、开立日期、相关业务、交易日期、主要开立文件、本金、首期到期日、转存状态、转存到期日等账户信息均无异议。

　　赵培媛、徐婷、徐雷称自 2011 年 6 月 10 日之后在中行丽都饭店支行开立的账户中的所有款项均不能支取，银行的工作人员只以口头及电话方式告知因徐婷在美国与古驰公司有知识产权纠纷，故所有款项予以冻结不能支取，但不给出具任何书面证明材料。中行丽都饭店支行认可停止赵培媛、徐婷、徐雷账户交易的时间，但主张根据赵培媛、徐婷、徐雷在银行办理各种业务时所签字确认的《个人账户开户及综合服务协议书》中销户或业务终止条款的约定，在赵培媛、徐婷、徐雷与其他第三方发生纠纷而致中国银行被卷入诉讼或致中国银行遭受损失、赵培媛、徐婷、徐雷涉嫌从事洗钱、欺诈、恐怖融资等非法行为，赵培媛、徐婷、徐雷账户涉嫌被洗钱、欺诈等非法行为利用的情形下，银行有权中止与赵培媛、徐婷、徐雷的业务往来、暂停相关账户交易。中行丽都饭店支行可以根据目前在美国法院涉及诉讼纠纷的事实，判断赵培媛、徐婷、徐雷存在上述情形，并有权中止与赵培媛、徐婷、徐雷的银行业务往来，暂停相关账户的交易服务，并非是冻结的行为。

　　庭审中查明，赵培媛、徐婷、徐雷在中行丽都饭店支行开立账户办理活期存款、定期存款、国债买卖、理财产品、银行

- 6 -

卡、电子银行等业务，均发生在 2009 年 6 月至 2011 年 5 月期间，在 2009 年 10 月之前办理定期存款时，按照银行工作人员的要求填写了《开户申请书》，之后办理的定期、活期存款、中银理财贵宾卡均填写了《个人账户开户及综合服务申请表》，其背面系《个人账户开户及综合服务协议书》。购买国债产品时填写的《个人开户/综合服务申请书》，背面附有客户须知、中国银行个人结算账户管理协议书、中国银行长城电子借记卡章程。购买理财产品时填写了《个人理财产品业务交易信息确认单》。

在《个人账户开户及综合服务申请表》客户资料一栏的下方载明有如下文字：本人已阅读并了解本申请表中"中国银行股份有限公司个人账户开户及综合服务申请协议书"的有关条款，并保证遵照该协议的有关约定、客户须知、服务协议和银行最新业务章程、业务规则、业务规定办理相关业务。并由赵培媛、徐婷、徐雷在"申请人签字"处签名确认。

2009 年 6 月至 2011 年 5 月期间，由中国银行股份有限公司制定并实施的《个人账户开户及综合服务协议书》销户或业务终止条款第（三）项约定：申请人违反本协议或其他银行相关规章制度或存在恶意操作、诋毁、损害银行声誉、恶意攻击银行电子银行系统等行为，或者申请人涉嫌从事洗钱、恐怖融资或其他违法犯罪行为，银行有权依据其认定的正当理由或风险控制等相关因素，中止或终止本协议及提供相关服务，并保留追究申请人责任的权利。协议终止并不意味着终止前所发生的未完成交易指令的撤销，也不能消除因终止前所发生的交易所带来的任何法律后果。

- 7 -

Case 1:10-cv-04974-RJS   Document 10...

　　2011 年 7 月 1 日，中国银行股份有限公司启用新版本《个人账户开户及综合服务协议书》，将销户或业务终止条款第（三）项补充修改为：申请人涉嫌从事洗钱、欺诈、恐怖融资等非法行为，或违反法律法规、监管规定及相关国家政策，违反本协议或其他银行相关章程、业务规则、业务规定，或存在恶意操作、诋毁和损害银行声誉、恶意攻击银行电子银行系统等行为，或因申请人与其他第三方发生纠纷而致银行被卷入诉讼或遭受损失的，或申请人账户涉嫌被洗钱、欺诈等非法行为利用的，银行有权中止或终止本协议及提供相关服务并保留追究申请人责任的权利，申请人应承担因此给银行造成的损失，对于相关法院、其他司法机关或政府机关因扣划申请人资金而致银行资金被扣划的，银行有权扣划申请人资金予以补偿银行因此所受的资金损失。协议终止并不意味着终止前所发生的未完成交易指令的撤销，也不能消除因终止前的交易所带来的任何法律后果。赵培媛、徐婷、徐雷认为上述条款均是格式条款，在与中行丽都饭店支行办理开户、存款手续时，均是按照银行柜台工作人员的指点和要求，在各种表格上签字，银行从来没有对协议的任何条款进行过解说，个人更无从知道《个人账户开户及综合服务协议书》何时启用了新版本及哪些条款进行了修改。因此对上述条款的合法性、有效性均存在异议，不予认可。中行丽都饭店支行则主张中国银行股份有限公司发布并不时更新的相关业务章程、业务规则、业务规定均为《个人账户开户及综合服务协议书》的有效组成部分，因此各个时期启用的《个人账户开户及综合服务协议书》中的条款规定，均自动适用到

- 8 -

本案涉及的法律关系中，银行在公开的营业网点公告启用新协议版本。但在本案中，中行丽都饭店支行没有提交证据证明如何向赵培媛、徐婷、徐雷告知2011年7月1日启用新版本的《个人账户开户及综合服务协议书》。

另查明，2010年6月，古驰公司等七家公司五个品牌在美国法院起诉徐婷及其丈夫徐立军等人，后于2011年3月10日追加起诉赵培媛、徐雷，称以上人员制造、销售假冒古驰公司等商标的产品，并将相关收益汇回中国国内。除徐立军的律师到场，其他人均未应诉答辩，也未按照美国法院命令向古驰公司等或法院提交任何资料。2010年7月12日，美国法院作出预先禁令及证据发现令，禁止赵培媛、徐婷、徐雷等继续侵权行为，并命令上述三人的代理人、代表、继承人、银行等受禁令送达者，不得转移包括赵培媛、徐婷、徐雷等在境内中国银行开立的账户中的资金等财产。2010年7月13日及16日，古驰公司等向中国银行纽约分行送达上述禁令、证据发现令及在民事诉讼中提供文件、信息或物品或允许对营业场所进行检查的传票，要求中国银行采取必要措施遵守预先禁令的条款，提供赵培媛、徐婷、徐雷的账户信息。自2010年7月21日起，中国银行聘请美国律师，以案外当事人的身份向美国法院提交请求驳回古驰公司等申请强制执行发现令的动议及申请复议的动议，2011年8月23日，美国法院作出命令，指令中国银行遵守古驰公司等的传票及预先禁令的要求，并驳回中国银行申请复议的动议，要求中国银行应于该命令作出之日起14天提供传票要求提供的信息。2011年9月22日，中国银行就该命令向美国

第二巡回上诉法院提起上诉。2011 年 11 月 30 日，中国银行还向美国法院提出动议，请求该院批准中国银行申请重审和豁免适用 2011 年 8 月 23 日命令的动议，判令古驰公司等必须通过《海牙公约》程序从中国银行寻求进一步的文件，并判令预先禁令的范围不涉及位于中国境内的账户。2012 年 5 月 18 日美国法院驳回中国银行申请重审的动议。2012 年 11 月 15 日，美国法院认定由于中国银行长达十四个月恶意地和故意地蔑视 2011 年 8 月 23 日命令和根据禁令承担的证据披露义务，故构成蔑视法庭，对中国银行处以 75 000 美元的强制罚款，若 7 日内仍未能遵守 2011 年 8 月 23 日命令，将于随后每日处以 10 000 美元的强制性罚款，直到遵守命令。同时批准古驰公司等申请由中国银行支付因提起该蔑视法庭动议而产生的合理律师费和诉讼费的请求。随后，中国银行针对蔑视法庭的裁定向美国第二巡回上诉法院提出上诉，并申请延缓处罚，等待上诉，并得到准许，中国银行未支付任何款项。本案中，中行丽都饭店支行亦未就其所称的损失向赵培媛、徐婷、徐雷主张权利。

北京市第二中级人民法院认为，一、关于本案是否应合并审理的问题。根据《中华人民共和国商业银行法》的规定，商业银行可以经营的业务有吸收公众存款、买卖政府债券、金融债券，从事银行卡业务，经国务院银行业监督管理机构批准的其他业务等。一审法院庭审查明，赵培媛、徐婷、徐雷与中行丽都饭店支行之间除存在储蓄存款合同关系，同时还存在国债买卖、委托理财等合同关系。赵培媛、徐婷、徐雷是针对中行丽都饭店支行同时将三个人开立的所有账户中的款项不予支取

- 10 -

Case 1:13-cv-04974-RJS  Document 152-1  Filed 07/08/15  Page 12 of 28

的事实提出一致的诉讼请求，即判令解除该种状态，赵培媛、
徐婷、徐雷起诉的诉讼标的相同。为提高诉讼效率、简化诉讼
程序，减少当事人诉累，本案应当合并审理。

　　二、关于中行丽都饭店支行对赵培媛、徐婷、徐雷采取中
止服务、暂停交易的措施是否符合合同或法律规定的问题。

　　赵培媛、徐婷、徐雷在中行丽都饭店支行开立账户办理活
期存款、定期存款、国债买卖、理财产品、银行卡、电子银行
等业务、签署承诺及协议书的时间，均发生在2009年6月至2011
年5月期间，中行丽都饭店支行通知赵培媛、徐婷、徐雷中止
提供服务的时间是2011年6月，因此应该以2011年7月1日
之前由中国银行制定的《个人账户开户及综合服务协议书》的
条款内容，作为本案确定双方当事人权利义务关系的合同依据。

　　该时期适用的《个人账户开户及综合服务协议书》销户或
业务终止条款的规定为：申请人违反本协议或其他银行相关规
章制度或存在恶意操作、诋毁、损害银行声誉、恶意攻击银行
电子银行系统等行为，或者申请人涉嫌从事洗钱、恐怖融资或
其他违法犯罪行为，银行有权依据其认定的正当理由或风险控
制等相关因素，中止或终止本协议及提供相关服务，并保留追
究申请人责任的权利。

　　根据庭审查明的事实，赵培媛、徐婷、徐雷在中行丽都饭
店支行办理各项业务时，按照银行的各项要求填写了申请表并
在相关位置上签字，办理各项银行业务。中行丽都饭店支行未
能举证证明赵培媛、徐婷、徐雷已实际实施了恶意操作、诋毁、
损害银行声誉、恶意攻击银行电子银行系统等行为；赵培媛、

- 11 -

徐婷、徐雷在美国涉及诉讼，案件正在审理之中，尚无结论，目前在中国境内尚未有生效的裁判文书认定赵培媛、徐婷、徐雷涉嫌从事洗钱、恐怖融资或其他违法犯罪行为；中行丽都饭店支行也未向一审法院提交足以认定其认为的正当理由或风险控制的证据。且目前中国银行也没有按照美国法院的命令支付罚款及向古驰公司支付费用。

《中华人民共和国商业银行法》规定：商业银行依法开展业务，不受任何单位和个人的干涉；商业银行应当保障存款人的合法权益不受任何单位和个人的侵犯；商业银行办理个人储蓄存款业务，应当遵循存款自愿、取款自由、存款有息、为存款人保密的原则，故中行丽都饭店支行应当按照约定全面履行自己的义务，现对赵培媛、徐婷、徐雷的银行账户自行采取中止服务、暂停交易的措施没有合同依据和法律依据。遂判决：中国银行股份有限公司北京丽都饭店支行于判决生效之日起七日内解除对赵培媛、徐婷、徐雷所有银行帐户中止服务、暂停交易的状态。

中行丽都饭店支行不服，上诉至北京市高级人民法院。北京市高级人民法院审理后认为：《中华人民共和国商业银行法》规定：商业银行依法开展业务，不受任何单位和个人的干涉；商业银行应当保障存款人的合法权益不受任何单位和个人的侵犯；商业银行办理个人储蓄存款业务，应当遵循存款自愿、取款自由、存款有息、为存款人保密的原则。2009年6月至2011年5月期间，赵培媛、徐婷、徐雷分别在中行丽都饭店支行开立账户办理活期存款、定期存款、国债买卖、理财产品、银行

- 12 -

卡、电子银行等业务，同时签署承诺及相关协议书，其中《个人账户开户及综合服务协议书》销户或业务终止条款的规定为：申请人违反本协议或其他银行相关规章制度或存在恶意操作、诋毁、损害银行声誉、恶意攻击银行电子银行系统等行为，或者申请人涉嫌从事洗钱、恐怖融资或其他违法犯罪行为，银行有权依据其认定的正当理由或风险控制等相关因素，中止或终止本协议及提供相关服务，并保留追究申请人责任的权利。中行丽都饭店支行未提出证据证明赵培媛、徐婷、徐雷违反合同相关约定，其对赵培媛、徐婷、徐雷的银行账户自行采取了中止服务、暂停交易的行为没有合同依据和法律依据。同时中行丽都饭店支行认为应当以 2011 年 7 月 1 日之后的《个人账户开户及综合服务协议书》的条款内容作为确定双方权利义务关系的合同依据不能成立，法院不予采信。中行丽都饭店支行的上诉理由不能成立，上诉请求法院不予支持。一审法院判决认定事实清楚，适用法律正确，法院予以维持。遂于 2014 年 6 月 20 日作出（2014）高民终字第 585 号民事判决书，判决：驳回上诉，维持原判。

中国银行朝阳支行称因中国银行在美国法院进行上述诉讼活动，聘请美国律师进行相关诉讼活动，中国银行股份有限公司北京市分行代中国银行朝阳支行支付律师费等费用 5 534 595 元。因赵培媛、徐婷、徐雷系中国银行朝阳支行的客户，相关费用应由中国银行朝阳支行负担，中国银行朝阳支行提交了中国银行股份有限公司北京市分行《关于"GUCCI"案律师费等费用支付事的通知》，现中国银行朝阳支行要求赵培媛、徐婷、徐

- 13 -

雷赔偿上述费用。

　　经询，中国银行朝阳支行称赵培媛、徐婷、徐雷开立账户的行为不存在过错，但存在如下过错：开立账户后，涉嫌在美国制造销售假冒伪劣产品，涉嫌将非法行为所得通过中国银行账户汇回国内，在美国古驰等公司提起诉讼后拒绝应诉，同时对美国法院要求其对古驰公司等作出回应的情况下，仍拒绝回应，在美国法院要求中国银行披露相应信息，赵培媛、徐婷、徐雷在明知中国银行因拒绝相关信息可能被美国法院处罚的情况下，仍然未出庭应诉，仍拒绝对古驰公司的取证申请作出回应，在中国银行朝阳支行向赵培媛、徐婷、徐雷提出要求的情况下，赵培媛、徐婷、徐雷仍拒绝参与诉讼，这个整体我们认为赵培媛、徐婷、徐雷存在过错。中国银行朝阳支行还称赵培媛、徐婷、徐雷上述行为和美国法院，古驰公司共同构成一个行为，导致中国银行朝阳支行不得不参与诉讼，致使中国银行朝阳支行遭受损失，赵培媛、徐婷、徐雷行为是根本性的，否则不会有古驰等公司起诉和美国法院作出命令等，所以要求赵培媛、徐婷、徐雷承担赔偿责任。

　　经询，赵培媛、徐婷、徐雷称中国银行朝阳支行在向美国法院提出反动议前，就相关账户的披露没有征求过赵培媛、徐婷、徐雷的意见。中国银行朝阳支行和赵培媛、徐婷、徐雷均称尚未收到美国法院的判决。

　　本案审理过程中，中国银行朝阳支行申请财产保全，法院于 2014 年 6 月 24 日作出（2014）朝民初字第 25377 号民事裁定书，裁定：查封、冻结赵培媛、徐婷、徐雷名下价值五百五

- 14 -

十三万四千五百九十五元的财产。

原审法院认为，公民、法人由于过错侵害国家的、集体的
财产，侵害他人财产、人身的应当承担民事责任。依据法律规
定，侵权行为构成要件有四：一、须有违法性之行为；二、行
为人存在过错；三、受害人有损害事实；四、违法行为与损害
后果之间有因果关系。中国银行朝阳支行认为赵培媛、徐婷、
徐雷存在过错行为，并要求赵培媛、徐婷、徐雷赔偿中国银行
朝阳支行的损失。赵培媛、徐婷、徐雷虽在美国涉及诉讼，但
相关案件正在审理之中，尚无结论，目前在中国境内尚未有生
效的裁判文书认定赵培媛、徐婷、徐雷涉嫌从事洗钱、恐怖融
资或其他违法犯罪行为，赵培媛、徐婷、徐雷拒绝在美国应诉
的行为亦非直接针对中国银行。

美国法院作出预先禁令及证据发现令，中国银行聘请美国
律师，以案外当事人的身份向美国法院提交请求驳回古驰公司
等申请强制执行发现令的动议及申请复议的动议后，美国法院
作出命令，指令中国银行遵守古驰公司等的传票及预先禁令的
要求，并驳回中国银行申请复议的动议，要求中国银行应于该
命令作出之日起 14 天提供传票要求提供的信息、对中国银行作
出罚款等。相关诉讼虽涉及赵培媛、徐婷、徐雷，且有中美司
法制度差异、司法主权等外在因素，但美国法院的上述行为亦
系美国法院自主做出的司法行为，不能等同于赵培媛、徐婷、
徐雷的行为，亦不能视为赵培媛、徐婷、徐雷的侵权行为。中
国银行聘请律师维护自己的合法权利，相关律师费用亦非赵培
媛、徐婷、徐雷的行为所直接导致的损失。现中国银行朝阳支

- 15 -

行要求赵培媛、徐婷、徐雷赔偿上述损失，于法无据，法院不
予支持。据此，原审法院于 2014 年 12 月 30 日判决如下：驳回
中国银行股份有限公司北京朝阳支行的诉讼请求。

宣判后，中国银行朝阳支行不服原审判决，上诉至本院，
请求撤销原判，依法改判。赵培媛、徐婷、徐雷同意原审判决。

本院经审理查明的事实与原审法院无异，本院在此予以确
认。

上述事实，有当事人提交的（2014）高民终字第 585 号民
事判决书、当事人陈述意见及庭审笔录等证据材料，在案佐证。

本院认为：本案争议之焦点即赵培媛、徐婷、徐雷三人是
否对中国银行朝阳支行构成侵权并承担相应的赔偿责任。根据
已经查明的事实，赵培媛、徐婷、徐雷三人因在美国涉嫌侵权
被古驰公司等起诉，在此期间，中国银行以案外当事人身份向
美国法院提交请求驳回古驰公司等申请强制执行发现令的动议
及申请复议的动议等。就现有证据来看，并无生效判决证实赵
培媛、徐婷、徐雷涉嫌从事洗钱、恐怖融资或其他违法犯罪行
为，在此情况下，虽然中国银行因赵培媛、徐婷、徐雷涉及的
诉讼在美国诉讼期间聘请律师、专家证人等可能产生相应的办
案费用，但该费用系应对美国法院所作出的司法行为产生的必
然花费，就现有证据难以认定该费用系赵培媛等三人的侵权行
为给其造成的损失，中国银行朝阳支行据此主张所产生的损失
应由赵培媛、徐婷、徐雷三人承担，缺乏事实及法律依据，原
审法院严格按照侵权行为的构成要件对本案事实进行分析，驳
回中国银行朝阳支行的上述请求，处理适当，本院予以维持。

- 16 -

Case 1:10-cv-04974-RJS   Document 152-1   Filed 07/08/15   Page 18 of 28

综上，中国银行朝阳支行提出的上诉请求缺乏事实及法律依据，本院不予支持；原审判决认定事实清楚，判决结果正确，应予维持。依照《中华人民共和国民事诉讼法》第一百七十条第一款第（一）项之规定，判决如下：

驳回上诉，维持原判。

一审案件受理费 50 542 元，由中国银行股份有限公司北京朝阳支行负担（已交纳）；财产保全申请费 5000 元，由中国银行股份有限公司北京朝阳支行负担（已交纳）；二审案件受理费 50 542 元，由中国银行股份有限公司北京朝阳支行负担（已交纳）。

本判决为终审判决。

审 判 长　　杨　夏

代理审判员　　林存义

代理审判员　　　　磊



二〇

此件与原本核对无异

文件编码:150526-111706-158-51-120644

书 记 员　　曹燕萍

- 17 -

## NO. 3 INTERMEDIATE PEOPLE'S COURT OF BEIJING MUNICIPALITY
## CIVIL JUDGMENT

(2015) San Zhong Min Zhong Zi No. 04894

Appellant (Plaintiff in the first instance):

Beijing Chaoyang Sub-branch of Bank of China Limited, with its address at 18 Xiaguangli, Dongsanhuan North Road, Chaoyang District, Beijing.

Person-in-charge:

Huang Xiaojuan, president.

Authorised agent:

Zheng Yaojie, attorney of Jun He Law Offices of Beijing.

Appellee (Defendant in the first instance):

Zhao Peiyuan, female, born on 25 September 1943, ethnic Manchu, and retired from Beijing Piano Plant, domiciled at Room 16, Unit 1, Building 13, Section A Fangyuanli, Chaoyang District, Beijing.

Authorised agent:

Chen Peng, attorney of Zhongdun Law Office of Beijing.

Appellee (Defendant in the first instance):

Xu Ting, female, born on 10 June 1970, ethic Manchu, unemployed, domiciled at Room 16, Unit 1, Building 13, Section A Fangyuanli, Chaoyang District, Beijing.

Authorised agent:

Chen Peng, attorney of Zhongdun Law Office of Beijing.

Appellee (Defendant in the first instance):

Xu Lei, male, born on 25 March 1972, ethnic Manchu, unemployed, domiciled at Room 16, Unit 1, Building 13, Section A Fangyuanli, Chaoyang District, Beijing.

Authorised agent:

Chen Peng, attorney of Zhongdun Law Office of Beijing.

Appellant Beijing Chaoyang Sub-branch of Bank of China Limited (hereinafter "BOC Chaoyang Sub-branch") was not satisfied with Civil Judgment (2014) Chao Min Chu Zi No. 25377 rendered by Chaoyao District People's Court of Beijing Municipality regarding its tort liability dispute with Appellees Zhao Peiyuan, Xu Ting and Xu Lei, and has therefore appealed to this Court. This Court has in accordance with the law formed a collegiate panel to hear the case. The adjudication of the appeal has now been completed.

1

In its statement of claim to the court of the first instance in June 2014, BOC Chaoyang Sub-branch asserted as follows: Zhao Peiyuan is the mother of Xu Ting and Xu Lei, and Xu Ting is the elder sister of Xu Lei. From 2009 to 2011, Xu Ting opened a number of accounts with our bank.

In June 2010, Gucci and six other companies ("Gucci *et al*") commenced an action before the United States District Court for the Southern District of New York ("SDNY") against Zhao Peiyuan, Xu Ting and Xu Lei on the grounds that Zhao Peiyuan, Xu Ting and Xu Lei and their whole family were allegedly involved in producing and selling products bearing fake Gucci trademarks and other trademarks in the United States and remitting proceeds therefrom into China, requesting that Zhao Peiyuan, Xu Ting and Xu Lei stop their tortious conduct and compensate for losses.

However, Zhao Peiyuan, Xu Ting and Xu Lei refused to appear and defend their case after they were sued by Gucci *et al*. They neither submitted any document to SDNY, nor responded to the request for evidence from Gucci *et al* as ordered by SDNY. As a result, SDNY issued a preliminary injunction and an order, requiring BOC to freeze the funds in the accounts opened by Zhao Peiyuan, Xu Ting and Xu Lei in China, and to provide all the account information of Zhao Peiyuan, Xu Ting and Xu Lei and other documentation in accordance with the subpoena issued by Gucci.

In order to avoid to be ordered by the US court to disclose the account information of Zhao Peiyuan, Xu Ting and Xu Lei and freeze the funds in the accounts of Zhao Peiyuan, Xu Ting and Xu Lei, BOC had to engage US attorneys and expert witnesses to oppose to the preliminary injunction and order issued by SDNY, and submitted a motion to modify it. In the end, however, SDNY held on 15 November 2012 that BOC failed to comply with its preliminary injunction and order, found BOC to be in civil contempt of the court, and imposed a mandatory fine on BOC. Throughout this process, BOC paid a large sum of attorneys' fees, expert fees and other expenses for handling the case. The above costs amount to date to the equivalent of RMB 5,534,595. Although BOC asked Zhao Peiyuan, Xu Ting and Xu Lei to appear before the court, to authorise BOC to provide their account information, or otherwise to resolve the relevant disputes on several occasions, Zhao Peiyuan, Xu Ting and Xu Lei always refused to do so. Ultimately, the above costs were borne by BOC because the accounts of Zhao Peiyuan, Xu Ting and Xu Lei had been opened with our bank.

In our opinion, Zhao Peiyuan, Xu Ting and Xu Lei were allegedly involved in illegal acts of manufacturing and selling products bearing counterfeit trademarks in the US, and remitted the proceeds therefrom into the accounts opened with us in China, leading to BOC's involvement in US proceedings. Moreover, Zhao Peiyuan, Xu Ting and Xu Lei refused to respond to the case against them. This eventually resulted in the preliminary injunction and order issued by the US court against BOC, to which BOC had to respond and paid a large sum of costs for that purpose, and will very likely incur further losses. Zhao Peiyuan, Xu Ting and Xu Lei should be held liable to compensate us for the huge losses incurred by their acts. Moreover, the acts of Zhao Peiyuan, Xu Ting and Xu Lei are in essence to escape from legal liability by taking advantage of the conflicts between the PRC and USA jurisdictions, and should not be protected by law. Therefore, our bank requests in accordance with Article 6 of the Tort Liability Law and other relevant regulations that Zhao Peiyuan, Xu Ting, and Xu Lei be ordered to compensate for our losses of RMB 5,534,595 in total, and be jointly liable for compensating for our losses.

Zhao Peiyuan, Xu Ting and Xu Lei argued as follows: Firstly, we committed no tortious acts against the BOC Chaoyang Sub-branch. Our opening of accounts with BOC Chaoyang Sub-branch was civil legal behavior conducted in accordance with the *Commercial Bank Law of the People's Republic of China*, and materials were submitted in full accordance with the bank's requirements during the course of opening accounts, without any concealment or omission. Therefore, the conduct of opening accounts is legal and valid, and cannot constitute a tort against BOC Chaoyang Sub-branch. As to our failure to appear before and submit documents to the US court as mentioned by BOC Chaoyang Sub-branch, we have the freedom to dispose of our civil action rights under US law. We would assume any legal consequences resulting from our disposal of such rights. Our own acts had nothing to do with BOC NY Branch or BOC Chaoyang Sub-branch, and BOC had no right to require us to change our legal exercise of our own rights in legal proceedings. In fact, the sanctions imposed by the US court against BOC are a result of the US court's "jurisdictional hegemony" , which should not be assumed by us at all. This is a political risk faced by

2

BOC's overseas investments, and should be resolved by US domestic law and even through diplomatic channels, as opposed to shifting the relevant liabilities to consumers, particular to the consumers in the country, in an irresponsible manner.

Secondly, BOC Chaoyang Sub-branch suffered no actual losses.  BOC Chaoyang Sub-branch is BOC Chaoyang Sub-branch, but sought to recover damages for BOC NY Branch.  This is contrary to legal principles.  The BOC Chaoyang Sub-Branch and BOC NY Branch are two different entities: one is a domestic one and the other is a foreign one.  The practice that the domestic entity seeks direct recovery of losses suffered by the foreign entity complies with neither domestic law nor international law.  Moreover, BOC NY Branch has to date not actually paid any fine to the US court, and its case is still under trial.  Therefore, BOC Chaoyang Sub-branch incurs no actual loss.

Thirdly, the dispute between BOC Chaoyang Sub-branch and us has been finally decided by the Beijing High People's Court through the (2014) Gao Min Zhong Zi No. 585 Civil Judgment, whereby BOC Chaoyang Sub-branch was ordered to unconditionally release the freezing of our accounts.  However, BOC Chaoyang Sub-branch disregarded the effective judgment, intentionally concocted a course of action regarding a dispute over tortious liability, abused its right to claim, and commenced the present proceedings.  This behavior has violated the basic civil procedural principle of "ne bis in idem" under the PRC civil procedural law, and is a waste of the increasingly constrained judicial resources in China.  In relation to such behavior, we propose a sanction by the court.

In conclusion, we did not commit any tortious act, BOC Chaoyang Sub-branch suffered no actual loss, and our proper behavior had no direct causal relationship with the expenses of the affiliated overseas branch of BOC Chaoyang Sub-branch.  It is legally groundless for our tort against BOC Chaoyang Sub-branch.  BOC Chaoyang Sub-branch should instead be sanctioned for its disregard of judicial authority, abuse of its right to claim, and waste of judicial resources.  Therefore, we request that BOC Chaoyang Sub-branch's claims be dismissed.

Following hearing of the case, the court of first instance has found out the following:

Xu Ting as elder sister and Xu Lei as younger brother are both children of Zhao Peiyuan.

From 2009 to 2011, Zhao Peiyuan, Xu Ting, and Xu Lei opened multiple accounts with the Beijing Lido Hotel Sub-Branch of Bank of China Limited ("BOC Lido Sub-Branch").

Zhao Peiyuan, Xu Ting, and Xu Lei were sued by Gucci et al for alleged infringement in the US.  The competent US court issued a preliminary injunction and a writ of discovery during the course of the proceedings.  BOC NY Branch was also involved in the proceedings before the US court.

During the proceedings, BOC Lido Sub-Branch froze the bank accounts of Zhao Peiyuan, Xu Ting, and Xu Lei.  Zhao Peiyuan, Xu Ting, and Xu Lei brought an action before the competent PRC court, requesting that the BOC Lido Sub-Branch promptly release the freezing of all the deposits held by Zhao Peiyuan, Xu Ting, and Xu Lei with the BOC Lido Sub-Branch.

In relation to the above case, it was found in the (2013) Er Zhong Min Chu Zi No. 01275 Civil Judgment of Beijing No. 2 Intermediate People's Court:

From 1 August 2009 to 26 April 2011, Zhao Peiyuan concluded transactions with BOC Lido Sub-Branch evidenced by the following documents: 3 gift deposit certificates (representing a total amount of RMB 257,269.70), 8 fixed term deposits (representing a total amount of RMB 510,000), two demand deposit passbooks (representing a total amount of RMB 120,683.11), 1 treasury transaction (in an amount of RMB 440,000), and 4 wealth management products (in a total amount of RMB 373,000).  The total amount for the above is RMB 1,700,961.64.  From 11 June 2009 to 8 April 2011, Xu Ting concluded transactions with BOC Lido Sub-Branch evidenced by the following documents: 5 gift deposit certificates (representing a total amount of RMB 416,845.58), 1 VIP card (representing a total amount of RMB 2,013), two demand deposit

3

certificates (representing a total amount of RMB3,358.81), 2 wealth management products (in a total amount of RMB 679,000). The total amount for the above is RMB 1,101,217.39. From 17 August 2010 to 8 April 2011, Xu Lei concluded transactions with BOC Lido Sub-Branch evidenced by the following documents: 2 gift deposit certificates representing a total amount of RMB 154,553.53.

The above-mentioned fixed term deposits, treasury bonds and wealth management products have all matured in accordance with their initial terms or durations of transaction. The parties have no dispute over the information relating to the accounts of Zhao Peiyuan, Xu Ting and Xu Lei with BOC Lido-Sub-Branchbranch, including the account numbers, account names, transaction numbers, opening dates, relevant business, transaction dates, primary opening documents, principal amounts, initial maturity dates, carry forward status, carry forward maturity dates and other account information.

Zhao Peiyuan, Xu Ting and Xu Lei claimed that they have been unable to withdraw money from any of their accounts maintained with BOC Lido Sub-Branch branch since 10 June 2011. The bank staff merely informed them verbally or via telephone that Xu Ting has been involved in an intellectual property right dispute in the United States with Gucci and therefore all amounts have been frozen and incapable of being withdrawn, but refused providing any evidence in writing. BOC Lido Sub-Branch, while acknowledging the time of suspending transactions relating to the accounts of Zhao Peiyuan, Xu Ting and Xu Lei, asserted that, pursuant to the provisions on account cancellation or business termination of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts* signed and accepted by Zhao Peiyuan, Xu Ting and Xu Lei at the time of entering into various business transactions with the bank, if BOC is involved in any litigation or suffers any loss as a result of any dispute between Zhao Peiyuan, Xu Ting or Xu Lei (as the case may be) and any third party, or if Zhao Peiyuan, Xu Ting or Xu Lei is suspected of engaging in money laundering, fraud, financing of terrorism or other illegal activities, or if any account of Zhao Peiyuan, Xu Ting or Xu Lei is suspected of being used for money laundering, fraud or other illegal activities, the bank shall have the right to suspend business dealings with Zhao Peiyuan, Xu Ting and Xu Lei and suspend transactions of the relevant accounts. In light of the fact that it is currently involved in a lawsuit and dispute in the US Court, BOC Lido Sub-Branch may conclude that Zhao Peiyuan, Xu Ting and Xu Lei are involved in the scenarios above and that it is entitled to suspend its banking dealings with them and suspend transaction services relating to the relevant accounts, and such suspension does not constitute an account freeze.

Upon court hearing, it had been found that all business transactions that Zhao Peiyuan, Xu Ting and Xu Lei had with BOC Lido Sub-Branch, namely opening accounts, making demand deposits and fixed term deposits, treasury bonds sales and purchases, purchasing wealth management products, bank card related transactions, and electronic-banking transactions, etc., occurred between June 2009 and May 2011. When making fixed term deposits before October 2009, each of them completed an *Account Opening Application* at the request of BOC's staff. With respect of all subsequent fixed term or demand deposits and application for wealth management VIP card, each of them completed an *Application Form for Account Opening and Comprehensive Services for Individual Accounts*, on the back of which is the *Agreement of Account Opening and Comprehensive Services for Individual Accounts*. For their purchase of treasury bond products, each of them completed an *Application for Account Opening / Comprehensive Services for Individual Accounts*, on the back of which are notes to clients, BOC personal settlement account management agreement, and articles of association for BOC Great Wall debit card. For their purchase of wealth management products, each of them completed an *Information Confirmation Sheet for Personal Wealth Management Product Transactions*.

Below the client information blocks of the *Application Form for Account Opening and Comprehensive Services for Individual Accounts*, it contains the following language: I have read and understood the relevant provisions of the "Agreement for Applying for Account Opening and Comprehensive Services for Individual Accounts of Bank of China Limited", and undertake to carry on business transactions in compliance with the relevant provisions of the agreement, notes to the clients, the service agreement and the bank's current business articles of association, and business transaction rules and requirements. Zhao Peiyuan, Xu Ting and Xu Lei have signed their names in places marked with "applicant's signature".

4

According to paragraph (3) of the clause in relation to account closing or business termination in the *Agreement of Account Opening and Comprehensive Services for Individual Accounts*, which was formulated by Bank of China Limited and effective from June 2009 to May 2011, *"[i]f the Applicant violates any provision of this Agreement or any other rules and regulations of the Bank, or makes any operation with malicious intent, or defames or damages the reputation of the Bank, or maliciously attacks the electronic banking system of the Bank, or is suspected of engaging in money laundering, financing of terrorism or other illegal or criminal activities, based on any reason or factor (including risk control) as deemed justifiable by the Bank, the Bank has the right to suspend or terminate this Agreement and provision of the services hereunder, and reserves the right to hold the Applicant liable for such activities. Termination of this Agreement shall not be deemed as cancellation of any outstanding transaction instructions given prior to such termination, or discharge or release of any legal consequence of any transaction incurred prior to such termination."*

From 1 July 2011, Bank of China Limited started to use a new version of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts*, in which paragraph (3) of the clause in relation to account closing or business termination reads as follows: *"[i]f the Applicant is suspected of engaging in money laundering, fraud, financing of terrorism or other illegal activities, or violates any provision of applicable laws, regulations, regulatory rules, government policies, this Agreement, or other by-laws, business rules or regulations of the Bank, or makes any operation with malicious intent, or defames or damages the reputation of the Bank, or maliciously attacks the electronic banking system of the Bank, or the Bank is involved in any litigation or incurs any loss due to any dispute between the Applicant and any third party, or the Applicant's account is suspected of being used for money laundering, fraud or other illegal purposes, the Bank has the right to suspend or terminate this Agreement and provision of the services hereunder, and reserves the right to hold the Applicant liable for such activities, and the Applicant shall be liable for any and all losses incurred by the Bank due to such activities. If any fund of the Bank is deducted by any court or other judicial or governmental authority that intends to deduct the Applicant's fund, the Bank has the right to deduct the Applicant's fund to cover the loss incurred by the Bank due to the abovementioned deduction. Termination of this Agreement shall not be deemed as cancellation of any outstanding transaction instructions given prior to such termination, or discharge or release of any legal consequence of any transaction incurred prior to such termination."* Zhao Peiyuan, Xu Ting and Xu Lei claim that the clause above is a standard term. When they went through relevant formalities in relation to account opening and making deposits with BOC Lido Sub-Branch, they signed all the forms as instructed and required by the counter staff of the bank, and the bank failed to give any explanation on any clause of the agreements. They had no way to find out when a new version was adopted or what amendments were made to the *Agreement of Account Opening and Comprehensive Services for Individual Accounts*. Therefore, they claim that the clause above is illegal and invalid. BOC Lido Sub-Branch asserts that all applicable business by-laws, rules and regulations issued and updated from time to time by Bank of China Limited shall be part of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts*. Therefore, the provisions of clauses adopted and incorporated into the *Agreement of Account Opening and Comprehensive Services for Individual Accounts* from time to time shall be automatically applicable to the legal relationship concerned in this proceeding. The bank has published announcements in relation to the adoption of the new version of the agreement at its business locations. However, BOC Lido Sub-Branch fails to present evidence to prove how it notified Zhao Peiyuan, Xu Ting and Xu Lei of the adoption of the new version of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts* from 1 July 2011.

It was also found that in June 2010, seven companies representing five brands (including Gucci) filed a complaint against Xu Ting and her husband Xu Lijun *et al* with a court in the US, and included Zhao Peiyuan and Xu Lei as additional defendants in the US proceeding on 10 March 2011, alleging that those people had been involved in the manufacture and sale of counterfeits bearing the trademarks of Gucci and other plaintiffs in the US proceeding, and remitted the proceeds from the manufacture and sale of such counterfeits into China. Except Xu Lijun's attorney, who was present at the trial of the US proceeding, no defendant in the US proceeding filed any response or defence, or made any submission to Gucci *et al* or the US Court as ordered by the US Court. On 12 July 2010, the US Court issued a preliminary injunction and a writ of discovery, which prohibited Zhao Peiyuan, Xu Ting and Xu Lei *et al* from continuing the alleged

5

infringements, and ordered the persons on whom the injunction was served (including the agents, representatives, successors and bankers of the three individuals mentioned above) to refrain from transferring any assets including the funds held in the accounts opened by Zhao Peiyuan, Xu Ting and Xu Lei *et al* with BOC in the PRC. On 13 and 16 July 2010, Gucci *et al* served upon the BOC NY Branch the said injunction, the writ of discovery and the subpoena to produce documents, information, or objects or to permit inspection of premises in a civil action, under which BOC was commanded to take necessary steps to comply with the provisions of the preliminary injunction, and release information in relation to the accounts of Zhao Peiyuan, Xu Ting and Xu Lei. From 21 July 2010, BOC engaged its US counsel, and as an interested third party, filed with the US Court a motion to quash the motion of Gucci for enforcing the writ of discovery, and a motion for reconsideration. On 23 August 2011, the US Court issued an order to compel BOC to comply with the subpoena and the preliminary injunction served by Gucci *et al*, and denied the motion of BOC for reconsideration, requesting BOC to release the information required under the subpoena within 14 days after the order was issued. On 22 September 2011, BOC appealed this order to the United States Court of Appeals for the Second Circuit. On 30 November 2011, BOC also filed a motion with the US Court, requesting that the US Court grant the motion of BOC for reconsideration and for exemption from the order dated 23 August 2011, and order Gucci *et al* to seek further information from BOC via the Hague Convention procedures, and rule that the accounts inside China are not subject to the preliminary injunction. On 18 May 2012, the US Court denied the motion of BOC for a new trial. On 15 November 2012, the US Court held BOC in malicious and intentional contempt of the court order dated 23 August 2011 and the discovery obligation under the injunction for 14 months, and imposed a fine of USD 75,000 on BOC; if BOC failed to comply with the order dated 23 August 2011 within 7 days, a fine of USD 10,000 per day would be imposed on it from the expiry of such 7-day period, until BOC complied with the order. The US Court also granted the motion of Gucci *et al* to require BOC to pay the reasonable attorney's fees and court fees incurred by Gucci *et al* for filing the motion for contempt. BOC then appealed the contempt citation to the United States Court of Appeals for the Second Circuit, and filed a motion for stay of the penalty until the appeal proceeding is concluded. The motion was granted and BOC did not make any payment. In this case, BOC Lido Sub-Branch has not made any claim against Zhao Peiyuan, Xu Ting or Xu Lei for such loss allegedly incurred by it.

Beijing No. 2 Intermediate People's Court holds the opinion as follows:

1.      Whether the proceedings shall be consolidated.

According to the *Commercial Bank Law of the People's Republic of China*, a commercial bank is permitted to engage in accepting deposits from the public, trading government bonds and financial bonds, conducting bank card business, and other business approved by the banking regulatory authority under the State Council. The court of first instance finds that, in addition to the saving deposit contracts between Zhao Peiyuan, Xu Ting or Xu Lei and BOC Lido Sub-Branch, the parties also entered into other contracts including treasury bond trading contracts and wealth management contracts. The claims of Zhao Peiyuan, Xu Ting and Xu Lei are consistent and related to the same subject matter, i.e. requesting the court to order BOC Lido Sub-Branch to remove the block on all the accounts opened by them with the bank. In order to improve litigation efficiency, simplify the legal proceedings and reduce the burden of the parties, the proceedings shall be consolidated.

2.      Whether BOC Lido Sub-Branch violated any contractual or statutory provision by stopping financial service and suspending usage of the accounts of Zhao Peiyuan, Xu Ting and Xu Lei.

The undertakings and agreements in relation to the business conducted by Zhao Peiyuan, Xu Ting and Xu Lei through their accounts opened with BOC Lido Sub-Branch (including current deposits, term deposits, treasury bond trading, wealth management products, bank cards, electronic banking business) were signed between June 2009 and May 2011. BOC Lido Sub-Branch notified Zhao Peiyuan, Xu Ting and Xu Lei of its decision to suspend services to them in June 2011. Therefore, the rights and obligations of the parties to this action shall be governed by the terms of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts* which was formulated by BOC and effective prior to 1 July 2011.

The clause in relation to account closing or business termination in such applicable version of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts* reads as follows: *[i]f the Applicant violates any provision of this Agreement or any other rules and regulations of the Bank, or makes any operation with malicious intent, or defames or damages the reputation of the Bank, or maliciously attacks the electronic banking system of the Bank, or is suspected of engaging in money laundering, financing of terrorism or other illegal or criminal activities, based on reason or factor (including risk control) as deemed justifiable by the Bank, the Bank has the right to suspend or terminate this Agreement and provision of the services hereunder, and reserves the right to hold the Applicant liable for such activities.*

According to the facts found during the trial, Zhao Peiyuan, Xu Ting and Xu Lei completed and signed the application forms as requested by the bank when conducting banking business with BOC Lido Sub-Branch. BOC Lido Sub-Branch failed to produce evidence to prove that Zhao Peiyuan, Xu Ting and Xu Lei had actually made any operation with malicious intent, or defamed or damaged the reputation of the bank, or maliciously attacked the electronic banking system of the bank. The US proceeding in which Zhao Peiyuan, Xu Ting and Xu Lei are involved is still on-going and pending. There is no judgment that has taken effect in China and finds Zhao Peiyuan, Xu Ting and Xu Lei guilty of being involved in money laundering, financing of terrorism or other illegal or criminal activities. BOC Lido Sub-Branch also failed to produce evidence sufficient to prove that it has justifiable reason or factor to cease to provide services to Zhao Peiyuan, Xu Ting and Xu Lei (sic). BOC has not paid any fine imposed by the US Court or any amount to Gucci.

According to the *Commercial Bank Law of the People's Republic of China*, the lawful business operation of a commercial bank is free from interference of any entity or individual; a commercial bank shall protect the lawful interest of depositors from being injured by any entity or individual; personal savings deposit business with commercial banks shall be based on the principles of voluntary deposit, free withdrawal, deposit bearing interest, and the confidentiality for the depositor. Therefore, BOC Lido Sub-Branch shall fully perform its obligations in accordance with the terms as agreed. There is no contractual or legal basis for BOC Lido Sub-Branch to unilaterally stop financial service and suspend usage of the accounts of by Zhao Peiyuan, Xu Ting and Xu Lei. Hence the following judgment: Lido Hotel Sub-branch of Bank of China Limited should lift measures of service stoppage and transaction suspension to all the accounts of Zhao Peiyuan, Xu Ting and Xu Lei within seven days from the coming into force of the judgment.

BOC Lido Sub-branch was dissatisfied with the judgment and appealed to the Higher People's Court of Beijing Municipality. Upon hearing the Higher People's Court of Beijing Municipality held the opinion as follows: According to the *Commercial Bank Law of the People's Republic of China*, the lawful business operation of a commercial bank is free from interference of any entity or individual; a commercial bank shall protect the lawful interest of depositors from being damaged by any entity or individual; personal savings deposit business with commercial banks shall be based on the principles of voluntary deposit, free withdraw, deposit bearing interest, and the confidentiality for the depositor. During the period from June 2009 to May 2011, Zhao Peiyuan, Xu Ting and Xu Lei each opened accounts with BOC Lido Sub-branch for transactions including demand deposits and fixed term deposits, treasury bonds sales and purchases, wealth management products, bank cards, and electronic-banking transactions, etc., and at the time same entered into undertakings and relevant agreements, including the *Agreement of Account Opening and Comprehensive Services for Individual Accounts* which contains the following provisions in respect of account closing or business termination: *[i]f the Applicant violates any provision of this Agreement or any other rules and regulations of the Bank, or makes any operation with malicious intent, or defames or damages the reputation of the Bank, or maliciously attacks the electronic banking system of the Bank, or is suspected of engaging in money laundering, financing of terrorism or other illegal or criminal activities, based on any reason or factor (including any risk control) as deemed justifiable by the Bank, the Bank has the right to suspend or terminate this Agreement and the provision of services hereunder, and reserves the right to hold the Applicant liable for such activities.* BOC Lido Sub-Branch failed to produce evidence to prove that Zhao Peiyuan, Xu Ting and Xu Lei violated any contractually agreed terms, thus there is no contractual or legal basis for BOC Lido Sub-Branch to unilaterally stop financial services for and suspend usage of the accounts of Zhao Peijuan, Xu Ting and Xu Lei. In addition, the view of BOC Lido Sub-Branch that the terms and conditions of the *Agreement of Account Opening and Comprehensive Services for Individual Accounts* have

7

taken effect since 1 July 2011 should be used as the contractual basis to govern the rights and obligations of the parties to the underlying case is not tenable and is not accepted by the court. The grounds for appeal provided by BOC Lido Sub-Branch are not tenable and are not upheld by the court. The first instance judgment has ascertained the facts clearly and applied the laws correctly, and shall be upheld by the court. It is decided on 20 June 2014 in the (2014) Gao Min Zhong Zi No. 585 Civil Judgment that the appeal be dismissed and the first instance judgment be upheld.

BOC Chaoyang Sub-branch argued that BOC Beijing Branch paid attorneys' fees and other expenses in a total amount of RMB 5,534,595 for BOC Chaoyang Sub-branch due to BOC's involvement in the above proceedings before the US court and appointment of the US counsel for advice on the above proceedings; the relevant costs should be borne by BOC Chaoyang Sub-branch because Zhao Peiyuan, Xu Ting and Xu Lei were the customers of BOC Chaoyang Sub-branch. BOC Chaoyang Sub-branch submitted the Notice of Payment of Legal Fees and Other Expenses Regarding the GUCCI Case provided by BOC Beijing Branch, and requested that Zhao Peiyuan, Xu Ting and Xu Lei compensate for the above costs.

Upon examination, BOC Chaoyang Sub-branch said that it was faultless for Zhao Peiyuan, Xu Ting and Xu Lei to open the accounts, but they erred as follows: they allegedly produced and sold counterfeit products in the US after the opening of the accounts, and allegedly remitted the illicit income derived therefrom into the PRC through the accounts opened with BOC; they refused to respond to the proceedings initiated by the Gucci et al, refused to respond to Gucci et al as required by the US court, and still refused to appear and respond before the court, and refused to respond to the request for evidence of Gucci even when the US court required BOC to disclose relevant information, and Zhao Peiyuan, Xu Ting and Xu Lei knew that BOC may be fined by the US court due to refusing to disclose information; BOC Chaoyang Sub-branch was of the opinion that Zhao Peiyuan, Xu Ting and Xu Lei erred in refusing to participate in the proceedings after being requested by BOC Chaoyang Sub-branch to do so. BOC Chaoyang Sub-branch also argued that the above acts of Zhao Peiyuan, Xu Ting and Xu Lei and those of the US court and Gucci constituted one single act, the result of which was that BOC Chaoyang Sub-branch had to be involved in the proceedings, and suffered losses. The acts of Zhao Peiyuan, Xu Ting and Xu Lei were the ultimate cause, otherwise Gucci et al would not have commenced the proceedings and the US court would not have issued orders. Therefore, we requested that Zhao Peiyuan, Xu Ting and Xu Lei be liable to compensate for our losses.

Upon examination, Zhao Peiyuan, Xu Ting and Xu Lei stated that BOC Chaoyang Sub-branch had not consulted with them regarding disclosure of the relevant accounts before submitting a counter-motion to the US court. BOC Chaoyang Sub-branch and Zhao Peiyuan, Xu Ting and Xu Lei said that none of them had received a judgment from the US court.

During the hearing of this case, BOC Chaoyang Sub-branch applied for property preservation to the court. The court ruled in the (2014) Chao Min Chu Zi No. 25377 Civil Ruling dated 24 June 2014 that the seizure and freezing of certain property in the name of defendants Zhao Peiyuan, Xu Ting and Xu Lei, in the amount of five million, five hundred and thirty four thousand, five hundred and ninety five yuan, be granted.

The court of original instance held that a citizen or legal person shall assume civil liability for infringement upon the property of the State or the collective, or the property or body of other persons due to his, her or its own fault. In accordance with law, four elements are required to constitute a tort: (1) illegal act or acts; (2) fault on the part of the actor; (3) damage caused to the victim; and (4) causal relationship between the illegal act or acts and the damage. BOC Chaoyang Sub-branch held that Zhao Peiyuan, Xu Ting and Xu Lei were at fault, and required Zhao Peiyuan, Xu Ting and Xu Lei to compensate for its losses. However, the US proceedings in which Zhao Peiyuan, Xu Ting and Xu Lei are involved are still on-going and pending. There is no effective judgment in China that finds Zhao Peiyuan, Xu Ting or Xu Lei guilty of being involved in money laundering, financing of terrorism or other illegal or criminal activities. And the refusal by Zhao Peiyuan, Xu Ting and Xu Lei to respond to the US proceedings is not an act directly against BOC.

The US court issued the preliminary injunction and the writ of discovery. BOC engaged US counsel to submit an opposition to the motion of Gucci et al to enforce the writ of discovery and a motion for reconsideration in the capacity of an interested third party. Then the US court ordered BOC to comply with

8

the subpoena served by Gucci et al and the preliminary injunction, denied BOC's motion for reconsideration, required BOC to provide the information required under the subpoena within 14 days of the order, and imposed a fine on BOC, among other things. Although Zhao Peiyuan, Xu Ting and Xu Lei were involved in the proceedings, and external factors such as the differences between the PRC and US judicial systems, and judicial sovereignty also have a bearing here, the above acts of the US court are judicial acts at its discretion, rather than the acts of Zhao Peiyuan, Xu Ting and Xu Lei, and may not be deemed tortious acts of Zhao Peiyuan, Xu Ting and Xu Lei. Moreover, the legal fees incurred by BOC for appointment of counsel to safeguard its legitimate rights are not losses directly caused by the acts of Zhao Peiyuan, Xu Ting and Xu Lei. It is legally groundless for BOC Chaoyang Sub-branch to claim that Zhao Peiyuan, Xu Ting and Xu Leicompensate for the above losses, and this claim is not upheld by the court.

After the pronouncement of judgment, BOC Chaoyang Sub-branch was dissatisfied with the judgement of original instance and appealed to this Court asking that the original judgment be quashed and an amended judgment be issued in accordance with the law. Zhao Peiyuan, Xu Ting and Xu Lei are satisfied with the original judgment.

Upon hearing of the case this Court has found the same facts that the court of original instance found and hereby reaffirms these facts.

The above facts are evidenced by civil judgment (2014) Gao Min Zhong Zi No. 585 submitted by the parties, the submissions of the parties and the written records of court hearing on file.

This Court is of the view as follows. The main point at issue in the case is whether Zhao Peiyuan, Xu Ting and Xu Lei infringed on the rights of BOC Chaoyang Sub-branch and should be liable for damages accordingly. Based on facts already established, Zhao Peiyuan, Xu Ting and Xu Lei are sued by Gucci and other companies for their alleged acts of infringement in the US. In the meantime, BOC as a non-party submitted a motion to the US court requesting the dismissal of the application by Gucci et al. for enforcement of the discovery order and a motion requesting reconsideration. From evidence currently available, there is no valid judgment to affirm the alleged money laundering, financing of terrorism or other illegal or criminal activities by Zhao Peiyuan, Xu Ting and Xu Lei. Under the circumstances, although BOC may have incurred case handling expenses as a result of their engagement of lawyers and expert witnesses for the US lawsuit involving Zhao Peiyuan, Xu Ting and Xu Lei, these expenses, however, are necessary in response to the judicial measures taken by the US court, and based on existing evidence it is difficult to determine that the expenses are losses incurred by it as the result of the acts of infringements by Zhao Peiyuan et al. BOC Chaoyang Sub-branch's claim, which is based on the above and which demands that Zhao Peiyuan, Xu Ting and Xu Lei pay damages for the losses incurred, has no legal basis. The court of original instance handled the case properly by analyzing the facts surrounding the case in strict accordance with elements necessary to establish an act of infringement and dismissing the above claims of BOC Chaoyang Sub-branch and its decision is upheld by this Court.

In conclusion, the appeal lodged by BOC Chaoyang Sub-branch has no factual or legal basis and is not upheld by this Court. The judgment of first instance has ascertained the facts clearly and judged correctly and shall be sustained. Pursuant to Articles 170.1.1 of the *Civil Procedural Law of the People's Republic of China*, it is hereby ORDERED, ADJUDGED, AND DECREED as follows:

The appeal be dismissed and the original judgment be sustained.

The court fee for the proceedings of the first instance (50,542 yuan) shall be paid by Beijing Chaoyang Sub-branch of Bank of China Limited (already paid); the application fee for property preservation (5,000 yuan) shall be paid by Beijing Chaoyang Sub-branch of Bank of China Limited (already paid); the court fee for the proceedings of the second instance (50,542 yuan) shall be paid by Beijing Chaoyang Sub-branch of Bank of China Limited (already paid).

This judgment is final.

9

Chief Judge:       Yang Xia

Acting Judge:   Lin Cunyi

Acting Judge:   Cheng Lei


[Chop of No. 3 Intermediate People's Court of Beijing Municipality]

20 May 2015


Clerk:           Lu Yanping


This copy is consistent with its original upon verification.

Document code: 150526-111706-158-51-120644


## CERTIFICATION

I declare under penalty of perjury under the laws of the United States that I am a Partner employed by Allen & Overy LLP in Beijing, China, that I am proficient in the English and Chinese languages, and that this is an accurate translation of the original Chinese language document.

Executed on ⟋ July, 2015

Signed: _____

Print name: (Jane) Ying Jiang

10