# Exhibit B-20

# EXHIBIT 18



# TRANSLATION

Catherine O'Hagan Wolfe
Clerk of Court
United States Court of Appeals for the Second Circuit
40 Foley Square
New York, New York 10007

December 19, 2013

Re: **Gucci America, Inc., et al., Plaintiffs-Appellees v. Bank of China, Appellant, Weixing Li, et al., Defendants, Nos. 11-3934(L), 12-4557(Con.)**

**Tiffany (NJ) LLC, et al., Plaintiffs-Appellees v. Bruce Forbse, et al., Defendants, China Merchants Bank, et al., Movants-Appellants, Nos. 12-2317-cv(L), 12-2330-cv(Con.), 12-2349-cv(Con.)**

Honourable Judges Livingston, Lynch and Lohier Jr:

We write in respect of the pending appeals in the captioned actions. The People's Bank of China ("PBOC") is the central bank of the People's Republic of China ("PRC" or "China") and the China Banking Regulatory Commission ("CBRC") is the banking regulator in China. We have been closely following the position of US District Courts as they relate to protective orders (such as asset freezes), turnover orders, and discovery demands by private parties made upon nonparty Chinese banks (Bank of China, Industrial and Commercial Bank of China and China Merchants Bank). Those three banks are subject to the jurisdiction of the PBOC and CBRC. We write to express extreme concern with the issues and outcomes in the captioned actions before your esteemed panel. The outcome of these appeals will impact on the conduct of China-US relations and, in particular, our countries' Strategic and Economic Dialogue. In this context, we present our views below for this Honourable Court's consideration on the ramifications of their rulings and the issues on appeal before your respected tribunal.

### The PBOC and CBRC

Directly led by the State Council, the PBOC is responsible for formulating and implementing monetary policy, preventing and resolving financial risks and maintaining financial stability. It issues China's currency, the Renminbi, and administers its circulation; regulates the interbank lending and bond markets; implements foreign exchange control and regulates the interbank FX market; regulates the gold market; holds, manages and operates China's foreign reserves and gold reserves; manages the treasury; and maintains the normal operation of payment and clearing systems in China.

1

The CBRC has the role of regulating and supervising all banking financial institutions operating in the PRC and their overseas branches and subsidiaries. The CBRC formulates supervisory rules and regulations, authorizes the establishment (and termination/liquidation) of banking institutions, and oversees bank compliance to applicable statutes. In particular, the CBRC is responsible for the protection of the privacy and interests of depositors in China.

## Concerns and Consequences

A ruling in the appeals before your esteemed tribunal supporting unwieldy discovery requests and unwarranted sanctions without adequately considering the basic and sensitive issues raised in this letter will be an affront to the sovereignty of the PRC, strain relations between the PRC and US and unnecessarily destabilize the PRC banking system.

### PRC Banking and Secrecy Laws Serve Global and National Interests

The PRC's bank privacy laws, like those of the US, serve the important national interest of supporting stable growth of the banking sector. A key aspect of stable growth is ensuring depositor and other customer confidence in the banking systems and, in particular, that Chinese banks will view the confidentiality of private client information as sacrosanct.

Article 6 of the Commercial Bank Law expressly requires that "banks protect the legal rights and interests of depositors against encroachment of any entity or individual." Article 29 of the same law provides that, in respect of an individual's deposit, a commercial bank may refuse any request by any third party entity or person to make enquiry in respect of, freeze, or withdraw from such account unless otherwise provided for by law. Article 30 of the same law provides that, in respect of a corporate's deposit, a commercial bank may refuse any request by any third party entity or person to make enquiry in respect of such account unless otherwise provided for by laws or regulations; and a commercial bank may refuse any request by any third party entity or person to freeze or withdraw from such account unless otherwise provided by law. Under these provisions, any account opened with a Chinese bank with deposited funds cannot be disclosed, frozen or seized because of a dispute between civil litigants, whether Chinese or foreign, except as allowed by Chinese law (for example, through Chinese judicial process). These privacy provisions were adopted in order to create confidence in Chinese banks and serve as a cornerstone to China's banking system to protect legitimate privacy rights of individual depositors.

A foreign court order compelling a Chinese bank to violate Chinese bank privacy laws places that Chinese bank in an impossible and compromised position. The Chinese bank will be left to choose between violating a foreign court order, or complying with a foreign discovery request that violates Chinese banking laws. In either case, the bank will be exposed to civil liabilities and administrative fines. Bank of China has recently been brought to a PRC court by and lost in the first instance to the relevant depositors for

2

effectively freezing their accounts in accordance with a US court order on the basis that such action is in clear breach of the Commercial Banking Law. The PRC court has ordered Bank of China to lift the freeze over the relevant accounts within 7 days of the order of the PRC court. On this basis, we sincerely hope that your esteemed tribunal would fully consider the issue of fairness and other available means to achieve the plaintiff's objectives.

The PRC's bank privacy laws are central to continuing the safe and unprecedented growth of China's banking industry. This ultimately benefitted the economy in China and the US. The deeply interconnected relationship that has developed between the PRC and the US underscores the necessity for dialogue, diplomacy and mutually agreed to procedures – and not taking unilateral measures and using blunt tools that provide an affront to China's sovereignty and legal system – when dealing with the matters currently before this esteemed Court.

### US Court Decisions that Order Chinese Banks to Violate China's Banking and Secrecy Laws Will Undermine Sino-American Relations

The US and China have engaged in no less than thirteen high level bilateral cooperative mechanisms over the past ten years designed, in part, to address the very conflicts of laws issues presented in these cases. The extensive dialogue and good-faith negotiations that has taken place in these fora speak to the strength of Sino-American relations, and also represent a mutual governmental commitment to address, through diplomatic protocols, the critical, technical and delicate financial and economic issues that arise between the two countries. A ruling by this Court in contradiction to PRC law would damage and undermine the considerable and ongoing diplomatic commitments to dialogue in the arenas of banking and finance.

The July 2013 Fifth Round of the US-China Strategic and Economic Dialogue between by Secretary of State John Kerry, Treasury Secretary Jacob J. Lew and their Chinese counterparts, State Councilor Yang Jiechi and Vice Premier Wang Yang was a vehicle for in-depth discussions on major bilateral, regional, and global financial and economic issues. Both sides welcomed the efforts of the US-China Joint Liaison Group on Law Enforcement Cooperation ("JLG") and have decided to prioritize cooperation in, for example, intellectual property enforcement.

The US Department of Treasury has recorded in its July 12, 2013 report on the Joint US-China Economic Track Fact Sheet of the Fifth Meeting of the US-China Strategic and Economic Dialogue that the two countries will take further measures to "support strong domestic and global growth, promote open trade and investment, enhance international rules and global economic governance, and foster financial market stability and reform."

In respect of "Fostering Financial Stability and Reform" and highly relevant to the issues raised in this letter, the Economic Track of the Fifth Strategic and Economic Dialogue recorded that:

*"Both sides commit to improve cooperation on issues related to evidence taking, the provision of notice to interested parties and enforcement of a US restraint, seizure or forfeiture judgment or order in China involving financial institutions located in China through the application of the relevant international agreements, bilateral arrangements and other bilateral, multilateral or international cooperation mechanisms."* (emphasis added)

Counterfeiting is a serious issue with wide ranging social and financial consequences that calls for tough measures and sanctions; however, issues that arise in attempts to stem counterfeiting should be addressed through the proper channels, especially where the sovereign interests of the PRC are implicated and when there are more appropriate fora. The China Intellectual Property Rights ("IPR") Cooperation Framework Agreement entered into in 2012 by the US government and our government is the most appropriate forum for addressing the issues at hand on appeal. Additional strategic dialogues between the US and PRC that provide specific venues for IPR and discovery related dialogues include the China-US Joint Commission on Commerce and Trade, the US-China Strategic and Economic Dialogue, and the Vice-Ministerial Level Meeting of the China-US Working Group on Intellectual Property.

The numerous inter-governmental fora are the appropriate venue for addressing the Plaintiff's intellectual property enforcement issues. By seeking to bypass established diplomatic avenues, the Plaintiffs are interfering with diplomatic processes and undermining cooperative frameworks currently in place between China and the US. We strongly urge this court to consider and respect the letter and spirit of the Joint US-China Economic Track of the Strategic and Economic Dialogue that was convened by and supported by the Heads of State of China and the United States.

### The Chinese Banking Regulators Detrimentally Relied on Reasonable Assurances from the US Federal Reserve that It Would Respect the Sanctity of PRC Secrecy Laws

One of the most troubling aspects of the District Court's ruling is that it completely undermines the basis on which the Chinese banking regulators agreed to Chinese banks applying for US branch-banking licenses. Any Chinese bank seeking to establish a foreign presence must first secure the CBRC's approval. In the cases of the non-party PRC banks before your esteemed tribunal, the Chinese banking regulators approved their respective applications to US authorities on the express understanding (as set forth in Federal Reserve's own forms) that US authorities would respect the sovereignty of the PRC and the sanctity of its laws.

The application forms that we reviewed included written commitments of each of these non-party Chinese banks to cooperate with the Federal Reserve as to document requests in connection with the Federal Reserve's regulatory purview, *except* where any request would violate China's secrecy laws. Thus, a key component of the Chinese

4

banking regulator's approval of the applications was the respect it observed for our laws and jurisdiction.

The Chinese banking regulators and non-party Chinese banks relied on these commitments to their detriment. It was never fathomed that Chinese banks operating in the US would be ordered to violate PRC laws in any respect, whether by virtue of a US banking regulatory agency or US court. Even more so, the District Court's decision gives private civil litigants more power to obtain asset freezes, turnover orders, and compel the production of documents from foreign third-party banks than U.S banking regulators have; this is counterintuitive. In particular, ordering an innocent bank to violate the laws of its home country would be a challenge to the spirit of natural justice and shocking.

### The PRC's Commitment to Honoring of Evidence Requests Through Accepted Conventions

Finally, as a long time signatory to the Hague Convention, the PRC remains committed to its use and implementation. The PRC has instituted formal and efficient methods for requesting the information at issue through Hague Convention process. Hague Convention channels in China have been in place for over forty-three years, and are referred to in the PRC's Articles 276 – 279 of Civil Procedure Law as the channel for foreign litigants to obtain international judicial assistance. From 2010 to 2012, there were 110 cases where judicial assistance was requested and received in matters related to obtaining evidence for civil and commercial cases.

Under the current framework for evidence requests, any U.S. court may make a request to the PRC Ministry of Justice to take evidence pursuant to the Hague Convention. Upon approval by a PRC Ministry of Justice a PRC court will send the request to the relevant commercial bank. This practice squarely complies with the Hague Convention and avoids unnecessary conflicts of laws between the U.S. and PRC. We understand that our judicial counterparts have fulfilled a number of recent requests from the US under the Hague Convention, all of which were completed within a timeframe wholly consistent with international practice.

The PBOC and CBRC are committed to working with the Chinese Ministry of Justice to ensure that such requests are satisfied in an increasingly efficient manner. Therefore, the PBOC and CBRC now urge this Court to require the use of Hague Convention channels and procedures, and undertake to remain committed to actively coordinating with the Chinese Ministry of Justice to ensure that discovery requests are satisfied within a reasonable time period.

### Conclusions

The PBOC and CBRC are highly concerned with the broad reaching consequences of a negative decision in the captioned actions. It is the hope of the PBOC and CBRC that the wise jurists of this Court accept the points and messages conveyed herein above. Our country relies on the integrity of our regulatory system and the

5

protections it provides. Unnecessary infringement on this system presents broad implications for our domestic banking and financial systems which require that this Court adjudicate the issues presented with full consideration of the sovereignty of the PRC and the sanctity of its laws and regulatory systems and the implication they may have on the relationship between China and the US and other international affairs in mind.

Respectfully submitted,

Huai Peng MU
Director-General of the Legal Affairs Department of the People's Bank of China


Yi HUANG
Director-General of the Supervisory Rules and Regulations Department of the China Banking Regulatory Commission

6

书记官 Catherine O'Hagan Wolfe
美国联邦第二巡回上诉法院
40 Foley Square
New York, New York 10007

2013年12月 19 日

主题：Gucci America, Inc.等（作为原告和被上诉人）诉中国银行（作为上诉人）、Weixing Li 等（作为被告），编号 11-3934(L), 12-4557(Con.)

Tiffany (NJ) LLC 等（作为原告和被上诉人）诉 Bruce Forbse 等（作为被告）、招商银行等（作为请求人和上诉人），编号 12-2317-cv(L)、12-2330-cv(Con.)、12-2349-cv(Con.)

尊敬的 Livingston、Lynch 和 Lohier Jr 法官：

我们就上文标题所示的上诉一事发出此函。中国人民银行（下称"人民银行"）是中华人民共和国（下称"中国"）的中央银行，中国银行业监督管理委员会（下称"银监会"）是中国银行业监管机构。我们密切关注美国地区法院针对非当事方中资银行（中国银行、中国工商银行和招商银行）发出的资产保全令（如资产冻结）、移交令以及当事方的证据开示要求。上述三家银行均属人民银行和银监会管辖。我们现致函对贵庭受理的上述案件所涉事项和结果表示极度关注。上诉结果将对中美关系（特别是中美战略与经济对话）产生影响。为此，我们谨对在贵庭所提起上诉的裁决及相关事项可能导致的后果提供我方意见，供贵院参考。

## 人民银行和银监会

人民银行在国务院领导下制定和执行货币政策，防范和化解金融风险，维护金融稳定。人民银行负责发行人民币，管理人民币流通；监督管理银行间同业拆借市场和银行间债券市场；实施外汇管理，监管管理银行间外汇市场；监督管理黄金市场；持有、管理、经营国家外汇储备、黄金储备；经理国库；维护支付、清算系统的正常运行；等等。

银监会的职能是对中国境内所有银行业金融机构及其境外分支机构进行管理和监督。银监会制定监管规章制度、审批银行业金融机构的设立（及终止和清算）、监督银行对相关法律法规的遵守情况。银监会负有保护中国存款用户隐私和合法权益的职能。

1

### 关注问题和后果

贵庭如在未充分考虑本函所列举的基本问题和敏感事项的情况下对上诉事项作出裁决、支持无序的证据开示请求和缺乏依据的制裁，将构成对中国主权的公然侵犯，导致中美关系紧张，并对中国银行系统的稳定造成没有必要的负面影响。

### 尊重中国银行保密法符合全球利益和中国国家利益

中国保护银行隐私的法律法规，与美国类似法规一样，对银行业的稳定发展具有重要意义，符合中国国家利益。稳定增长的关键是确保储户和其他客户对银行系统的信心；在中国，银行视客户信息保密神圣不可侵犯。

《商业银行法》第 6 条明确规定："商业银行应当保障存款人的合法权益不受任何单位和个人的侵犯"。《商业银行法》第 29 条规定，对个人储蓄存款，商业银行有权拒绝任何单位或者个人查询、冻结、扣划，但法律另有规定的除外。《商业银行法》第 30 条规定，对单位存款，商业银行有权拒绝任何单位或者个人查询，但法律、行政法规另有规定的除外；有权拒绝任何单位或者个人冻结、扣划，但法律另有规定的除外。根据上述法律条文规定，在中国任何一家银行开立的存有资金的账户，不得因民事诉讼当事方之间的争议而予以披露、冻结或扣划，但中国法律另有规定的除外（例如通过中国的司法程序）。上述隐私保护条款制定的目的是树立对银行的信心，保障私人存款人的合法隐私权利，是中国的银行系统的重要基石。

外国法院如强制中国境内银行违反中国的银行隐私保护法律，将会把银行置于无法克服的两难境地。银行面临两个抉择：或者违反外国法院命令，或者遵守违反中国银行法律的外国证据开示要求。无论做出哪个选择，银行都面临民事诉讼和行政处罚风险。最近，中国银行因根据美国法院令冻结存款人资金而在中国法院被诉并在一审判决中败诉给有关存款人，依据是银行的冻结行为明显违反《商业银行法》。银行被判在中国法院发出命令起 7 日内解除对相关账户的冻结。有鉴于此，我们诚挚希望贵法院能够积极考虑两国法律的公平性以及其他有效途径达到本案审理目的。

中国银行业之所以获得史无前例的、安全、持续发展，中国的银行隐私保障法规在其中发挥了非常积极的作用，这也最终让中美经济从中获益。中国和美国两国之间建立和发展起来的深度互连关系充分说明，两国在处理贵院目前受理案件中，需要采用对话、外交和协商一致的程序，而不应单方采取行动，诉诸侵犯中国主权和法制的生硬手段。

### 美国法院作出裁定，责令中资银行违反中国的银行业和保密法律，这将损害中美关系

中美两国过去十年里建立过不少于十二个高级别双边合作机制，这些机制的部分目的就是解决这些案件遇到的法律冲突问题。这些论坛上进行的大量对话和诚

2

信谈判增强了中美关系，也代表了双方政府通过外交途径解决两国之间发生的重大的、技术性的和棘手的金融和经济问题的共同承诺。贵法院若作出违反中国法律的裁定，将损害和破坏大量的、持续进行的关于银行和金融领域对话的外交承诺。

美国国务卿克里和财政部长路杰克与中国国务委员杨洁篪和副总理汪洋在2013年7月举行的第五轮中美战略与经济对话，是一个深入商讨重大的双边、区域性和全球性金融和经济问题的机制。双方欢迎中美执法合作联合联络小组作出的努力，决定优先开展<u>知识产权执法</u>等方面的合作。

美国财政部在2013年7月12日关于《中美战略与经济对话第五次会议经济对话成果联合情况说明》的报告中指出两国将进一步采取措施"以支持强劲的国内和全球增长，促进开放贸易和投资，改善国际规则和全球经济治理，促进金融市场稳定和改革"。

在"促进金融稳定和改革"方面，并且与本函所涉问题关系密切，第五次战略与经济对话框架下的经济对话成果写道：

*"双方承诺通过适用相关的国际协定、双边安排和其他双边、多边或国际合作机制，在取证、向利害相关方发出通知以及在中国执行涉及中国境内金融机构的美国限制、扣押或没收判决或命令等相关问题上加强合作。"*（着重标记系添加）

假冒伪造会导致严重而广泛的社会和经济后果，应当严厉打击和制裁，但应当通过适当渠道解决，尤其是牵涉他国主权利益并且有更加有效的解决途径时更应如此。美国政府和中国政府于2012年签署的《中美知识产权合作项目框架协议》是解决本案上诉问题的最适当渠道。中美之间进行的其他战略对话也提供了特定的渠道进行知识产权和披露相关的对话，包括中美联合商贸委员会、中美战略与经济对话、中美知识产权工作组副部级会议。这些众多的政府间解决途径更适合解决原告的知识产权执法问题。原告试图绕过已经建立的外交渠道，干扰了对话过程，损害了中美两国目前建立的合作框架。希望贵法院谨慎考虑并尊重中美两国首脑召集和支持的《战略与经济对话经济对话成果》的条文和精神。

### <u>中国银行监管机构对美联储合理保证（即其会尊重中国保密法律的尊严）的依赖令中资银行陷入困境</u>

地区法院裁定中最令人困扰的一个问题，是其完全颠覆了中国银行监管机构同意中资银行申请美国分行银行牌照的基础。中国任何银行申请在国外设立机构必须首先获得银监会批准。对于贵庭审理案件中的非当事中资银行，中国银行监管机构明确基于美国有关机构会尊重中国主权和法律神圣不可侵犯的原则（见美联储表格所述）而批准其向美国方面提起的申请。

我们审阅的申请表格载有各非当事方中资银行的书面承诺，承诺就美联储监管范围内的文件出示要求向美联储提供配合，*除非*任何要求违反中国保密法规规

3

定。因此，中国监管机构批准申请的关键前提是其观察到的对中国法律和管辖权的尊重。

中国银行监管机构和非当事中资银行因为依赖上述承诺令其陷入目前的困境。在美国开展业务的中资银行会因为美国银行监管机构或美国法院的原因而被命令违反中国法律，这是令人始料不及的。不仅如此，地区法院的决定还向私人民事诉讼人赋予比美国银行监管机构所享有的更多的权力来获得资产冻结和移交令及强制要求外国第三方银行出示文件，这样的要求同样不合常理。特别是强制要求当事人做出违反法律禁止的行为，更是挑战和藐视自然法精神，这种要求令人震惊。

### 中国承诺通过认可的公约来履行取证请求

中国是海牙公约的成员国，中国作为签约国一向致力于公约的适用和实施。中国制订有正式、高效的方法来满足依据海牙公约提起的索取相关证据的要求。海牙公约的渠道在中国已经有超过四十三年的悠久历史，中国《民事诉讼法》第 276 – 279 条也述及外国诉讼人可通过这样的渠道获得国际司法协助。2010 年至 2012 年，共有 110 个案件就民事和商事案件调查取证提出并得到司法协助。

根据现有的证据请求制度，任何美国法院均可根据海牙公约向中国司法部提出取证请求。经中国司法部批准后，中国法院即可根据海牙公约向相关商业银行发出取证要求。这样的做法完全符合海牙公约规定，避免了美国和中国之间不必要的法律冲突。据我们了解，近期以来，美国当事人已经多次根据海牙公约从美国发出请求，所有请求均在完全符合国际惯例的时限内得到满足。

人民银行和银监会将一如既往地配合中国司法部，确保这样的请求以更高效率获得满足。有鉴于此，人民银行和银监会敦促贵院请求采用海牙公约渠道和程序，并承诺向中国司法部提供积极配合，确保证据开示要求在合理时限内得到满足。

### 结束语

人民银行和银监会对上文所述诉讼相关的任何负面裁定可能产生的广泛影响和后果表示高度关切。人民银行和银监会希望并相信贵院睿智的法官接受本函提出的意见和传达的信息。中国非常重视其监管制度的完整统一和该制度所提供的法律保障。对该制度的任何无谓侵犯，会对中国国内的银行和金融系统产生广泛的不利影响，贵院在裁定相关事项时应充分考虑中国主权、中国法律和监管制度的神圣不可侵犯，以及此事对中美关系的影响和可能产生的其他国际影响。

签字页



穆怀朋
中国人民银行条法司司长



黄毅
中国银行业监督管理委员会法规部主任






TO:

Catherine O'Hagan Wolfe

Clerk of Court

United States Court of Appeals for the Second Circuit

中国人民银行

北京市西城区成方街32号

邮政编码: 100800